UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

    Defendants.

_____/

## MOTION FOR *GARCIA* HEARING

The Government requests that the Court hold a hearing, pursuant to *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), to conduct an inquiry regarding potential conflicts of interest that may arise from attorney John Irving's concurrent representation of Defendant Carlos De Oliveira and three individuals the Government may call to testify as witnesses at trial.[1] A *Garcia* hearing is appropriate given that an attorney who cross-examines a client inherently encounters divided loyalties. The Government is not seeking any specific remedy at this time but apprises the Court of the issue consistent with its responsibility to promptly notify the Court of potential conflicts, so that it may conduct an appropriate inquiry under *Garcia*. A hearing would permit a colloquy with Mr. Irving's clients to inform them of potential risks and inquire into possible

---

[1] All published decisions of the former Fifth Circuit decided before the close of business on September 30, 1981, are binding precedent within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

1

waivers. The Court may also wish to procure independent counsel to be present at the hearing and available to advise Mr. Irving's clients regarding the potential conflicts, should they wish to receive such advice.

The Government has advised Mr. Irving of its intent to file this motion and has explained the contents of the motion and that the Government does not seek a specific remedy and only requests a hearing. Mr. Irving has informed the Government that, while he does not oppose a *Garcia* hearing, he cannot consent to the Government's motion without seeing a draft before it is filed. In addition, he advised that he thinks a *Garcia* hearing is premature nine months before trial and that the three potential witnesses he represents as clients do not need to attend the hearing.

## BACKGROUND

On July 27, 2023, a grand jury in this district returned a 42-count superseding indictment that charged Defendant Donald J. Trump with unlawful retention of national defense information and charged Trump, Defendant Waltine Nauta, and Defendant Carlos De Oliveira with obstruction-of-justice offenses. The charges against De Oliveira principally relate to his movement of boxes with Nauta in June 2022; his and Nauta's efforts—acting on behalf of Trump—to enlist the director of information technology for Mar-a-Lago (identified as Trump Employee 4 in the superseding indictment) to delete Mar-a-Lago security footage; and his false statements to the FBI in January 2023.

De Oliveira is represented by John Irving, who has also represented at least four other individuals who have been questioned in connection with the Government's investigation. Those clients include three individuals—referred to herein as Trump Employee 3, Witness 1, and Witness 2—that the Government has identified as potential witnesses at trial. To the Government's knowledge, Mr. Irving continues to represent these three individuals.

1.  **Trump Employee 3**

The individual identified as Trump Employee 3 in the superseding indictment worked as a personal aide for Trump, second to Nauta. Trump Employee 3 has information about a conversation with Trump regarding Nauta on June 24, 2022. As described in paragraphs 74-87 of the superseding indictment, after Trump spoke that day with his lawyer about a grand jury subpoena for Mar-a-Lago security footage, Trump Employee 3 told Nauta that Trump wanted to speak with him (Nauta), and Nauta abruptly changed his travel schedule to fly to Florida, where he coordinated with De Oliveira to approach Trump Employee 4 about deleting the Mar-a-Lago security footage.

2.  **Witness 1**

Witness 1 was a maintenance worker at Mar-a-Lago who served as head of maintenance before De Oliveira took over that position in January 2022. Witness 1 has information demonstrating the falsity of statements De Oliveira has made to the Government. In addition to the false statements De Oliveira made to the FBI that are the basis for the false-statements charge in Count 42 of the superseding indictment, he also made false statements in an April 2023 interview with the FBI and members of the Special Counsel's Office in Washington, D.C. In particular, when confronted with video footage appearing to show him photographing surveillance cameras in the tunnel at Mar-a-Lago near the storage room where the FBI recovered some of the classified records, De Oliveira claimed he was (1) looking for a shutoff valve because a water pipe had ruptured on the grounds of Mar-a-Lago, and (2) documenting a broken door below one of the cameras. Witness 1 has information about when the pipe broke and the door needed repairs that is inconsistent with De Oliveira's statements. Witness 1 also has information about De Oliveira's loyalty to Trump and about De Oliveira's involvement in the replacement of a lock—at the

direction of Trump—on a closet inside Trump's residence at Mar-a-Lago on June 2, 2022, the day Nauta and De Oliveira moved boxes as described in paragraphs 62-63 of the superseding indictment.

### 3. Witness 2

Witness 3 worked as a receptionist and assistant for Trump during and after his presidency. Witness 3 has information about the movement of boxes from the White House to Mar-a-Lago and their eventual placement in the storage room. Witness 3 also identified De Oliveira in Mar-a-Lago security footage of Nauta and De Oliveira moving boxes on June 2, 2022, as described in paragraphs 62-63 of the superseding indictment.

## ARGUMENT

Potential conflicts of interest arise from Mr. Irving's concurrent representation of De Oliveira and the three potential witnesses. Mr. Irving's representation of the three potential witnesses raises the possibility that he might be in the position of cross-examining current clients. These potential conflicts warrant a *Garcia* hearing.

### I. Applicable Law

The Sixth Amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right includes the "right to counsel of choice." *United States v. Ross*, 33 F.3d 1507, 1522 (11th Cir. 1994). It also includes a "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). The right to conflict-free counsel is subject to knowing and voluntary waiver. *United States v. Garcia*, 517 F.2d 272, 276-77 (5th Cir. 1975). But the "essential aim" of the right to counsel "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S.

153, 159 (1988). In addition, courts "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160. Accordingly, "[t]he need for fair, efficient, and orderly administration of justice" may "overcome[] the right to counsel of choice," and a court may "refus[e] to accept" a defendant's "waiver of his right to conflict-free representation." *Ross*, 33 F.3d at 1523–24.

Courts of appeals have advised the Government to notify district courts of "potential conflicts at the earliest possible moment." *United States v. Malpiedi*, 62 F.3d 465, 470 (2d Cir. 1995). Some courts describe this as an affirmative "duty" on the Government to bring the issue to the district court's attention. *In re Gopman*, 531 F.2d 262, 265–66 (5th Cir. 1976); *see United States v. Tatum*, 943 F.3d 370, 379–80 (4th Cir. 1991) (same); *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012) (same). When a potential conflict is brought to a court's attention, it triggers an "independent duty" by the court to "investigate." *Wheat*, 486 U.S. at 160; *see, e.g.*, *United States v. Caldwell*, 7 F.4th 191, 203 (4th Cir. 2021); *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019).

Courts have discretion in conducting an inquiry but, as a general matter, should "inquire into the details" and "(1) advise the defendant about potential conflicts; (2) determine whether the defendant understands the risks of those conflicts; and (3) give the defendant time to digest and contemplate the risks, with the aid of independent counsel if desired." *United States v. Lussier*, 71 F.3d 456, 462 (2d Cir. 1995). If a defendant maintains that he wishes to waive his right to conflict-free counsel, the court must "scrupulously evaluate" the waiver and use procedures akin to a Rule 11 colloquy to ensure that the defendant "understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his

5

attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections." *Garcia*, 915 F.2d at 277–78. Even in the event of a knowing and voluntary waiver, the court retains "substantial latitude in refusing waivers of conflicts." *Wheat*, 486 U.S. at 162–63. Courts in this district and elsewhere within this circuit regularly follow procedures along these lines in cases where there is a possibility a prior or current client of the defendant's counsel may be called to testify at the defendant's trial.[2]

## II. The Court Should Hold a *Garcia* Hearing to Address Potential Conflicts

A potential conflict exists because Mr. Irving represents three witnesses whom the Government may call to testify at the trial of his client De Oliveira. The Government has provided information regarding those witnesses above and will be prepared to provide any additional information that the Court requires at a *Garcia* hearing.

An attorney's cross-examination of a client presents a conflict of interest. *See Ross*, 33 F.3d at 1523; *United States v. Williams*, 902 F.3d 1328, 1333–34 (11th Cir. 2018); *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991). "An attorney who cross-examines a former client inherently encounters divided loyalties." *Lightbourne v. Dugger*, 829 F.2d 1012, 1023-24 (11th Cir. 1987); *accord Porter v. Singletary*, 14 F.3d 554, 561 (11th Cir. 1994). The situation may be even "more problematic" when an attorney cross-examines a current client. *Williams*, 902 F.3d at 1333–34.

---

[2] *See, e.g.*, *United States v. Schneider*, 853 F. App'x 463, 466 (11th Cir. 2021) (unpublished); *United States v. Campbell*, 491 F.3d 1306, 1311 (11th Cir. 2007); *United States v. Vuteff*, No. 22-CR-20306, 2023 WL 4202644, at *7 (S.D. Fla. June 27, 2023); *United States v. Carver*, No. 22-CR-80022, 2023 WL 4352792, at *2–*3 (S.D. Fla. June 23, 2023); *United States v. Phillip Braun & Blackstone Labs, LLC*, No. 19-CR-80030, 2019 WL 1893113, at *6 (S.D. Fla. Apr. 29, 2019); *United States v. Cordoba*, No. 12-CR-20157, 2013 WL 5741834, at *10 (S.D. Fla. Oct. 17, 2013); *United States v. Alvarez*, No. 10-CR-20547, 2010 WL 4774649, at *4 (S.D. Fla. Nov. 16, 2010); *United States v. Delorme*, No. 07-CR-20534, 2009 WL 33836, at *5 (S.D. Fla. Jan. 5, 2009).

An attorney's cross-examination of a client raises two principal dangers. *Ross*, 33 F.3d at 1523. First, the conflict may result in the attorney's improper use or disclosure of the client's confidences during the cross-examination. *Id.* Second, the conflict may cause the attorney to pull his punches during cross-examination, perhaps to protect the client's confidences or "to advance the attorney's own personal interest." *Id*; *accord Williams*, 902 F.3d at 1334.

The Rules Regulating the Florida Bar reflect these concerns, providing that, absent informed consent, a lawyer "must not represent a client" if "there is a substantial risk" that the representation "will be materially limited by the lawyer's responsibilities to another client." Fla. Bar R. Prof'l Conduct 4-1.7(a); *see Williams*, 902 F.3d at 1333-34 (discussing the "governing ethical canons of the legal profession" as applied to concurrent representation of a defendant and a witness at the defendant's trial).[3] Under the Rules Regulating the Florida Bar, informed consent requires, among other things, that "each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing." Fla. Bar R. Prof'l Conduct 4-1.7(b)(4).

Where, as here, a potential conflict arises from an attorney's concurrent representation of a defendant and a potential witness, a *Garcia* hearing is warranted. De Oliveira should be thoroughly advised of the potential conflicts and attendant risks. The three witness-clients should also be present at the hearing and apprised of the risk that Mr. Irving may use or disclose confidences he obtained from them. *See, e.g.*, *United States v. Patel*, No. 19-CR-80181, 2022 WL 2191642, at *2 (S.D. Fla. June 17, 2022) (*Garcia* hearing to question defendant and witness about conflicts related to law firm's concurrent representation of witness and defendant); *United States*

---

[3] This Court's local rules provide that "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar." S.D. Fla. Local Rule 11.1(c). The same standards apply to attorneys admitted *pro hac vice*. *See* S.D. Fla. Local Rule 14.

*v. Phillip Braun & Blackstone Labs, LLC*, No. 19-CR-80030, 2019 WL 1893113, at *2 (S.D. Fla. Apr. 29, 2019) (three witnesses questioned at *Garcia* hearing to evaluate potential conflicts arising from concurrent representation of witnesses and defendants); *United States v. Schneider*, 322 F. Supp. 3d 1294, 1296 (S.D. Fla. 2018) (witness questioned at *Garcia* hearings to evaluate potential conflicts arising from concurrent representation of witness and defendant), *aff'd*, 853 F. App'x 463 (11th Cir. 2021); *see also United States v. Oberoi*, 331 F.3d 44, 45–47 (2d Cir. 2003) (describing similar procedure). De Oliveira and the three witness-clients should be given an adequate opportunity to digest and contemplate the risks, with the aid of independent counsel if so desired.

If De Oliveira indicates he wishes to waive any conflicts, the Court should conduct an inquiry to determine whether the waiver is knowing and voluntary, and the Court should then determine whether to accept De Oliveira's waiver. Relevant considerations include "whether the subject matter" of Mr. Irving's representation of the witnesses "is substantially related to" to the subject matter of his representation of De Oliveira; whether Mr. Irving obtained confidential information from the client-witnesses that he could use during cross-examination; and whether Mr. Irving's representation of the client-witnesses could cause him to refrain "from intense probing of the witness[es] on cross-examination." *Ross*, 33 F.3d at 1534. The Court must balance De Oliveira's "rights to conflict-free representation of counsel," his right to counsel of choice, the rights of the witnesses to maintain the secrecy of confidences they imparted to Mr. Irving, and Mr. Irving's duty "not to work against the interests" of his clients and not to reveal information that those clients imparted to him in confidence. *Moscony*, 927 F.2d at 742. In conducting the balancing, some courts have considered whether the defendant is prepared to accept measures that could prevent the use or disclosure of client confidences while protecting the defendant's right to effective assistance of counsel, such as limiting cross-examination of the witnesses to co-counsel

8

and prohibiting the attorney from sharing client confidences with co-counsel. *See, e.g.*, *United States v. Turner*, 117 F. Supp. 3d 988, 990 (N.D. Ohio 2015) ("Having another attorney cross-examine [the prior client], if he testifies (and [conflicted counsel] playing no role whatsoever in outside counsel's cross-examination or its preparation), will adequately screen [the conflicted lawyer] from injuring [the former client] (and, conversely, benefitting the defendant)."); *but see United States v. Campbell*, No. 04-CR-424, 2005 WL 6436177, at * 4 (N.D. Ga. Mar. 9, 2005) (concluding that a similar "proffered alternative will not do the trick"), *aff'd*, 491 F.3d 1306 (11th Cir. 2007). The information gathered at the *Garcia* hearing will enable the Court to address any conflicts and formulate an appropriate remedy, and the Government takes no position at this time as to what remedy may be appropriate.

Accordingly, in order to protect the integrity of the Court's proceedings and the rights and interests of all affected parties, the Government requests that the Court hold a *Garcia* hearing with De Oliveira and the three witness-clients present to determine (1) whether and to what extent a conflict of interest arises from Mr. Irving's concurrent representation of De Oliveira and the three witness-clients; (2) whether De Oliveira or the three witness-clients wish to waive any conflicts and, if so, whether the waiver is knowing and voluntary; and (3) whether the Court will accept De Oliveira's waiver. The Court should procure independent counsel to be present at the hearing and available to confer with De Oliveira and the three witness-clients, should they so desire.

## CONCLUSION

For the reasons stated above, the Government requests that the Court hold a *Garcia* hearing with De Oliveira and the three witness-clients present and separate independent counsel available to consult with De Oliveira and the three witness-clients.

          Respectfully submitted,

          JACK SMITH
          Special Counsel
          N.Y. Bar No. 2678084

By:  /s/ *Jay I. Bratt*
          Jay I. Bratt
          Counselor to the Special Counsel
          Special Bar ID #A5502946
          950 Pennsylvania Avenue, NW
          Washington, D.C. 20530

          Julie A. Edelstein
          Senior Assistant Special Counsel
          Special Bar ID #A5502949

          David V. Harbach, II
          Assistant Special Counsel
          Special Bar ID #A5503068

          Michael E. Thakur
          Assistant Special Counsel
          Florida Bar No. 1011456

August 16, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Michael E. Thakur*
Michael E. Thakur