UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA,**

    Defendants.
_____/

## REPLY IN FURTHER SUPPORT OF GOVERNMENT'S MOTION FOR *GARCIA* HEARING

The Government files this reply in further support of its motion for a *Garcia* hearing. A *Garcia* hearing is required given the potential conflicts of interest that may arise from attorney John Irving's representation of Defendant Carlos De Oliveira and three individuals the Government may call to testify as witnesses at De Oliveira's trial. The hearing should not be conducted *ex parte*, even if that may be appropriate for discrete portions of the hearing. Mr. Irving indicates that he no longer represents the witnesses, that new counsel is being made available to advise the witnesses, and that his co-counsel, Mr. Murrell, will be solely responsible for cross-examining the witnesses at trial. In light of these facts, the Court may determine that it is not necessary for the witnesses to appear at the *Garcia* hearing, but the Court retains the discretion to require their appearance if it determines that their presence would facilitate the Court's inquiry.

1

I.      **Potential Conflicts Call for a *Garcia* Hearing at the Court's Earliest Convenience**

A potential conflict of interest arises here because the Government intends to call as witnesses at De Oliveira's trial three individuals previously represented by De Oliveira's lawyer, Mr. Irving, and the Government anticipates that those witnesses may provide testimony that tends to inculpate De Oliveira.[1] As set forth in the Rules Regulating the Florida Bar, absent informed consent a lawyer "must not represent a client" if "there is a substantial risk" that the representation "will be materially limited by the lawyer's responsibilities to . . . a former client." Fla. Bar R. Prof'l Conduct 4-1.7(a). The Rules further provide that "[a] lawyer who has formerly represented a client in a matter must not" either "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent" or "use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known." Fla. Bar R. Prof'l Conduct 4-1.9(a)-(b).

A hearing is therefore necessary to probe the potential conflict arising from Mr. Irving's prior representation of the three witnesses. After determining the nature and scope of a potential conflict, the Court must ensure that De Oliveira "understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, [and] that he has discussed the matter

---

[1] At the time the Government filed the motion for a *Garcia* hearing, the Government's understanding was that Mr. Irving continued to represent these three individuals. In his response to the Government's motion, Mr. Irving stated that he "no longer represents those three individuals, and new independent counsel is being made available to advise them going forward." ECF No. 137 at 2. Although Mr. Irving has not provided the names of the new lawyers, the Government assumes for purposes of this reply that those witnesses have retained or soon will retain new counsel, and that therefore the potential conflict arises from testimony at De Oliveira's trial by Mr. Irving's *former* clients.

with his attorney or if he wishes with outside counsel." *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975). Should De Oliveira decide that he wishes to continue with Mr. Irving as his lawyer despite any potential conflict, the Court must conduct a colloquy that makes it "manifest on the face of the record" that De Oliveira has knowingly and voluntarily waived his right to conflict-free counsel. *Id.* And even if De Oliveira knowingly and voluntary waives any potential conflict, this Court retains substantial discretion to decline to accept a waiver. *See Wheat v. United States*, 486 U.S. 153, 163 (1988); *United States v. Ross*, 33 F.3d 1507, 1523-24 (11th Cir. 1994).

The new information that Mr. Irving provided in response to the Government's *Garcia* motion—his assertion that he no longer represents the witnesses, that he did not obtain any relevant confidential information from his former clients, and that his co-counsel will be solely responsible for cross-examining the witnesses at trial—will undoubtedly be relevant to these proceedings. But these new developments do not eliminate the need for a *Garcia* hearing. Among other things, the Court should confirm these assertions in open court in De Oliveira's presence, so that that Court can be satisfied that any waiver he might make is with a full and complete understanding of these developments.

To the extent De Oliveira suggests (ECF No. 137 at 1, 3) that the existence of a *potential* conflict of interest rather than an *actual* conflict has a bearing on the need for a *Garcia* hearing or the scope of such a hearing, he is mistaken. The possibility of either a potential or actual conflict of interest triggers a judicial obligation to inquire into the possible conflict and decide whether to accept any waiver. *See Wheat*, 486 U.S. at 161-62. As the Supreme Court has explained, "a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 162. As

3

result, district courts must "be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. Regardless of whether Mr. Irving's prior representation of three potential witnesses against De Oliveira presents a potential conflict, rather than an actual conflict, that potential conflict triggers the need to investigate. *See id.* at 161; *see also, e.g.*, *United States v. Morelli*, 169 F.3d 798, 812 (3d Cir. 1999) ("When a district court is aware, or should be aware, of a potential conflict of interest on the part of the defendant's attorney, the court must inquire as to whether the defendant is aware of and waives this conflict."); *United States v. Leslie*, 103 F.3d 1093, 1098 (2d Cir. 1997) ("When the court learns of a possible conflict, it must explore the problem.").

De Oliveira is also incorrect to suggest that the Government's motion is premature (ECF No. 137 at 1-2, 5). Waiting to file such a motion or address a potential conflict risks substantially disrupting the proceedings and unnecessarily interfering with the Court's calendar. A *Garcia* hearing is not a mere formality with a predetermined outcome that must simply occur any time before trial. After a defendant is informed of the circumstances surrounding a potential conflict, various outcomes are possible, including a defendant's decision to retain new counsel, or the district court's possible exercise of its discretion to disqualify the defendant's attorney. Prudence therefore demands that a potential conflict be addressed expeditiously, as far ahead of trial as possible. *See, e.g.*, *United States v. Malpiedi*, 62 F.3d 465, 470 (2d Cir. 1995) ("[W]e emphasize that the government can protect itself by informing the district judge of potential conflicts at the earliest possible moment."). The steps that Mr. Irving indicates he has already taken to address the potential conflicts illustrate the value of raising these issues promptly.

4

## II.     The Court Should Not Conduct the Hearing *Ex Parte*

Although Mr. Irving "welcomes any inquiry of Mr. De Oliveira by the Court," ECF No. 137 at 2, he contends, as Mr. Woodward does, that the Court's inquiry should be conducted entirely *ex parte.* ECF No. 137 at 2, 5, 8 (Irving); ECF No. 126 at 3 (Woodward). Neither Mr. Irving nor Mr. Woodward provides any basis to deviate from the normal *Garcia* hearing procedures. Eleventh Circuit "precedent requires" a "full-scale, adversarial hearing" to evaluate a potential conflict. *United States v. Register*, 182 F.3d 820, 830 (11th Cir. 1999). In *In re Paradyne Corp.*, 803 F.2d 604 (11th Cir. 1986), the court granted a writ of mandamus after the district court deviated from the "clearly delineated and well established procedure" in *Garcia* and instead "proposed to subject defendants, witnesses, and attorneys to a series of examinations closed to everyone but the judge, a court reporter, and the individual being questioned," finding this "at odds with the principles of the open, adversarial system of justice guaranteed by our Constitution." *Id.* at 608.

Although *Paradyne* emphasized the implications for the constitutional rights of defendants, a *Garcia* inquiry into conflicts and waiver serves "[n]ot only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases." *Wheat*, 486 U.S. at 160. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* District courts also have a "legitimate wish . . . that their judgments remain intact on appeal." *Id.* at 161. The Government similarly has an "interest . . . in shielding any potential conviction from collateral attack." *Garcia*, 517 F.2d at 278. An open, adversarial proceeding protects not only the interests of the Defendant but also the interests of the Court *and* the Government in ensuring that the proceeding is conducted according to the applicable legal and professional standards. *See Wheat*, 486 U.S. at 160-61; *Garcia*, 517 F.2d at 278; *United States v.*

5

*Schneider*, 322 F. Supp. 3d 1294, 1296 (S.D. Fla. 2018) ("foundation" for court's decision to disqualify counsel the "concern[] with the public's perception regarding the fairness of these proceedings and the integrity of the judicial process....") (internal quotation marks and citation omitted).

Mr. Irving also contends (ECF No. 137 at 2, 6-8) that the three witnesses he previously represented need not be present at the *Garcia* hearing. The Government understands that the Court may find it unnecessary to hear from the witnesses if—as represented by Mr. Irving—he no longer represents them, Mr. Irving obtained no confidential information from the witnesses, and Mr. Irving's co-counsel will be solely responsible for any cross-examination. The Court, however, has the discretion to call the witnesses if it concludes that they have information that would facilitate the Court's inquiry. And that discretion does not turn on the relief requested by the Government. The Court may, for example, wish to hear from the witnesses regarding whether the witnesses provided confidential information to Mr. Irving, or whether they have any objection to the use of confidential information they may have provided.

Finally, although Mr. Irving stresses that his former clients have (or will have) independent counsel "available to advise the witnesses going forward," he does not address the Government's request that De Oliveira have the opportunity, if he wishes, to confer with independent counsel. *Garcia* expressly recognizes that a defendant should have the opportunity to discuss potential conflicts with outside counsel "if he wishes." 517 F.2d at 278. Independent counsel may provide a defendant with valuable advice. *See Wheat*, 486 U.S. at 163 ("[T]he willingness of an attorney to obtain [conflicts] waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them."). The Government accordingly requests that

6

this Court procure independent counsel to be present at the hearing and available to advise De Oliveira on potential conflicts.

### III. Conclusion

The Court should hold a *Garcia* hearing to inquire into potential conflicts arising from Mr. Irving's prior representation of three witnesses the Government may call to testify against De Oliveira. The hearing should not be conducted *ex parte*, and the Court should make independent counsel available to provide De Oliveira with advice should he desire it.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:   /s/ *David V. Harbach, II*
David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Julie A. Edelstein
Senior Assistant Special Counsel
Special Bar ID #A5502949

Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946

Michael E. Thakur
Assistant Special Counsel
Florida Bar No. 1011456

September 6, 2023

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 6, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

                                          /s/ *David V. Harbach, II*
                                          David V. Harbach, II