UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP**,
**WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA**,

    Defendants.
_____/

## OPPOSITION TO TRUMP'S MOTION FOR A REVISED SCHEDULE

In light of brief delays in the entry of the CIPA Section 3 protective orders and defense counsel read-ins to certain compartments, the Court invited the defendants to file a "motion to extend deadlines related to CIPA Section 4 [*see* ECF No. 83 p.5]." ECF No. 153. Instead, defendant Donald J. Trump, joined by his co-defendants, filed a motion that threatens to upend the entire schedule established by the Court and that amounts to a motion to continue the May 20, 2024 trial date. ECF No. 160.[1] The defendants "reserve[d] the right to seek adjournments of other aspects of the schedule," including the CIPA Sections 5 and 6 deadlines and trial date, *id.* at 1 n.1, without acknowledging that their proposed schedule, *id.* at 7, renders those dates an impossibility. Yet nothing material has changed since the Court set the trial date. Because of a slightly longer than anticipated timeframe for entry of the CIPA Section 3 protective orders and reading defense

---

[1] Trump also filed a classified supplement to the motion. As the Government is not disclosing classified information in its Opposition, the Government is publicly filing this response to both defendants' motion and Trump's classified supplement.

1

counsel into certain compartments—a timeline not controlled by the Special Counsel's Office—the Government would be amenable to a short extension for the defendants to submit a filing related to their theories of the defense in parallel to the Government's October 10, 2023, CIPA Section 4 submission. Instead, defendants argue for a schedule that would delay even the initiation of CIPA Section 4 proceedings by over three months.

In doing so, the defendants (1) misstate what is necessary to file an *ex parte* submission setting forth general defense theories; (2) falsely accuse the Government of delaying discovery; (3) unnecessarily propose overhauling the CIPA schedule, including by implementing responsive, non-*ex parte* Section 4 briefing, even though that approach is foreclosed by the Eleventh Circuit's decision in *United States v. Campa*, 529 F.3d 980, 995 (11th Cir. 2008); and (4) make arguments about prudential searches and discovery obligations that are not relevant to deciding this motion, overstate the complexity of anticipated pre-trial discovery litigation, and are meritless in any event. The current CIPA schedule should proceed apace, with at most a short extension for defendants' *ex parte* filing.

## ARGUMENT

### I. The Defendants Are Presently Able to Set Forth Defense Theories in an *Ex Parte* Filing

#### A. The Defendants Misstate What Is Necessary for Their Filing

In asking for a three-month extension to present *ex parte* their theories of the case, the defendants overstate what their filing will entail and the discovery necessary for them to accomplish it. The defendants already have more than sufficient discovery to provide the Court with a description of the type of information they consider relevant and helpful. The defendants' motion can and should be denied on this ground alone.

Defendants correctly assert that "courts routinely permit defendants to make parallel *ex parte* submissions describing their defense theories." ECF No. 160 at 2. Courts have allowed the defense to provide their own filings in order to "outlin[e]" their "theory of the defense to aid the court in its review of the classified material." *United States v. Sedaghaty*, 728 F.3d 885, 906 n.10 (9th Cir. 2013); *see also United States v. Amawi*, 695 F.3d 457, 469 (6th Cir. 2012) ("The district court also conducted ex parte hearings with defense counsel to learn about their defense theories and how any classified information might be helpful or necessary to the defense."). But neither of these cases nor any cited by defendants supports the argument that classified discovery needs to be complete and reviewed in its entirety—or anything close to that—before the defense can outline their defensive theory. *See Amawi*, 695 F.3d at 473 (defense counsel proffered theories without having reviewed any classified information; they did not have security clearances because no classified information was deemed discoverable).

Consideration of the charges the defendants face illustrates the point. Trump is the only defendant charged with mishandling of classified information—he is charged under 18 U.S.C. § 793(e) for the willful retention of national defense information. To convict a defendant under this statute, the Government must prove three elements: (1) unauthorized possession of a document, (2) that related to the national defense, and (3) by a defendant who willfully retained the document and failed to deliver it to the employee or officer entitled to receive it. *See United States v. Brown*, No. 21-cr-348, ECF No. 304, at 19 (M.D. Fla. Dec. 12, 2022) (final jury instructions). "National defense" is a "generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness." *Gorin v. United States*, 312 U.S. 19, 28 (1941). Moreover, to qualify as national defense information, the information also must be closely held by the Government—that is, national defense information "is limited to

information that the government has endeavored to keep from the public." *Campa*, 529 F.3d at 1004-05; *accord United States v. Squillacote*, 221 F.3d 542, 579 (4th Cir. 2000); *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988).  Potential defenses to the charge might include, for example, that Trump was authorized to possess the charged documents, that the subject matter of the documents did not concern the national defense, that the documents were not "closely held," or that he did not willfully retain the documents.  The defendants can outline in an *ex parte* filing any theories on which they may intend to rely, and a detailed inspection of all discovery is not necessary to do so.  In light of the level of detail in this superseding indictment, the defendants here were arguably adequately equipped to outline a defense theory before receiving any discovery at all, and as further discussed below, even more so because of the extensive discovery provided to date.

Moreover, as further explained below, the Government will be using CIPA Section 4 in this case largely to obtain this Court's authorization to provide classified information to the defense in the form of substitutions and redacted documents rather than withhold it entirely.  The nature of the material the Government will propose substituting and the limited redactions it will propose are unlikely to require finely detailed defense theories in order for the Court to determine the helpfulness of the material or the adequacy of a substitution.  Of course, the Court may, after reading the motion, ask the defense for a supplemental filing, or hold an *ex parte* hearing, to address any particular questions.

**B.     The Discovery Produced by the Government Is More Than Sufficient for the Defendants To Make Their Filing**

The defendants falsely accuse the Government of not making "good" on its discovery "promises" (*see, e.g.,* ECF 160 at 2), but the accusations do not withstand scrutiny, and they

4

provide no justification for delay in light of the substantial discovery the Government has already produced, much of it months ago.

As set forth in the September 14, 2023 joint status report, the Government has made five productions of unclassified discovery, totaling about 1.28 million pages, including all of the witness memorialization (interview recordings and transcripts, grand jury transcripts, and FBI 302s) in the Government's possession as of its most recent (September 1) discovery production and all of the CCTV footage acquired in the Government's investigation. ECF No. 158 at 2-3.[2] The witness memorialization produced includes about 200 unclassified transcripts of witness interviews or grand jury testimony.[3]

With respect to classified discovery, on September 13, 2023 (the date of the Court's entry of the Section 3 protective orders, ECF Nos. 150-52), the Government produced the majority of classified discovery it anticipates producing, *see id.* at 3, and nearly all will be produced prior to the Government's current Section 4 deadline. For example, on September 26, the CISO placed in

---

[2] Notably, the Government's largest production of unclassified discovery—including well over half of unclassified discovery produced to date—was its first production, which defendant Trump has had since June 21, 2023 (two days after the entry of the protective order in this case) and the other defendants received within a day of entry of an appearance by counsel.

[3] As set forth in the joint status report, the Government will later produce agent communications that are Jencks Act material for testifying agents. But as reflected in the standard initial Omnibus Order entered in this case, Jencks Act material can typically be produced up until the morning of the first trial day. ECF No. 28 at 4. The Government's production here—months before defendants' Section 4 submission is due and many more months before trial—of some 200 transcripts of witness interviews and grand jury testimony only enhances the defense's ability to make their Section 4 submission, well beyond that of most defendants. Among the extensive materials that the Government has provided to the defendants are transcripts of the summary agents' testimony in the grand jury and all accompanying exhibits. The defendants' suggestion that they are hamstrung from timely "outlining" their defense based on whatever additional Jencks Act material remains to be produced has no merit.

the defense SCIF the remaining classified witness interview transcripts, and all classified witness interview transcripts are now in the defense SCIF.

As the defendants are fully aware but omit from their pleading, the reason for defense counsel's inability to fully review the September 13 production is that they lack all of the necessary read-ins; but this was not a failure by the Government to make "good" on its "promise" to produce the material around September 12, nor any other failure on the Government's part. *See* ECF No. 160 at 8. The timing of the defense counsel's read-ins is not controlled by the Special Counsel's Office.

The Government has recently been informed that multiple defense counsel for Trump now have the necessary read-ins to review all material in the Government's September 13 production, with the exception of a single charged document and several uncharged documents requiring a particular clearance that defense counsel do not yet possess. The Government understands that the presence of these documents in the set of discovery available in the defense SCIF in Florida had prevented the defense from gaining access to a safe containing a subset of classified discovery when the defense reviewed the majority of the September 13 production during the week of September 18, 2023. On September 26, at the Government's request, the CISO removed the documents requiring the particular clearance from the safe so that the remainder of the subset would be fully available to Trump's counsel. Accordingly, most of defendants' complaints, such as their complaint that they have not been able to access 16 of the 32 charged documents, *see* ECF No. 160 at 8-9, have now been resolved.[4]

---

[4] The Government stated at the September 12 hearing that there were five charged documents that the defense SCIF is not currently authorized to store. The owners of four additional charged documents have since requested that those documents not currently be stored in the defense SCIF, and as a result, on September 26, the CISO removed those documents from the SCIF. The

By October 6, 2023, as suggested by defense counsel (*see* ECF No. 160 at 7), the Government will also provide the remainder of the previously identified classified discovery aside from (1) a small volume of classified *Jencks* materials (primarily agent emails)[5] and (2) items that will need to go through the CIPA Section 4 process prior to production. This production will include certain materials that Defendants have described as outstanding, including audio recordings of interviews and information related to the classification reviews conducted in the case. *See* ECF No. 160 at 8; Classified Supplement at 4 & n.3.

Again, based on the purpose of the defense filing and the limited nature of the Government's anticipated Section 4 filing, *see supra* Section 1.A., none of this additional discovery is needed for the defense to set forth generally their theories of the defense in order to aid the Court's *ex parte* review of the Government's Section 4 filing. Nonetheless, the Government is amenable to a short extension for defendants' *ex parte* filing.

## II. The Court's Current Schedule (ECF No. 83) Correctly Sequences CIPA Proceedings and Defendants' Requested Overhaul of the Schedule Is Unwarranted

### A. The CIPA Section 4 Deadline Appropriately Comes Early in this Court's Scheduling Order

Defendants' motion not only requests an extension for their *ex parte* filing, but also proposes overhauling the entire schedule in this matter. The resequencing of events proposed by the defendants, *see* ECF No. 160 at 7, sets the schedule backwards and would intentionally derail

---

Government understands that the CISO is working expeditiously to find a location in Florida that can store these nine documents. Defense counsel has the necessary read-ins to review these documents, and in the meantime, these documents can be made available in the Washington, D.C. area for defense counsel's review at their convenience, with the Court's permission.

[5] Should the defendants seek to notice any of these materials under CIPA Section 5, the Government would not oppose their doing so in a supplemental notice due to the later date of production.

both pre-trial proceedings and this Court's trial date. As the Government explained to the defense during a meet-and-confer session on this motion, a ruling on the Government's Section 4 motion is a prerequisite to producing certain discovery in this case. Pursuant to CIPA Section 4, the Government may "delete specified items of classified information from documents," "substitute a summary of the information for such classified documents," or "substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. App. 3 § 4. CIPA Section 4, therefore, not only permits withholding items from discovery, but it is also a mechanism to obtain the Court's approval to produce classified documents with redactions or to provide substitutions to the defense. As indicated to the defense, the Government intends to use CIPA Section 4 in that manner—and unless and until the Court authorizes the Government to produce certain classified documents to the defense with its proposed redactions or in substituted form, the Government cannot produce the documents *at all*.[6]

The current CIPA litigation sequence, which begins with the Government's Section 4 filing, is therefore logical: it allows the Court to resolve the Government's Section 4 motion and the Government to provide additional classified material to the defense before the defendants' November 17 Section 5 deadline to notice the classified information the defendants "reasonably expect[] to disclose or to cause the disclosure of," 18 U.S.C. App. 3 § 5, at trial. On the other hand, the defendants' proposal would delay by at least three months the production to the defense of certain classified information that the Government intends to produce subject to certain protections (assuming the Court authorizes them through Section 4). If the Government does not file its Section 4 motion until next year, the Section 5 proceedings would not commence until later

---

[6] Some of the very material the defendants complain in their classified supplement of not having received cannot be produced to them until the Court rules on the Government's Section 4 motion.

8

in 2024.  During a meet-and-confer session on defendants' motion, defense counsel acknowledged as much, yet their filing is silent on when subsequent CIPA proceedings would take place—as well as the inevitable delay in the trial date that their request would require.  Their filing, therefore, though purporting to concern the Section 4 schedule, seeks to relitigate their previous attempt to continue indefinitely the trial date in this matter.  *See* ECF No. 66 at 10 ("[T]he Court should therefore withdraw the current Order setting trial and postpone any consideration of a new trial date.").

The defendants misleadingly cite cases where classified information was not necessary to prove the charges in the case to argue, incorrectly, that it is consistent with DOJ practice for Section 4 motions to be filed much longer after indictment or close to trial.  *See, e,g., United States v. Palacio, et al.*, No. 22-cr-20104 (S.D. Fla.) (charges related to assassination of Haitian president); *United States v. Diaz Guillen*, No. 9:18-cr-80160 (S.D. Fla.), ECF No. 162 at 8 (prosecutor in fraud case explaining that information "came to light in the past few days" that necessitated filing a CIPA Section 4 motion a few weeks before the set trial date); *United States v. Padilla*, No. 04-cr-60001 (S.D. Fla.) (terrorism case).  In those cases, Section 4 motions were filed closer to trial because the classified information was tangential to the proceedings or because of the belated revelations of the existence of potentially relevant classified information.

The only case defendants cite in which classified information forms the basis of the charges is *United States v. Teixeira*, where a CIPA Section 4 deadline has not been set for a defendant indicted in June, No. 23-cr-10159 (D. Mass.).  In that case, however, the Government had to react within a couple of weeks to obtain a complaint to arrest an individual who was leaking classified information, and it had no time to assess or prepare discovery in the investigative phase.  But more importantly, defendants cite no case where the filing or resolution of the Government's Section 4

9

motion was delayed because the defense sought more time to complete its own *ex parte* filing or because a Court concluded that motions to compel discovery—which frequently become unnecessary or become significantly narrowed following meet-and-confer discussions—needed to be decided before the defense could provide the Court with an outline of its defense theories to aid the Court in assessing a Section 4 filing.

In a case like this where the charges themselves are based on classified information, and Section 5 and 6 proceedings are anticipated, the Government will typically file a Section 4 motion early in the prosecution, and in any event, *prior* to motions to compel and Section 5 and 6 litigation. *See, e.g., United States v. Winner*, No. 1:17-cr-34 (S.D. Ga.), ECF No. 33 (first of a series of scheduling orders, setting Government's Section 4 deadline less than three months after indictment); *id.* at ECF No. 117 (defendant's *ex parte* filing related to defense theories four months after indictment); *id.* at ECF No. 129 (motion to compel filed *after* Government's CIPA Section 4 and defense's *ex parte* filing); *United States v. Mallory*, No. 1:17-cr-154 (E.D. Va.), ECF No. 52 (Government's CIPA Section 4 motion filed less than four months after indictment); *United States v. Hoffman*, No. 2:12-cr-184 (E.D. Va.), ECF Nos. 37, 42, 67 (two CIPA Section 4 motions filed within about four months of indictment prior to defense filing motion to compel).  This Court followed this well-established pattern in its Scheduling Order, and none of defendants' arguments justifies their suggested deviation from it.

    **B.**    **The Other Proposed Revisions to the Court's Scheduling Order Are Also Unwarranted**

In addition to moving the date of the Section 4 filing by over three months, the defendants' proposed schedule sets forth a date to file a Section 4 motion, response, and reply, thereby requiring adversarial CIPA Section 4 proceedings.  ECF No. 160 at 7.  The defendants envision a non-*ex parte* process that is entirely inconsistent with binding precedent.  The Government, relying

on well-established Eleventh Circuit caselaw, will file its Section 4 motion *ex parte*. *See Campa*, 529 F.3d at 995 ("The right that section four confers on the government would be illusory if defense counsel were allowed to participate in section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view.")  The defense brief will be—as even they describe it elsewhere—a "parallel *ex parte* submission." ECF No. 160 at 2.  The defendants provide *no* examples of where a Court has handled Section 4 briefing on a responsive briefing schedule as defendants propose— and the Government is aware of none.

The cases defendants cite in support of the Court dispensing with a Government *ex parte* CIPA Section 4 motion do not support their position.  In *United States v. Stillwell*, 986 F.3d 196, 198 (2d Cir. 2021), after defendants in a murder-for-hire case appealed their convictions, a headquarters Department of Justice component informed the Second Circuit in a filing, considered after oral argument for two of the defendants, that the component—without notice to the U.S. Attorney's Office handling the case—had filed a Section 4 motion before the district court to withhold classified materials not only from the defense *but also from the prosecutors*.  The Second Circuit nonetheless gave the U.S. Attorney's Office an opportunity to move *ex parte* to withhold the material from the defense at the appellate level.  *Id.* at 199.  In eventually ordering the government to provide the classified materials to defense counsel, the Second Circuit did not hold that *ex parte* CIPA Section 4 proceedings by a district court were inappropriate; rather, it remanded to the district court to consider in the first instance defendants' *Brady* claims, highlighting the limited amount of time remaining for the defendants to file new trial motions.  *Id.* at 201-02. *United States v. Al-Farekh*, 956 F.3d 99, 107-108 & n.17 (2d Cir. 2020), directly contradicts defendants' position.  In that case, the Second Circuit rejected the defendant's claim that *ex parte*

11

proceedings are appropriate only if defense counsel is uncleared because if defense counsel participated in the Section 4 process, the ability to move in Section 4 to provide a substitution or summary "would be rendered insignificant, if not meaningless" and cited *Campa*, 529 F.3d at 995, in a footnote. The Second Circuit there based its decision on "the plain language of § 4," which "makes clear that a district court is required to decide in the first instance whether the Government's classified information is discoverable and the extent and form of any disclosure to the defendant," and noted that "[t]he structure of the CIPA statute reinforces our reading of § 4." *Al-Farekh*, 956 F.3d at 107.

Finally, the other deadlines in the current schedule should also be maintained. For example, the current deadline for defense motions to compel or discovery-related requests is October 20. With defendants having access to nearly all classified discovery by October 6, that provides at least two weeks for the defendants to review the remaining volume of discovery and confer with the Government about proposed motions. It also allows the Court nearly a month to resolve discovery disputes prior to the Section 5 deadline.[7]

### III. Defendants' Anticipated Discovery-Related Filings Do Not Bear on the Current Motion

The defendants raise additional issues in their unclassified and classified filings that do not bear on the pending motion and need not be resolved before setting a date for their *ex parte* filing. For example, the defendants discuss Prudential Search Requests ("PSRs"),[8] which are sometimes conducted in national security cases. A prudential search is a search of the files of an intelligence community or military component, typically before charges are filed, to assist prosecutors in

---

[7] If certain material remains disputed at that time but is subsequently produced to the defense, it can be handled through a supplemental Section 5 notice.

[8] The defendants refer to Prudential Search "Reviews" rather than "Requests."

identifying and managing national security concerns in their cases. Such requests are prudential, rather than legally required. The defendants suggest that the Government may not have conducted PSRs, or that the Government may have conducted insufficient PSRs. *See* ECF No. 160 at 5-6, 9-11. The defendants also raise the scope of the prosecution team and suggest that the Government may have too narrowly construed its discovery obligations and the locations searched. ECF No. 160 at 4-5, 9.

Should the defense seek to propound to the Government discovery requests or seek to compel discovery because it believes that other agencies possess discoverable information that has not been produced, it is free to do so. But there is no such motion before the Court, and a motion that has not yet been filed should not pause this Court's current motion deadlines. Moreover, the Government understands its discovery obligations and has complied to date with those obligations. The Government is responsible for its discovery obligations, and defendants cannot dictate how the Government complies with them. *See United States v. Jordan*, 316 F.3d 1215, 1252 n.81 (11th Cir. 2003) ("Where, as here, the defendant only makes a general request for exculpatory material under *Brady*, the government decides which information must be disclosed. 'Unless the defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final.'" (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)) (footnotes omitted). Defendants' claims here are a distraction from the issue currently before the Court.

Finally, the months-long framework defendants propose for resolving discovery disputes is unnecessary. The defendants should be required to adhere to their October 20 deadline for issuing discovery requests or filing motions to compel. And to the extent that disputes could arise that would "'throw the schedule off,'" ECF No. 160 at 12 (quoting 7/18/23 Tr. at 17), the Court

will be best positioned to maintain its current schedule by, as it intended in setting its Scheduling Order, starting to resolve them in the next month, rather than holding off for months to begin addressing them.

## CONCLUSION

For the foregoing reasons, if the Court is inclined to grant an extension for the defendants' *ex parte* filing, the extension should be for no longer than about a week, and the other dates in the Court's Scheduling Order (ECF No. 83) should be maintained.

Respectfully submitted,

JACK SMITH
Special Counsel

By: */s/ Jay I. Bratt*
Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Julie A. Edelstein
Senior Assistant Special Counsel
Special Bar ID #A5502949

David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068

## **CERTIFICATE OF SERVICE**

I, Julie A. Edelstein, certify that on September 27, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Julie A. Edelstein*
Julie A. Edelstein