UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,
WALTINE NAUTA**, **and
CARLOS DE OLIVEIRA,**

    Defendants.
_____/

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ADJOURNMENT OF TRIAL DATE

With the trial date more than seven months away, the defendants have moved the Court to continue the trial for an additional seven months, to a date shortly after the November 2024 election. This Court already rejected that position once, less than three months ago, in an Order setting trial for May 2024. ECF No. 83. By appending a motion to continue trial to his recent reply on a motion to adjust the schedule under the Classified Information Procedures Act ("CIPA"), defendant Donald J. Trump confirmed that his CIPA scheduling motion was but a precursor to a motion to continue the trial date.[1]

As set forth below, the Government has provided the defendants extensive, prompt, and well-organized unclassified discovery, yielding an exhaustive roadmap of proof of the detailed

---

[1] The Government submits this response to Trump's motion to continue the trial date, which he included for the first time in his Reply in support of his motion regarding the interim CIPA deadlines. ECF No. 167. Co-defendants Nauta and De Oliveira have joined his motion to continue.

1

allegations in the superseding indictment. The vast majority of classified discovery is also available to the defendants. For a small fraction of the discovery that is among the most highly classified material, certain enhanced security protocols have raised additional obstacles to full access. As to those materials, the Classified Information Security Officer ("CISO") has advised the Government that he expects even those materials to be available for review and discussion by cleared counsel this week. None of the issues raised in the defendants' motion warrants the continuance they request.

I.     **Defendants' Claims About Unclassified Discovery Are Inaccurate and Do Not Justify a Trial Adjournment**

In their motion to continue, the defendants have repeatedly distorted the comprehensive, organized, and timely unclassified discovery that the Government has produced, in service of an attack on the promptness and thoroughness of the productions and an allegation that the Government is in "ongoing non-compliance." ECF No. 167 at 1. The facts prove otherwise.

The facts are that on June 21, 2023, eight days after Trump was arraigned, the Government produced to him some 800,000 pages of unclassified discovery, including, among other material, identification of approximately 4,500 pages of key documents; all grand jury testimony to date; witness statements through May 12, 2023;[2] evidence obtained through search warrants and subpoenas; search warrants and applications; and CCTV footage from Mar-a-Lago obtained prior to May 2023 with key footage identified. The Government would have simultaneously made the same production to defendant Waltine Nauta, but his counsel was not yet admitted. The day that happened, July 6, the Government made its first production to Nauta.

---

[2]     The Government is producing all witness statements, regardless of whether the Government intends to call the witnesses at trial. That is what Government counsel meant when advising the Court that it would produce such statements "even if they would not be deemed discoverable under 18 U.S.C. § 3500." *See* ECF No. 167 at 5.

On July 17, the Government produced its second unclassified production to Trump and Nauta, consisting of some 300,000 pages, including among other things witness statements between May 12 and June 23, 2023, and relevant content from three electronic devices. On July 31, the Government made its third production to Trump and Nauta, consisting of approximately 7,000 pages, including witness memorialization and grand jury transcripts resulting from the superseding indictment, as well as the remainder of the CCTV footage. As for defendant Carlos De Oliveira, the Government produced the same three productions to him on August 11, the day after he was arraigned. With the Government's latest production of unclassified discovery on October 6—more than seven months before trial—it has produced all unclassified discovery of which it is aware, aside from certain agents' communications—specifically, emails and text messages—that could constitute Jencks material at trial.

The claim that the Government has produced an additional 23% of discovery materials since the July 21 scheduling order is misleading. Of the 166,554 pages of materials the Government has produced since July 21, 134,974 pages are from the final review of Nauta's two phones. As the Government indicated at the July 18 hearing, a substantial amount of material from the phones was in the Government's first production, but technical issues prevented a complete review of the phones. *See* July 18, 2023, Transcript of Hearing ("July 18 Tr.") at 64-65. The Government already had disclosed in its first production approximately 93,561 pages from Nauta's iCloud account, which included material from his phones. In other words, much of the post-July 21 documentary production is likely duplicative of what the defendants already received.

As in any case, there is likely to be some additional discovery in the months leading up to trial. For example, the Government may interview additional witnesses; the Court's resolution of an impending CIPA Section 4 motion should result in additional classified discovery; and the

defendants' own discovery requests could generate additional materials. But none of these circumstances is unusual, and none justifies delaying trial.

The Government has endeavored to assist the defense's review of these productions by categorizing materials logically, explaining the productions' content and organization through informative cover letters, and curating "key" documents and videos. And as noted above, reports, transcripts, and recordings of interviews with potential witnesses—essentially, the blueprint of the Government's case-in-chief—have been made available within days of arraignment for all defendants, even though the Court's scheduling order authorizes the Government to delay production of such materials until just before trial. ECF No. 28 ¶ 13.

The Government's production of unclassified discovery has been prompt, comprehensive, thorough, and organized. The defense has complete access to it today, more than seven months before trial. In no way does the Government's record of unclassified discovery production in this case support a continuance.

## II. The Defendants' Allegations Regarding Classified Discovery, Including Their Ability to Access it, Are Also Inaccurate and Do Not Justify a Trial Adjournment

For the Section 793 counts, Trump is of course entitled to classified discovery in order to test or challenge the Government's proof of the elemental allegation in the indictment that the documents he retained at the Mar-a-Lago Club contained national defense information. But the fact is that the great majority of the allegations in the indictment—including allegations of the defendants' conduct, knowledge, and intent—turn on evidence contained in the unclassified discovery, not the much smaller set of classified discovery. That the classified materials at issue in this case were taken from the White House and retained at Mar-a-Lago is not in dispute; what is in dispute is how that occurred, why it occurred, what Trump knew, and what Trump intended in retaining them—all issues that the Government will prove at trial primarily with unclassified

4

evidence. Whether the highly classified documents Trump retained at Mar-a-Lago contain national defense information is a fact Trump can try to dispute, but it will hardly be the centerpiece of the trial. Regardless, as discussed below, none of the defendants' claims about the availability of classified discovery justifies a continuance.

The defendants make numerous allegations regarding their access to classified discovery arising from the status of secure facilities, their clearances, and other considerations. Most of the allegations are inaccurate or incomplete; collectively they are misleading. The fact is that since the entry of the protective orders on September 13, cleared counsel has had access to considerable classified discovery; and as of last Friday, October 6, the Government has made available all of the classified discovery of which it is aware, except for discovery subject to proceedings under CIPA Section 4. While a small portion of the classified discovery is subject to issues related to where it may be stored, discussed, and reviewed, the Government expects those issues to be resolved shortly.

### A. Clearances

The defendants paint a misleading portrait of defense counsel's clearances—security clearances do not pose any impediment to diligent defense counsel. In footnote 2 of their motion the defendants state that Mr. Kise "has not yet been cleared fully to review all of the CIPA materials," and that because of that fact and his duties representing Trump in another trial, he has "had no opportunity to review any of the CIPA materials." ECF No. 167 at 2 n.2. Mr. Kise received an interim security clearance in late July, which authorized him to review about 2,100 pages of classified discovery the moment they were produced on September 13--the same day the protective orders issued. ECF Nos. 150, 151, 152. These materials included 16 of 31 charged documents and about 600 pages of classified interview transcripts, among other materials. So,

5

although it is true that as of their filing Mr. Kise had not been "cleared fully," it is inaccurate to suggest that that fact at all explains his failure to review "any of the CIPA materials." This leaves only one of the proffered explanations for Mr. Kise's alleged inability to review "any of the CIPA materials" as the possibly accurate one—Mr. Kise's competing obligations in the New York trial. But those obligations were aired at the July 18 scheduling hearing, July 18 Tr. at 35, 43, and the Court has already taken them into account in setting trial in May. As a result, there is no basis for the further suggestion in the footnote that "the Government's delayed discovery process" somehow has denied Trump Mr. Kise's assistance in a way that justifies a continuance.

Moreover, the point ignores that the remainder of Trump's team (four lawyers and a legal analyst) have final clearances. In other words, all counsel for Trump save Mr. Kise have been approved for the clearances necessary to review all the charged documents in this case, as has one counsel for De Oliveira. Some counsel may require additional read-ins to review certain compartmentalized information, but those read-ins have been approved and can be provided anytime the defense arranges with the CISO. With respect to Nauta, the CISO has informed the SCO that one defense counsel is expected to be approved for full clearance this week.

      **B.**      **Documents Requiring Special Measures**

As noted above, a small collection of highly sensitive and classified materials that Trump retained at the Mar-a-Lago Club are so sensitive that they require special measures (the "special measures documents"), including enhanced security protocols for their transport, review, discussion, and storage. The special measures documents constitute a tiny subset of the total array of classified documents involved, which is itself a small subset of the total discovery produced. From the outset of this case, the SCO and the CISO have been aware of some of the special

measures documents, but only recently, the SCO and the CISO learned that others—still constituting a small fraction of the overall discovery—fall into that category as well.

  C. **Secure Facilities**

Next, the defendants unfairly criticize the SCO for "failing to establish appropriate facilities in this District before bringing this case." ECF No. 167 at 2. To begin, the SCO does not have the authority to decide when and where secure facilities for the storage of classified information are established. The CISO, who serves not at the behest of the prosecutors, but rather "in a neutral capacity," oversees that process. *See* Revised Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information, ¶ 3. Under the security procedures established by the Chief Justice, the CISO is charged with

> mak[ing] necessary arrangements to ensure that the security requirements of the Executive Branch applicable to the level and category of classified information involved are met and must conduct or arrange for such inspection of the secure location as may be necessary. The classified information security officer must, in consultation with the United States Marshal, arrange for the installation of security devices and take such other measures as may be necessary to protect against any unauthorized access to or disclosure of classified information.

*Id.*

To be sure, the extreme sensitivity of the special measures documents that Trump illegally retained at Mar-a-Lago presents logistical issues unique to this case. But the defendants' allegations that those logistical impediments are the fault of the SCO are wrong. The defendants' claim that the SCO has failed "to timely remedy the situation," ECF No. 167 at 2, or "to make very basic arrangements in this District," *id.* at 4, proceeds from the false premise that the SCO controls the situation—it does not. Nonetheless, the SCO has also offered to—and did—make a facility

available to the defense in Washington, D.C., that can accommodate the review and discussion of all the discovery in this case, including the special measures documents.

With respect to the Miramar facility, the defendants note that classified documents have not been transported there and state that the location "has not yet been approved for review and storage" of classified material. ECF No. 167 at 3. That is inaccurate. The CISO has informed the SCO that Miramar can accommodate the review and discussion of all material, and can store all classified discovery except for the special measures documents. The defendants claim that this situation, coupled with the defense to this point having access only to "a small, temporary facility in Miami," has delayed Trump's personal review of classified discovery. *Id.* But the SCO is not aware of any request by Trump to personally appear in Miramar to inspect any documents—a request upon which the necessary arrangements to do so can and will be made. And whatever delay there has been to date in Trump's personal review of the classified materials, the seven months that remain before trial is more than ample time for him to do so.

In any event, the CISO has informed the SCO that by the end of this week, he expects that there will be SCIFs within the District available to defense counsel for review and discussion of all classified discovery in this case, including the special measures documents.[3] Additionally, the SCO has been informed that each of those SCIFs can store all classified discovery except for the special measures documents—and with respect to those materials, the CISO is working diligently on a solution. Pending that solution and with appropriate notice, those documents can be couriered by qualified control officers from the Intelligence Community to a SCIF in south Florida for defense inspection. And contrary to the defendants' allegation that the SCO "faces no such issues,"

---

[3] The Government will not disclose in this public filing the precise locations of these SCIFs, but the CISO has undoubtedly informed the Court of them.

ECF No. 167 at 4, it too must follow this procedure. Currently, the SCO's SCIF cannot accommodate storage of the special measures documents. Like the defense, to review those materials, SCO personnel must either arrange for them to be couriered to the office or travel to an approved storage location.

The defendants also suggest that they lack access to an approved computer with which to prepare classified discovery requests and pleadings. ECF No. 167 at 6. That too is misleading, because it is only true with respect to the small subset of special measures documents. Since the protective orders issued on September 13, the defense has had access to a classified laptop sufficient to address all the remaining classified discovery. For example, as the Court is aware, the defense was able to prepare and file a classified supplement. There is no reason why the defense could not prepare discovery requests related to the materials it has thus far reviewed. As for the special measures documents, the CISO is working with the Intelligence Community to establish approval for the defense's electronic processing of such documents and expects a solution soon.

The defendants further argue that the lack of SCIF space at the courthouse in Ft. Pierce and the anticipated three-month period before secure facilities are constructed further require a continuance. *Id.* at 3. But that was the situation facing the Court when it scheduled the trial for May 2024, and the only change since then is that the hoped-for construction project is now a reality. The defendants' other argument—that the Court lacks the ability to hold classified hearings—is an overstatement. CISOs routinely take measures to make a courtroom or a judge's chambers a temporary secure location suitable to hold a classified hearing, and the CISO has informed the SCO that he can do so here for any hearings not involving the special measures

9

documents. And even for a hearing involving those, there will soon be alternative venues in the District that could accommodate one at the Court's discretion.

The defendants' allegations regarding clearances and secure facilities vastly overstate the impact on their access to classified discovery and their ability to prepare for trial, and do not justify a continuance.

### III. Defendants' Discussion of PSRs Is Wrong and Does Not Justify a Trial Adjournment

The defendants wrongly claim that everything must come to a halt until the Government advises "whether and to what extent," ECF No. 167 at 7, it has sent out Prudential Search Requests ("PSRs")—a name for the mechanism by which the Government seeks potentially discoverable information that may exist in the files of agencies beyond the prosecution team. To begin with, none of the defendants' suggestions about PSRs is accurate as a legal matter. The Government is not required to conduct prudential searches or disclose to the defense "whether and to what extent" it did. The cases cited in support of that proposition—*United States v. Saab Moran*, No. 29-20450-CR, 2022 WL 4291417 (S.D. Fla. Sep. 15, 2022) and *United States v. John Doe 2*, No. 98-00721-CR, 2009 WL 10720338 (S.D. Fla. Oct. 23, 2009)—involve situations where the prosecutors conducted prudential searches and elected to disclose what they did. That does not amount to an obligation, and neither case suggests, much less holds, otherwise.[4]

In any event, the Government here has made appropriate prudential search requests and produced discoverable materials it received as a result. That will be evident to the defense when

---

[4] The Government's process in this case is fully consistent with the Justice Manual provisions to which the defendants refer, ECF No. 167 at 7-8, and, in any event, the Justice Manual "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." Justice Manual § 1-1.200. The internal protocols confer the defendants no rights, much less a right to dictate how discovery is collected. *See United States v. Caceres*, 440 U.S. 741 (1979).

it reviews the classified discovery letter the Government provided the CISO on October 6. The defendants' claim that prudential searches are required "under the circumstances of this case," ECF No. 167 at 8, and their predictable demand in reply to this pleading that the Government disclose to whom the PSRs were made and for what, is no more than the defendants' speculation that discovery is available that the Government did not and will not collect. The law does not provide for such second-guessing, as one of the cases cited by the defendants makes clear. *See John Doe 2*, 2009 WL 10720338, at *5 ("*Brady* does not require the Government to submit an affidavit or otherwise verify what efforts were undertaken to locate documents requested by the defense. Typically, the Government shoulders the burden of determining which information must be disclosed under *Brady*.") (citing *United States v. Jordan*, 316 F.3d 1215, 1252 n.81 (11th Cir. 2003)). The defendants' sinister suggestion—that there is a bastion of discoverable material within the Intelligence Community that the Government is purposely disregarding—is untrue. Their review of the Government's latest production of classified discovery will confirm as much.

Moreover, the defendants' arguments on this score distort the ordinary process for discovery and the schedule established by the Court, which contemplate the defense propounding to the Government specific discovery requests. Depending on the validity of those requests, they may or may not trigger additional searches and the production of additional material. Notably, the defense has made no such request to this point, despite the deadline for motions to compel being barely more than one week away, on October 20. ECF No. 83.

### III. Conclusion

The defendants provide no credible justification to postpone a trial that is still seven months away. They are fully informed about the charges and the theory of the Government's case from a highly detailed superseding indictment and comprehensive, organized unclassified and classified

discovery. Their unfounded claims of Government noncompliance with discovery obligations do not support their request. Their claims about their inability to review classified information are distorted and exaggerated, and, in any event, the Government expects that the CISO will resolve any remaining issues this week. There is no reason to adjourn the trial date. The defendants' motion should be denied.

                                                Respectfully submitted,

                                                JACK SMITH
                                                Special Counsel

By:    */s/ Jay I. Bratt*
        Jay I. Bratt
        Counselor to the Special Counsel
        Special Bar ID #A5502946
        950 Pennsylvania Avenue, N.W.
        Washington, D.C. 20530

        Julie A. Edelstein
        Senior Assistant Special Counsel
        Special Bar ID #A5502949

        David V. Harbach, II
        Assistant Special Counsel
        Special Bar ID #A5503068

## **CERTIFICATE OF SERVICE**

I, Jay I. Bratt, certify that on October 9, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

/s/ Jay I. Bratt
Jay I. Bratt