UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON/REINHART

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) )  ) |
| v. | ) ) |
| WALTINE NAUTA, and | ) ) |
| CARLOS DE OLIVIERA | ) ) |
| Defendants. | ) ) ) ) |

**DEFENDANTS WALTINE NAUTA AND CARLOS DE OLIVIERA'S MOTION RELATED TO THE EX PARTE NATURE OF CIPA SECTION 4**

Defendants Waltine Nauta, and Carlos De Oliviera, by and through the undersigned counsel, and pursuant to Section 4 of the Classified Information Protection Act, 18 U.S.C. App. 1, *et seq.* ("CIPA"), hereby respectfully request this Court limit the *ex parte* nature of the submissions by the Special Counsel's Office's pursuant to CIPA § 4. *See* Notice (Dec. 6, 2023) (ECF No. 236). Pursuant to Local Rule

At the outset, Messrs. Nauta and De Oliviera agree with former President Trump that: "A motion pursuant to CIPA § 4 is a critical juncture where the government asks the Court to endorse the withholding of discoverable material by determining, *inter alia*, whether the material is "relevant or helpful" to the defense." Mot., at 1 (Dec. 6, 2023) (ECF No. 237). In effect, because CIPA, "creates no new rights of or limits on discovery of a specific area of classified information," prosecutors filing a motion pursuant to this provision are seeking permission to

withhold *Brady* material. *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989). These motions require the Court to stand in a defendant's shoes, predict defenses the defendant has not yet presented and is entitled to develop and modify until the case is submitted to the jury for deliberations, and protect important defense rights to exculpatory information relevant to trial and sentencing (including impeachment material). Accordingly, only "special circumstances" may justify removing a CIPA § 4 motion from the traditional adversarial system.

> Turning to the applicable statute, CIPA §4 provides, in pertinent part:
>
> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information may tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. App. III § 4. Of note, CIPA § 4's reference to *ex parte* submissions is permissive: "The court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone." *Id.* (emphasis added). This authority is derived from that already bestowed upon District Courts by Rule 16 of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*.").[1] This permissiveness is consistent with the Congressional admonishment that Section 4 is intended to clarify a District Court's power under Rule 16 to deny or restrict discovery in the interests of national security, 125 Cong. Rec. S 9184-87 (daily ed. July 11, 1979), *reprinted in*

---

[1] When CIPA was enacted, Rule 16 required a party to make a, "sufficient showing," but was amended in 2002 to instead require a showing of "good cause." The Advisory Committee notes to the amendment state that no substantive change was intended.

1980 U.S. Code Cong. & Admin. News 4294, 4299, and was intended neither to, "infringe on a defendant's right to a fair trial [n]or to change the existing rules of evidence and criminal procedure." H.R. 4736 [Report No. 96-831, Parts I and II], 96th Cong., 2d Sess. (Sept. 17, 1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294.

Importantly, considering a CIPA § 4 submission *ex parte* is *permissive*. Here, the unique facts and circumstances in this case warrant the Court rejecting the SCO's request that its CIPA § 4 motion be heard *ex parte*. First, the defendants in this action are not "accused terrorists," unlikely to obtain the security clearances necessary to review the classified information at issue in the SCO's CIPA § 4 submission. To the contrary, both former President Trump and Mr. Nauta had unrestricted access to *all* the classified information at issue. *See United States v. Rezaq*, 156 F.R.D. 514, 527 (D.D.C. 1994) ("The government asks too much, however, when it expects this court to exclude defendant's counsel from reviewing the CIPA statements. Defense counsel have received security clearances, and there is every reason to think that [the defendant's] counsel can be trusted with the sensitive information."). Second, the nature of the classified information at issue in this case *requires* that it be accessible by both the defendants and their counsel. Specifically, the operative indictment alleges the wrongful retention of classified documents and conspiracies to obstruct the SCO's investigation into said wrongful retention. Accordingly, the individuals best positioned to inform defense counsel of the nature and circumstances surrounding the alleged retention and conspiracies are former President Trump and among his closest of advisors, Mr. Nauta.

In the alternative, were the Court to permit any *ex parte* review of the SCO's CIPA § 4 submission, only two aspects of the same warrant *ex parte* review. First, the District Court must determine that the materials in question are in fact discoverable. *See United States v. Aref*, 533

F.3d 72, 80 (2d Cir. 2008) ("[T]he district court must first decide whether the classified information the Government possesses is discoverable."). *See also United States v. Abujihaad*, 2007 U.S. Dist. LEXIS 75547, at *7 (D. Conn. Oct. 11, 2007) ("If, on the other hand, the Court decides that the information is not discoverable at all, Defendant is not entitled to production of the information, regardless whether his counsel is willing to submit to security clearance procedures."); *United States v. Libby*, 429 F. Sup. 2d 18, 22 (D.D.C. 2006), *as amended*, 429 F. Supp. 2d 46 (D.D.C. 2006) ("By its terms, Section 4 applies only after it has been determined that documents are discoverable."). This prerequisite is logical insofar as neither defense counsel nor the defendant would have any "need to know" the otherwise classified information absent it being discoverable. *See United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) ("It's also a mistake to think that simple possession of a security clearance automatically entitles its possessor to access to classified information that he is cleared to see. . . . [I]n addition to having the requisite clearance the seeker must convince the holder of the information of the seeker's need to know it."). *See also* Exec. Order 13256 § 4.1(a) (access to classified information limited to those who have a need to know). Accordingly, the government's typical practice pursuant to CIPA § 4 is to submit to the Court *ex parte* and *in camera* the classified documents that it wishes to protect, 2 David Kris & J. Douglas Wilson, National Security Investigations and Prosecutions § 26:7, at 159 (3d ed. 2019, rev. 2023). In potentially the most consequential test of CIPA's ability to balance the government's need to protect national secrets and a defendant's right to a fair trial, Messrs. Nauta and De Oliviera respectfully submit that the Court would benefit from the traditional adversarial system championed by our Founders. In the alternative the Court should limit its *ex parte* review to only the classified documents the SCO seeks to withhold from defense counsel.

Second, it follows that if the materials are discoverable, the Court must then confirm that they are, in fact, classified. If not classified, CIPA § 4 does not authorize the Court to delete nor summarize the materials in question. *See* CIPA § 4 ("The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure." (emphasis added)). Put simply, if not classified, CIPA § 4 does not apply. Accordingly, to meet its obligation of demonstrating that the materials in question are in fact classified, the government typically will submit a "classified submission explaining the sensitivity of the documents that it seeks to withhold or redact." Kris & Wilson, § 26:7, at 160. *See* Mot., at 2 (Nov. 29, 2023) (ECF No. 225) ("In support of the Government's invocation of the classified information privilege, the motion will attach sworn declarations from representatives of agencies holding equities in the classified information that attest to the sensitive nature of the classified information and the risks posed by disclosure."). Here again, neither defense counsel, nor a defendant have any "need to know" the classified information the government relies upon to establish that the materials it seeks to withhold or redact are, in fact, classified. And while it remains the position of Messrs. Nauta and De Oliviera that the Court would benefit from the typical adversarial system, should it decide to consider any materials *ex parte*, that review should again be limited.

That, however, is where the propriety of any *ex parte* submission of materials must end. "In our adversary system, *ex parte* motions are disfavored . . . ." *Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018) (citing examples of appropriate *ex parte* applications). "Although *ex parte* conferences are not *per se* unconstitutional, they 'should occur but rarely, especially in criminal cases.'" *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986) (quoting *United States v.*

*Adams*, 785 F.2d 917, 920 (11th Cir. 1986).  "*Ex parte* communications generally are disfavored because they conflict with a fundamental precept of our system of justice:  a fair hearing requires 'a reasonable opportunity to know the claims of the opposing party and to meet them.'" *Id.* (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938)).

      Once the Court concludes that the materials the government seeks to withhold are discoverable and that they are, in fact, classified, any privilege of the government applicable to the materials must give way to a defendant's rights to a fair trial.  A defendant's right to a "fair trial," in turn involves the intersection of the Constitutional prohibition against, "withhold[ing] [from a defendant] evidence that is favorable to the defense and material to the defendant's guilt or punishment," *Smith v. Cain*, 565 U.S. 73 (2012) (citing *United States v. Brady*, 373 U.S. 83 (1963)), and the right of a defendant to, "meaningfully assist in [a] defense." *Castro v. United States*, 2022 U.S. App. LEXIS 29765, at *2 (11th Cir. Oct. 25, 2022) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).  And both Congress and the Supreme Court have recognized that the government's state-secrets privilege does not overcome these rights.  *See* H.R. 4736 [Report No. 96-831, Parts I at 15 n.12], 96th Cong., 2d Sess. (Sept. 17, 1980), *reprinted in* 1980 U.S. Code Cong. & Admin. News 4294 ("[T]he common law state secrets privilege is not applicable in the criminal area."); *Reynolds v. United States*, 345 U.S. 1, 12 (1953) ("Respondents have cited us to those cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free.  The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.").

Although this observation of Congress is broad, the Second Circuit has reasoned that what was intended by Congress – to avoid rendering the statute mere surplusage – was a presumption in favor of the government's privilege overcome by a District Court's finding that the material in question is discoverable. *See Aref*, 533 F.3d at 79 ("That said, *Reynolds*, [*United States v. Andolschek*, 142 F.2d 503, 505-506 (2d Cir. 1944),] and [*United States v. Coplon*, 185 F.2d 629, 638 (2d Cir. 1950),] make clear that the privilege can be overcome when the evidence at issue is material to the defense."). This, the Circuit concluded, is consistent with the Supreme Court's holding *Roviaro v. United States*, 353 U.S. 53 (1957), where the Court held that in a criminal case, the government's privilege to withhold the identity of a confidential informant "must give way" when the information, "is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause." *Id.* at 60-61. *See also* Kris & Wilson, § 26:7, at 163 ("When the government can produce classified information to cleared defense counsel without endangering national security, it probably does not need the protection of Section 4, although the government may [still] rely on CIPA Section 6 to prevent the disclosure of classified information at trial."). Accordingly, the Sixth Circuit, in affirming the government's failure to process security clearances for defense counsel, held that, "[t]he possession of a security clearance only becomes relevant *after* the district court determines, in accordance with section 4, that any classified information is discoverable." *United States v. Amawi*, 695 F.3d 457, 473 (6th Cir. 2012). *See also Libby*, 429 F. Supp. 2d at 24 n.8 ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

Finally, even were this Court to conclude, despite a determination that the materials the

SCO seeks to delete and/or summarize are discoverable, that defense counsel may not participate in an adversarial challenge to the SCO's requests, defense counsel for Messrs. Nauta and De Oliviera should nevertheless be permitted to participate in an adversarial challenge to the SCO's assertion that neither defendant should individually be permitted to review the classified discovery in their cases. Again, *ex parte* communications, "create an obvious potential for abuse," *In re Colony Square*, 819 F.2d 272, 276 (11th Cir. 1987), which arises from the, "general concern that the Government's information will be less reliable than if it is disclosed to the Defendant." *United States v. Belfast*, 2007 U.S. Dist. LEXIS 105594, at *6 (S.D. FL. April 26, 2007). With respect to the materials the SCO seeks to withhold from Messrs. Nauta and De Oliviera, *defense counsel already has access to these*, and thus the SCO concedes they are discoverable. *See Libby*, 429 F. Sup. 2d at 22 ("[T]he Court concludes that it is only logical to permit Section 4 to be invoked when the government decides to produce information contained in classified documents even though it is under no legal obligation to produce the information."). Accordingly, there is no basis not to permit defense counsel to rebut the SCO's purported basis for withholding those materials from Messrs. Nauta and De Oliviera.

## CONCLUSION

For the foregoing reasons, Messrs. Nauta and De Oliviera respectfully request this Court order the SCO's CIPA § 4 submission be disclosed to defense counsel.

[SIGNATURE ON NEXT PAGE]

Dated: December 6, 2023                    Respectfully submitted,

  /s/ Stanley E. Woodward, Jr.
Stanley E. Woodward, Jr. (*pro hac vice*)
BRAND WOODWARD LAW, LP
400 Fifth Street Northwest, Suite 350
Washington, District of Columbia  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
stanley@brandwoodwardlaw.com

  /s/ Sasha Dadan
Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida  34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

  /s Larry Donald Murrell, Jr.
Larry Donald Murrell, Jr. (Fl. Bar No. 326641)
400 Executive Center Drive
Suite 201—Executive Center Plaza
West Palm Beach, FL 33401
Telephone: 561.686.2700
Facsimile: 561.686.4567
Email: ldmpa@bellsouth.net

  /s John S. Irving, IV
John S. Irving, IV
D.C. Bar No. 460068 (*pro hac vice*)
E&W Law
1455 Pennsylvania Avenue, N.W.
Suite 400
Washington, D.C. 20004
Telephone: 301-807-5670
Email: john.irving@earthandwatergroup.com

*Counsel for Defendant Carlos De Oliveira*

**Certificate of Conferral**

Pursuant to Local Rule 88.9 of the Local Rules for the United States District Court of the Southern District of Florida, defense counsel has conferred with counsel for the Special Counsel's Office whom advise that they oppose the relief sought in the instant motion.

Respectfully submitted,

 /s/ Sasha Dadan
Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*

**Certificate of Electronic Service**

I hereby certify that on December 6, 2023, I electronically submitted the foregoing, via electronic mail, to counsel of record.

Respectfully submitted,

 /s/ *Sasha Dadan*
Sasha Dadan, Esq. (Fl. Bar No. 109069)
DADAN LAW FIRM, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida 34950
772-579-2771 (telephone)
772-264-5766 (facsimile)
sasha@dadanlawfirm.com

*Counsel for Defendant Waltine Nauta*