UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80-1010-CR-CANNON

UNITED STATES OF AMERICA,

v.

WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

**Defendants.**
_____/

## DEFENDANTS WALTINE NAUTA AND CARLOS DE OLIVEIRA'S RESPONSE TO THE CIPA § 4 SUBMISSION OF THE SPECIAL COUNSEL'S OFFICE

Defendant Waltine Nauta,[1] by and through the undersigned counsel, hereby respectfully submits this response to the December 6, 2023, § 4 CIPA Ex Parte *Ex Parte* Submission by the Special Counsel's Office ("SCO" or "Special Counsel"). Notice (Dec. 6, 2023) (ECF No. 236). As Mr. Nauta has already articulated, "[i]n our adversary system, *ex parte* motions are disfavored . . . ." *Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018) (citing examples of appropriate *ex parte* applications). "Although *ex parte* conferences are not *per se* unconstitutional, they 'should occur but rarely, especially in criminal cases.'" *In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986) (quoting *United States v. Adams*, 785 F.2d 917, 920 (11th Cir. 1986). "*Ex parte* communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires 'a reasonable opportunity to know the claims of the opposing party and to meet them.'" *Id.* (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938)). Accordingly, the foregoing submission lays out as much of Mr. Nauta's position as is practicable

---

[1] Defendant Carlos De Oliveira joins in this submission.

1

without disclosing defense strategy and is accompanied by an *ex parte* classified briefing filed under seal with the Chief Information Security Officer ("CISO"). *See, e.g.*, *United States v. Beckford*, 964 F. Supp. 1010, 1027 (E.D. Va. 1977) ("[T]he Sixth Amendment supplies justification . . . to permit *ex parte* procedures . . . in the rare instance in which a defendant would be required to disclose trial strategy, witness identities or attorney work-product to the Government in his . . . application.").

I. **BACKGROUND**

On July 27, 2023, the SCO moved this Court to enter a Protective Order pertaining to the handling of classified information in accordance with § 3 of the Classified Information Protection Act. Mot. (July 27, 2023) (ECF No. 84) ("CIPA § 3 Motion"). In pertinent part, the SCO Motion sought to "restrict defense counsel from providing classified information to the Defendants unless such information was designated by the [SCO] as releasable to the Defendants." *Id.* at 3. *See also* Order at 9-10 (Nov. 1, 2023) (ECF No. 202) ("[W]hat the SCO advances here, in almost blithe terms, is that it can satisfy its discovery obligations by giving discovery to the *agent*-attorney and then banning that attorney (on penalty of criminal prosecution) from sharing any of it with *his principal*, the defendant."). On September 12, 2023, the Court conducted a Sealed Hearing on the SCO's CIPA § 3 Motion. *See* (ECF No. 149). In response to the SCO's Motion, and over the objection of Messrs. Nauta and De Oliveira, the Court issued a protective order on September 13, 2023, preliminarily governing classified discovery, which temporarily limited Messrs. Nauta and De Oliveira's access to the same. Order at 6 (Sept. 13, 2023) (ECF No. 151). The Court then issued an additional order following the Sealed CIPA § 3 Hearing, which further ordered that the parties file supplemental briefs on the scope of CIPA § 3. *See* Order (Sept. 13, 2023) (ECF No. 153).

2

In light of the Sealed Hearing on the Motion for a CIPA § 3 Protective Order and the subsequent supplemental briefing filed by Messrs. Nauta and De Oliveira, as well the SCO (*see* ECF Nos. 162, 163, and 164), this Court issued an Order clarifying that to the extent the SCO seeks to limit any individual defendant's access to discovery, the proper vehicle with which to do so is § 4 of the CIPA – rather than § 3 of the CIPA; nevertheless, the Court's Order maintained that the existing protective orders under CIPA § 3 remain in force. Order at 14-15 (Nov. 1, 2023) (ECF No. 202) ("[T]he previously entered protective orders under Section 3 remain in place . . . . Section 4 is the proper mechanism through which to do so, not Section 3").

Consistent with the Court's November 1, 2023, Order, Mr. Nauta, joined by Mr. De Oliveira, requested that this Court limit the *ex parte* nature of the submissions by the SCO pursuant to CIPA § 4 on December 6, 2023. *See* Mot. (Dec. 6, 2023) (ECF No. 238). On December 20, 2023, the SCO file its opposition to Messrs. Nauta and De Oliveira's CIPA § 4 access motion. Opp'n (Dec. 20, 2023) (ECF No. 241). In pertinent part, the SCO opposed Messrs. Nauta and De Oliveira's CIPA § 4 access motion, asserting that the Court should abandon the traditional adversarial process with respect to the SCO's request that Messrs. Nauta and De Oliveira be prohibited from accessing discoverable material in this prosecution (including what material is discoverable). *Id.* at 14-18.

Although the Court has yet to rule on the request by defense counsel to properly challenge the SCO's otherwise *ex parte* submission, the Court in the interim has acknowledged that, "submissions by the defense are also appropriate so that the defendant has an opportunity to disclose defense strategy to aid the court's determination of whether the materials at issue are 'relevant or helpful.'" Mot. at 6-7 (Sept. 22, 2023) (ECF No. 160). Accordingly, Messrs. Nauta and De Oliveira submit this unclassified and unsealed response, in addition to the classified

3

supplement submitted to the CISO, to the SCO's December 6, 2023, *Ex Parte* CIPA § 4 Submission.  *See* Notice (Dec. 6, 2023) (ECF No. 236).

## II. LEGAL STANDARD

### A. The Prosecution's Discovery Obligations

The disclosure of exculpatory and impeachment evidence by the prosecution is essential to preserve a defendant's constitutional right to a fair trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). *See also United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003); *United States v. Rand*, 2011 U.S. Dis. LEXIS 120266, at *11-12 (S.D. Fla. Oct. 18, 2011). Accordingly, the prosecution has a duty to disclose evidence favorable to a defendant, including both exculpatory and impeaching evidence. *See United States v. Agurs*, 427 U.S. 97, 110-11 (1976); *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). In addition to being "favorable," the evidence to be disclosed must also be material. *See United States v. Sheppard*, 2024 U.S. Dist. LEXIS 2602, at *3-4 (S.D. Fla. Jan. 5, 2024) ("[b]ut mere 'favorableness' to the defendant is not enough to qualify for *Brady* protections—the information must also be material. Evidence 'is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

To be sure, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). However, *Brady* does hold that a defendant's right to due process is violated if the government, "withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment," *Smith v. Cain*, 565 U.S. 73 (2012) (citing *Brady*, 373 U.S. at 87), and, "'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .'" *Weatherford,* 429 U.S. at 559 (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)). That due process right

4

intersects with another constitutional right of under the Sixth Amendment which provides a defendant the right to, "meaningfully assist in [a] defense." *See Castro v. United States*, 2022 U.S. App. LEXIS 29765, at *2 (11th Cir. Oct. 25, 2022) (quoting *Holmes*, 547 U.S. at 324).

The Supreme Court has long held that anything beyond narrow limitations on the communication between counsel and a criminal defendant infringes upon the Sixth Amendment right to assistance of counsel. *See Geders v. United States*, 425 U.S. 80, 89-91 (1976) (holding that a defendant's Sixth Amendment rights were impugned by a protective order that broadly limited *how* the defendant could communicate with counsel). *See also United States v. Ahmed*, 73 F.4th 1363, 1374 (11th Cir. 2023) ("A *Geders* violation assume[es] prejudice when an unconstitutional statute or court order hinders a defense attorney . . . [from] rendering assistance of counsel to his client." (internal quotation marks omitted) (quoting *United States v. Roy*, 855 F.3d 1133, 1148 (11th Cir. 2017) (en banc)).

Further, although the government's obligation to disclose evidence favorable to the defendant had been long-settled under *Brady*, *Giglio*, and the Due Process Clause of the Fifth Amendment, the passage of the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (2020) ("DPPA") irrefutably affirmed the government's *Brady* obligations. *See United States v. Steward*, No. 1:19-CR-435-AT-RDC, 2021 U.S. Dist. LEXIS 177449, at *10 (N.D. Ga. Feb. 19, 2021). Endeavoring to address "inadequate safeguards in Federal law," Congress passed the DPPA to safeguard prosecutorial compliance with disclosure obligations." *United States v. Hossain*, No. 19-CR-606 (SHS), 2020 U.S. Dist. LEXIS 219232, at *18 (S.D.N.Y. Nov. 23, 2020) (quoting 166 Cong. Rec. H4, 582-83 (daily ed. Sept. 21, 2020) (Statement of Rep. Jackson Lee)). With its passage, the DPPA amended Federal Rule of Criminal Procedure 5(f) to direct each district court to promulgate a local rule – this Court's Local Rule 88.10 – to memorialize the prosecution's

Case 9:23-cr-80101-AMC Document 272 Entered on FLSD Docket 01/23/2024 Page 6 of 12

discovery obligations under Rule 5(f) and *Brady*, evincing the importance of prosecutorial disclosure obligations in criminal proceedings. *See* Sec. 2(f)(2) of the DPPA; *see also* Fed. R. Crim. P. 5(f) ("Reminder of Prosecutorial Obligation").

In addition, the prosecution's obligation to produce exculpatory evidence is supplemented by Rule 16 of the Federal Rules of Criminal Procedure, which seeks to "prescribe the minimum amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the 'broader' discovery requests of a criminal defendant." *Jordan*, 316 F.3d at 1249, n.69 (internal quotation marks omitted) (citing Notes of Advisory Committee on 1974 Amendments to Federal Rules of Criminal Procedure, Fed. R. Crim. P. Rule 16). Rule 16 of the Federal of the Federal Rules of Criminal Procedure provides that:

> [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and
> (i)   *the item is material to preparing the defense*;
> (ii)  the government intends to the use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii) (emphasis added).

As such, where a defendant requests material information from the government, it must provide "a specific request for the item together with an explanation of how it will be 'helpful to the defense'" and also "'show more than that the [discovery requested] bears some abstract logical relationship to the issues in the case" – specifically, "[t]here must be some indication that the pretrial disclosure of the [discovery requested] would. . . enable[] the defendant to significantly alter the proof in his favor.'" *See Jordan*, 316 F.3d at 1250-51 (quoting *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978)). Importantly, this Circuit and others have held that information

6

need not be exculpatory in order to be "helpful" – that is, that the government's discovery obligations extends to disclosure of inculpatory information relevant to the preparation of the defense. *See Jordan*, 316 F.3d at 1250 (providing that "'helpful' means relevant to the preparation of the defense and not necessarily exculpatory") (citing *United States v. Marshall*, 132 F.3d 63, 67-68 (D.C. Cir. 1998)). Ultimately, since it is sometimes difficult to assess the materiality of evidence before trial, prosecutors must err on the side of disclosure. *Kyles*, 514 U.S. at 439; *see also* Justice Manual § 9-5.001.

### B. Discovery Obligations Regarding Classified Information Under the CIPA

The question before the Court is whether the SCO may limit the discovery provided to Messrs. Nauta and De Oliveira pursuant to CIPA § 4. CIPA, however, does not serve as an absolute bar to the provision of discovery and was instead intended, "protect[] and restrict[] the discovery of classified information in a way *that does not impair the defendant's right to a fair trial*." *See generally United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2007) (emphasis added) (quoting *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002)). While the prosecution may have a legitimate interest in ensuring the special treatment of the discoverable information in this case, it seeks to apply CIPA in an overly broad manner without justification and, more importantly, in a manner that would needlessly infringe upon Messrs. Nauta and De Oliveira's constitutional guarantee of, "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Although the right of a meaningful opportunity to present a complete defense can be, "subject to reasonable restrictions[,]" *United States v. Scheffer*, 523 U.S. 303, 308 (1998), "[a]n evidentiary ruling may violate the right if it infringe[s] upon a weighty interest of the accused." *United States v. Nunez*, 1 F.4th 976, 991 (11th Cir. 2021) (internal quotation marks omitted) (quoting *Holmes*, 547 U.S. at 324)). Indeed, both the Supreme Court and district courts in other circuits recognize that the government's ability to withhold information based on state

secrets or national security in criminal matters is not absolute, and specifically needs to strike a balance with a defendant's right to discovery and right to present a meaningful defense. *See Aref*, 533 F.3d at 79 ("[T]he Court explained that in criminal cases . . . the Government was not permitted to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." (internal quotation marks omitted) (quoting *Reynolds v. United States*, 345 U.S. 1, 12, 12 n.27 (1953), *superseded by statute on other grounds*)).

### III. <u>ARGUMENT</u>

#### A. The Classified Discovery the Special Counsel Seeks to Withhold From Messrs. Nauta and De Oliveira Has Already Been Produced to Defense Counsel

The SCO blanketly claims that the classified materials provided to defense counsel in classified discovery are not actually discoverable as to Messrs. Nauta and De Oliveira. *See* Opp'n at 2 (Dec. 20, 2023) (ECF No. 241). Unique to this CIPA prosecution, however, is the fact that defense counsel has already been provided with the classified information the SCO seeks to shield from individual defendants. Thus, although defense counsel is not privy to the SCO's *ex parte* CIPA § 4 submission concerning the purported basis for why Messrs. Nauta and De Oliveira should be denied access to discovery, a review of these materials reveals there is no legitimate basis upon which to make such a claim.

By way of just one example, the classified discovery includes the purportedly classified materials – "documents with classified markings" – obtained by the SCO from the boxes Messrs. Nauta and De Oliveira are alleged to have moved for the purpose of concealing their contents from Trump Attorney 1, the FBI, and/or *a* grand jury. *See* Superseding Ind. (July 27, 2023) (ECF No. 85). It is nonsensical to suggest that Messrs. Nauta and De Oliveira would be precluded from knowing what materials they are accused of hiding as part of the conspiracies charged in this case. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989).

8

### B. The Classified Discovery the Special Counsel Seeks to Withhold From Messrs. Nauta and De Oliveira is Material to Formulating Their Defenses

Similarly, the classified discovery to which the SCO claims Messrs. Nauta and De Oliveira claim they're entitled bears upon a theme that is likely to be central to any defense in this action: "attacking the integrity of the government's investigation." *United States v. Quinn*, 537 F. Supp. 2d 99, 115 (D.D.C. 2008) (In finding a *Brady* violation, the District Court observed: "The impeachment of Douglas would highlight a theme Quinn could have pursued had he been timely provided with the information regarding Tatum: attacking the integrity of the government's investigation."). *See also Kyles*, 514 U.S. at 447 ("By demonstrating the detectives' knowledge of Beanie's affirmatively self-incriminating statements, the defense could have laid the foundation for a vigorous argument that the police had been guilty of negligence. . . . Since the police admittedly never treated Beanie as a suspect, the defense could thus have used his statements to throw the reliability of the investigation into doubt and to sully the credibility of Detective Dillman, who testified that Beanie was never a suspect . . . ."). Yet absent access to documentation of the investigation, whether classified or not, Messrs. Nauta and De Oliveira cannot meaningfully discuss the viability of any such defense. *See Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant . . . .").

### C. To Date, the Special Counsel Has Failed to Provide Any Valid Support to Assert Any Claims for Classified Information Privileges

It is also beyond dispute that the veracity of the SCO's contention that any classified materials, or "documents with classified markings," were actually in the boxes Messrs. Nauta and De Oliveira are alleged to have moved as part of the charged conspiracies. Accordingly, and contrary to the SCO's assertion, Messrs. Nauta and De Oliveira do not "concede" they, "lack a 'need-to-know' the classified information the [SCO] relies on to establish that the materials it seeks

to withhold or redact are in fact classified." Opp'n, at 2 (Dec. 20, 2023) (ECF No. 241). Rather, Messrs. Nauta and De Oliveira agree that after the Court determines the material the SCO seeks to withhold from them is discoverable, that the Court must then assess whether the SCO has sufficiently demonstrated that the materials in question are protected by the classified information privilege. As the D.C. Circuit Court of Appeals explained: "[The District] Court should determine if the assertion of privilege is a colorable one. Obviously, the government cannot be permitted to convert any run-of-the-mine criminal case into a CIPA action merely by frivolous claims of privilege." *Yunis*, 867 F.2d at 623. This is so, as Messrs. Nauta and De Oliveira explained in both their motion for access to the SCO's § 4 submission, (Mot. (Dec. 6, 2023) (ECF No. 238)), and reply in support thereof (Reply (Dec. 27, 2023) (ECF No. 247), because should the Court determine the SCO failed to proffer a colorable claim of privilege, then the materials may not be withheld from Messrs. Nauta and De Oliveira pursuant to the Classified Information Protection Act. Additionally, were the Court to conclude the materials in question did not warrant protection pursuant to the classified information privilege, the information the SCO relied upon in asserting the privilege applied would not be "helpful to the defense." *See Yunis*, 867 F.2d at 623. On the other hand, once the Court confirms the SCO has made a colorable assertion of the classified information privilege, then the material upon which the SCO relied to make an assertion of privilege becomes "helpful to the defense." *Id.*

## **CONCLUSION**

For the reasons discussed herein, there is no basis for the SCO to claim that its classified discovery is not discoverable as to Messrs. Nauta and De Oliveira. Accordingly, the Court should permit Messrs. Nauta and De Oliveira access to all discoverable material in this prosecution.

Dated: January 23, 2024        Respectfully submitted,

*s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (*pro hac vice*)
Brand Woodward Law, LP
400 Fifth Street NW, Suite 350
Washington, DC 20010
202.996.7447 (telephone)
202.996.0113 (facsimile)
stanley@brandwoodwardlaw.com

*s/ Sasha Dadan*
Sasha Dadan, Esq. (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida  34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

Counsel for Defendant Waltine Nauta

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2024, the foregoing was served via CM/ECF, to counsel of record.

Respectfully submitted,

*s/ Sasha Dadan*
Sasha Dadan, Esq. (Fla. Bar No. 109069)
Dadan Law Firm, PLLC
201 S. 2nd Street, Suite 202
Fort Pierce, Florida  34950
772.579.2771 (telephone)
772.264.5766 (facsimile)
sasha@dadanlawfirm.com

Counsel for Defendant Waltine Nauta