**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 23-80101-CR-CANNON(s)**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA**, **and**
**CARLOS DE OLIVEIRA,**

      Defendants.

_____/

**GOVERNMENT'S MOTION FOR RECONSIDERATION AND STAY**

In two recent Orders (ECF Nos. 283, 286), the Court has denied the Government's request to seal or redact certain material that was provided to the defendants in discovery pursuant to a protective order, and then attached either to the defendants' Motion to Compel Discovery or the Government's response thereto. That discovery material, if publicly docketed in unredacted form as the Court has ordered, would disclose the identities of numerous potential witnesses, along with the substance of the statements they made to the FBI or the grand jury, exposing them to significant and immediate risks of threats, intimidation, and harassment, as has already happened to witnesses, law enforcement agents, judicial officers, and Department of Justice employees whose identities have been disclosed in cases in which defendant Trump is involved.

To reach this conclusion, the Court reasoned, first, that, because the defendants chose to attach these discovery materials to court filings, the Government bore the burden to demonstrate that sealing or redaction "is 'necessitated by a compelling governmental interest and is narrowly tailored to serve that interest.'" ECF No. 283 at 4 (quoting *Globe Newspaper Co. v. Superior*

*Court for Norfolk County*, 457 U.S. 596, 607 (1982), and citing, *inter alia*, *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam)).  The Court then found that the Government's justifications, including protecting witness safety, grand-jury secrecy, and the integrity of the trial, failed to satisfy this "heavy burden."  *Id.*

This conclusion was wrong in two respects and should be reconsidered.  First, the Eleventh Circuit has held that the compelling-interest standard applied by the Court does not apply to "documents filed in connection with motions to compel discovery," which instead may be sealed or redacted simply upon a showing of "good cause," *Chicago Tribune Co.*, 263 F.3d at 1310-13; *see United States v. Nickens*, 809 F. App'x 584, 591-92 (11th Cir. 2020).  The Government has readily satisfied that standard here, *see* Fed. R. Crim. P. 16 (Notes of Advisory Committee on Rules—1974 Amendment) (noting that "it is obvious" that a protective order issued under the good-cause standard would be "appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed").  Because the Court applied the wrong legal standard—which, as explained below, the Government did not discuss in its prior filing—reconsideration is warranted to "correct clear error."  *United States v. Grobman*, 548 F. Supp. 3d 1344, 1347 (S.D. Fla. 2021) (quotation marks omitted); *see Chicago Tribune Co.*, 263 F.3d at 1310 ("The district court required Firestone to meet a compelling interest standard. To the extent this was predicated on a constitutional right of access, it was error.").

Second, in addition to ensuring that the correct legal standard is applied, reconsideration is warranted to "prevent manifest injustice." *Grobman*, 548 F. Supp. 3d at 1347 (internal quotation marks omitted).  The Court's Orders require the public identification of more than two dozen people who participated in the investigation.  Some may never testify at trial and therefore would otherwise be able to retain their anonymity and privacy absent the Court's Orders.  Others are

expected to provide important trial testimony and will likely be subject to threats, intimidation, and harassment if their identities are revealed—a likelihood that is concrete and palpable in this case, as the record reveals and other judges have recognized.  The First Amendment does not require the disclosure of these witnesses' identities, particularly where, as here, their identities have no bearing on the resolution of the motion to compel.

The Government therefore respectfully requests that the Court reconsider its recent Orders and permit the sealing or redaction of exhibits that identify any prospective Government witness, constitute Jencks Act material for the same, or contain certain sensitive information described below.  The Government further requests that the Court stay the Orders directing the parties to file newly redacted submissions on or before February 9, 2024, pending the resolution of this motion to reconsider.  The Government has conferred with defense counsel, and they oppose.[1]

## I.      Procedural History

On June 16, 2023, the Government sought a protective order to govern the handling of unclassified discovery in this case because the "discovery materials include sensitive and confidential information, including the following: personal identifiable information covered by Rule 49.1 of the Federal Rules of Criminal Procedure; information that reveals sensitive but unclassified investigative techniques; non-public information relating to potential witnesses and other third parties (including grand jury transcripts and exhibits and recordings of witness interviews); financial information of third parties; third-party location information; and personal information contained on electronic devices and accounts.  The materials also include information

---

[1]      They state: "The defendants object to the Special Counsel's efforts to reconsider, after full briefing, whether there is a valid basis under the law to seal the Motions to Compel briefing.  The defendants reserve the right to respond to any new authority cited by the Special Counsel's Office within a reasonable period of time.  We do not oppose an extension of time to submit proposed unredacted submissions to permit the Court to consider the expected Motion for Reconsideration."

pertaining to ongoing investigations, the disclosure of which could compromise those investigations and identify uncharged individuals." ECF No. 23 at 2. On June 19, 2023, the Court entered the protective order over unclassified discovery. ECF No. 27. It provided that "Defendants shall not disclose Discovery Material in any public filing or in open court without notice to, and agreement from, the United States, or prior approval from the Court." ECF No. 27 at 3, ¶ 7.

From that time until now, no witness names have been mentioned on the public docket. Indeed, the Court admonished all parties to anonymize references to witnesses at the *Garcia* hearings, both in its Order setting the hearings and during the hearing itself:

> [R]eferences during the hearing to identify potential witnesses are to be made in accordance with the witness designations as stated in the motions. . . . [T]he individuals that have been referenced in these papers have been referred to as follows: Trump Employee 3, Witness 1, and Witness 2.

Tr. of Oct. 12, 2023 *Garcia* Hearing, at 7; *see* ECF No. 161 ("References during the [*Garcia*] hearing to the identified potential witnesses are to be made in accordance with the witness designations as stated in the Motions 97 123.").

On January 16, 2024, the defendants filed their Motion to Compel Discovery (ECF No. 262) along with a Motion for Temporary Leave to File Redacted Brief (ECF No. 261). In the latter motion, the defendants made no attempt to show why an exception to the presumptive confidentiality of the protective order was warranted, and instead merely submitted that "[n]o compelling interest in sealing the motions exists." ECF No. 261 at 2. Two days later, consistent with the protective order, the Government responded to the Motion for Temporary Leave, opposing it to the limited extent that the motion to compel or its exhibits identify any prospective Government witness, constitute Jencks Act material for the same, or contain certain additional discrete sensitive information. ECF No. 267. On February 2, 2024, the Government filed a Motion

for Permission to File Sealed and Redacted Documents (ECF No. 278) in connection with its unclassified Response in Opposition to Defendants' Motion to Compel Discovery (ECF No. 277).

On February 6, 2024, the Court issued an Order (ECF No. 283) granting in part defendants' Motion for Temporary Leave to File Redacted Brief (ECF No. 261).  The Court granted the defendants' request for unsealing as to the names of potential Government witnesses and their statements, based on its conclusion that the Government failed to carry the "heavy burden" of showing that sealing was "necessitated by a compelling governmental interest and is narrowly tailored to serve that interest."  ECF No. 283 at 4-6 (quotations omitted).  On February 7, 2024, the Court issued an Order ruling on the Government's Motion for Permission to File Sealed and Redacted Documents, directing the Government to comply with the redaction instructions in the Court's earlier order for the reasons set forth therein.  ECF No. 286 at 1-2.

## II.  Applicable Law

### A.  Motion for Reconsideration

"Although the Federal Rules of Criminal Procedure do not specifically authorize motions for reconsideration, both the Supreme Court and [the Eleventh Circuit] have permitted parties to file such motions in criminal cases." *Serrano v. United States*, 411 F. App'x 253, 255 (11th Cir. 2011); *see United States v. Phillips*, 597 F.3d 1190, 1199-1200 (11th Cir. 2010).  "In ruling on a motion for reconsideration in a criminal case, federal district courts apply civil standards and exercise substantial discretion." *Grobman*, 548 F. Supp. 3d at 1347.  "As in civil cases, there are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (quotation marks omitted).  "[R]econsideration is an extraordinary remedy that should be employed sparingly." *Id.* at 1348 (quotation marks and alterations omitted).

### B.     Public Access to Discovery Material Produced Under a Protective Order

Both the First Amendment and the common law grant the press and the public a qualified right of access to criminal trial proceedings and certain judicial records. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). But neither the First Amendment nor the common law grants the press or the public a right to access discovery materials. *Chicago Tribune Co.*, 263 F.3d at 1310-13; *See Nickens*, 809 F. App'x at 591.

The First Amendment right of access attaches only when the "tests of experience and logic" have been met, *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*"), which requires courts to consider "(1) 'whether the place and process have historically been open to the press and general public'; and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *United States v. Valenti*, 987 F.2d 708, 712 (11th Cir. 1993) (quoting *Press-Enterprise II*, 478 U.S. at 8-9). But, as the Eleventh Circuit has ruled, discovery fails to satisfy either test. "Historically, discovery materials were not available to the public or press," and discovery has long been "neither a public process nor typically a matter of public record," but rather "essentially a private process," the "sole purpose" of which "is to assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986). And far from playing a "significant positive role" in discovery's "functioning," *Press-Enterprise II*, 478 U.S. at 8-9, "[t]he prospect of all discovery being presumptively subject to the right of access" would have a deleterious effect, as it "would likely lead to an increased resistance to discovery requests." *Chicago Tribune Co.*, 263 F.3d at 1312 at n.10; *see Anderson*, 799 F.2d at 1441 ("If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe."). Because discovery material fails to

satisfy either prong of the experience-and-logic test, the First Amendment right of access does not

attach.  *See Nickens*, 809 F. App'x at 591; *In re Boston Herald, Inc.*, 321 F.3d 174, 183 (1st Cir.

2003) ("Courts have also rejected claims based on First Amendment rights of access to other types

of documents . . . includ[ing] discovery materials . . . ."); *United States v. Gonzales*, 150 F.3d 1246,

1260 (10th Cir. 1998) ("Discovery proceedings are fundamentally different from other

proceedings to which courts have recognized a First Amendment right of access.").  So long as a

court has found good cause to issue a protective order, the constitutional right of access standard

is fully satisfied.  *Chicago Tribune Co.*, 263 F.3d at 1310; *see Seattle Times Co. v. Rhinehart*, 467

U.S. 20, 37 (1984) (where a protective order governing discovery materials "is entered on a

showing of good cause . . . and does not restrict the dissemination of the information if gained

from other sources, it does not offend the First Amendment").

The common-law right of access is also inapplicable.  Although it "includes the right to

inspect and copy public records and documents," *Chicago Tribune Co.*, 263 F.3d at 1311, it does

not attach to discovery materials—or, crucially, to "material filed with discovery motions," *id.* at

1312.  Indeed, the Eleventh Circuit has refused to treat all documents filed with the court as judicial

records, instead adopting "a more refined approach . . . that accounts both for the tradition favoring

access, as well as the unique function discovery serves in modern proceedings" *Id.*  Under that

approach, "material filed with discovery motions is not subject to the common-law right of access,

whereas discovery material filed in connection with pretrial motions that require judicial resolution

of the merits is subject to the common-law right." *Id.*  "This means that the . . . documents filed

in connection with motions to compel discovery are not subject to the common-law right of

access." *Id.* at 1312-13.  Indeed, "[m]aterials submitted to a court for its consideration of a

discovery motion are actually one step further removed in public concern from the trial process

than the discovery materials themselves." *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) (quotations omitted); *see United States v. Sleugh*, 896 F.3d 1007, 1014-15 (9th Cir. 2018).

In sum, discovery materials—including materials attached to a discovery motion such as a motion to compel—"do not fall within the scope of either the First Amendment or the common law right of access." *See Nickens*, 809 F. App'x at 591. "So a party seeking to shield discovery material from disclosure to a third party need only show good cause for the sealing." *Id.* (citing *Chicago Tribune Co.* 263 F.3d at 1310 and Fed. R. Crim. P. 16(d)(1)). "[D]emonstrating good cause in the absence of a common law right does not require overcoming a strong presumption in favor of public access." *United States v. Wecht*, 484 F.3d 194, 212 n.22 (3d Cir. 2007). Instead, it requires "balanc[ing] the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Tribune Co.*, 263 F.3d at 1313.

## III.    Argument

Reconsideration is warranted to correct clear error and prevent manifest injustice. As explained below, the Court applied the wrong legal standard and issued orders that, in practice, will expose witnesses and others to intolerable and needless risks. Before addressing those issues, however, the Government responds to the defendants' procedural objection, *see supra* n.1. Although the Government is cognizant of the fact that motions for reconsideration should not be used to present new evidence or argument, *Grobman*, 548 F. Supp. 3d at 1348, reconsideration is appropriate here given the context in which this discovery dispute has arisen.

The defendants here were not legally entitled to a list of the Government's witnesses, or to their statements or grand jury transcripts, prior to trial. *See* Fed. R. Crim. P. 16(a)(2), (3); 18 U.S.C. § 3500. These rules reflect a key "purpose of the Jencks Act," which is "to protect government files from unwarranted disclosure." *United States v. Pepe*, 747 F.2d 632, 657 (11th

Cir. 1984); *see* ECF No. 267 at 2.  The Government has nevertheless produced those materials, and more, far in advance of trial, in minimally redacted form—but only because the materials were subject to a protective order that allows the defendants to prepare for trial while limiting the risks of unwarranted disclosure, in part, by stating, "Defendants shall not disclose Discovery Material in any public filing or in open court without notice to, and agreement from, the United States, or prior approval from the Court."  ECF No. 27 at 3 ¶ 7.  That is precisely why no discovery was provided until the Court entered its protective order.  And while the protective order permits the defendants to seek Court approval when the Government's agreement has been withheld, *see id.*, that procedure presupposes that the burden is on *the defendants* to justify the basis for publicly disclosing presumptively confidential discovery material—including by justifying the basis for revealing the identities of witnesses and the substance of their expected testimony.

A contrary rule would turn the principles of discovery on their head and imperil the ability of prosecutors to provide early and thorough discovery as the Government has done here.  *See Anderson*, 799 F.2d at 1441.  The defendants may not evade the strictures of the protective order by the simple expedient of filing protected discovery materials with the Court and then claiming that their unilateral decision converts the discovery materials into judicial records that are presumptively open to the public unless the Government can show otherwise.  *See Chicago Tribune Co.*, 263 F.3d at 1315 n.15 (noting the producing party's "reliance on the terms of the stipulated protective order," and emphasizing that this reliance can be improperly thwarted "where the party filing the presumptively confidential discovery material with the court is not the party claiming confidentiality, but that party's adversary"); *id.* at 1316 n.3 (Black, J., concurring) ("[T]he free flow of information will cease if parties resist entering umbrella orders because they fear such orders could be subject to document-by-document, post-judgment attacks.").  "[A]ny decision

otherwise would render protective agreements largely meaningless," since "a defendant could merely append any document subject to such an agreement that he wishes to publicize—no matter how irrelevant—to any dispositive motion, and then bring a motion to unseal," which "obviously would defeat the purpose of such protective orders." *United States v. Al Malik Alshahhi*, No. 21-cr-371, 2022 WL 2239624, at *18 (E.D.N.Y. June 22, 2022).

The Government relied upon the full protections of the Court's protective order in drafting and submitting its filings, and did not understand that it would be required to provide specific additional evidence to support line-by-line redactions of materials that the Court had already found good cause to seal. *See Seattle Times Co.*, 467 U.S. at 36 n.23 ("[H]eightened First Amendment scrutiny of each request for a protective order would necessitate burdensome evidentiary findings and could lead to time-consuming interlocutory appeals, as this case illustrates."). In light of this context, even if the Court finds that the Government's prior filings did not adequately address the issues before the Court, it should exercise its discretion to consider the arguments and evidence below before resolving the request for continued sealing. The witnesses should not be placed at risk simply because the Government relied on its good-faith understanding of the protective order.

## A. Reconsideration Is Warranted to Correct Clear Error

### 1. *The Government was required to show good cause, not a compelling interest and narrow tailoring.*

In requiring unsealing, the Court applied the wrong legal standard. Like the district court in *Chicago Tribune Co.*, the Court determined that the Government's showing "was too general and conclusory to carry [the Government's] burden of showing 'that the closure of the records filed with this Court is necessitated by a compelling interest and that the closure is narrowly tailored to that compelling interest.'" *Chicago Tribune Co.*, 263 F.3d at 1309 (quoting district court record). But because the materials that the Government sought to seal or redact were

discovery materials attached to a discovery filing, the requirement that the Government "meet a compelling interest standard . . . predicated on a constitutional right of access" "was error." *Id.* at 1310; *see id.* at 1315; *Nickens*, 809 F. App'x at 591 ("[A] party seeking to shield discovery material from disclosure to a third party need only show good cause for the sealing.").

The cases cited in the Court's order (ECF No. 283 at 3-4) do not hold otherwise.  When the Eleventh Circuit recognized in *United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005), a "qualified First Amendment right of access to criminal proceedings," *id.* at 1028, it did so in a case involving not discovery materials, but secret docketing procedures and sealed "proceedings" and "documents" filed in other cases.  *Id.* at 1029-30.  Similarly, when the Fourth Circuit stated in *In re Time Inc.*, 182 F.3d 270 (4th Cir. 1999), that the right of access encompassed sealed documents appended to pretrial motions, including (without differentiation) "motions to dismiss the indictment, to transfer the case, and to compel discovery," *id.* at 271, it did not imply that its ruling reached beyond the publicly filed motion to compel to include the underlying discovery materials that were presumably the subject of the motion.  And to the extent that the dictum in *Associated Press v. U.S. Dist. Ct. for Cent. Dist. Of California*, 705 F.2d 1143 (9th Cir. 1983), that "[t]here is no reason to distinguish between pretrial proceedings and the documents filed in regard to them," applies to discovery motions, it conflicts with *Chicago Tribune Co.*, *see* 263 F.3d at 1312.  Finally, the District's Local Rules on sealing govern "judicial records," ECF No. 283 at 5, but not discovery materials, for which the party seeking confidentiality "need only show good cause for the sealing."  *Nickens*, 809 F. App'x at 591 (citing Fed. R. Crim. P. 16(d)(1)).

### 2.     *The Government established good cause.*

Applying the correct standard of "good cause" would have resulted in a different outcome. In this context, the good cause standard is equivalent to the standard for issuing a protective order

under Rule 16(d)(1).  *See Nickens*, 809 F. App'x at 591; *Chicago Tribune Co.*, 263 F.3d at 1315. And under Rule 16(d)(1), good cause can be based on such considerations as "the safety of witnesses and others, a particular danger of perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals."  Fed. R. Crim. P. 16 (Notes of Advisory Committee on Rules—1966 Amendment); *see id.* (Notes of Advisory Committee on Rules—1974 Amendment) ("Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed.").  In granting the protective order, the Court necessarily found good cause, and it has reiterated the concerns underlying that finding when taking care to anonymize witness names from the public during the *Garcia* hearings.  None of the considerations animating the protective order have dissipated since it was granted.

In opposing the unsealing requests by the defendants, the Government objected to "the unsealing or public dissemination of any information in the motions brief (ECF No. 262) or its exhibits that (a) reveals the identity of any potential Government witness; (b) reveals personal identifying information for any potential Government witness; or (c) constitutes Jencks Act material for any potential Government witness."  ECF No. 267 at 2.  In so doing, the Government emphasized three main concerns: (1) the need to protect "witnesses from harassment and intimidation"; (2) the need to avoid "infecting the testimony of other witnesses or unnecessarily influencing the jury pool"; and (3) the need to protect personal privacy, including by avoiding disclosure of "uncharged conduct as to one or more individuals."  *Id.* at 2-3.  Those legitimate concerns are paradigmatic ways of establishing good cause, and the Government's interests in continued confidentiality greatly outweigh the disclosure interests of the public or the defendants.

For example, "protecting the participants in a trial is an integral part of protecting the integrity of the trial itself." *United States v. Addison*, 708 F.3d 1181, 1188 (10th Cir. 2013); *United States v. Thompson*, 713 F.3d 388, 396 (8th Cir. 2013) ("The government's interest in protecting its witness and the witness's concern for his own safety justify the partial closing in this case."); *United States v. Jackson*, 513 F.2d 456, 459 (D.C. Cir. 1975) (stating one purpose of statute criminalizing witness intimidation is "the protection of participants in federal judicial proceedings, and thereby the protection of the public interest in the due administration of justice"). Indeed, the need to "protect[] witnesses and law enforcement personnel" and "safeguard[] the privacy of individuals involved in an investigation" are "particularly germane" when evaluating a request for public access. *United States v. Cohen*, 366 F. Supp. 3d 612, 622 (S.D.N.Y. 2019). "[U]nmasking those who are cooperating with the Government's investigation or who have otherwise provided information to the Government could deter further cooperation with the investigation by 'subject[ing] those individuals to witness tampering, harassment, or retaliation.'" *Id.*

These risks are far from speculative in this case. As early as August 2022, Magistrate Judge Reinhart noted the dangerous atmosphere for witnesses in this case when deciding to maintain under seal the bulk of the Mar-a-Lago search warrant affidavit, finding that "[a]fter the public release of an unredacted copy of the [search warrant] Inventory, FBI agents involved in this investigation were threatened and harassed." *In re Search Warrant*, 622 F. Supp. 3d 1257, 1263 (S.D. Fla. 2022). "Given the public notoriety and controversy about this search, it is likely that even witnesses who are not expressly named in the Affidavit would be quickly and broadly identified over social media and other communication channels, which could lead to them being harassed and intimidated." *Id.* Magistrate Judge Reinhart himself has been subject to numerous threats as a direct result of his involvement in this case. *See Bruce Reinhart, the Magistrate Judge*

*Who Approved the Mar-a-Lago Search*, N.Y. Times Aug. 18, 2022. This Court has suffered similar death threats. *See United States v. Gish*, No. 4:22-cr-468, ECF Nos. 1, 42 (S.D. Tex.). There is a clear and demonstrable pattern in which numerous people "have had their lives turned upside down" after being publicly identified as a participant in a proceeding involving defendant Trump. *See United States v. Trump*, 88 F.4th 990, 1010-12 (D.C. Cir. 2023). The presiding district judge in the election case received a racist death threat; the Special Counsel and his staff have been subject to threats and harassment; the chambers of the justice presiding over the civil fraud case in New York "have been inundated with hundreds of harassing and threatening phone calls, voicemails, emails, letters, and packages"; and potential witnesses against him are routinely subject to the sort of threats that "pose a significant and imminent threat to individuals' willingness to participate fully and candidly in the process, to the content of their testimony and evidence, and to the trial's essential truth-finding function." *Id.*

The Court's conclusion (ECF No. 283 at 5-6) that the Government's witness-safety concerns are too speculative or generalized is misplaced. A court's duty is to prevent harms to the witnesses or the judicial process "at their 'inception,' before they are realized and dysfunction envelops the trial." *Id.* at 1014 (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 553-54 (1976)). "That makes sense," given that "[a] rule that courts are helpless to act until witnesses have been intimidated, violence has been attempted, or a trial participant has been materially hindered from doing her job would 'gravely impair the basic function of the courts' in the 'fair administration of criminal justice.'" *Id.* (quoting *United States v. Nixon*, 418 U.S. 683, 712-13 (1974)). "Nor are the court's hands tied until evidence of direct causation materializes." *Id.* To the contrary, a "court's assessment of the threat to the court's functioning must be 'of necessity speculative, dealing . . . with factors unknown and unknowable[,]' and may appropriately be

grounded both in record facts and 'common human experience.'" *Id.* (quoting *Nebraska Press*, 427 U.S. at 563).  In this case, common sense and common human experience "teach that hostile messages regarding evidentiary cooperation that are publicly relayed to high-profile witnesses have a significant likelihood of deterring, chilling, or altering the involvement of other witnesses in the case." *Id.* at 1013.  The Government has not invoked concerns about witness safety or trial integrity in a boilerplate or speculative fashion.  *See United States v. Doe*, 870 F.3d 991, 999 (9th Cir. 2017) ("[T]he fact that the government did not identify specific threats on the record did not make the risk 'entirely speculative'" and "direct threats are not a strict condition precedent to a district court's granting of a closure motion") (quotation marks omitted)).  Witnesses, agents, and judicial officers in this very case have been harassed and intimidated, and the further outing of additional witnesses will pose a similarly intolerable risk of turning their lives upside down.

Those significant interests in maintaining confidentiality greatly outweigh the disclosure interests of the defendants and the public.  As noted, because the materials in question were attached to a discovery motion, no public right of access attached.[2]  Moreover, the defendants have not articulated any basis for why they need to publicly disclose witness names or statements, and those details have little relevance to the resolution of the motion to compel, as discussed below.  *See Alshahhi*, 2022 WL 2239624, at *16 (denying unsealing of witness statement that "were entirely irrelevant to this Court's determination of the motion to dismiss").  The Government's legitimate interests in confidentiality outweigh the interests in disclosure, establishing good cause.

A recent decision in another district illustrates the point.  In *United States v. Menendez*, the district court denied a motion to unseal discovery material, finding that "[t]he names and titles

---

[2]    Although the Court previously denied as moot the Press Coalition's Motion to Intervene (ECF No. 283 at 9 n.9), their intervention would not change the analysis or the result.  As noted, the only showing needed to justify the withholding of discovery materials is good cause.

identifying potential witnesses as well as the summaries of the statements themselves should remain redacted because they present information that could impact both the confidentiality and the course of the ongoing criminal investigation, in addition to affecting the privacy of potential witnesses in the upcoming trial."   No. 23-cr-490, 2024 U.S. Dist. LEXIS 18033, at *5-*6 (S.D.N.Y. Feb. 1, 2024).  "Preserving the integrity of the ongoing investigation and the privacy of undisclosed individuals with information regarding the ongoing investigation are emblematic of the types of higher values that ought to be preserved by redaction."  *Id.*  The *Menendez* court did so despite the absence of a record of concrete harms to witnesses equivalent to the record here. This Court should reach a similar conclusion and grant the motion for reconsideration.

### B.      Reconsideration Is Warranted to Prevent Manifest Injustice

Reconsideration is also warranted because, even under the legal standard that the Court applied, it would be a manifest injustice to release the identities and statements of the witnesses in this case.  There is a well-documented pattern in which judges, agents, prosecutors, and witnesses involved in cases involving Trump have been subject to threats, harassment, and intimidation. Similar harms have already impacted a witness in this case, as detailed in sealed, *ex parte* Exhibit A.  And they are likely to befall many more if, as the Court has ordered, their identities and roles in the case must be immediately made public.  The Court should not ignore this reality and expose the witnesses to such harm, particularly absent any defense argument for why exposure is justified.

The Government's redaction and sealing requests were narrow and well-justified.  Of the 70 exhibits attached to defendants' motion to compel, the Government sought relief as to 28.  For only 17 of those did the Government propose any redactions beyond personal identifying information. For six, the Government requested sealing in full.  ECF No. 267 at 3 & Att. A.  And in connection with the Government's opposition, the Government sought sealing in full of three

exhibits and limited redactions in one other, and requested corresponding redactions in defendants'
motion to compel and in its response.  The Government addresses each request below.

### 1.    *Exhibits that should be sealed in full.*

Government **Exhibits A, C, and D** and defendants' **Exhibit 2** are FBI 302 reports of
interviews of potential Government witnesses.  They include career civil servants and former close
advisers to defendant Trump.  The Government's inclusion of and reference to these exhibits was
necessary only to correct the false narrative the defendants included in their motion to compel, but
did not present a factual dispute requiring the Court's resolution.  *See* ECF No. 277 at 1-2.  On the
other hand, revelation of these witnesses' identities, or the substance of their interviews with the
FBI, dangerously risks exposing them to the same type of harassment and intimidation described
above and experienced by the witness in the sealed *ex parte* exhibit.  Indeed, the witness whose
statement appears in Exhibit D declined to have his interview recorded, citing the associated risks
to him in "Trump world" of doing so.  Exhibit D also contains the witness's opinions about other
potential witnesses and information about the case that other witnesses have revealed, but that are
not public, as well as information about uncharged potentially obstructive conduct by a defendant,
and speculation about witness tampering by an uncharged individual.

**Exhibit 51** is an FBI 302 report that is Jencks Act material for a potential Government
witness.  It is cited for two propositions that find support elsewhere in information the Government
is not seeking to redact.  *See* ECF No. 262 at 27 (citations for (1) agents from various offices
participating in the search of Mar-a-Lago, and (2) FBI coordination with the Secret Service; both
available via Exhibit 52).  There is no reason to publish this paradigmatic Jencks Act material.

**Exhibit 59** is the Department of Energy memorandum discussed at some length in
defendants' motion.  *See* ECF No. 262 at 38-39.  The only redactions the Government seeks on

this exhibit are the names of the author and recipient of the memorandum.  These individuals'
names are irrelevant to the Court's resolution of the associated discovery requests and there is no
reason to publicly expose them.

**Exhibit 61** is an FBI 302 report of interview for a potential Government witness who
worked for the White House Communications Agency.  The witness provided extensive non-
public details regarding enabling the sitting president to have secure communications and review
classified information.  Defendants cite the exhibit in support of their generalized discovery
request for evidence related to secure facilities at Trump's residences (ECF No. 262 at 42), but
none of this sensitive information is necessary to resolve the dispute about whether the
Government is in possession of any additional relevant discoverable material.

**Exhibits 67 and 68** are transcript excerpts of interviews of a potential Government witness
that collectively reveal details of the witness's interactions and relationships with certain
defendants and describe the process of finding attorneys for two other individuals, both of whom
are identified by name and are themselves potential Government witnesses.  The defendants cite
to Exhibit 67 (ECF No. 262 at 54) for the undisputed proposition that the Government questioned
a witness about Stanley Woodward's representation of individuals in the investigation.  The
defendants' citation to Exhibit 68 (ECF No. 262 at 54) does not advance any claim in their motion,
and there is no reason to publish these excerpts and place the witness in jeopardy.

**Exhibit 69** is a four-page excerpt of a transcript from a witness's grand jury testimony.  The
excerpt relates to the August 8 search warrant executed at Mar-a-Lago and includes non-public
details about the layout of the private residence—such as the location of Trump's son's
bedroom.  The defendants cite the exhibit to support their request for discovery pertaining to
correspondence and communications about the Mar-a-Lago search.  The transcript, which the

Government produced in discovery, is not necessary for the Court to decide the motion, and there is no reason to publicly reveal this grand jury testimony protected by Fed. R. Crim. P. 6(e).

### 2. *Exhibits that should be redacted*

**Exhibits 1, 3, 4-7, 10-11, and 18** either consist of or contain NARA emails.  The redactions sought are witness names and witness statements that are Jencks Act material.  Exhibit 18 also contains information about uncharged conduct, including about a person unconnected to this case. The defendants have publicly alleged, with no basis, that NARA was part of a government-wide scheme targeting Trump.  There is no reason to publish the names of—and thereby unnecessarily expose to intimidation and harassment—numerous NARA officials who have only done their jobs.

**Exhibit 25** is a list of discovery requests from the defendants, and **Exhibits 27 and 29** are letters from the Government in response.  The redactions in each are detailed in the Appendix. That these materials are relevant does not make them appropriate to unseal in their entirety.  None of the names of the four potential witnesses mentioned in Exhibit 25, or of the three mentioned in Exhibit 27, or the nine mentioned in Exhibit 29, is remotely germane to resolving any of the defendants' requests in their motion, and there is no justification for putting them at risk.

**Exhibit 33** is an internal FBI email that details a witness interview and provides the names of potential additional witnesses to be interviewed.  The Government seeks to redact the witnesses' names and the portion of the email containing the interviews.  The defendants cite to Exhibit 33 for a single point in their motion, having nothing whatever to do with the witness or the interview: to establish that a DOJ official participated in a debriefing of the interview.  ECF No. 262 at 23. The Government has not sought to redact the portion of the exhibit that supports that fact.  There is utterly no basis to publicly disclose the name of the witness or the details of the interview. **Exhibits 52 and 53** are also internal FBI emails.  The Government seeks to redact from both

exhibits witness statements and the name of a person whom the emails indicate provided sensitive information to the FBI about activity at Mar-a-Lago before the August 8, 2022 search.  Exhibit 53 also contains Jencks Act material for an FBI Special Agent regarding sensitive information about the classified documents seized from Mar-a-Lago.  The defendants cite Exhibit 52 merely to show that the Secret Service coordinated with the FBI to facilitate the June 3, 2022 meeting at Mar-a-Lago (ECF No. 262 at 27), and again, the Government has not requested redaction of the part of the exhibit demonstrating as much.  As for Exhibit 53, the defendants cite it for one purpose: to show that an FBI agent thought the FBI and the USSS were "great partners."  ECF No. 262 at 27. There is no basis in law or fact for publishing the witness statements or jeopardizing the person who provided information to the FBI by revealing the person's name.

**Exhibit 70** is an FBI internal email chain that includes statements from multiple potential Government witnesses about details relating to the search of Mar-a-Lago, and a list of the names of FBI personnel who were present for it.  The Government seeks to redact the list of names and specific statements made by witnesses about non-public details of the search.  Defendants cite Exhibit 70, with its self-contained list of every FBI agent who was present for the search—a search that Trump has decried on social media as a "raid" by "the Gestapo"—to establish the unremarkable propositions that FBI special agents "were communicating throughout the search," and that two DOJ attorneys were present for it.  ECF No. 262 at 56.  The Court should not tolerate this barely veiled attempt to slide into the public record, by first and last name, the participation of over twenty FBI personnel in the search.  *See In re Sealed Search Warrant*, 622 F.Supp.3d at 1263.

## IV.    Conclusion

The Government asks the Court to reconsider its Orders in ECF Nos. 283 and 286, and to stay, pending resolution of this motion, the requirement to submit newly proposed redactions.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:    /s/ *Jay I. Bratt*
Jay I. Bratt
Counselor to the Special Counsel
Special Bar ID #A5502946
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

David V. Harbach, II
Assistant Special Counsel
Special Bar ID #A5503068

Michael E. Thakur
Assistant Special Counsel
Florida Bar No. 1011456

Anne P. McNamara
Assistant Special Counsel
Special Bar ID #A5501847

February 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *David V. Harbach, II*
David V. Harbach, II