UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.23-80101-CR-CANNON

UNITED STATES OF AMERICA

v.

CARLOS DE OLIVEIRA
                    Defendant.
_____/

## MOTION TO DISMISS THE INDICTMENT
## AS TO CARLOS DE OLIVEIRA
## OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS

For the reasons stated below, the Superseding Indictment in this matter is constitutionally deficient as to Carlos De Oliveira and should be dismissed. Alternatively and at a minimum, the Government should be required to file a bill of particulars that would provide Mr. De Oliveira with the information he needs to defend himself. Per the Court's Minute Order on February 20, 2024 (ECF No. 320), Mr. De Oliveira respectfully requests a hearing on this motion but does not anticipate the need for any witness testimony.

**I. Relevant Facts**

Carlos De Oliveira is charged in the 42-Count, 53-page Superseding Indictment (ECF No. 85) with the following counts:

- **Count 33** – charging all three defendants with Conspiracy to Obstruct Justice in violation of 18 U.S.C. 1512(k), incorporating violations of 18 U.S.C. §§ 1512(b)(2)(A), (b)(2)(B), and (c)(1);

- **Count 40** – charging all three defendants with a substantive Obstruction of Justice violation of 18 U.S.C. § 1512(b)(2)(B) (corruptly attempting to persuade another person to alter/conceal record) related to the alleged request "that Trump Employee 4 delete security footage at the Mar-a-Lago Club to prevent the footage from being provided to a federal grand jury";

- **Count 41** – charging all three defendants with a substantive Obstruction of Justice violation of 18 U.S.C. § 1512(c)(1) (corruptly attempting to alter/conceal a record) related to the same alleged request referenced in Count 40.

- **Count 42** – charging only Mr. De Oliveira with Making a False Statement in violation of 18 U.S.C. § 1001(a)(2) related to his alleged statement to an FBI agent that he did not help move former President Trump back into Mar-a-Lago two years earlier at the end of his Administration.

Mr. De Oliveira is not charged in any of the first 32 Counts alleging Willful Retention of National Defense Information (18 U.S.C. § 793(e)). He is not charged in the Obstruction of Justice allegations in Counts 34, 35, or 36 regarding moving boxes containing classified information in order to conceal them from Trump

Attorney 1 and the grand jury. Nor is he charged with any of the False Statement violations in Counts 37, 38, or 39 alleging a scheme to conceal President Trump's continued possession of classified documents and related to the June 3, 2022, certification provided by Trump Attorney 3 and Mr. Nauta's testimony before the grand jury.

Indeed, nowhere does the Superseding Indictment allege that Mr. De Oliveira has ever seen a classified document, or that he was aware of their existence and presence at Mar-a-Lago at any time. The Superseding Indictment is also devoid of any assertion that Mr. De Oliveira was aware of any government investigation at the time of his alleged actions in June 2022, that he was aware of any grand jury subpoena at the time, either for documents with classified markings or for Mar-a-Lago security video, or that he would have any understanding of the preservation and production obligations that such a subpoena would require.

## II. Applicable Legal Standard

An indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "A defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Id. at 7(f). An indictment must:

> (1) present[] the essential elements of the charged offense, (2) notify the accused of the charges to be defended against, and (3) enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

*United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002). *See also Cochran v. United States*, 157 U.S. 286, 290 (1895).

Courts must consider an indictment on its face, and the indictment's language must at least "track[] the wording of the statute" and "set[] forth the essential elements of the crime." *United States v. Critzer*, 951 F.2d 306, 307-308 (11th Cir. 1992). A motion to dismiss an indictment cannot simply be a request for a pretrial determination of the sufficiency of the evidence. *See United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004); *Critzer*, 951 F.2d at 307.

That said, Fed. R. Crim. P. 7(c) requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged," and this Circuit has vacated Obstruction of Justice convictions where an indictment failed to provide constitutional notice and due process, stating:

> However, "[e]ven when an indictment tracks the language of the statute, it must be accompanied with such a statement of facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged"

*United States v. McGarity*, 669 F.3d 1218, 1236 (11th Cir. 2012) (quoting *United States v. Schmitz*, 634 F.3d 1247, 1261 (11th Cir. 2011)). The court in *McGarity* agreed that:

> [A]n indictment charging a defendant with statutory obstruction of justice under [18 U.S.C.] § 1512(c) must identify which official proceeding was obstructed and otherwise provide sufficient notice to the defendant of the factual predicate for the charge.

An indictment also "fails as a matter of law if the defendants' charged conduct, even if true, does not violate the statute or provision cited in the indictment." *United States v. Beredeal*, 595 F. Supp. 2d 1326, 1328 (S.D. Fla. 2009) (dismissing Lacy Act counts where the importation of fish did not violate state law, which was a predicate to a Lacy Act violation). See also *United States v. Madera*, 528 F.3d 852, 859 (11th Cir. 2008)(dismissing an indictment alleging a violation where the defendant failed to comply with a later, retroactive statutory determination by the Attorney General); *United States v. Bobo*, 344 F.3d 1076, 1084 (11th Cir. 2003) (vacating a healthcare fraud conviction where the indictment "contain[ed] no indication of what the government contended was unlawful about [the defendant's] conduct" and failed to specify the scheme to defraud or articulate a fraud in connection with the delivery of health care services).

## III. Analysis

### A. The Obstruction of Justice Allegations in Counts 33, 40, and 41, Should be Dismissed

The Obstruction of Justice allegations in Counts 33, 40, and 41 of the Superseding Indictment fail to notify Mr. De Oliveira of the charges that he needs to defend against and enable him to rely on any judgment as a double jeopardy bar. Even limiting this analysis to the four corners of the Superseding Indictment and assuming at this early stage that its allegations are true and viewed in a light most

favorable to the Government, *see Beredeal*, 595 F. Supp. 2d at 1328, the obstruction counts fail to articulate how Mr. De Oliveira's conduct violated the law.

Mr. De Oilveira is charged in Count 33 with Conspiracy to Obstruct Justice, the purpose of which is alleged to have been "for Trump to keep classified documents he had taken with him from the White House and to hide and conceal them from a federal grand jury." (ECF No. 85 ¶ 98). The Superseding Indictment lists the following manner and means of the conspiracy (*id.* at ¶ 97):

a.  Suggesting that Trump Attorney 1 falsely represent to the FBI and grand jury that TRUMP did not have documents called for by the May 11 Subpoena;

b.  Moving boxes of documents to conceal them from Trump Attorney 1, the FBI, and the grand jury;

c.  Suggesting that Trump Attorney I hide or destroy documents called for by the May 11 Subpoena;

d.  Providing to the FBI and grand jury just some of the documents called for by the May 11 Subpoena, while TRUMP claimed he was cooperating fully;

e.  Causing a false certification to be submitted to the FBI and grand jury representing that all documents with classification markings had been produced, when in fact they had not;

f.  Making false and misleading statements to the FBI; and

g.  Attempting to delete security camera footage from The Mar-a-Lago Club to conceal the footage from the FBI and grand jury.

The Superseding Indictment's lengthy introduction describes "The Defendants' Concealment of Boxes" starting at page 21. It states that the grand jury issued a subpoena on May 11, 2022, for "all documents with classification markings

in the possession, custody, or control of TRUMP or The Office of Donald J. Trump."
It then proceeds to explain interactions between President Trump and Trump
Attorney 1. It then alleges that between May 11 and June 2, 2022, Mr. Nauta moved
64 boxes from the Storage Room to President Trump's residence, and that Mr. Nauta
and Mr. De Oliveira moved approximately 30 boxes to the storage room on June 2,
2022, in an apparent effort to hide the remaining boxes from Trump Attorney 1.

The Superseding Indictment does not allege that Mr. De Oliveira ever saw a
classified document. It does not allege that Mr. De Oliveira was aware of the
presence of any classified documents in the boxes that he moved. It does not allege
that Mr. De Oliveira was even aware of any government investigation or the May 11
subpoena at the time he moved the boxes, let alone that he would have understood
the obligations that would come with such a subpoena. The Indictment does not
allege that Mr. De Oliveira had any involvement in moving the approximately 64
boxes to President Trump's residence, or that he was aware that any boxes even
existed beyond the approximately 30 that he and Mr. Nauta moved into the storage
room on June 2, 2022. Thus, the Indictment alleges, at least as far as Mr. De Oliveira
was concerned, that Mr. De Oliveira essentially sought to hide from Trump Attorney
1 the very boxes that Trump Attorney 1 reviewed only hours after they were moved
into the storage room.

Surely, Mr. De Oliveira's alleged involvement in a conspiracy to Obstruct Justice is not based on his assistance in moving boxes, the contents of which he had no clue, into a storage room where they were then almost immediately reviewed by Trump Attorney 1. That the Government declined to charge Mr. De Oliveira in the substantive Obstruction of Justice allegations involving the movement of the boxes in Counts 34, 35, and 36, or the "scheme to conceal" documents in Count 37 suggests that the Government agrees that the facts of this case would not support such allegations. It stands to reason, then, that the Government and the Superseding Indictment do not allege that Mr. De Oliveira was involved in the first five of the seven items alleged as the "manner and means" of the conspiracy.

The next "manner and means" allegation is "making false and misleading statements to the FBI." Here, again, Mr. De Oliveira is not included in the False Statement allegations of Count 37 (scheme to conceal President Trump's continued possession of documents with classification markings), Count 38 (President Trump causing Trump Attorney 3 to provide a certification), or Count 39 (Mr. Nauta's May 26, 2022, statements to the grand jury). Thus, the Conspiracy alleged in Count 33 presumably is not predicated on those statements as to Mr. De Oliveira. As discussed further below, it is impossible that Mr. De Oliveira's alleged False Statement in Count 42 could be an overt act in furtherance of the Conspiracy alleged in Count 33. In fact, other than vaguely incorporating the Superseding Indictment's General

Allegations, Count 33 fails to specify any overt acts by Mr. De Oliveira in furtherance of the alleged Conspiracy.

The final "manner and means" item listed in Count 33 is "attempting to delete security camera footage from The Mar-a-Lago Club to conceal the footage from the FBI and grand jury," which is alleged as substantive Obstruction in Counts 40 and 41 of the Superseding Indictment. As with the movement of the boxes, however, none of those Counts allege that Mr. De Oliveira had any knowledge or understanding that a Justice Department attorney emailed a draft subpoena for Mar-a-Lago video footage to one of President Trump's attorneys on June 22, 2022 (ECF No. 85 ¶ 74) or that a final subpoena was emailed two days later.

The Superseding Indictment's description of the alleged "Attempt to Delete Security Camera Footage" (starting at p. 27) twice states that the purpose of Mr. De Oliveira's interaction with Trump Employee 4 pertained to "how long camera footage was stored" (ECF No. 85 ¶ 81) and "how many days the server retained footage" (*id.* at ¶ 84(b)). Even assuming for present purposes, as we must, that Trump Employee 4 was truthful when he described Mr. De Oliveira saying that "'the boss' wanted the server deleted" (*id.* at ¶ 84(c)) (and that Mr. De Oliveira had any understanding of what a surveillance video data server was), that interaction fails to support the allegations of Obstruction charged in Counts 40 and 41, and by extrapolation in the Conspiracy charged in Count 33, in the absence of even the

allegation that Mr. De Oliveira knew that a subpoena had issued, that the data in question was responsive to the subpoena, and that it needed to be preserved and provided to the Government (which it was).

It is also worth mentioning that the Superseding Indictment fails to specify which official proceeding Mr. De Oliveira was alleged to have attempted to obstruct. The Superseding Indictment states that "On April 26, 2022, a federal grand jury opened an investigation" (ECF No. 85 ¶ 52), that "On May 11, 2022, the grand jury issued a subpoena" for documents with classification markings (*id.* at ¶ 53), and that "a draft grand jury subpoena" and "the final grand jury subpoena" seeking video footage were emailed on June 22 and 23, 2022 (*id.* at ¶¶ 75 and 77). It does not specify which grand jury sought that information or issued those subpoenas. While that might ordinarily be semantic, it is less so where this matter involved at least two grand juries were convened in the District of Columbia and in the Southern District of Florida. If we are to limit our analysis to the four corners of the Superseding Indictment, it fails to notify Mr. De Oliveira of key facts that he needs to defend against and fails to enable him to rely on any judgment as a double jeopardy bar. *See McGarity*, 669 F.2d at 1240 ("… the only notice provided here is that the defendants obstructed an unknown official proceeding at some time in some place by some action").

**B. The False Statement Allegation in Count 42 Should Also be Dismissed**

Count 42 of the Superseding Indictment fails to allege a crime and suffers from similar infirmities as the Obstruction-related counts with respect to providing adequate notice and barring double jeopardy. Count 42 alleges apparently – in a rambling and disconnected colloquy – that Mr. De Oliveira denied helping to move items belonging to President Trump and his family back into Mar-a-Lago after the presidency ended in January 2021 and denied knowing where "items" would have been stored.

Putting aside, for now, the fact that Mr. De Oliveira's "participation in a voluntary interview" occurred two years later in January 2023 in response to armed FBI agents who confronted him at his home late in the evening without any notice, without any notice about what they wished to ask Mr. De Oliveira, and without any effort to refresh Mr. De Oliveira's memory of events that occurred two years prior; Mr. De Oliveira's statement, as alleged in Count 42, was not false. Looking generously at the language in a light most favorable to the Government, the agents asked whether Mr. De Oliveira was part of a group that helped unload and move "boxes [that] arrived at Mar-a-Lago". They asked Mr. De Oliveira "Do you – were you – do you even, like, or were you even there or aware that boxes were … like, all this stuff was being moved in?" He was then asked, "Even his personal stuff, like, his clothes … and furniture, nothing?" He was then asked, "So, you don't know

where items would have been stored, as soon as he moved back to Mar-a-Lago." Mr. De Oliveira answered all of these questions in the negative (except for one "Yeah. And then –"). Even assuming that Mr. De Oliveira understood in that moment the broken questions being posed by an FBI agent that sound more like a teenager trying to order a pizza, it is impossible to know which "stuff" the agent was talking about. Presumably, there was plenty of "stuff" and "personal stuff" being moved into Mar-a-Lago after the presidency. Mr. De Oliveira's point – obviously – was that he had no real involvement in that move and had no idea what went where once it arrived at Mar-a-Lago, and he had no knowledge of any classified documents, which, as stated in Count 42, was what the agent told Mr. De Oliveira the FBI was investigating.

Even if, for some inexplicable reason, Mr. De Oliveira consciously and knowingly lied about moving boxes of "stuff" into Mar-a-Lago, the Superseding Indictment fails to articulate why the agent's questions or Mr. De Oliveira's answers would be at all material to the Government's investigation. *See United States v. Bazantes*, 978 F.3d 1227, 1247 (11th Cir. 2020) (defining "materiality" as having "the capability of affecting or influencing the exercise of a government function"). Nothing in the colloquy mentions classified documents. To the contrary, the agent asked vaguely about "boxes [that] arrived at Mar-a-Lago" along with "stuff", "personal stuff", "clothes", and "furniture". Moreover, this discussion came *two*

*years* after President Trump moved back into Mar-a-Lago, *seven months* after the grand jury investigation started in May of 2022 and *five months* after the FBI executed a search warrant at Mar-a-Lago in August of 2022. The Superseding Indictment itself alleges that whatever boxes arrived at Mar-a-Lago in January 2021 were moved repeatedly over the course of the following two years. Mr. Nauta and others moved some boxes in March of 2021 (ECF No. 85 at ¶ 27). Some boxes were moved in April 2021 (id. at ¶ 29). Boxes were again moved in May 2021 (¶ 33), June 2021 (¶ 31), between November 2021 and January 2022 (¶ 39), in January 2022 (¶ 47), and between May 22 and June 3, 2022 (¶¶ 54, 59, 62, 63, 73).

Thus, not only did the questions seek irrelevant information about where a broad range of "stuff" was located two years prior, they sought that information after the Government executed a search warrant and had all possible opportunity to see what "stuff" was located where at Mar-a-Lago at a far more recent time. Even if Mr. De Oliveira had answered "yes" to each of the agent's questions, any information he might have had about items moved into Mar-a-Lago in January 2021 would have been useless to the Government's investigation.

While the Superseding Indictment parrots the language of Section 1001, including the word "materially", that is belied by the remaining language in Count 42. More importantly, Count 42 fails to provide Mr. De Oliveira adequate notice as

to why his statement was knowingly false or material to the Government's investigation.

Further, Count 42 alleges that Mr. De Oliveira's statements occurred on January 13, 2023, while the Conspiracy to Obstruct Justice alleged in Count 33 occurred between May 11, 2022, through August 2022. Thus – even if the statement alleged in Count 42 was knowingly false and material – which is not the case – it could not be an act in furtherance of or a basis for the Conspiracy alleged in Count 33.

### C. At a Minimum, the Government Should be Required to Provide a Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the Court to direct the Government to file a bill of particulars, which a defendant may seek within 14 days after arraignment "or at a later time if the court permits." For the reasons stated above, the Superseding Indictment is fatally flawed as to Mr. De Oliveira, and he respectfully requests that the Court simply dismiss it. Alternatively, having now had an opportunity to review at least some of the voluminous discovery in this matter, Mr. De Oliveira requests that the Court exercise its discretion and require the Government to file a bill of particulars.

> The bill of particulars should:
> (1) present[] the essential elements of the charged offense, (2) notify the accused of the charges to be defended against, and (3) enable the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

*United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002).

The Government should be required to provide at least the following information:

1. **Count 33 – Conspiracy to Obstruct Justice**

   a. Which acts in furtherance of the alleged conspiracy Mr. De Oliveira engaged in;

   b. Which of the actions listed in Count 33's "manner and means" Mr. De Oliveira engaged in;

   c. What information the Government relies on to show that Mr. De Oliveira understood what the object of the conspiracy was and agreed to join the Conspiracy;

   d. Whether the Government alleges that Mr. De Oliveira has ever seen a classified document;

   e. Whether the Government alleges that Mr. De Oliveira had any idea what was contained in the boxes that he helped move to the storage area on June 2, 2022;

   f. Whether the Government alleges that Mr. De Oliveira was aware of the subpoena issued on May 11, 2022, demanding "all documents with classification markings"; and

g. Whether Mr. De Oliveira understood what a subpoena was and the obligations it imposes.

**2. Counts 40 and 41 – Obstruction of Justice**

a. Whether the Government alleges that Mr. De Oliveira was aware of the draft subpoena demanding video footage emailed to a Trump attorney on June 22, 2022;

b. Whether the Government alleges that Mr. De Oliveira was aware of the final subpoena demanding video footage emailed to a Trump attorney on June 24, 2022;

c. Whether Mr. De Oliveira understood in June 2022 what a subpoena was and the obligations it imposes;

d. Whether Mr. De Oliveira understood in June 2022 what a video data server was; and

e. Whether Mr. De Oliveira understood in June 2022 that the server he allegedly discussed with Trump Employee 4 contained information that was demanded in the draft and final subpoenas seeking video footage.

**3. Count 42 – Material False Statements**

a. What was false about what Mr. De Oliveira allegedly said to the FBI agent on January 13, 2023;

b. How the questions posed by the FBI agent to Mr. De Oliveira on January 13, 2023 were material to the Government's investigation;

c. How Mr. De Oliveira's answers to those questions were material to the Government's investigation; and

d. How affirmative answers to any of the FBI agent's questions on January 13, 2023, could have assisted the Government's investigation.

Wherefore, Mr. De Oliveira respectfully requests that the Court dismiss the Superseding Indictment as to him or, in the alternative, require the Government to file a Bill of Particulars pursuant to Ded. R. Crim. P. 7(f).

Dated: February 22, 2024

Respectfully Submitted

   /s Larry Donald Murrell, Jr.
LARRY DONALD MURRELL, JR.
FLORIDA BAR NO: 326641
400 Executive Center Drive
Suite 201—Executive Center Plaza
West Palm Beach, FL 33401
Telephone: 561.686.2700
Facsimile: 561.686.4567
Email: ldmpa@bellsouth.net

   /s John S. Irving, IV
JOHN S. IRVING, IV
D.C. Bar No 460068 (Admitted Pro Hac Vice)
E&W Law
1455 Pennsylvania Avenue, N.W.
Suite 400

Washington, D.C. 20004
Telephone: 301-807-5670
Email: john.irving@earthandwatergroup.com

Attorneys for Defendant Carlos De Oliveira

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.