UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

**UNITED STATES OF AMERICA**,

       Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA, and**
**CARLOS DE OLIVEIRA,**

       Defendants.

_____/

**GOVERNMENT'S OPPOSITION TO CARLOS DE OLIVEIRA'S**
**MOTION TO DISMISS THE INDICTMENT OR**
**IN THE ALTERNATIVE FOR A BILL OF PARTICULARS**

**TABLE OF CONTENTS**

I.      Background ........................................................................................................... 1

II.     Discussion ............................................................................................................ 4

        A.      Applicable Law ......................................................................................... 4

        B.      Counts 33, 40 and 41 Are Properly Charged ........................................... 6

        C.      Count 42 Is Properly Charged................................................................ 11

        D.      There Is No Basis to Require a Bill of Particulars................................. 15

III.    Conclusion ......................................................................................................... 17

Defendant Carlos De Oliveira moves the Court (ECF No. 323) to dismiss the four counts of the Superseding Indictment in which he is charged (ECF No. 85, Counts 33, 40, 41, and 42).  In the alternative, he seeks a bill of particulars.  ECF No. 323 at 14-17.  The motion should be denied in its entirety.  The Superseding Indictment lays out the factual allegations and charges against De Oliveira in detail, going far beyond what is required by well-established Eleventh Circuit law.  Indeed, while the Superseding Indictment would be sufficient so long as it "tracks the wording of the statute[s]" charged and "sets forth the essential elements of the crimes," *United States v. Critzer*, 951 F.2d 306, 308 (11th Cir. 1992), it far exceeds those requirements, providing paragraph after paragraph of detailed allegations that provide a clear roadmap informing De Oliveira of the charges against him and allowing him to prepare his defense and minimize surprise at trial.  Likewise, there is no basis for a bill of particulars given the detailed allegations in the Superseding Indictment and thorough discovery—including video, photographs, text messages, witness interviews, and grand jury transcripts—which together fully apprise De Oliveira of the charges he faces.  Because a bill of particulars "cannot be used as a weapon to force the government into divulging its prosecution strategy" or to "'compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial,'" *United States v. Maurya*, 25 F.4th 829, 837-38 (11th Cir. 2022) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)), no bill of particulars is warranted here.

## I.     Background

De Oliveira is charged along with codefendants Donald Trump and Waltine Nauta with obstructing and conspiring to obstruct an active grand jury investigation that focused on the location of boxes containing classified records at the Mar-a-Lago Club ("Mar-a-Lago").  He is also charged with lying to FBI agents in a voluntary, recorded interview about his participation in

handling boxes at Mar-a-Lago.  The Superseding Indictment includes a lengthy, specific, and detailed factual recitation that makes clear exactly what De Oliveira did, what his role was in the conspiracy, and what crimes he is charged with committing.

As alleged in the Superseding Indictment, De Oliveira was the property manager of Mar-a-Lago beginning in January 2022.  ECF No. 85 ¶ 10.  On May 11, 2022, a federal grand jury issued a subpoena to Trump's office for documents containing classification markings.  *Id.* ¶ 53. In the days before Trump's attorney conducted a review of boxes in a storage room at Mar-a-Lago to locate classified documents in response to the subpoena, Nauta moved some 64 boxes out of the storage room and, on June 2, shortly before the attorney conducted his review of boxes in the storage room, De Oliveira helped Nauta move a smaller number of boxes (approximately 30) into the storage room.  *Id.* ¶¶ 59, 62-63.  That surreptitious movement of boxes was central to Trump and Nauta's effort to conceal boxes from the attorney and from the grand jury.  *Id.* ¶¶ 63-73.

When FBI agents came to Mar-a-Lago on June 3, 2022, to collect documents with classification markings, they noticed surveillance cameras near the storage room where the boxes were stored and where the attorney had conducted his review.  *Id.* ¶ 74.  As part of the investigation into the unlawful retention of the documents at Mar-a-Lago, on June 22, 2022, the Department of Justice emailed one of Trump's attorneys a draft grand jury subpoena for security camera footage from outside the storage room.  As described in detail in the Superseding Indictment, *id.* ¶¶ 74-87, 91, De Oliveira was personally involved in attempting to delete the security footage that had been subpoenaed and that would reveal Nauta's surreptitious movement of boxes to conceal them from the attorney's review.

On June 23, 2022, the day after the Department of Justice emailed the draft subpoena for security footage, Trump spoke with De Oliveira on the phone for approximately 24 minutes.  *Id.*

¶ 76.  The next day, when the grand jury subpoena was served, Nauta and De Oliveira immediately took steps to obstruct the investigation.  Within two hours of receiving a text message stating that Trump wanted to see him, Nauta changed his travel plans and arranged to fly to Mar-a-Lago, and provided inconsistent statements about why he had done so.  *Id.* ¶¶ 78-79.  Nauta also reached out to both De Oliveira and Trump Employee 4, who was Director of Information Technology ("IT") at Mar-a-Lago.  *Id.* ¶¶ 79-80.  In advance of Nauta's sudden trip to Mar-a-Lago, De Oliveira told another Trump employee that Nauta wanted to keep his trip secret and that he wanted De Oliveira to find out from Trump Employee 4 how long the security footage was stored.  *Id.* ¶ 81.  On the evening of Saturday, June 25, when Nauta arrived in Florida, he and De Oliveira went to a security booth where security camera footage is displayed, and then went with a flashlight to the area outside the storage room where the pertinent cameras were located.  *Id.* ¶ 82.

On Monday morning, June 27, De Oliveira went to the IT office and asked Trump Employee 4 to step away from the office with him so they could talk.  *Id.* ¶¶ 83-84.  The two of them walked to a small room known as an "audio closet" and De Oliveira said that their conversation should remain between the two of them.  *Id.* ¶ 84(a).  After asking Trump Employee 4 how long the server retained the footage, De Oliveira told Trump Employee 4 that "the boss" wanted the server deleted.  *Id.* ¶ 84(a-c).  When Trump Employee 4 responded that he would not have the authority to do that, De Oliveira insisted that "the boss" wanted the server deleted, and asked "what are we going to do?"  *Id.* ¶ 84(c).[1]  The Superseding Indictment goes on to describe how De Oliveira and Nauta met in the bushes on a neighboring property shortly after De Oliveira's

---

[1] Trump Employee 4 falsely denied any such exchange in testimony before the grand jury, at a time when he was represented by counsel who simultaneously represented Nauta and whose legal fees were paid by Trump's Political Action Committee.  Trump Employee 4 told the Government the facts set forth in the Superseding Indictment immediately after changing to new counsel.  *See, e.g.*, ECF No. 129 at 2-5.

solicitation of Trump Employee 4, and that De Oliveira also spoke with Trump that afternoon.  *Id.* ¶¶ 85-86.  Finally, in August 2022, after the execution of a search warrant at Mar-a-Lago, Nauta confirmed De Oliveira's continuing loyalty to Trump and Trump agreed to provide De Oliveira with an attorney.  *Id.* ¶ 91.

Based on those facts, De Oliveira is charged in three counts.  First, Count 33 charges De Oliveira, Trump, and Nauta with a multi-object conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).  Count 33 incorporates the detailed factual allegations described above, and then clearly defines the conspiracy and its object offenses, closely tracking the statutory language.  *Id.* ¶ 95.  For further clarity, Count 33 goes on to enumerate the manner and means of the conspiracy. *Id.* ¶ 97.  One of those, ¶ 97(g), is the defendants' attempt to delete the security camera footage from the Mar-a-Lago Club and to conceal the footage from the grand jury.

Next, Counts 40 and 41 charge De Oliveira (along with Trump and Nauta) with two substantive counts of obstruction of justice, in violation of 18 U.S.C. § 1512(b)(2)(B) and § 1512(c)(1).  Those counts, too, incorporate the detailed factual allegations described above and carefully track the statutory language to make clear precisely what crimes De Oliveira is charged with committing and how.  *Id.* ¶¶ 113-16.  And Count 42 charges De Oliveira with providing false statements to the FBI in a voluntary, recorded interview, in violation of 18 U.S.C. § 1001(a)(2).

## II.   Discussion

### A.   Applicable Law

The Federal Rules of Criminal Procedure require only that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  And an indictment is facially valid if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables

the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Chalker*, 966 F.3d 1177, 1190 (11th Cir. 2020) (quotation marks omitted); *see United States v. Dabbs*, 134 F.3d 1071, 1079 (11th Cir. 1998).

Importantly, a motion to dismiss is not an appropriate vehicle for a pretrial determination of the sufficiency of the evidence.  In judging the sufficiency of an indictment, the Eleventh Circuit has cautioned that courts should give the charging document "a common sense construction, and its validity is to be determined by practical, not technical, considerations." *Chalker*, 966 F.3d at 1190 (quotation marks omitted).  It is generally enough for an indictment to track statutory language, as long as the indictment sets forth all the elements necessary to constitute the offense intended to be punished, *United States v. Johnson*, 981 F.3d 1171, 1179 (11th Cir. 2020), and provides "a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged," *United States v. McGarity*, 669 F.3d 1218, 1236 (2012) (quotation marks and citations omitted).  An indictment sufficiently informs the defendant of the charge against him and enables him to plead double jeopardy in any future prosecution for the same offense "as long as the language therein sets forth the essential elements of the crime." *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985).

Rule 12 does not permit defendants to "challenge whether there is a sufficient evidentiary foundation to support the grand jury's probable cause determination." *United States v. Kaley*, 677 F.3d 1316, 1326 (11th Cir. 2012), *aff'd and remanded*, 571 U.S. 320 (2014).  Instead, in considering a motion to dismiss, the court "is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).  "Because [the defendants were] properly indicted, the government

is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004). A Rule 29 motion is "the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure." *Id.* "There is no summary judgment procedure in criminal cases. . . . The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992); *United States v. Gosney*, No. 22- CR-80022, ECF No. 493 (S.D. Fla. Jan. 28, 2023) ("Rather, assuming a facially valid indictment, the proper vehicle for raising an issue relevant to the guilt or innocence of a defendant is through a motion for judgment of acquittal or argument to the jury—not via a pretrial motion to dismiss." (quoting *Salman*, 378 F.3d at 1268)).

### B.     Counts 33, 40 and 41 Are Properly Charged

Under the well-established standards of the Eleventh Circuit, the Superseding Indictment is more than sufficient. It not only tracks the statutory language fully, but provides a detailed recitation of the factual allegations, including dates, times, locations, texts, and actions, and provides an unambiguous statement of what De Oliveira and his codefendants did to obstruct the investigation. The Court need not look further to deny De Oliveira's motion.

Confronted with clear Eleventh Circuit precedent and the thorough and detailed allegations in the Superseding Indictment, De Oliveira attempts a sleight of hand, suggesting to the Court that the charges are somehow insufficient simply because De Oliveira is *not* alleged to have been responsible for *all* aspects of the manner and means of the charged conspiracy, *see* ECF No. 323 at 7-8, and hypothesizes factual possibilities regarding what that the grand jury did *not* charge, *see*

6

*id*.  But it is black-letter law that a conspirator need not participate in all aspects of a conspiracy, *see United States v. Browne*, 505 F.3d 1229, 1274 (11th Cir. 2007), and his complaints about what the Superseding Indictment *does not* allege are irrelevant in the face of what it *does* allege, in plain English and painstaking detail.  Those allegations are more than sufficient at this stage of the proceedings.

Faced with the detailed allegations in the Superseding Indictment, De Oliveira attempts to circumvent the limitations under Eleventh Circuit law and argue the weight of the evidence, claiming that his alleged actions related to the deletion of the security camera footage "fail[] to support" the charges in Counts 40 and 41, and "by extrapolation" the conspiracy charged in Count 33.  ECF No. 323 at 9.  But arguing that an allegation in the indictment "fails to support" the charged offenses gives up the game: whether or not factual allegations adequately "support" the charges returned by a grand jury is precisely the kind of jury question that is not appropriate for a Rule 12 motion to dismiss.  *See Sharpe*, 438 F.3d at 1263 (explaining that it is "well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial"); *Salman*, 378 F.3d at 1267 (11th Cir. 2004) (reversing dismissal of indictment where the "district court in effect granted summary judgment" by "looking beyond the face of the indictment and ruling on the merits of the charges").

De Oliveira also errs by implying that the Superseding Indictment somehow fails to allege a connection between De Oliveira's actions and the "official proceeding" that the defendants sought to obstruct.  It plainly does.  *See* ECF No. 85, Counts 40 and 41.  And he misunderstands the elements of the crimes when he suggests that the Superseding Indictment fails to allege "that Mr. De Oliveira knew that a subpoena had issued," or "that the data in question was responsive to the subpoena," or that the data "needed to be preserved and provided to the Government."  ECF

No. 323 at 9-10.  The elements of the relevant charges require no such allegations or proof—rather, they require only that the defendant acted corruptly and with intent to cause another person to alter, destroy, mutilate, or conceal an object with the intent to impair the object's integrity or availability for use in an official proceeding (for Count 40, charging a violation of 18 U.S.C. § 1512(b)(2)(B)), and act with intent to impair the relevant object's integrity or availability in an official proceeding (for Count 41, charging a violation of 18 U.S.C. § 1512(c)(1)).  *See* Sand et al., 2 Modern Federal Jury Instructions – Criminal, ¶¶ 46.09, Inst. 46-59, and 46.10, Inst. 46-66.  De Oliveira points to no authority, and the Government is not aware of any, requiring an indictment to allege a defendant's awareness of the details contained in a subpoena; that a defendant have specialized knowledge about the contours of what might be considered responsive to a subpoena; or that a defendant who tells an IT director that "the boss" wants footage deleted must be aware of the extent of anyone's preservation obligations.  The law contains no such requirements, and for good reason: imposing such detailed knowledge requirements would preclude the application of the laws regarding obstruction of justice to most subjects of criminal investigations.  The Superseding Indictment charges that De Oliveira endeavored to secure the deletion of footage "*to prevent it from being provided to a grand jury*," ECF No. 85 ¶¶ 114-15, and that readily satisfies the requirements at this stage of the proceedings.

De Oliveira may think that the evidence will not persuade a petit jury.  De Oliveira may think that the fact that he supposedly did not know all of the details about the draft subpoena will undercut the Government's proof.  *See* ECF No. 323 at 9 (arguing that De Oliveira did not have an "understanding that a Justice Department attorney emailed a draft subpoena for Mar-a-Lago video footage" on June 22, 2022).  But those are issues for trial, subject to the rules of evidence; here, at the motion to dismiss stage, "a defendant cannot challenge whether there is a sufficient

evidentiary foundation to support the grand jury's probable cause determination." *Kaley*, 677 F.3d at 1326.[2]

* * *

In sum, with respect to Count 33, the Section 1512(k) conspiracy, the Superseding Indictment tracks the statutory language, identifies the substantive offenses that were the objects of the conspiracy (Sections 1512(b)(2)(A), (b)(2)(B), and (c)(1)), identifies the co-conspirators by name, provides a range of dates during which the conspiracy took place, alleges where the conspiracy occurred, and details the purpose as well as the manner and means that the conspirators used to accomplish their objectives.  That is more than sufficient.  *See United States v. Yonn*, 702 F.2d 1341, 1349 (11th Cir. 1983) (finding a conspiracy indictment sufficient where it set forth the elements of the crime, the identities of the co-conspirators, and the timeframe and locale of the conspiracy); *see also United States v. Cadillac Overhaul Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978) ("[O]rdinarily, the pleading of the allegations in terms of the statute is sufficient[.]") Because Count 33 not only tracks the language of the statute, *see Chalker*, 966 F.3d at 1190, but also "provides a statement of facts and circumstances that give notice of the offense" to De Oliveira, it survives his Rule 12 challenge.  *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007).

---

[2] De Oliveira oddly asserts that the Superseding Indictment "fails" to specify any overt acts by De Oliveira in furtherance of the Section 1512(k) conspiracy, ECF No. 323 at 8-9, but that argument is misguided for two reasons.  First, in contrast to 18 U.S.C. § 371, which expressly requires an overt act, Section 1512(k) contains no overt act requirement.  *See, e.g.*, *Whitfield v. United States*, 543 U.S. 209, 213-214 (2005); *United States v. Shabani*, 513 U.S. 10, 14 (1994); *United States v. Edlind*, 887 F.3d 166, 176 n.4 (4th Cir. 2018) (Section 1512(k) "does not contain an overt act requirement"); *United States v. Nelms*, 653 F. App'x 524, 527 (9th Cir. 2016) ("Section 1512(k) does not require an overt act.").  Second, as set forth in detail above, even if there were an overt act requirement, the Superseding Indictment is replete with allegations regarding specific acts that De Oliveira took in furtherance of the conspiracy.

Similarly, Counts 40 and 41 track the language of Sections 1512(b)(2)(B) and (c)(1), respectively, and specifically allege that De Oliveira requested that another Trump employee delete security camera footage at Mar-a-Lago in order to prevent the footage from being provided to a federal grand jury.[3]  *See* ECF No. 85 ¶¶ 114, 116.  Those counts also incorporated the general allegations of the Superseding Indictment, including those pertaining to De Oliveira's conduct. *See id.* ¶¶ 113, 115.  As with Count 33, these counts therefore survive De Oliveira's Rule 12 challenge:  Counts 40 and 41 both track the language of the statute upon which the charge was based and contain a statement of facts and circumstances that is more than sufficient to inform De Oliveira of the charged offenses.  *See Chalker*, 966 F.3d at 1190; *Walker*, 490 F.3d at 1296.

As a final point, De Oliveira claims confusion as to which "official proceeding" he is alleged to have obstructed, noting that the grand jury subpoenas referenced in the Superseding Indictment were issued by a grand jury in the District of Columbia, but that De Oliveira was indicted by a grand jury empaneled in the Southern District of Florida.  ECF No. 323 at 10.  His purported confusion is baseless.  First, Section 1512 does not require that a defendant be aware of the precise "official proceeding" at issue.  *See United States v. Friske*, 640 F.3d 1288, 1292 n.5 (11th Cir. 2011) ("We emphasize that it is not necessary to prove that the defendant knew that a proceeding was pending . . . . Consistent with *Aguilar*'s nexus requirement [*United States v. Aguilar*, 515 U.S. 593 (1995)], the government must prove that the defendant knew of or foresaw *an* official proceeding, and knew that his actions were likely to affect it.") (emphasis added). Second, as De Oliveira is well aware from the extensive discovery provided in this case, the only grand jury investigation referenced in the Superseding Indictment, ECF No. 85 ¶ 52, was opened

---

[3] Both Counts 40 and 41 also identify the federal aiding and abetting statute, 18 U.S.C. § 2, providing an alternative theory of liability.  *See Rosemond v. United States*, 572 U.S. 65, 68 (2014).

in the District of Columbia, so there can be no confusion on his part.  Thus, his purported concern over whether he can "rely on any judgment as a double jeopardy bar," ECF No. 323 at 10, is entirely illusory.  *See United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003), opinion corrected, No. 01-15989, 2003 WL 21211926 (11th Cir. Apr. 1, 2003) (in assessing sufficiency of indictment, courts are to employ a "common sense construction" and indictment can be valid even if it might have been drafted "with more clarity") (internal citation and quotation marks omitted).

One of De Oliveira's few case citations is to *United States v. McGarity*, but that case is entirely distinguishable.  The Section 1512(c) count in *McGarity only* parroted the statutory language, with *no* factual detail.  669 F.3d at 1238-39; *see also United States v. Berger, McGarity, et al.*, No. 3:08-cr-00022, ECF No. 78 at 29-30 (N.D. Fla. Mar. 13, 2008) (Superseding Indictment).  Quite distinct from *McGarity*, which, as De Oliveira quotes, only provided notice that defendants obstructed an "unknown official proceeding," "at some time," "in some place," "by some action," ECF No. 323  at 10, De Oliveira has been informed of the official proceeding he is alleged to have obstructed (including the dates of the relevant subpoenas), informed of the specific dates of both the conspiracy and his own alleged actions, informed of the specific locations at which his actions are alleged to have occurred, and informed of the particular manner and means of the conspiracy that the grand jury alleged was sufficient for a finding of probable cause.  The Superseding Indictment here is a far cry from the indictment referenced by the court in *McGarity*.  There is no basis to dismiss any of Counts 33, 40, or 41.

## C.    Count 42 Is Properly Charged

De Oliveira separately asks the Court to dismiss Count 42, which alleges false statements in violation of 18 U.S.C. § 1001(a)(2).  In De Oliveira's view, Count 42 "apparently" shows, "in a rambling and disconnected colloquy," that De Oliveira denied knowing where "items" were

stored at Mar-a-Lago.  ECF No. 323 at 11.  De Oliveira's interpretation is a slanted and distorted take on a recorded conversation that, as set forth in Count 42, is actually quite clear.  As the Superseding Indictment explains, De Oliveira gave the following unambiguous answers to straightforward questions in his interview with the FBI:

| | |
|---|---|
| Question: | When -- after the end of the presidency, boxes arrived to Mar-a-Lago.  Were you part of any group to help -- |
| Answer: | **<u>No.</u>** |
| Question: | -- unload and move them? |
| Answer: | **<u>No.</u>** |
| | *       *       * |
| Question: | Do you -- were you -- do you even know, like, or were you even there or aware that boxes were -- |
| Answer: | **<u>No.</u>** |
| Question: | -- like, all this stuff was being moved in? |
| Answer: | **<u>Never saw anything.</u>** |
| Question: | Okay. |
| Answer: | Yeah.  And then -- |
| Question: | Even his personal stuff, like, his clothes -- |
| Answer: | **<u>Never.</u>** |
| Question: | -- and furniture, nothing? |
| Answer: | **<u>Never saw nothing.</u>** |
| Question: | Okay.  So you don't know where items would have been stored, as soon as he moved back to Mar-a-Lago? |
| Answer: | **<u>No.</u>** |

ECF No. 85 ¶ 119.

This voluntary exchange with De Oliveira, which was recorded, leaves no doubt that he conveyed to the FBI that he (1) was not involved in the effort to unload and move any boxes into Mar-a-Lago at the end of the presidency, (2) had not been aware of anything being moved into Mar-a-Lago at the end of the presidency, (3) that he "never saw anything" being moved into Mar-a-Lago, not even furniture or clothes, and (4) that he did not know where items would have been stored upon former President Trump's return to Mar-a-Lago in January 2021.  De Oliveira's goal, which is evident from his flat denials, was to distance himself as much as possible from the boxes that were at the center of the FBI's investigation, and he concedes this goal in his motion:  "Mr. De Oliveira's point—obviously—was that he had no real involvement in that move and had no idea what went where once it arrived at Mar-a-Lago . . . ."  ECF No. 323 at 12.  The Government agrees that this was precisely De Oliveira's point; it was also false.

Given the clarity of the questions and his answers, De Oliveira tries to suggest that he may have been confused, emphasizing that the conversation occurred two years after the move into Mar-a-Lago, implying that his "memory" may have been faulty or could have benefitted from being refreshed, *id.* at 11, and that De Oliveira might not have "understood in that moment" the questions being asked, *id.* at 12.  These are at best arguments for a jury, not arguments to dismiss the indictment.  Moreover, as the transcript and the charges make clear, the questions were unambiguous and De Oliveira did not suggest in any way that he didn't remember or that he was confused about what the agents were asking.  Instead, he answered the questions crisply and clearly: "no," "no," "no," "never saw anything," "never," "never saw nothing," "no."  Again, his intent was obvious and his answers were false.

Contrary to De Oliveira's insistence, his false answers were also highly material to the Government's investigation. A false statement is "material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it is addressed." *United States v. Henderson*, 893 F.3d 1338, 1346 (11th Cir. 2018) (quotation marks omitted). A governmental body need not have "actually relied on the false statement," and a false statement can be material "even if the decision maker actually knew or should have known that the statement was false." *Id.* at 1346, 1351 (quotation marks omitted). Ultimately, the "materiality of a false statement," once alleged in a charging document, "is a jury question." *United States v. Fern*, 155 F.3d 1318, 1326-27 (11th Cir. 1998) (citing *United States v. Gaudin*, 515 U.S. 506 (1995)).

At trial, the Government will prove beyond a reasonable doubt that De Oliveira's statements were false, including through witness testimony about the movement of boxes on January 20, 2021; witness testimony about De Oliveira's involvement in moving boxes on January 20, 2021; photographs of De Oliveira on January 20, 2021; and other evidence. And the Government will prove that they were material, because truthful answers would have helped the FBI establish precisely what it was trying to find out: whether boxes that contained classified documents came from the White House, whether and for how long they were stored in the residential quarters and basement storage room at Mar-a-Lago, and whether the boxes moved to Mar-a-Lago at the end of the presidency were identical or similar to those loaded on Trump's plane to New Jersey on June 3, 2022. But at this stage, the Government is not required to detail its proof, and a motion to dismiss may not be used to challenge the evidentiary sufficiency of the grand jury's probable cause determination. *See Kaley*, 677 F.3d at 1326. Count 42 tracks the language of the statute and provides a detailed recitation of the statements alleged to have been false. That is sufficient. *See Johnson*, 981 F.3d at 1179; *McGarity*, 669 F.3d at 1236; *see also United States*

*v. Bazantes*, 978 F.3d 1227, 1246 (11th Cir. 2020) (holding that indictment sufficiently pleaded false statement charge where it tracked the language of statute and alleged facts summarizing defendants' alleged false submissions).

The Eleventh Circuit has held that an indictment for false statements under Section 1001 is facially valid even where it does nothing more than charge that a defendant "knowingly made a false, fictitious and fraudulent statement . . . in violation of Title 18 U.S.C. § 1001." *United States v. Stefan*, 784 F.2d 1093, 1101-02 (11th Cir. 1986). Count 42 clears that bar and then some. De Oliveira has offered no basis to dismiss it.

**D.     There Is No Basis to Require a Bill of Particulars**

As an alternative to dismissal, De Oliveira asks the Court to order the Government to provide a bill of particulars. ECF No. 323 at 14-17. Citing no caselaw regarding bills of particulars, De Oliveira provides 16 specific questions that he contends the Government should have to answer. No bill of particulars is warranted here, and even if it were, the specific questions identified by De Oliveira go far beyond what a defendant is entitled to.

As the Eleventh Circuit has explained, the "purpose of a bill of particulars is threefold: 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'" *Maurya*, 25 F.4th at 837-38 (quoting *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985)). But a bill of particulars "cannot be used as a weapon to force the government into divulging its prosecution strategy; we do not allow defendants to 'compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial' in that manner." *Id.* (quoting *Burgin*, 621 F.2d at 1359).

15

Those improper purposes are precisely what De Oliveira's specific questions seek here. First, as to the conspiracy charged in Count 33, De Oliveira seeks various information related to the Government's theory of the formation of the conspiracy. *See* ECF No. 323 at 15, subparts a.-c. But the Eleventh Circuit has "explicitly forbidden" the use of a bill of particulars to "'compel the government to provide the essential facts regarding the existence and formation of a conspiracy.'" *Maurya*, 25 F.4th at 837-38 (quoting *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986), *modified*, 801 F.2d 378 (11th Cir. 1986)). De Oliveira also poses various questions about the Government's view of the facts, such as "whether the Government alleges that Mr. De Oliveira has ever seen a classified document," and "whether the Government alleges that Mr. De Oliveira was aware of the subpoena issued on May 11, 2022." ECF No. 323 at 15. De Oliveira even asks the Government to account for his *own* knowledge of various concepts, such as "whether Mr. De Oliveira understood . . . what a video data server was" or "understood what a subpoena was." *Id.* at 16. The grand jury is not required to set forth any such things in an indictment, and these factual questions are, at most, matters for trial. *See United States v. Roberts*, 174 Fed. App'x 475, 477 (11th Cir. 2006) (explaining that a bill of particulars "is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial") (citing *Burgin*, 621 F.2d at 1359).

De Oliveira's proposed questions related to the false statement charge in Count 42 fare no better. De Oliveira wants the Government to specify "what was false" about his statements, as well as how they were material to the Government's investigation. *See* ECF No. 323 at 16-17. But a defendant is not entitled to any such bill of particulars where the indictment itself identifies with particularity the specific statements alleged to be false. *See, e.g.*, *United States v. Ramamurthy*, No. 18-cr-20710, 2019 WL 633328, at *4 (S.D. Fla. Feb. 13, 2019) ("Where the

16

bulk of the government's evidence consists of testimony regarding conversations the defendant personally participated in, the defendant cannot argue surprise.  Therefore, a bill of particulars is not warranted."); *see also Cole*, 755 F.2d at 760-61 (denying motion for bill of particulars where indictment tracked the language of the statute, provided adequate notice of charges, and bulk of government's evidence involved testimony by witnesses about conversations in which the defendant participated).  Likewise, a bill of particulars may not be used to force the Government to specify the ways in which it contends particular statements are false.  *See Ramamurthy*, 2019 WL 63328 at *3 (rejecting "argument that the government must specify the way in which it believes the false statements to be false") (citing *United States v. Barnhart,* 889 F.2d 1374 (5th Cir. 1989) and *United States v. Oberski,* 734 F.2d 1035, 1035 n.1 (5th Cir. 1984)).

As with the defendant in *Maurya*, De Oliveira "simply want[s] the government to explain ahead of time which . . . details would be most significant at trial; essentially, he ask[s] about the government's specific legal 'theory.'" 25 F.4th at 838.  This Court should conclude as the Eleventh Circuit did: such a request is "inappropriate" and must be rejected.  *Id.*  De Oliveira has the benefit of a detailed indictment and substantial discovery.  He has been sufficiently informed of the charges against him so as not to be unfairly surprised at trial, and the Superseding Indictment contains sufficient detail to enable him to plead double jeopardy in any later prosecution for the same offense.  *See Warren*, 772 F.2d at 837.  He is not entitled to more.

## III.   Conclusion

For the foregoing reasons, De Oliveira's motion should be denied in its entirety.

        Respectfully submitted,

        JACK SMITH
        Special Counsel
        N.Y. Bar No. 2678084

By:  */s/ Jay I. Bratt*
        Jay I. Bratt
        Counselor to the Special Counsel
        Special Bar ID #A5502946
        950 Pennsylvania Avenue, N.W.
        Washington, D.C.  20530

        David V. Harbach, II
        Assistant Special Counsel
        Special Bar ID #A5503068

        Brett C. Reynolds
        Assistant Special Counsel
        Special Bar ID #A5503067

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ <i>Jay I. Bratt</i>
Jay I. Bratt
