UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

    Defendants.
_____/

**GOVERNMENT'S RESPONSE TO AMICUS CURIAE BRIEF
FILED BY AMERICA FIRST LEGAL FOUNDATION**

The Government respectfully submits this response (*see* ECF No. 367) to the amicus curiae brief (ECF No. 360-1) filed by America First Legal Foundation ("America First Amicus") in Support of President Trump's Motion to Dismiss the Indictment Based on the Presidential Records Act ("PRA").[1] The brief's principal argument rests on three contentions: (1) that a federal agency cannot make a criminal referral to the Department of Justice in the absence of a statute or regulation explicitly authorizing the agency to do so (ECF No. 360-1 at 1-10); (2) that the National Archives and Records Administration ("NARA") lacks such explicit statutory or regulatory authorization

---

[1] The Court is not required to address issues raised solely in an amicus brief. *See, e.g.*, *Diné Citizens Against Ruining Our Environment v. Haaland*, 59 F.4th 1016, 1042 n.11 (10th Cir. 2023) ("This court has discretion to consider arguments raised solely in an amicus brief, but it should do so only in exceptional circumstances." (quotation marks omitted)); *see also Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1247 (11th Cir. 1991) ("In the absence of exceptional circumstances, amici curiae may not expand the scope of an appeal to implicate issues not presented by the parties to the district court. . . . Although this court granted amici's motion for leave to file a brief, the arguments raised only by amici may not be considered.").

(*id.*); and (3) that any indictment that derives from a criminal referral lacking such explicit statutory or regulatory authorization must be dismissed (*id.* at 17-19). All three of those contentions are wrong.[2]

*First*, a federal agency is free to report suspected criminal activity to the Department of Justice by way of a criminal referral, and no statute or regulation authorizing such a referral is needed. Indeed, the Department of Justice routinely receives referrals, in various forms, from any number of entities and individuals, including members of the public, *see* https://www.fbi.gov/contact-us (providing a mechanism for anyone to submit tips or reports); federal, state, and local agencies; and Members and committees of Congress. *See* Justice Manual, Organization and Functions Manual § 27 ("A case referral from any source, including an agency referral, a self-disclosure, or a *qui tam* action, to any component of the Department or to a United States Attorney's Office, is a referral for all purposes."). Such referrals have never required statutory or regulatory authorization. *See, e.g.*, Congressional Research Serv., *Introduction to Criminal Referrals by Congress* (Dec. 20, 2022) ("The process by which committees or Members make criminal referrals to the DOJ is generally not governed by federal statute or chamber rules. It is instead typically an informal, ad hoc process, largely uninhibited by legal or procedural constraints, in which committees, committee chairs, or individual Members of Congress make referral decisions based on the facts and circumstances of a given case," with "two narrow exceptions" for "criminal referrals by the ethics committees" and referrals for criminal contempt

---

[2] America First Amicus separately takes issue (ECF No. 360-1 at 10-17) with NARA's handling of Trump's protective claim of executive privilege, to prevent disclosure to the FBI. Those arguments fail for the reasons set forth in the Government's Opposition to Donald Trump's Motion to Dismiss the Indictment Based on Prosecutorial Misconduct and Due Process Violations, ECF No. 385 at 11-13, 16-17 (noting that the opposition was submitted via email with proposed redactions).

of Congress); Robert L. Rabin, *Agency Criminal Referrals in the Federal System: An Empirical Study of Prosecutorial Discretion*, 24 Stan. L. Rev. 1036, (1972) ("A matter is transmitted to the Justice Department by referral from the agency—which may involve anything from a phone call to a written case report.").

America First Amicus cites no authority for the proposition that an agency cannot make a criminal referral unless a statute or regulation explicitly authorizes it to do so. And such a rule would be unworkable in practice. Under amicus's theory, for example, if a person illegally carries a firearm into a NARA facility, *see* 36 C.F.R. § 1280.14; 18 U.S.C. § 930, or uses illegal drugs there, *see* C.F.R. § 1280.16; 21 U.S.C. § 848, or forcibly threatens a NARA employee, *see* 36 C.F.R. § 1280.28; 18 U.S.C. § 111, NARA is powerless to report that criminal conduct to the FBI, and instead must first engage in notice-and-comment rulemaking to promulgate a regulation authorizing it to make such a referral. Indeed, under amicus's theory, although federal regulations require agencies to report "any unauthorized removal, defacing, alteration or destruction" of federal records to NARA, *see id.* § 1230.10, NARA is prohibited from referring such information to the Department of Justice—even when it shows a clear violation of federal criminal law, *e.g.*, 18 U.S.C. § 2071—because any such referral would violate the Administrative Procedure Act. The Court should reject this unsupported and untenable theory.

*Second*, even if it were true (which it is not) that an agency is powerless to make a criminal referral absent explicit statutory or regulatory authorization, NARA had such authorization here. NARA has an Inspector General, *see* 5 U.S.C. § 415(a), (b), who is not only authorized but indeed required to "report expeditiously to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of Federal criminal law." 5 U.S.C. § 404(d). NARA had reasonable grounds to believe that there had been a violation of federal

criminal law, and, through its Inspector General, it made a referral to the Attorney General, as the statute provides, by alerting the relevant supervisors within DOJ. Regulations applicable to NARA's involvement with classified national security information, *see* 32 C.F.R. Subt. B, Ch. XX, Pt. 2001, set forth a further basis for authorization. Those regulations provide that "[a]ny person who has knowledge that classified information has been or may have been lost, possibly compromised or disclosed to an unauthorized person(s) shall immediately report the circumstances to an official designated for this purpose," and that "[w]henever a criminal violation appears to have occurred and a criminal prosecution is contemplated, agency heads shall use established procedures to ensure coordination with [] [t]he Department of Justice." 32 C.F.R. § 2001.48(a), (e)(1). NARA received 15 boxes of presidential records from Trump after months of equivocal and internally inconsistent representations from his PRA representatives regarding the number, location, storage, and content of the boxes. Upon reviewing the contents of the boxes, NARA discovered that they contained well over a hundred documents with classification markings. At that point, NARA officials had reason to believe that classified information may have been lost, possibly compromised, or disclosed to an unauthorized person, and further had reason to believe that a criminal violation may have occurred; as such, they were authorized—indeed required—to coordinate with the Department of Justice. The claim that NARA lacked authorization to make a criminal referral is wrong.

*Third*, any purported procedural defect in the referral process could not possibly provide a basis to dismiss the indictment. Courts have routinely rejected efforts to challenge a facially valid indictment on the grounds that the evidence supporting the grand jury's decision was inadequate, incompetent, or obtained in violation of a constitutional privilege. *See, e.g.*, *United States v. Williams*, 504 U.S. 36, 54 (1992) ("'[I]t would run counter to the whole history of the grand jury

institution' to permit an indictment to be challenged 'on the ground that there was inadequate or incompetent evidence before the grand jury.'") (quoting *Costello v. United States*, 350 U.S. 359, 363–64 (1956)); *In re Grand Jury Proceedings*, 142 F.3d 1416, 1425 (11th Cir. 1998) (explaining that a grand jury may consider "evidence obtained in violation of the Fourth Amendment" or "in violation of the privilege against self-incrimination" (citing *Williams*, 504 U.S. at 49 and *United States v. Calandra*, 414 U.S. 338, 344-46 (1974)).  That principle applies with even more force here, since the purported defect has nothing to do with the validity of the grand jury's probable-cause determination and instead focuses on the referral procedures that prompted the opening of an FBI investigation, which in turn led to the opening of a grand jury investigation, and eventually to the acquisition of evidence that was presented to the grand jury.  America First Amicus cites no case suggesting that a purported defect of this nature could be a basis for dismissal.[3]  To the contrary, "Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].'" *Williams*, 504 U.S. at 54-55 (quoting *Costello*, 350 U.S. at 364).

\* \* \*

---

[3] America First Amicus cites four cases for the proposition that "[m]any courts have held that an agency's violations of the Administrative Procedure Act are grounds for dismissing a criminal indictment." ECF No. 360-1 at 17-19.  But those cases are entirely inapposite, as they each involved a post-trial or post-plea APA-based challenge to a regulation upon which the defendant's criminal liability rested. *See United States v. Picciotto*, 875 F.2d 345, 345-46 (D.C. Cir. 1989) (defendant "was convicted of violating a rule promulgated by the United States Park Service," such that the "criminal prosecution [was] founded on an agency rule" that was enacted in violation of the APA); *United States v. Ross*, 848 F.3d 1129, 1130-34 (D.C. Cir. 2017) (defendant, whose sexual assault conviction predated the enactment of the Sex Offender Registration and Notification Act ("SORNA"), was convicted of violating SORNA's registration requirements based on retroactivity provisions issued in guidelines and an interim rule that did not comply with the APA); *United States v. Cain*, 583 F.3d 408, (6th Cir. 2009) (addressing similar SORNA argument); *United States v. Johnson*, 632 F.3d 912, 920-33 (5th Cir. 2011) (addressing similar SORNA argument, but finding the APA violation harmless).  None of these cases involves an APA-based challenge to the process by which an agency made a criminal referral.

5

The arguments set forth by America First Amicus are without merit and provide no support to the motion to dismiss the indictment on the basis of the PRA.

                              Respectfully submitted,

                              JACK SMITH
                              Special Counsel
                              N.Y. Bar No. 2678084

By:    /s/ *Jay I. Bratt*
           Jay I. Bratt
           Counselor to the Special Counsel
           Special Bar ID #A5502946
           950 Pennsylvania Avenue, N.W.
           Washington, D.C. 20530

           David V. Harbach, II
           Assistant Special Counsel
           Special Bar ID #A5503068

March 13, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

/s/ *Jay I. Bratt*
Jay I. Bratt