UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**DONALD J. TRUMP,**
**WALTINE NAUTA**, and
**CARLOS DE OLIVEIRA**,

    Defendants.
_____/

**ORDER DENYING CERTAIN PRE-TRIAL MOTIONS**
**FILED BY DEFENDANTS NAUTA AND DE OLIVEIRA**

**THIS CAUSE** comes before the Court upon the following three motions: (1) Defendant De Oliveira's Motion to Dismiss the Indictment, or in the Alternative, for a Bill of Particulars [ECF No. 323]; (2) Defendant Nauta's Motion for a Bill of Particulars [ECF No. 446]; and (3) Defendant Nauta's Motion to Dismiss Obstruction Counts (33–35 and 40–41) for Unconstitutional Vagueness and for Failure to State a Claim [ECF No. 448]. The Court heard argument on the Motions on April 12, 2024 [ECF No. 451].

Upon review of the relevant filings, and fully advised in the premises, Defendants' Motions [ECF Nos. 323, 446, 448] are **DENIED** for the reasons stated below.

\*\*\*

**I.    Defendant De Oliveira's Motion to Dismiss or for a Bill of Particulars [ECF No. 323]**

The arguments in Defendant De Oliveira's Motion do not warrant dismissal of the obstruction offenses charged against him. As grounds for dismissal of those counts (Counts 33, 40, and 41), De Oliveira identifies various topics and/or allegations that are not contained in the

Superseding Indictment ("Indictment")—namely, specific allegations about his knowledge of classified documents or the contents of "the boxes" more generally, or about his knowledge of an "official proceeding" under 18 U.S.C. § 1512 [ECF No. 323 pp. 7–8; ECF No. 413 pp. 3–7]. De Oliveira also argues, again in support of dismissal, that the allegations in the Indictment do not show that he was capable of acting with the required "corrupt" criminal intent to support the alleged obstruction offenses [ECF No. 413 p. 7]. These characterizations are not grounds to dismiss the obstruction counts against De Oliveira. He does not meaningfully dispute that the charging document satisfies the minimum pleading standards accepted by the Eleventh Circuit, and it does; the obstruction counts "track" the cited statutory language in 18 U.S.C. § 1512(b)(2)(B), (c)(1), and (k), and the Indictment as a whole provides sufficient details to enable De Oliveira to prepare a defense, to apprise him of the charged offenses, and to rely upon any subsequent judgment as a bar against double jeopardy.[1] Any particular challenges to the Special Counsel's evidentiary showing can be made at trial, where the Special Counsel will bear the entire burden of proof as to all essential elements of the obstruction offenses.

The same holds true for the false statement charge in Count 42, which again satisfies the minimum pleading standards based on the inclusion of required statutory language; references the alleged false statements with sufficient detail; and alleges the materiality of such alleged false statements, albeit in statutory terms only [ECF No. 85 ¶¶ 118–120]. De Oliveira's arguments about the vagueness of the questions related to "boxes," "stuff," "personal stuff," "clothes," "furniture," and "items" during the recorded FBI interview are more suitable for trial, as are De

---

[1] *See* Fed. R. Crim. P. 7(c)(1); *see, e.g.*, *United States v. Steele*, 178 F.3d 1230, 1233–34 (11th Cir. 1999); *United States v. Adkison*, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998); *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983); *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2006).

Oliveira's challenges to the alleged materiality of his statements in light of the relevant chronology [*See* ECF No. 323 pp. 11–14].

For similar reasons, the arguments in De Oliveira's Motion do not warrant a bill of particulars. *See* Fed. R. Crim. P. 7(f). As to the false statement charge in Count 42, and as discussed during the hearing, the Indictment provides an excerpt of the alleged false statements on which the Special Counsel relies (with emphasis in text), and all parties agree that De Oliveira has been provided the full interview transcript in discovery. *See United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986) (denying request for bill of particulars in part because requested information was already available through discovery and inspection). Whatever deficiencies may exist with respect to the manner of questioning during the interview (and any confusion or ambiguity stemming therefrom) is a matter for trial. With respect to Count 33, the Indictment itemizes the alleged manner and means of the conspiracy in list form [ECF No. 85-1 ¶ 97], and more broadly, the Indictment as a whole adequately apprises De Oliveira of the aspects of the alleged conspiracy as to which the Special Counsel alleges he was directly involved.[2] While the Indictment does not contain additional details about De Oliveira's specific knowledge of the grand jury proceeding or the grand jury subpoena [*see* ECF No. 455 p. 12], it again "tracks" the statutory *mens rea* language of § 1512, it alleges that he and his co-defendants attempted to delete security camera footage to "conceal the footage from the FBI and grand jury," and it lists the specific

---

[2] During the hearing, the Special Counsel answered questions about which of the seven alleged "manner and means" in Count 33 is linked most directly to De Oliveira [ECF No. 455 pp. 19–22 (referencing De Oliveira's alleged movement of "approximately 30 boxes" on June 2, 2022, and his alleged attempts to delete security camera footage)]. The Special Counsel also noted that the alleged false statement in Count 42 cannot, temporally, form part of the conspiracy charged in Count 33. And the Special Counsel appeared to confirm that the Indictment neither alleges that De Oliveira ever saw a classified document nor had specific knowledge of the contents of the boxes he allegedly moved to the storage area on June 2, 2022.

3

purpose of the alleged conspiracy [ECF No. 85-1 ¶¶ 95–97]. The Special Counsel is not required to plead or provide more specificity in the form of a bill of particulars.

II.     **Defendant Nauta's Motion for a Bill of Particulars [ECF No. 446]**

Defendant Nauta's request for a bill of particulars is denied. Nauta seeks clarity about which boxes were allegedly concealed, moved, and/or searched on August 8, 2022; whether the searched boxes were among the 34 that he allegedly concealed on June 2, 2022; whether any of the allegedly moved boxes contained documents marked classified; and which of the seized boxes were the boxes allegedly moved by Nauta containing classified material [ECF No. 446 p. 7; ECF No. 447 p. 3]. Although there is reason to understand the request for additional specificity as to the "boxes" and their "contents," even in light of the lengthy Indictment, the Special Counsel is not legally obligated to provide more detail. *United States v. Maurya*, 25 F.4th 829, 838 (11th Cir. 2022). The Court cannot say that the Indictment as a whole lacks sufficient information to assist Nauta in preparing for trial, and the discovery provided in this case is exceedingly voluminous.

III.    **Defendant Nauta's Motion to Dismiss Obstruction Counts as Unconstitutionally Vague as Applied and for Failure to State a Claim [ECF No. 448]**

Defendant Nauta also moves to dismiss the charged obstruction counts—Counts 33, 34, 35, 40, and 41—as unconstitutionally vague as applied to him and for failure to state a claim [ECF Nos. 448–449]. The Court addresses these arguments in turn.

Nauta's principal submission is that the term "corruptly" as used in the charged § 1512 counts, *see* 18 U.S.C. § 1512(b)(2)(A), (b)(2)(B), (c)(1), is subject to multiple, still-developing, and contested judicial constructions of the term such that it fails to give ordinary people fair notice of the conduct it punishes and invites arbitrary enforcement [ECF No. 448 p. 9; ECF No. 449 pp. 3–4]. *See United States v. Lanier*, 520 U.S. 259, 265–67 (1997). This "multiple-meanings-

vagueness" contention is worthy of serious consideration, but it does not lead this Court to conclude that dismissal of the obstruction counts is warranted.

In *United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011), addressing a sufficiency-of-the-evidence challenge, the Eleventh Circuit described "corruptly" as "with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede, or obstruct [an official proceeding]." *Id.* at 1291. There is no pattern jury instruction for the term (or for any § 1512 offense beyond killing or tampering with a witness), however, and the Eleventh Circuit has not had occasion to grapple with its meaning in any contested sense.

Beyond the Eleventh Circuit, caselaw as it has developed reveals a menu of formulations for the term "corruptly" in the obstruction context. In *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), the Supreme Court addressed the phrase "knowingly . . . corruptly persuades" in 18 U.S.C. § 1512(b), indicating that "corruptly" is "normally associated with wrongful, immoral, depraved, or evil." *Id.* at 705 (citing Black's Law Dictionary 371 (8th ed. 2004)). The Court also referenced the phrase "conscious of wrongdoing" in its decision. *Id.* at 706. Years earlier, in *United States v. Aguilar*, 515 U.S. 593 (1995), Justice Scalia referred in concurrence to the "longstanding and well-accepted meaning" of the term "corruptly"—endorsing a definition that requires proof of an act done "voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person." *Id.* at 616–17 (internal quotation marks omitted). Other courts have offered other options as well, with the D.C. Circuit electing recently to apply a definition that requires a defendant to "act[] through independently unlawful means." *United States v. Robertson*, 86 F.4th 355, 367–68 (D.C. Cir. 2023) (noting "multiple ways to prove that a defendant acted corruptly"). And further within the D.C. Circuit, different judges have

presented studied views on the term. *See United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (Walker, J., concurring) (opining that "corruptly" must require proof of an act "with an intent to procure an unlawful benefit either for himself or for some other person"), *cert. granted*, 144 S. Ct. 537 (2023);[3] *id.* at 382 (Katsas, J., dissenting) (expressing vagueness concerns about the term "corruptly" when used as a backstop to permit a broad interpretation of the *actus reus* element of § 1512(c)); *United States v. Sandlin*, 575 F. Supp. 3d 16, 32–34 (D.D.C. 2021) (citing cases and defining "corruptly" to include acts done with a "corrupt purpose" through "independently corrupt means").

The above summary, not exhaustive in scope, lends support to Nauta's observation that the term "corruptly" in § 1512 is subject to different, somewhat amorphous formulations about "wrongfulness" and "unlawfulness"—the net effect of which is to engender legitimate questions (some might say even confusion) about the definition of the term in the realm of obstruction and related crimes. Moreover, this discussion, at least in a broader sense, continues before the Supreme Court this term, as evidenced by *Snyder v. United States*, S. Ct. 23-108, and *Fischer v. United States*, S. Ct. 23-5572.[4] There is also the added layer, in this case, that Count 33 charges a conspiracy with multiple provisions of § 1512 baked into it[5]—followed by a specific purpose allegation whose evidentiary impact and instructional significance is not entirely clear.

---

[3] In *Fischer v. United States*, S. Ct. 23-5572, the United States expressed agreement with this view as an available construction of the term. Oral Arg. Tr. at 69–69.

[4] Tr. Oral Argument at 21–24, 45, 49–53, 62–64, 69, 75–86, 102–106, 114 (discussing meaning of term "corruptly" in the context of 18 U.S.C. § 666); *see also*, Tr. Oral Argument at 29–31, 51–53, 69–70, 99, 102 (referencing *mens rea* discussion in *Snyder*).

[5] Section 1512(b)(2)(A) refers to the act of "corruptly" persuading another "with intent to . . . cause or induce any person to withhold . . . a . . . document from an official proceeding." Section 1512(b)(2)(B) refers to the act of "corruptly" persuading another "with intent to . . . cause or induce any person to . . . alter, destroy, mutilate, or conceal an object with intent to impair the object's

Notwithstanding these reasonable questions about the definition of the term "corruptly," Nauta's as-applied vagueness challenge fails under existing law. First, the Eleventh Circuit rejected a vagueness challenge to the term "corruptly" in § 1512(b), having little trouble concluding that the term "corrupt" provides adequate notice so long as it is defined as being "motivated by an improper purpose." *United States v. Shotts*, 145 F.3d 1289, 1300–1301 (11th Cir. 1998). Second, as noted, the Eleventh Circuit has described the term in a manner consistent with the Supreme Court's earlier decision in *Arthur Anderson*. *Friske*, 640 F.3d at 1291. And third, Nauta has not identified any case in which a court took the step of dismissing a charge in an indictment on vagueness grounds because of an arguably unclear *mens rea* element. The more charted course, if necessary, consistent with the principles of restraint in assessing criminal laws, *see generally Dubin v. United States*, 599 U.S. 110, 129 (2023) (citing cases), is to adopt a more stringent *mens rea* construction and to assess the state of the allegations under that more rigorous test. Having done so here, and without expressing a final opinion on the specific *mens rea* definition to submit to the jury as to the obstruction counts, the Court is in general agreement with the Special Counsel that the allegations in the Indictment—including the specific-purpose and manner-and-means allegations in Count 33, in addition to the other intent-related allegations in the remaining obstruction counts [ECF No. 85 ¶¶ 99, 101, 114, 116]—provide enough of a basis to deny Nauta's request for dismissal on vagueness grounds, even assuming a more stringent *mens rea* definition were called for.

---

integrity or availability for use in an official proceeding." And Section 1512(c)(1) refers to "corruptly" altering, destroying, mutilating, or concealing a document "with the intent to impair the object's integrity or availability for use in an official proceeding." [ECF No. 85-1 ¶ 95 (referencing § 1512(b)(2)(A), (b)(2)(B), and (c)(1))].

Turning finally to Nauta's more particularized challenge for failure to state a claim under Rule 12(b)(3)(B)(v), the Court rejects this argument for similar reasons as previously stated. Nauta argues that none of the obstruction counts specifically alleges that he took actions to procure a benefit for himself or anyone else [ECF No. 448 p. 9]. Even under that definition, however, and assuming a stricter *mens rea* formulation is warranted, the Indictment as a whole, accepted as true for purposes of this Order, contains sufficient allegations of a "corrupt" intent [ECF No. 379 pp. 5–7 (citing allegations in Indictment)].

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motions [ECF Nos. 323, 446, 448] are **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 18th day of April 2024.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record