# EXHIBIT C

FD-302 (Rev. 5-8-10)

- 1 of 3 -

UNCLASSIFIED//FOUO

FEDERAL BUREAU OF INVESTIGATION



Date of entry   01/03/2023

**DOCUMENT RESTRICTED TO CASE PARTICIPANTS**

This document contains information that is restricted to case participants.

On December 6, 2022, Federal Bureau of Investigation (FBI) Washington Field Office (WFO) Special Agent (SA) FBI 29 and SA FBI 9 participated in an attorney proffer of Per. 27, date of birth ███████, ████, social security account number (SSAN) ███████████. The proffer took place at the ██████████████████████████████████████████████, Washington, DC █████. Present during the proffer were attorneys ████████████████████████████████████████████████████████, representing Per. 27 as personal counsel, and Department of Justice (DOJ) attorneys Julie EDELSTEIN and Jay BRATT. Per. 27 consented to FBI's recording the interview and ████████ provided concurrence to allow the FBI to record the interview.

[**AGENT NOTE:** *Pursuant to the Domestic Investigations and Operations Guide (DIOG) 18.5.6.4.17.2.2, the start date & time of the overt non-custodial audio recording was December 6, 2022 at approximately 2:00 pm and the end time was approximately 6:30 pm. The recording device was in the conference room during the proffer engagement. One or both of the Agents maintained positive control of the device at all times to fully capture statements made. The documentation of the interview in this communication is not a verbatim account of all statements made, but rather to provide a summary of the interview based on observations made and information gleaned by interviewing agents. The original recording of the interview is maintained at WFO. The following is not meant to supplant the information capture on the referenced recording.*]

Per. 27 was advised of the identities of the DOJ and FBI personnel, the parameters of the proffer agreement, and provided a Title 18 United States Code (USC) Section 1001 warning. After acknowledging P. 27 understanding of the same, Per. 27 provided information responsive to the following topics:

- Per. 27 current professional responsibilities and historic work within

UNCLASSIFIED//FOUO

Investigation on  12/06/2022  at  Washington, District Of Columbia, United States (In Person)

File # ████████████████████████████████████   Date drafted  12/06/2022

by FBI 9, FBI 29 ██████████████████████

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

UNCLASSIFIED//FOUO

Continuation of FD-302 of (U//FOUO) Proffer of [Per. 27] , On 12/06/2022 , Page 2 of 3

the United States Government;
- [Per. 27] work at the U.S. White House, particularly in [P. 27] role [Per. 27] to the Former President of the United States (FPOTUS) during the 45th administration;
- [Per. 27] understanding of the Presidential Records Act (PRA) and [Per. 27] role in the process of managing presidential records, to include during the 45th administration and [Per. 27];
- [Per. 27] understanding of classified U.S. government information, and the designations, handling, declassification, sensitivities, and retention of the same;
- [Per. 27] awareness of declassification process and declassification efforts during the 45th administration, to include the memorandum delegating declassification authority to [redacted], and [Per. 27];
- [redacted] knowledge of boxes used by FPOTUS during and since the 45th administration; and
- [Per. 27] efforts to work with the National Archives and Records Administration (NARA) to return any outstanding records.

In July 2021, [Per. 38] informed [Per. 27] that NARA had contacted [Per. 38] regarding missing boxes of documents. [Per. 27] was already planning to travel to Mar-a-Lago for an unrelated meeting and offered to look for the missing boxes while [P. 27] was there. [Per. 27] was skeptical there were any presidential records as [P. 27] believed, based on [P. 27] experience with FPOTUS at the White House, that the boxes likely only contained newspapers.

Following [Per. 38]'s call, [Per. 27] had several communications with NARA regarding the number of boxes and specific documents that were missing. [Per. 27] contacted [Per. 34], whom [Per. 27] described as [redacted], to ask about the storage of boxes of documents at Mar-a-Lago. [Per. 27] advised [Per. 34] of [P. 27] willingness to come to Mar-a-Lago to look for the boxes. [Per. 34] replied there were multiple locations where FPOTUS' personal items were stored and that FPOTUS would not appreciate anyone going through his personal stuff.

In [redacted], [Per. 27] traveled to Mar-a-Lago for a [redacted] trip during which [Per. 27] met with FPOTUS privately in FPOTUS' office. FPOTUS was not receptive to [Per. 27] offer of assistance to look for the missing NARA documents. FPOTUS made it clear he did not want or need [Per. 27] help. FPOTUS told [Per. 27] he would see what he could do. FPOTUS did not acknowledge that FPOTUS had the boxes of documents referenced by NARA. After this conversation [Per. 27] stopped taking an active role in the NARA document recovery effort.

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

Continuation of FD-302 of (U//FOUO) Proffer of ▉Per. 27▉ , On 12/06/2022 , Page 3 of 3

▉Per. 27▉ had no knowledge of the January 17th, 2022 pick-up of boxes prior to media reporting. ▉Per. 27▉ had no knowledge of the June 3rd, 2022 production of classified-marked documents prior to news reporting.

The original agent notes, DOJ proffer exhibit materials, a copy of the audio recording, and an email with details about the audio recording, will be maintained in the attached 1A.

UNCLASSIFIED//FOUO