```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                     WEST PALM BEACH DIVISION
                        CASE NO. 23-cr-80101-AMC
 3
      UNITED STATES OF AMERICA,              Fort Pierce, Florida
 4
                      Plaintiff,             June 24, 2024
 5
                  vs.
 6                                           3:00 p.m. - 4:34 p.m.

 7    DONALD J. TRUMP, WALTINE NAUTA, CARLOS
      DE OLIVEIRA,
 8
                      Defendant.             Pages 1 to 77
 9    _____

10                      TRANSCRIPT OF MOTIONS
                   BEFORE THE HONORABLE AILEEN M. CANNON
11                   UNITED STATES DISTRICT JUDGE
      APPEARANCES:
12
      FOR THE GOVERNMENT:
13                              U. S. DEPARTMENT OF JUSTICE
                                JAY I. BRATT, ESQ.
14                              JAMES PEARCE, ESQ.
                                DAVID HARBACH, ESQ.
15                              National Security Division
                                950 Pennsylvania Avenue, NW
16                              Washington, DC 20530
      FOR THE DEFENDANT:
17    Donald J. Trump
                                BLANCHE LAW
18                              EMIL BOVE, ESQ.
                                TODD BLANCHE, ESQ.
19                              99 Wall Street
                                Suite 4460
20                              New York, New York 10005

21                              CONTINENTAL PLLC
                                LAZARO P. FIELDS, ESQ.
22                              255 Alhambra Circle
                                Suite 640
23                              Coral Gables, Florida

24                              KENDRA L. WHARTON
                                500 S. Australian Avenue
25                              West Palm Beach, Florida 33401
```

```
 1   Waltine Nauta

 2                              DADAN LAW FIRM
                               SASHA DADAN, ESQ.
 3                             201 S. 2nd Street
                               Suite 202
 4                             Fort Pierce, Florida 34950

 5
                               BRAND WOODWARD LAW, LP
 6                             STANLEY WOODWARD, ESQ.
                               400 Fifth Street
 7                             Northwest Suite 300
                               Washington, DC 20001
 8   Carlos De Oliveira

 9                              L.D. MURRELL, PA
                               LARRY DONALD MURRELL JR., ESQ.
10                             400 Executive Center Drive
                               Suite 201
11                             West Palm Beach, Florida 33401

12                             E&W LAW
                               JOHN S. IRVING, ESQ.
13                             1455 Pennsylvania Avenue, NW
                               Suite 1400
14                             Washington, DC 20004

15
     STENOGRAPHICALLY REPORTED BY:
16
                               LAURA E. MELTON, RMR, CRR, FPR
17                             Official Court Reporter to the
                               Honorable Aileen M. Cannon
18                             United States District Court
                               Fort Pierce, Florida
19

20

21

22

23

24

25
```

1          (Call to the order of the Court.)

2          THE COURT:  Good afternoon.  Please be seated.  Let's

3    get appearances, starting first from the Office of the Special

4    Counsel.  And let me call the case, which is, 23-80101, United

5    States of America v. Donald J. Trump, Waltine Nauta, and

6    Carlos De Oliveira.

7          MR. BRATT:  Good afternoon, Your Honor.  Jay Bratt,

8    David Harbach, and James Pearce for the United States.

9          THE COURT:  Good afternoon.

10          MR. BLANCHE:  Good afternoon, Your Honor.  Todd Blanche

11    and Emil Bove, and we're also joined by Lazaro Fields and

12    Kendra Wharton for President Trump, who is not here with leave

13    of the Court.

14          Good afternoon.

15          THE COURT:  Good afternoon.

16          MR. WOODWARD:  Good afternoon, Your Honor.

17    Stanley Woodward and Sasha Dadan for Mr. Nauta, who is also not

18    present with leave of the Court.  And Ashleigh Bondoc, my law

19    clerk, is here with us as well.  Thank you.

20          THE COURT:  Thank you.

21          MR. IRVING:  Good afternoon, Your Honor.  John Irving

22    and Donnie Murrell on behalf of Mr. De Oliveira, who is also

23    not here this afternoon.

24          THE COURT:  Good afternoon.  All right.  I hope

25    everybody had a nice lunch.  We are going to take up the next

1   motion for today, which is the government's motion for

2   modification of conditions of release.  This is docket

3   entry 592.  There was an opposition filed by Defendant Trump at

4   docket entry 622, and then a reply filed this past Friday at

5   docket entry 638.

6           I have reviewed those filings, along with the

7   attachments to both the motion and the reply.  And I have

8   reviewed the authorities and I'm ready to hear argument.

9           Who will be taking the lead on this one?

10           MR. BRATT:  Mr. Harbach will, Your Honor.  Before we do

11   so, with the Court's permission, there is something from this

12   morning that Mr. Pearce would like to correct, for the record,

13   if he may?

14           THE COURT:  Okay.  What does this concern?

15           MR. PEARCE:  Can I come to the lectern?

16           THE COURT:  Yes.

17           MR. PEARCE:  Less than a minute, Your Honor.

18           The Court asked some questions about the statement of

19   expenditure, and to the extent that I said or suggested that

20   attorneys working at the Special Counsel's Office on detail

21   from other components of the Justice Department were paid by

22   their home components, that was not accurate.  They're paid by

23   the permanent indefinite appropriation.  So I just wanted to

24   correct that for the Court.

25           THE COURT:  Okay.  Thank you.

1          MR. PEARCE:  Thank you.

2          THE COURT:  Okay.  Then let's hear from Mr. Harbach on

3    the motion.

4          And actually, before I hear from particular counsel, I

5    just want to confirm, does any side have any desire to

6    supplement the record on the motion?

7          Mr. Harbach?

8          MR. HARBACH:  Thank you for asking, Your Honor.  There

9    are a couple of Truth Social posts that I may have occasion to

10   bring to Your Honor's attention during the argument today that

11   were not specifically cited in prior briefing.  That's all I

12   can think of.

13         THE COURT:  Okay.  Well, for me to make any use of

14   additional material, I would have to see it physically.  So

15   either bring copies to the bench -- and presumably, you have

16   made those available to the other side.  But as far as I'm

17   concerned, I'm operating off of the record as it exists today,

18   and I haven't heard any motion for either live witness

19   testimony or supplementation of the record.  But I want to give

20   each side an opportunity to do that if that's what you desire.

21         MR. HARBACH:  Very good, Your Honor.  Thank you.

22         THE COURT:  All right.  Thank you.

23         Let's begin the argument.  You can come to the lectern.

24         MR. HARBACH:  Thank you, Your Honor.

25         The Special Counsel's Office filed its motion to modify

1  Mr. Trump's bail conditions for one purpose only, only one; and

2  that is to protect law enforcement witnesses who are involved

3  in this particular case.

4       THE COURT:  Okay.  I just want to clarify that, because

5  there are some references in the motion to, sort of, the more

6  general goal of protecting the integrity of the proceedings.

7  Of course, the Bail Reform Act speaks in terms of safety and

8  appearance.  And so I just want to ensure, what are the

9  interests that you're pursuing in this particular motion?  And

10  are they confined to the Bail Reform Act or some other body of

11  law?

12       MR. HARBACH:  Well, my statement a moment ago was

13  really meant as less of a legal proposition and more of a "what

14  motivated us to file the motion."  The answer to Your Honor's

15  questions is that -- are, excuse me -- is that there are at

16  least two sources of the Court's authority to grant the relief

17  that we're seeking.  The first is via the Bail Reform Act, and

18  then the second is as a result of the Court's inherent

19  authority to ensure the integrity of these judicial

20  proceedings.

21       THE COURT:  Okay.  So I just want to clarify that

22  because I read your motion as a motion under the Bail Reform

23  Act to modify conditions of release --

24       MR. HARBACH:  That is correct.

25       THE COURT:  -- not as a freestanding request for a

1    speech restriction.  So I want to make sure that we're

2    operating under the correct legal frame work.  And as far as I

3    understood your motion, it was strictly a Bail Reform Act

4    motion.

5         MR. HARBACH:  Well, perhaps I should clarify.  The

6    relief -- the only relief that we are seeking is that the Court

7    modify Mr. Trump's conditions of release.  That's the only

8    relief we're seeking.

9         THE COURT:  And that's pursuant to the Bail Reform Act?

10        MR. HARBACH:  Our view is that that is the primary

11   meanings via which the Court would have authority to add -- or,

12   excuse me -- to, in this case, modify his bail conditions by

13   adding one.  Our view is that an additional source of authority

14   for the Court to modify the bail conditions would be its

15   inherent authority to ensure the integrity of these

16   proceedings.

17        If your question is:  Are we seeking a separate

18   stand-alone order restricting the speech of Defendant Trump?

19   The answer is no.

20        THE COURT:  So how does this motion differ, if any,

21   from the other motions you have sought seeking similar relief

22   in other jurisdictions?

23        MR. HARBACH:  The principal way in which this one

24   differs from the relief we sought in the District of Columbia

25   is that, unlike that one, this one is an attempt to -- to

1   impose the restriction by way of modifying the defendant's

2   conditions of release.  And -- and as Your Honor pointed out a

3   moment ago, the -- the justifications for doing that or the one

4   that we rely on from the Bail Reform Act from, 18 U.S.C.,

5   Section 3142, is that the Court may impose -- quoting from

6   Subsection (c)(xiv), any other condition that -- that is

7   reasonably necessary to assure...the safety of any other person

8   and the community.

9          THE COURT:  Certainly.  And that's why I'm wondering,

10  if the legal framework for this motion, as I understood it, was

11  operating under the Bail Reform Act, then the only -- the only

12  interest to serve through the request is that of safety;

13  correct?  Because the statute doesn't speak about integrity of

14  proceedings in general terms; it talks about safety and

15  appearance.

16         MR. HARBACH:  I -- I'm going to -- as phrased, the

17  answer to Your Honor's question is yes.

18         THE COURT:  Well, I'm only citing to the statute.  So

19  if there is some other catch-all that I have overlooked,

20  please -- please let me know.

21         MR. HARBACH:  All I'm trying to explain is that in our

22  view, there are two sources of authority for Your Honor to

23  amend the bail conditions.  One of them is via the Bail Reform

24  Act.  And that's one that Your Honor has focused on.  And that

25  is -- and -- and that means is the one where safety of any

 1   other person and the community is the touchstone for relief.

 2   And we're absolutely saying that Your Honor should do that.

 3            THE COURT:  Why would I, sort of, tap another source of

 4   authority if there exists a source of authority under this

 5   statute, question Number 1.  And then Question Number 2, can

 6   you provide any cases where courts have modified bond

 7   conditions, but done so, not only through the Bail Reform Act,

 8   but through some other source of authority?

 9            MR. HARBACH:  The -- the answer to, I think, the first

10   part of Your Honor's question is just what -- what I have been

11   trying to say.  There are multiple sources of that authority.

12   In other words, the framework via which Your Honor should

13   analyze the government's request in the context of the Bail

14   Reform Act has a standard that we think we're required to meet,

15   and we have laid that out in our papers.  And in our view,

16   were -- were the Court to grant our request for relief under

17   the rubric of the Bail Reform Act, satisfying the criteria that

18   are laid out in the statute, that that would necessarily

19   eliminate many of the First Amendment concerns that obtain, in

20   the alternative framework where the Court is imposing a

21   condition like this as a result of its inherent authority --

22            THE COURT:  It's okay.  It's just rain.

23            MR. HARBACH:  -- to protect -- to protect the integrity

24   of the proceedings.

25            All we're saying is there are at least two avenues for

1    the Court to reach the same destination.  But you're quite

2    right --

3             THE COURT:  Okay.  So then let me understand.  So under

4    the Bail Reform Act, how does the constitutional concern, so to

5    speak, as you have indicated, differ either from the Bail

6    Reform Act versus the more freestanding, amorphous, inherent

7    authority proposal?

8             MR. HARBACH:  Here is the best way I think I can

9    explain that.  The standard from the statute that I just read a

10   moment ago, were the -- were the Court to conclude that this

11   condition that the government has proposed was, A, reasonably

12   necessary to assure the safety of any other person in the

13   community; and the Court made that finding in a

14   defendant-specific fashion, not a -- just a blanket fashion,

15   that, implicit in that finding, namely, the Court's finding

16   that the condition is reasonably necessary to assure the safety

17   of the community, takes it out of -- of the land of First

18   Amendment concern.

19            THE COURT:  Does it -- I mean, do conditions of release

20   still have to comport with the Constitution?

21            MR. HARBACH:  Well, do they have to comport with the

22   Constitution?  Yes.  I said they take it out of the land of

23   First Amendment concern.

24            THE COURT:  Well, the First Amendment is -- is in the

25   Constitution.  So I'm trying to ensure that -- that whatever

1    condition is contemplated is consistent with the First

2    Amendment.

3          MR. HARBACH:  Sure, sure.  And -- and all I'm -- all

4    I'm trying to point out to Your Honor is, I'm not suggesting

5    that the Court, making the finding under the Bail Reform Act,

6    eliminates the need to assess whether the restriction is

7    constitutional for any reason at all.

8          All I'm saying is that the standard that -- if

9    Your Honor were to find that the standard in the Bail Reformat

10    Act is met, that because of the nature of it -- in other words,

11    because of Your Honor having found that the condition was

12    reasonably necessary to assure the safety of any person or the

13    community -- that that would eliminate any First Amendment

14    concerns.  That's the point that I'm trying to make.

15          Would the -- would the condition still need to be

16    understandable?  Would it still need to be narrowly tailored to

17    the necessity of the relief?  Of course.  And those are also

18    concerns of constitutional dimension.  It's just that the First

19    Amendment piece would fall away under that rubric.  That's all.

20          THE COURT:  Okay.  Do you have any case law that

21    proceeds in the way you have just described?  In other words,

22    that by virtue of a finding of reasonable necessity, your First

23    Amendment concerns, at least some of them, fall away?

24          MR. HARBACH:  Well, no.  But I will tell you what we

25    also haven't found.  We haven't found any case where a Court,

1   as a result of adding a -- a restriction on speech, because it

2   is reasonably necessary to assure the safety of the community,

3   has also done a First Amendment analysis, which would be

4   consistent with our view that it wouldn't be necessary in that

5   circumstance because of the -- the preliminary finding.

6         THE COURT:  Right.  I guess the real question is if any

7   of -- if any of those cases actually presented a challenge on

8   the part of the person being restricted under the First

9   Amendment.

10        But in any case, so, just to understand, in the D.C.

11  proceeding, you have relied on -- not on the Bail Reformat Act;

12  is that correct?

13        MR. HARBACH:  Your Honor, correct.  Correct.

14        THE COURT:  Okay.

15        MR. HARBACH:  Because the relief there was not to

16  modify bail conditions.

17        THE COURT:  Okay.  So, then -- so just the differential

18  here, you're saying the constitutional dimension is somewhat

19  reduced by virtue of proceeding under the Bail Reformat Act,

20  provided there is a court finding of reasonable necessity?

21        MR. HARBACH:  Yeah.  And that's correct, but I will

22  further specify that the reduction, as Your Honor just

23  described it, is only insofar as the First Amendment is

24  concerned.  That was my only point.

25        THE COURT:  Okay.  All right.

1           Then please continue to present your argument.

2           MR. HARBACH:   Okay.   So -- think about the next best

3     way to proceed.

4           I think we can -- I think we can all agree, or we

5     should be able to all agree, that defendants in criminal cases

6     should not be permitted to make statements that pose a

7     significant imminent and foreseeable danger to any witnesses in

8     the case.   I think everyone agrees on that.

9           The -- and under the bail -- the Bail Reformat Act

10    framework that we were just describing, I've already read the

11    standard, and I think a lot of the question that Your Honor has

12    to decide is whether the condition that the government has

13    proposed is reasonably necessary.

14          And on that score, I think it's important to point out

15    that we're not operating on a blank slate here.   As we note in

16    our reply, every court to have examined this question has

17    recognized the threat caused by the long-standing and

18    well-documented, in several courts, the dynamic between

19    Mr. Trump's supporters -- excuse me -- between his comments,

20    particularly on social media, and the predictable response from

21    some of his reporters -- his supporters.   Excuse me.

22          Our briefing cites opinions from, as I said before,

23    several courts; the D.C. circuit, the district court in D.C.,

24    the trial court in New York, the New York appellate division.

25    In our reply, we also point out an attack that occurred in

1    Cleveland in the wake of the August 8th, 2022, search of

2    Mar-a-Lago.  And most recently, as of June 11th of this year, a

3    federal criminal complaint being filed in Texas with some

4    pretty explicit, dangerous violent-oriented comments made in

5    the wake of, among other things, comments Mr. Trump had made

6    about the way the FBI carried out the search at Mar-a-Lago.

7         Now, I should also point out, in terms of the record on

8    this score, that Your Honor, in connection with the extended

9    briefing that we had on redactions, and the motion to

10   reconsider that we filed, and that Your Honor granted in part.

11   Among the things that that opinion recognized was the necessity

12   of redacting witness names to protect them from potential

13   threats, intimidation, and harassment.  And that's from

14   Your Honor's order at docket number 438, page 15.

15        I mention that only to suggest to Your Honor that the

16   reasons that we were advancing about the importance of

17   redacting witness -- names of potential witnesses in public

18   documents are some of the same reasons that we think the

19   modification to bail conditions is -- is necessary here.  So --

20   but that -- that also is not the end of the picture.

21        This phenomenon of --

22        THE COURT:  Just so I understand, all the names of law

23   enforcement witnesses are redacted in court filings; correct?

24        MR. HARBACH:  They -- they should be, pursuant to

25   Your Honor's order.  Yes, ma'am.

1            THE COURT:  All right.  Okay.

2            So those names have been shielded from public view, and

3     that would be a consideration in trying to determine whether

4     their safety could be harmed?

5            MR. HARBACH:  I suppose it -- it shouldn't be much of a

6     consideration for -- for a few reasons.  This is a point

7     that --

8            THE COURT:  Well, the Bail Reformat Act, of course,

9     requires me to look at least restrictive conditions.  And so

10    I'm, of course, looking at the full picture here, and I think

11    it's undisputed that all of those law enforcement names are

12    shielded from public view, and the Court has made sure of that,

13    as have the parties, in painstaking detail and proposed

14    redactions.

15           MR. HARBACH:  That is true, but here are the reasons

16    why that should not remotely carry the day here.

17           Number one, there are a small number of agents whose

18    names are already public and -- and who were already doxxed

19    publicly, multiple times, in the wake of the execution of the

20    search warrant.  That's number one.

21           THE COURT:  Okay.  But the -- the -- this motion is

22    brought on the basis of statements made in, correct me if I'm

23    wrong, May of 2024?

24           MR. HARBACH:  That's what triggered the -- the motion,

25    yes, Your Honor.

1     THE COURT:  Okay.  So how far back do you submit we

2  should go to determine whether you've made your evidentiary

3  showing?  Because what you've indicated is potential release of

4  agent names back in 2022.

5     MR. HARBACH:  The timing of that is immaterial for this

6  part of the analysis because the name -- the point is the names

7  are out there.  Not -- not when they were released.  The point

8  is the names are out there.

9     THE COURT:  Right.  But there still needs to be a

10  connection between the alleged dangerous comments and risk to

11  safety.

12     MR. HARBACH:  Sure.

13     THE COURT:  And so what I'm trying to determine is what

14  is that factual connection that I can glean from the exhibits

15  that have been submitted?

16     MR. HARBACH:  And -- and I'm happy to return to that in

17  a moment.  But Your Honor raised a question about the fact that

18  the names had been redacted, and I'd like to fully respond to

19  why that should not assuage the Court's concerns.  That -- and

20  what I said a moment ago, about the doxxing, is but one of

21  those reasons.

22     The second reason is that Defendant Trump --

23     THE COURT:  Before you move past that, do you know how

24  those names got released, the names of those other agents?  And

25  do you have any evidence to suggest it was caused by any of the

1    defendants in this case or any other defense participants?

2          MR. HARBACH:  Not -- certainly not by any of the

3    defendants in this case.  I'm not sure what Your Honor means by

4    "defense participants" --

5          THE COURT:  Defense attorneys, members of the defense

6    team.  Anybody -- did you have any evidence to suggest that the

7    releasing of the names of those agents in 2022 had anything to

8    do with the defendants or their lawyers or their agents in this

9    proceeding itself?

10          MR. HARBACH:  My only hesitation, Your Honor, is the

11    prospect that this person might be a defense witness who we

12    don't know about.  That's the only reason I'm hesitating.

13    Definitely not the defendants, definitely not the lawyers.  But

14    agents or associates or -- we do know the identity of the

15    person who is responsible for publicizing some of --

16          THE COURT:  Well, if that's the case, there are legal

17    means, presumably, to address doxxing.  And so my question is:

18    Why would that carry over to an analysis about whether a bail

19    modification is warranted at this juncture against Defendant

20    Trump?

21          MR. HARBACH:  Because Your Honor put the question to

22    me, suggesting that the fact that agent names have been

23    redacted means that there is no need for the bail modification

24    condition.  In other words, I think Your Honor said it was a

25    factor that you should consider in deciding whether to grant

 1   the relief.

 2          THE COURT:  Certainly, because of the text of the

 3   statute --

 4          MR. HARBACH:  Right.

 5          THE COURT:  -- I'm sure you would agree, references

 6   least restrictive further condition.

 7          MR. HARBACH:  Sure.  And I'm trying to explain why the

 8   fact of redaction is not a least restrictive means that

 9   remotely accomplishes the objective.  That's what I'm trying to

10   explain.  I have gotten one reason out so far.

11          THE COURT:  Mr. Harbach, I don't appreciate your tone.

12   I think we've been here before, and I would expect decorum in

13   this courtroom at all times.  If you're unable to do that, then

14   I'm sure one of your colleagues can take up this motion.

15          MR. HARBACH:  Yes, Your Honor.

16          THE COURT:  Let's reset.  Please continue.

17          MR. HARBACH:  The second reason why the redaction of

18   names does not solve the problem is that defendant -- Defendant

19   Trump himself attempted to make them public.  He filed exhibits

20   with public motions that, in our view, were -- and I think I

21   made this point during the redaction argument -- that had

22   gratuitous references to names that had no -- utterly no

23   connection to the reason that they were citing the document in

24   question.

25          Mr. Trump also resisted our attempts at any redactions

 1    beyond PII.  And it wasn't until Your Honor imposed the

 2    condition that you did that -- that the defense even agreed to

 3    redact all the names of potential witnesses, including FBI

 4    agents.

 5          THE COURT:  Well, I'm not sure -- if we can go back and

 6    we can review the history.  But as far as I recall, the defense

 7    largely took no position on the redaction requests, and the

 8    question was whether the parties seeking the redaction had made

 9    a proper showing, at which point the Court then surveyed those

10    showings, and, through painstaking work, ultimately arrived at

11    what I think remains a reasonable solution to ensure public

12    access while maintaining protection for those potential

13    witnesses.

14          And so we have sealed witness names.  We have gone

15    around and around with numerous motions.  So I don't know if

16    it's accurate to say that the defense had this blanket

17    opposition to redaction.  I think the issue was:  Is the

18    showing made both as a matter of law and fact?

19          So with that, please continue.

20          MR. HARBACH:  Yes, Your Honor.

21          The -- the third reason that we believe that the

22    redaction of witness names does not solve the problem is that,

23    at trial, of course, all of the names of these individuals, the

24    ones who testify, will come out.  And maybe even the names of

25    some individuals who don't testify but whose names are,

 1    nevertheless, redacted in these documents might also come out.

 2         THE COURT:  And if that happens, then wouldn't the

 3    solution at that point be to address whatever tools need to be

 4    implemented at that time, either through protections of names

 5    at that point or other means, rather than at this point

 6    proactively imposing speech restrictions prior to trial when we

 7    don't know who is going to testify exactly or what security

 8    risks may or may not present themselves?

 9         MR. HARBACH:  Our -- our view in response to

10    Your Honor's point is that that die has already been cast.

11    That die has been cast by the defendant's conduct, by the

12    statements that he has made publicly, including most recently

13    during the week of May 21st, about the FBI, and suggesting,

14    manifestly falsely, that they were attempting to harm him and

15    his family, to take him out, that they showed up locked and

16    loaded.

17         These -- these types of statements are nowhere close to

18    the line.  And I will note for Your Honor that we have

19    not -- there is a reason we sought this relief when we did.  It

20    was as a result of the defendant making those statements during

21    the week of May 21st.  In our view, they are significant.  They

22    are dangerous.  They present an imminent and foreseeable danger

23    to the FBI witnesses in this case, and it will not suffice to

24    say that, if their names come out at trial, we will at that

25    point seek some other means to protect them.

1      If for no other reason that, in our view, there is

2  ample danger that between now and trial, notwithstanding the

3  redactions of many of the agents' names, that some sort of

4  violent act could occur, and that is why we have asked for the

5  Court to intervene.

6      THE COURT:  Okay.  And the evidentiary record you want

7  me to consult, just so I'm clear, are the exhibits that are

8  attached to the motion and the reply?  I think there are a

9  total of maybe 11.

10      MR. HARBACH:  That is definitely -- that is definitely

11  part of the evidentiary record.  We would also refer Your Honor

12  to the -- the various opinions that we've cited in our

13  briefing, not for the -- not for the -- I want to be careful

14  how I say this -- not for the conclusions that the courts draw;

15  that's for Your Honor to draw, of course.  But for the facts

16  that underlie those conclusions, like, for example, the fact

17  that Mr. Trump made such and such post on such and such a date,

18  and the fact that some terrible thing happened on such and such

19  a date.  Those are facts that we don't understand to be in

20  dispute.  And so, to the extent those facts --

21      THE COURT:  Well, wait.  So my evidentiary record is in

22  this case, 23-80101.  I have 11 exhibits.  Maybe I have

23  miscounted.  Are you suggesting that I -- that I pull facts

24  from every single other proceeding and then incorporate them

25  into the factual record here?  Because that's not going to

1    happen.

2         If you want to put facts before the Court in support of

3    the motion, then attach them as exhibits, and I can review them

4    one by one.  So are there any other facts you want me to look

5    at in this motion?  Attachments?  Testimony?  Anything else?

6         MR. HARBACH:  I have -- I have mentioned to you the

7    additional sources I think Your Honor is plainly competent to

8    consider, in addition to what has been attached to our brief.

9         THE COURT:  Well, I'm telling you right now that the

10   evidentiary record on this motion -- and I'm happy for you to

11   supplement it, and I want to give you a full opportunity -- is

12   what I have been given, which is:  The motion, the opposition,

13   and the reply, and the attachments to those filings.

14        MR. HARBACH:  I understand, Your Honor.

15        THE COURT:  Okay.  All right.  So is there anything

16   else you wish to add to the motion from an evidentiary

17   perspective?

18        MR. HARBACH:  Just give me a moment, please.

19        Yes, Your Honor.  These are the -- there is a point

20   that we make -- I believe it's in our reply -- about the

21   defendant being well aware of this phenomenon, namely, the

22   call-in response phenomenon, as -- as it has been called,

23   between him and his followers on social media.

24        THE COURT:  What page of your reply, please?

25        MR. HARBACH:  Just a moment.  It may have been in our

1    opening brief.  I apologize, Your Honor.  Can I just have a

2    moment?

3              THE COURT:  Sure.

4              MR. HARBACH:  Okay.  I'm sorry, Your Honor.  It is in

5    our opening brief.  It's at page -- it's the bottom of page 7

6    to the top of page 8, and it refers to Mr. Trump stating that

7    his supporters listen to him like no one else, and it's citing

8    a transcript of a CNN Town Hall.

9              THE COURT:  Okay.

10             MR. HARBACH:  So it's that concept that is also -- it's

11   also, by the way, mentioned in -- there are -- this is

12   what -- this is what I -- I said just a moment ago when I stood

13   up.  There are a couple of Truth Social posts that we have that

14   are to the same effect.

15             THE COURT:  Okay.  Do you want to introduce them into

16   the record for purposes of the motion?

17             MR. HARBACH:  I -- I would be delighted to.  I confess

18   that the -- that -- I'm happy to tender them to the Court.

19             THE COURT:  Okay.  Have you shown them to defense

20   counsel?

21             MR. HARBACH:  No, Your Honor, not yet.

22             THE COURT:  Okay.  Please do so, and then I will

23   receive them.

24             MR. HARBACH:  Very good.

25             (Inaudible discussion amongst counsel.)

1    MR. BLANCHE:  I have reviewed it, Your Honor.  We don't

2    have any objection to them being admitted.

3    THE COURT:  All right.  I will add them to the

4    evidentiary record on the motion without objection.

5    (Government Exhibit 1 was received in evidence.)

6    MR. HARBACH:  Shall I mark them, Your Honor?

7    THE COURT:  Yes, please.

8    MR. HARBACH:  Now, I'm fixing to tender these to the

9    Court, but the -- just for the record, the first one I will

10   mark as Government's 1.  Is that okay?

11   THE COURT:  Yes, that's fine.

12   MR. HARBACH:  Is today the 24th?

13   THE COURT:  Yes.

14   MR. HARBACH:  Thank you, Your Honor.  And, again, for

15   the record, this one is a -- it's a two-page printout of a

16   single -- of a -- a pair of Truth Social posts.  I will tender

17   this to the Court.  May I approach?

18   THE COURT:  Yes, thank you.  If you can please give

19   them to the deputy.

20   MR. HARBACH:  Thanks, Tina.

21   THE COURT:  Thank you.  All right.  Just for the

22   record, I have Government's 1 and 2.  These are two Truth

23   Social posts.

24   MR. BOVE:  Forgive me for interrupting, Your Honor.

25   What you have in your hand is just Government's 1.

1          THE COURT:  Oh, okay.  Excuse me.  Just Government's 1,

2    which consists of two pages.  And they stem from a Truth Social

3    post dated April 4th of 2024; is that correct?  Did I misstate

4    anything?

5          MR. HARBACH:  Could you double-check the year, please.

6    This is 2024, you are right.  You are right.

7          THE COURT:  Yes.  That's what I think -- yes,

8    April 4, 2024.

9          MR. HARBACH:  Yes, Your Honor.

10         THE COURT:  Okay.

11         MR. HARBACH:  And then, may I approach with

12   Government's 2?

13         (Government Exhibit No. 2 was received in evidence.)

14         THE COURT:  Yes.  All right.  This is Government's 2,

15   another Truth Social post from April 29th of 2023.

16         Okay.  Please continue.

17         MR. HARBACH:  Yes, Your Honor.  And the -- the

18   highlighting that I have included on those exhibits is just the

19   pertinent portion.  It's to the point that I made earlier about

20   the defendants' own awareness of his power via Truth Social.

21         THE COURT:  Okay.

22         MR. HARBACH:  Can I have just one moment, please?

23         THE COURT:  Yes.  There is -- just to be clear, there

24   is some, I think, maybe some handwriting of yours that would be

25   separate from the paperwork.  So I will just redact that once

1    it's filed on the docket.

2           MR. HARBACH:  Thank you, Your Honor.

3           THE COURT:  Okay.  Let's continue.

4           MR. HARBACH:  The only other possible addition to the

5    evidentiary record, which is what Your Honor was asking about a

6    moment ago, would be whether we elect to supplement the record

7    in the manner Your Honor suggested vis-á-vis factual findings

8    and/or evidence before other courts.  I -- we can -- we can get

9    back with the Court very promptly about whether it is our

10   intention to do so, if that suits the Court.

11          THE COURT:  I'm sorry.  Can you clarify exactly what

12   you are suggesting?

13          MR. HARBACH:  Well, when we were -- during the colloquy

14   a few minutes ago, when I mentioned that -- that the government

15   had cited opinions from other courts grappling with this issue,

16   and I mentioned that -- that there are certain facts associated

17   with those opinions that, in the government's view, are not in

18   dispute, Your Honor made the point that -- that you don't

19   consider that part of the factual record before you to resolve

20   this motion, and you invited the government to supplement the

21   record, if we felt it was necessary.

22          And so, all I'm telling you is I'm not prepared to do

23   that as I stand here today, and I might need to consult with my

24   colleagues this afternoon about whether we want to offer

25   additional evidence, for the record, for Your Honor to

1    consider.  That's all.

2              THE COURT:  Okay.  All right.

3              MR. HARBACH:  But that's the only other --

4              THE COURT:  The -- I -- I -- I will give that some

5    thought.  One concern is that there were some new exhibits

6    attached to the reply.  The defense hasn't had an opportunity

7    to respond to those new exhibits.  And then, if you wish to

8    supplement the record further, there would need to be,

9    unavoidably, some additional briefing.  So provided that all

10   sides have an adequate opportunity to respond to any new

11   evidence submitted, then I have no objection to your proposal.

12             So by when do you think you would know whether you wish

13   to supplement the record any further?

14             MR. HARBACH:  We can have a decision to you by no later

15   than tomorrow morning.

16             THE COURT:  Okay.  Well, let's do this.  By June 26th,

17   which is Wednesday, please file a motion post-conferral,

18   advising of any need to supplement the evidentiary record.

19             And then, Mr. Blanche, if the defense requests --

20   Mr. Blanche.

21             MR. BLANCHE:  Yes, Your Honor?

22             THE COURT:  If the defense requests an opportunity to

23   file additional briefing, then you should make that very clear

24   in -- in any response that you file to the motion for

25   additional evidence.

1          MR. BLANCHE:  Yes, Your Honor.

2          THE COURT:  Okay.  Thank you.

3          Okay.  So June 26th would be the deadline for that.

4          Let's continue, Mr. Harbach.

5          MR. HARBACH:  May I ask one clarifying question about

6    Your Honor's order just now?  If -- if we conclude that no such

7    additional filing is necessary, would you like us to file

8    something to that effect or just file nothing?  You know what?

9    I -- I think it's academic.  We can advise you tomorrow what we

10   intend to do.

11         THE COURT:  Okay.

12         MR. HARBACH:  Very good.

13         THE COURT:  Okay.  All right.

14         MR. HARBACH:  So that is -- that's the -- that

15   concludes the discussion of the evidentiary record that

16   Your Honor was talking about, which goes to the question of the

17   reasonable necessity of -- of the -- of the bail condition that

18   we proposed.

19         THE COURT:  Can you return for a moment.  You mentioned

20   that if there is a finding under the Bail Reform Act of

21   reasonable necessity, there is no additional need -- correct me

22   if I'm wrong -- to conduct a First Amendment analysis.  Did I

23   understand you correctly?

24         MR. HARBACH:  Yes, Your Honor.

25         THE COURT:  Okay.  And what authority do you have to

1  support the idea that there would be no need to conduct a

2  constitutional inquiry at that stage?

3          MR. HARBACH:  Well, it's -- it -- it really is just

4  what I said earlier.  It's that there is no case to the

5  contrary.  In other words, in all of our review of cases where

6  courts have ultimately imposed a condition under the Bail

7  Reform Act because it is reasonably necessary to assure the

8  safety of anyone -- any other person and the community, that

9  there never follows an additional First Amendment analysis on

10 top of that.  And further, it's not just that in the abstract.

11 We think that makes sense.  We think it makes sense because

12 speech that is curtailed for this reason (indicating),

13 necessarily is outside the scope of First Amendment concerns.

14 That's our view.

15         THE COURT:  Why?  Because it falls under incitement of

16 violence?  Or what exactly -- what category of unprotected

17 speech would you say these items fall into?

18         MR. HARBACH:  I -- I think you're right.  I think it's

19 what Your Honor just said.  It's speech that -- that endangers,

20 endangers the safety of any other person and the community.

21 And also --

22         THE COURT:  But that's a little bit different than

23 incitement to violence, calls for violence, truth threats, the

24 sort of traditional core, unprotected speech.  And so I want to

25 make sure that when we talk about danger, we're not falling too

 1    far away from those traditional categories as described by the

 2    courts.

 3          MR. HARBACH:  Yeah.  I understand that, to be sure.

 4          I will also remind Your Honor that if we're talking

 5    about modifying someone's bail conditions, it's a -- it's a

 6    criminal defendant whose First Amendment rights are somewhat

 7    more limited than your average citizen's in the first instance.

 8          But as I said before, to answer Your Honor's earlier

 9    question, if -- if a bail -- if a Court like Your Honor finds

10    that a condition is reasonably necessary to do those things,

11    then, yes, the important interest that is at stake in that

12    scenario is the safety of that other person and the community.

13          THE COURT:  Okay.  Understood.  Okay.

14          So we have the 11 exhibits that we've talked about,

15    along with the transcript and the two additional exhibits.

16    What in those exhibits, in your mind, creates an imminent

17    threat of violence or threat of violence to others?

18          MR. HARBACH:  Well, it's the -- the lead example are

19    the statements from the week of May 21st that precipitated our

20    filing the motion in the first place.  And so, referring to the

21    exhibits that were attached to the motion, there is Exhibit 1,

22    which is a -- a Truth from -- this is the one from

23    May 21, 2024.  And it says, "I just came out of the Biden

24    witch-hunt trial in Manhattan, the icebox, and was shown

25    reports that crooked Joe Biden's DOJ and their illegal and

1   unconstitutional raid of Mar-a-Lago authorized the FBI to use

2   deadly lethal force.  Now, we know for sure that Joe Biden is a

3   serious threat to democracy," and so on.

4       So that's the -- that's the first example.  And I will

5   also point out, while there are multiple -- multiple axes along

6   which this is flagrantly false, but that's not even the most

7   important thing.  The most important thing is that it talks

8   about an event that is central to this case, in utterly

9   misleading terms, that necessarily implicates witnesses in the

10  case.

11      The same is true of Exhibit 2.  Exhibit 2, as we point

12  out in our brief, was not a Truth Social post; it went out via

13  email.  And it states:  "It's just been revealed that Biden's

14  DOJ was authorized to use deadly force for their despicable

15  raid in Mar-a-Lago."  Now, just as an aside, in Mr. Trump's

16  opposition, he acts as though the word "despicable" is what

17  raised the hackles of somebody at DOJ, and that we didn't like

18  it, and that's why we filed this motion.

19      That's all wrong.  The key part is what follows, where

20  it says:  "You know they're just itching to do the unthinkable.

21  Joe Biden was locked and loaded, ready to take me out and put

22  my family in danger."  And if there is any question about who's

23  the author here, the president signs it, and -- excuse me --

24  the former president signs it.

25      This -- the government is at a loss to conceive of any

1    possible reason why Mr. Trump would suggest something that is

2    so flagrantly false, inflammatory, and inviting of retributive

3    violence.  We can think of no reason why he would say something

4    like that, other than --

5         THE COURT:  You say "inviting of retributive violence."

6    Where in the attachments do you see a call to violence?  And do

7    you have any evidence to suggest that such violence has

8    resulted or threatened to be resulted as a result of those

9    statements?

10        MR. HARBACH:  It's at -- I will take those questions

11   in -- in two-part order.  One, this is the importance of the

12   context -- the importance of the context.  This thing was not

13   put out, as I said earlier, on a blank slate or in a vacuum.

14   This thing was put out in the -- in the context that -- that

15   every court to consider it has concluded exists.  Namely, that

16   the statements that Mr. Trump puts out on social media are

17   read, digested, and ultimately result in all sorts of terrible

18   things, threats, violence, and so forth.

19        And, furthermore, the evidence that we put before

20   Your Honor today and supplemented today is proof that he knows

21   it.  He knows it.  And to suggest something like this, that the

22   FBI was there, ready to take out Mr. Trump and put his family

23   in danger, there is nothing even close to true about any of

24   that, Your Honor.  And there is no remotely campaign-related or

25   protected First Amendment reason why anyone would say anything

1    like that.  And in the context of this environment that he

2    created and that he knows about, saying something like this is

3    beyond irresponsible.  It is dangerous.

4            And that is why we filed the motion that we did.

5    We -- we -- that is why we did.

6            THE COURT:  All right.  Thank you.

7            Anything further on the motion?

8            MR. HARBACH:  I would just like to talk briefly about

9    the -- well, actually, let me ask Your Honor.

10           Would you -- would you like to hear from me about the

11   constitutional analysis that we think would flow from

12   Your Honor's exercising your independent authority to protect

13   the integrity of the proceedings, or would you -- would you

14   prefer not to hear about that?

15           I don't want to engage in a discussion that's not

16   relevant to Your Honor's consideration.

17           THE COURT:  I want to give you free reign to present

18   your argument as you see fit in the way that would be most

19   helpful to presenting your motion.  So I leave it up to you.

20           MR. HARBACH:  Okay.  Thank you, Your Honor.

21           In that case, I will discuss it briefly.

22           As I -- as I stated at the outset, and it was explained

23   to Your Honor, an alternative means by which Your Honor could

24   properly impose the bail condition that we seek is -- is your

25   inherent authority to protect the integrity of these criminal

1   proceedings.

2           Now, going this route, for lack of a better phrase,

3   would require some constitutional analysis that we think that

4   the language that we've proposed amply satisfies.  In the first

5   place, it has to be justified by a -- any action would have to

6   be justified by a sufficiently serious risk to the proceedings.

7   And that's amply taken care of here by what we're talking

8   about, the danger/harm that we're talking about, is -- is

9   danger to law enforcement witnesses in this particular case.

10          And this is a -- as far as the -- the standard that

11  Your Honor would have to find goes, you may recall we point out

12  in a footnote that this is one of those things that the

13  11th Circuit has actually not officially decided yet, namely

14  that whether the -- the standard needs to be a -- a substantial

15  likelihood or a significant or serious -- an imminent threat.

16          And as we point out in our papers, we're willing to

17  assume that the more stringent standard applies, namely

18  the -- some courts say "significant and imminent," some courts

19  say "serious and imminent."  But that's the source of the

20  language that we propose in the -- in the additional bail

21  condition.

22          THE COURT:  So "significant and imminent," is that the

23  same thing as "clear and present danger"?

24          MR. HARBACH:  It's not.  And the best explanation of

25  why it's not is to be found in the D.C. circuit's opinion.  In

1    short, the Supreme Court has -- is explicitly on record saying

2    that clear and present danger, that formulation is not one

3    that's supposed to be used in this analysis.

4         And I -- is it -- I can't remember the name of the

5    case.  I'm sorry, Your Honor.  But it's in the -- it's in the

6    D.C. Circuit opinion.

7         A word about -- about notice and narrow tailoring to

8    the extent that that might be of interest to Your Honor.  To

9    the extent that Mr. Trump may complain that he has no notice

10   about what our language would prohibit, just a couple of

11   observations.

12        One, and we make this point in our brief, that our

13   language, in our view, provides at least as much notice as the

14   local rule that we quote in our briefing.

15        And the second thing is to recall that --

16        THE COURT:  "The local rule," are you referring to

17   77.2?

18        MR. HARBACH:  I believe so, yes, Your Honor.

19        THE COURT:  And that applies to attorneys and law

20   firms?

21        MR. HARBACH:  I believe that's right, yes, Your Honor.

22   But the point is less about its application and more -- to

23   attorneys and law firms, and more about just the language

24   that's employed.  The point that we're trying to make here is

25   that -- as the Supreme Court itself has observed --

1      THE COURT:  Well, lawyers generally tend to be a bit
2   more attuned to legalese and maybe a little more prepared to
3   accommodate their conduct.  Nonlawyers might not have that
4   degree of sophistication.
5      MR. HARBACH:  I understand Your Honor's point.  Our
6   point, really, is the same, which is that, ultimately, there is
7   a limit.  If you have to use words to describe what words can
8   or cannot be said, there is an inherent limit to how specific
9   or particular you can be.  And the Supreme Court recognized
10   that in the -- in the Grayned case.
11      But I'd also like to --
12      THE COURT:  I'm sorry.  Which case?  Can you say that
13   again?
14      MR. HARBACH:  Yes.  It's G-R-A-Y-N, like Nancy, E-D.
15      THE COURT:  Okay.
16      MR. HARBACH:  And it is cited in our reply, I believe.
17   Yeah, it's in our reply at Footnote 3, which just --
18      THE COURT:  Yes, I see that.  Thank you.
19      MR. HARBACH:  So the last point I'll make before I sit
20   down concerns narrow tailoring, and it's just to point out that
21   we made the best effort we could to make this as narrowly
22   tailored as possible.  It's limited to statements that pose a
23   significant, imminent foreseeable danger, not to all witnesses,
24   only to law enforcement witnesses.
25      THE COURT:  And before you proceed, where in the motion

1   would I find your crystallization of the restriction that

2   you're looking for?  In other words, do you have it written

3   down, in your papers, the specific language or text that you

4   would like in this condition?

5           MR. HARBACH:  Yes, Your Honor.  It appears in the very

6   first sentence of our motion.

7           THE COURT:  "Significant imminent foreseeable danger to

8   law enforcement agents participating in the investigation and

9   prosecution of this case"?

10          MR. HARBACH:  That is correct.

11          THE COURT:  Okay.

12          MR. HARBACH:  And our view is that that is not only

13  constitutional from the standpoint of giving fair notice to the

14  defendant of what conduct is prescribed, but also definitely

15  narrowly tailored to the concern at hand, which, again, was

16  precipitated by these comments that the former president made

17  during the week of May 21st.

18          And one last note on least restrictive alternatives.

19  The -- we've already talked about the notion that redaction

20  might be a least restrictive alternative.  But in the D.C.

21  case, just as an example, the district court there -- the Court

22  of Appeals makes a point of pointing out that the district

23  court there warned the parties and the -- and the lawyers about

24  speech that would -- that risked affecting the integrity of the

25  judicial proceedings there.  That didn't work, which is what

1   resulted in the necessity of instituting the gag order in that

2   case.

3           And so our view is that there's something to be taken

4   from that, which is to say at least one Article 3 district

5   judge has tried least restrictive means when it comes to

6   curtailing the President's dangerous speech, and it

7   didn't -- it didn't accomplish the objective.

8           So we think Your Honor could certainly take something

9   from that in thinking about least restrictive alternatives.

10          THE COURT:  Thank you.

11          MR. HARBACH:  Thank you, Your Honor.

12          And before I sit down, I just want to apologize about

13   earlier.  I didn't mean to be unprofessional.  I'm sorry about

14   that.

15          THE COURT:  I appreciate it.  Thank you, Mr. Harbach.

16          MR. BLANCHE:  Good afternoon, Your Honor.

17          So I think that the questions that the Court asked the

18   government about the Bail Reformat Act, that's a good place to

19   start.  You look at the statute.  It talks about the least

20   restrictive conditions that can be imposed to ensure the safety

21   of the community.  It talks about conditions that are

22   reasonably necessary.

23          And here, the condition that the government wants to

24   impose is, as Mr. Harbach just said, significant, imminent, and

25   foreseeable danger to law enforcement agents working on this

 1    case, without any further definition beyond that statement.

 2         However -- however, they further state that the

 3    exhibits attached to the original motion clearly -- clearly

 4    violate that new condition that they want the Court to impose.

 5    But if you look at the conditions, some of which were just --

 6    the posts, some of which were just discussed, there is no

 7    actual connection between the Truths and the fundraising letter

 8    and the additional Truths that were cited in the original

 9    motion and as significant, imminent, and foreseeable danger to

10    law enforcement.

11         And that's really the problem, because when you stand

12    and say, Well, we could all agree that law enforcement officers

13    need to be safe, of course we can all agree that that's true.

14    But that's not why we're here.

15         We're here because the Special Counsel wants to impose

16    a new condition on President Trump's bail that is this vague,

17    defined-by-the-Special-Counsel definition.  And if you look at

18    the -- the actual posts, there is no threat to the FBI agents.

19    There is no incitement of violence, as was discussed earlier.

20         The attacks very clearly are against President Biden.

21    And that has been the case from day one in this -- in this

22    prosecution.  That the -- the -- President Trump is extremely,

23    extremely frustrated that this administration raided his

24    Mar-a-Lago home.  And he has a right to be.  And we have

25    pending motions, and that's not why we're here today, but his

1    expression of frustration that FBI agents were authorized by

2    Biden's DOJ, that's not an attack on witnesses.  That's not an

3    attack on the FBI agents that executed that search.  It's an

4    attack on the decision made by his political rival to authorize

5    a search with agents authorized to be -- to carry firearms.

6           And, by the way, there is -- there is much discussed

7    about the fact that they were armed, and whether that's normal

8    or typical or standard practice.  It is true it is standard

9    practice, but that doesn't mean that it was right.  It doesn't

10   mean that we can't fight that, and that President Trump doesn't

11   have the right to raise his hand and say:  I was the President

12   of the United States.  You raided Mar-a-Lago.  It's protected

13   by the United States Secret Service agents with guns.  Why did

14   you do this?  Why didn't you make a different decision and not

15   go in armed, right?

16          So if you look at the paperwork -- and it's attached to

17   our motion, Your Honor -- there is -- there is -- there was

18   protocols described that included potential confrontation or

19   issues with the United States Secret Service and --

20          THE COURT:  Wait.  I'm sorry.  You said there is

21   paperwork attached to your motion.  What are you referring to?

22          MR. BLANCHE:  No.  I'm sorry.  Not this motion.  Our

23   motion -- a different motion to -- to suppress the search.

24          THE COURT:  Okay.

25          MR. BLANCHE:  There -- there was a plan, not

1   surprisingly, of what the FBI would do if President Trump

2   showed up, if his family showed up, if there was a

3   confrontation with the United States Secret Service.

4        So there was a plan in place, not surprisingly, about

5   how to handle a confrontation.  And the plan

6   including -- included having the FBI agents armed.  Maybe

7   that's right.  Maybe that makes sense.  But there's certainly

8   nothing significant, imminent, and foreseeably dangerous to law

9   enforcement that President Trump, as part of his election

10  campaign, as part of his communication to voters says:  Can you

11  believe that this is the decision that Biden's DOJ made?

12       Now, this --

13       THE COURT:  Let me ask you just legally, as far as the

14  Bail Reformat Act is concerned.  I have heard argument that

15  there is -- that the First Amendment inquiry is -- is

16  unnecessary if the Court finds that a restriction is reasonably

17  necessary.

18       Do you have any thoughts on just the legal framework

19  and whether the First Amendment still features in a Bail Reform

20  Act context?

21       MR. BLANCHE:  It does in the words that Your Honor just

22  said.  In fashioning a least restrictive means to assure the

23  safety of the community, it has to be reasonably necessary.

24  That analysis necessarily includes First Amendment analysis.

25       So when -- when the Court is deciding whether, is this

1   condition reasonably necessary, you have to look at all of the

2   factors, right, which -- which the Bail Reform Act speaks to.

3   And in this case, let's talk about what's reasonably necessary.

4   You have the -- the Republican nominee, in the next two weeks,

5   for President of the United States.  You have his political

6   opponent running against him, part of this investigation

7   through the Attorney General.  And then the question -- the

8   question that you -- that the Court has to weigh is whether,

9   given that, is it reasonably necessary to impose the condition

10  that -- that the Special Counsel seeks?  And that's where I do

11  think it matters with the redactions.

12          And Your Honor is correct.  We never -- we never argued

13  that law enforcement names should be released.  What we argued

14  was that the Special Counsel had to come forth with evidence

15  consistent with the local rules and with the law that justified

16  redacting witness names.  We never took -- we took no position

17  along the way.  And, ultimately, the Court determined that they

18  had met their burden, and that was not over -- over objections

19  from us, beyond the objection that they hadn't laid forth the

20  applicable justification for -- for redactions.

21          Also, the government said that we had -- I think,

22  Mr. Harbach said gratuitously -- gratuitously included all of

23  the names of the FBI agents.  As the Court may recall

24  during -- during argument on the redaction issue, we asked to

25  identify a single entry that was gratuitous.  They didn't

1    identify one.  It was a motion that we filed.

2           You know, so that -- that's -- that's very unfair for

3    the government to -- to use as a justification to the Court

4    that the redactions are not enough as -- as far as a condition

5    to make sure that this issue is addressed because we insisted

6    that the government follow the rules and the law in seeking

7    redactions.

8           And, Your Honor, imminent and foreseeable danger to law

9    enforcement?  There is none.  And it is true that some of the

10   witnesses associated with that search may ultimately testify at

11   a hearing or at trial.  And it is true that this is a public

12   courtroom, and so their names will need to be released.  And it

13   is also true that the Court may be asked to -- to address

14   the -- the safety issues of the witnesses as what happens in

15   many trials.

16          We just went through a trial in New York with

17   President Trump that that issue was -- presented itself along

18   the way; and courts are perfectly suited to handle those issues

19   along the way.  That doesn't mean -- so -- so it's not

20   imminent.  It's not foreseeable danger.  It's -- when you look

21   at the examples cited -- and I apologize for -- for maybe being

22   a little indignant here, but there is no connection between

23   unnamed FBI agents supposedly having their life at risk, which

24   is a really very serious accusation against anybody -- and

25   there is absolutely no evidence of that.

1          The evidence they put forward is a very mentally

2     troubled individual in Ohio, after the Mar-a-Lago search, and

3     then another individual who recently made threats out of the

4     Hunter Biden trial.  And they're saying that's what Your Honor

5     should consider in imposing this new -- this new condition

6     against -- against President Trump.

7          And then when Your Honor asked:  "Well, what's the

8     threat?  What's the -- what's the violence that's been

9     incited?"

10          "Oh, well, Your Honor, there has been other judges that

11     have said that President Trump knows that his words matter to

12     his -- to the people that follow him."

13          Yes, they do.  He is running for President.  You know,

14     the voters of this country listen to what he says, and they

15     have a right to listen to what he says.  And he should not have

16     a condition imposed that -- that, you know, if you look -- if

17     Your Honor looks at -- at Exhibit 5 to the -- the to -- 592-5,

18     to the original motion, the Truth says:  Biden's DOJ authorized

19     use of deadly force against President Trump in Mar-a-Lago raid.

20          So if -- if the Special Counsel's motion is to be

21     accepted and that condition had been imposed, President Trump's

22     bail would be revoked, or he would potentially be held in

23     contempt of court for that Truth, even though there is nothing

24     about it that's -- that's -- that's false.

25          Now, we can debate about whether it was normal

1    practice --

2        THE COURT:  We would have to have a hearing and

3    determine if it met the standard, presumably, before any actual

4    restriction of liberty were implemented; correct?

5        MR. BLANCHE:  I'm sorry.  What --

6        THE COURT:  In other words, it wouldn't just happen

7    automatically, the restriction on liberty.  There would have to

8    be a judicial determination that there was a violation of the

9    condition; correct?

10       MR. BLANCHE:  Your Honor, that's not the way that the

11   Bail Reformat Act -- that's not what it says.  I mean, the

12   way that it -- if the government believes there has been a

13   violation, they can go to a judicial officer and get a warrant,

14   an arrest warrant.  And then, ultimately, there will be a

15   determination by Your Honor.

16       THE COURT:  Okay.  I think then, you're in agreement

17   that there would still need to be a judicial determination of a

18   violation of a bond condition before any bond were actually

19   revoked?

20       MR. BLANCHE:  Yes.  But in the meantime, Your Honor,

21   for example, if the Special Counsel -- and -- and I don't want

22   to be flippant with this, and I'm not being -- if the Special

23   Counsel believes that, well, if this condition is imposed, and

24   the Special Counsel believes that, at the debate, President

25   Trump says something that violates this condition, under the --

1   under the statute, he can go to a judge in Atlanta and get an

2   arrest warrant for President Trump; and if it's signed, go and

3   arrest him.  And, yes, you are right, bail wouldn't actually

4   formally be revoked until -- until Your Honor held -- held a

5   hearing, a bail revocation hearing.  But that's a big

6   difference than a traditional gag order that's been imposed

7   multiple times against President Trump, where at least there is

8   some process, at least there is an order to show cause.

9          By the way, this would be ex-parte.  So, potentially,

10  we wouldn't even know that it was happening, whether it was

11  presented to Your Honor, the magistrate judge in this case, or

12  some other judicial officer in the United States.

13         That's -- so there is a big difference between, like, a

14  traditional gag order and -- and resolving whether a statement

15  was a violation of that.

16         And what -- what the government is trying to do here,

17  which is a lower standard, it's -- honestly, I was listening to

18  Mr. Harbach.  I still don't understand what the government's

19  position is about why -- and you can pick any of them -- why

20  this Truth, Exhibit Number 1, okay -- the relevant portion

21  says:  Reports that crooked Joe Biden's DOJ and their illegal

22  and unconstitutional raid of Mar-a-Lago authorized --

23         THE COURT:  Slow down.

24         MR. BLANCHE:  Sorry.  I'm reading from Exhibit 1, about

25  three lines down:  Crooked Joe Biden's DOJ and their illegal

1    and unconstitutional raid of Mar-a-Lago authorized the FBI to

2    use deadly lethal force, and now we know that Joe Biden is a

3    serious threat to democracy.

4         So in the government's view, that statement clearly --

5    they say there is not even dispute -- clearly qualifies as a

6    significant, imminent, and foreseeable danger to the law

7    enforcement agents working on this case.

8         THE COURT:  Okay.  Let me ask you just a legal

9    question.  What is your view on the applicable legal standard?

10   There is a footnote in the reply that talks about the

11   Eleventh Circuit not yet specifically addressing which standard

12   applies.  There is the, quote, "substantial likelihood of

13   material prejudice standard."  And there is another one that

14   uses the following terminology:  "Clear and present danger or a

15   serious and imminent threat to the proceedings."

16        MR. BLANCHE:  So I agree with the footnote that the

17   Eleventh Circuit hasn't -- hasn't spoken to that; other courts

18   obviously have.  But I don't think it -- I mean, the Special

19   Counsel says they don't think it matters either.  I -- for

20   different reasons, I'm not sure why it matters, which one

21   that -- that you look at.

22        If you look at the clear and present danger standard,

23   for example -- and, again, I don't believe the Supreme Court

24   has ever addressed what we're talking about now, which is a

25   charged defendant having speech restricted and -- and the test

1    that needs to apply to that.  So in some -- in some -- you

2    know, we're in a little bit of uncharted territory.  But when

3    you do look to the cases that talk about clear and present

4    danger, and you compare them to the facts of this case,

5    right -- so the facts of this case are not what happened in

6    other criminal cases involving President Trump or civil cases

7    involving President Trump.  It's Exhibits 1 through 5.  That's

8    the facts of this case.  And --

9             THE COURT:  Plus the other exhibits attached to the

10   reply.

11            MR. BLANCHE:  Well, the -- right, but -- yes,

12   Your Honor, although, except for --

13            THE COURT:  Oh, and the two for today.

14            MR. BLANCHE:  And the two from today, which, you know,

15   we concede that people listen to President Trump and -- and

16   that he believes that.  But that shouldn't be used against him.

17   He is running for President of the United States.  And the

18   government refers to these individuals as his followers.  And

19   they do the same thing in the papers.

20            They're voters.  I mean, it's really unfair, in -- in -

21   in our view, for the Special Counsel to identify two

22   individuals that they suggest are Trump supporters.  There is

23   no connection between those individuals and President Trump,

24   who purportedly did horrible things having nothing to do

25   directly with President Trump, and then say on top of that, we

1   know, given these Truths, that President Trump knows that his

2   followers listen to him.

3        That -- there is -- there is a very dangerous precedent

4   to be set, a very dangerous precedent to be set if a defendant

5   has their bail modified because somebody on a -- on a -- on a

6   radio show comments about the Mar-a-Lago raid.

7        That's what the Special Counsel is asking this Court to

8   do, is -- is to say that Steve Bannon making a comment is

9   something that -- that should potentially cause President Trump

10  to go to prison.

11       And that's the other thing that is lost a little bit in

12  the arguments of the Special Counsel.  We're talking about the

13  Bail Reform Act.  We're talking about conditions that allow a

14  charged defendant to be released pending trial.  And so those

15  conditions violated, the consequence -- there is a range -- but

16  includes imprisonment.  And it also includes, potentially,

17  other court cases where President Trump is charged in, if he

18  was violated in this case, for example, there will be

19  consequences in Georgia; there will be consequences,

20  potentially, in New York and D.C.

21       So it's very flippant for the -- and very frustrating.

22  And we were frustrated when this motion came in on that Friday

23  night, and we're frustrated now, that -- that there is this new

24  standard that -- defined by the Special Counsel, completely

25  vague except for the evidence they put forward to this Court,

1   and the evidence, really, of the first -- the exhibits attached

2   to the original motion, which makes the -- the --

3          THE COURT:  Do you have anything to say in response to

4   the exhibits attached to the reply?

5          MR. BLANCHE:  Well, no, no, but the exhibits attached

6   to the reply, what we can talk about in the relevant -- I mean,

7   certainly, there is --

8          THE COURT:  Well, there hasn't been a subsequent

9   briefing.  So I just want to make sure that -- because in the

10  opposition, you -- you were able to go through those one by

11  one.  And I just want to make sure that you have an

12  opportunity, if you wish, to respond to anything that is

13  attached to the reply.

14         MR. BLANCHE:  We have reviewed them, Your Honor.  Thank

15  you.  And what I will -- the only one I think is certainly

16  worth commenting on is a Truth that President Trump sent last

17  summer that -- that, I believe, is Exhibit -- it may be

18  Exhibit 3.  That -- where he says if -- something to the effect

19  of:  If you come after me, I'm coming after you.  And

20  it's -- I'm sorry -- it's Exhibit 5 to the reply.  It

21  says -- it's sent April 4th, 2023 -- "if you go after me, I'm

22  coming after you."

23         There is a very clear record, as the Special Counsel

24  knows, because it was in our briefing in D.C., that that Truth

25  was in response to -- has nothing to do with this case, has

1    nothing to do with the D.C. case.  It had to do with an effort

2    by -- by -- by a group to -- that came out and said that they

3    were going to actively spend money to -- to stop him

4    from -- from being elected or being a nominee.

5         And so, again, you have a random Truth that the

6    government is saying it should be used by -- by the Court to

7    impose a new condition of bail.  It's -- it's --

8         THE COURT:  Well, similar observation:  Just as I'm not

9    going to expand the evidentiary record in this case to include

10   other items that are not formally made part of this record, you

11   have now referenced some additional briefing or context for

12   that post.

13        What specifically are you talking about?  And do you

14   want to supplement your opposition with that same opportunity I

15   want to afford to you that I did to Mr. Harbach?

16        MR. BLANCHE:  Thank you.

17        I think it's a complicated answer to build up the

18   factual basis for what I have just said.  So if we're going to

19   do it, I would like to supplement --

20        THE COURT:  Okay.

21        MR. BLANCHE:  -- the record with that.

22        THE COURT:  All right.  Well, then -- then you may do

23   so by the same deadline of June 26th, which I set previously.

24        Okay.  Let's continue.

25        MR. BLANCHE:  And, Your Honor, look -- you know, now

1    I'm talking back what I just said.  Is that the Truth that

2    they're relying on to impose this new condition?  I don't think

3    they are.  I mean, they are referencing it in another context,

4    but --

5          THE COURT:  Well, it appears that they are.  It's an

6    attachment to the reply.

7          MR. BLANCHE:  It's an attachment to the reply.  But, I

8    mean, I don't want to speak for the Special Counsel, but it

9    doesn't seem as if they're suggesting that that Truth, in and

10   of itself, is -- would be a justification for this new

11   condition they seek imposed.  I believe their justifications

12   are limited to the Truths and the fundraising letter that

13   President Trump sent last month, and then, I guess,

14   Steve Bannon's statement.

15         So that's really the evidence justifying the imposed

16   condition that I think the Court should be most focused on.

17   Yes, there is other evidence that their arguing involves as

18   well.

19         And, Your Honor, the other fact about the evidence

20   itself is that this -- it's -- there is no evidence -- of

21   course, President Trump has absolutely no desire for anything

22   bad to ever happen to law enforcement.  And the fact that there

23   were agents, apparently, that were doxxed, you know, defense

24   counsel have been doxxed, that that happens, and it's horrible.

25         But, again, it cannot be that the fact that that

1    happened, which is a terrible thing that happened, is somehow

2    used by the Court to impose this new -- this new condition.

3    And that's -- that's similarly troubling that the Special

4    Counsel would use that unfortunate wrong fact.

5           And Your Honor is right.  And I was going to say this

6    in -- and I will say it now, but there are ways to deal with

7    people that are doing things like that.  There's a whole host

8    of criminal statutes about that sort of threat and harassment

9    and threatening of witnesses.  And the Special Counsel has a

10   lot of folks there.  If there really was a crime committed,

11   they can investigate and go after that.  And I hope that they

12   do.  But that's not why we're here.

13          So anyway, like --

14          THE COURT:  All right.  Thank you.

15          Anything further?

16          MR. BLANCHE:  No -- just -- just touching very briefly

17   on -- on the real challenge with the vagueness of this new

18   condition.  It would be extremely chilling to President Trump

19   on what he was allowed to say.  The Special Counsel has

20   labelled it as narrowly tailored as possible, and that's just

21   not true.  Simply because it limits it to law enforcement

22   doesn't really help, because what we're -- of course there is a

23   lot of law enforcement involved in this case and this

24   prosecution.

25          Not having a real understanding -- and as counsel, how

1    would we counsel him about what he could and could not say that

2    didn't run the risk of being a significant, imminent, and

3    foreseeable danger to law enforcement when the evidence that I

4    would have to show him is, You see this truth that you sent a

5    month and a half ago?  That apparently qualifies.

6          Even though there is -- it's a critique of his

7    political rivals.  It's a critique of Joe Biden and his Justice

8    Department, which is completely fair, protected, political

9    speech, Your Honor.

10          THE COURT:  All right.  Thank you.

11          Mr. Harbach, any rebuttal?

12          MR. HARBACH:  Yes, Your Honor.

13          THE COURT:  If you could address this -- this ex-parte

14   reference and the seeking of potential arrest warrants to other

15   judicial officers elsewhere.

16          Is that how you would envision potential enforcement of

17   a new condition?

18          MR. HARBACH:  I'm sorry.  I got confused by your

19   "ex-parte" phrase.

20          THE COURT:  There was some discussion by Mr. Blanche

21   that if there were such a condition imposed, it could be

22   enforced by ex-parte motions filed with judicial officers in

23   other jurisdictions, and that would be different from the

24   procedure to implement a gag order in -- in the, kind of,

25   inherent authority sense.

1          MR. HARBACH:  If Your Honor is -- is asking how we

2    might proceed if Mr. Trump violated the conditions of his bail

3    in some other district?

4          THE COURT:  Yes.  I think that was the -- the comment

5    by Mr. Blanche, was, hypothetically, there is a statement made

6    somewhere else, and it, arguably, violates the new condition.

7    The Special Counsel could seek a warrant for his arrest in

8    another jurisdiction and potentially do so through an ex-parte

9    motion.  I just want to understand the mechanics.

10          MR. HARBACH:  Well, I think I understand Your Honor's

11    question.  Mr. Trump's bail would be out of this district, and

12    Your Honor or Magistrate Judge Reinhardt would be responsible

13    for enforcing those conditions.  And I would imagine that any

14    application we would make to revoke the former president's bail

15    or his release status would be made in this district,

16    irrespective of where the conduct took place because this

17    is -- this is the supervising district.

18          THE COURT:  Okay.  That answers my question.  Thank

19    you.

20          Please proceed.

21          MR. HARBACH:  There are a few things that I would like

22    to cover.  I think, first, I want to start with the notion that

23    there will be this chilling effect on President Trump, or that

24    the government is seeking to chill his legitimate campaign

25    speech.  There is -- there is nothing about the statements that

1   are in Exhibit 2 to our original motion that are legitimate

2   campaign speech.

3        Furthermore, the restriction that we're seeking to

4   impose -- which I'm just going to read into the record.  It's

5   short -- is that:  "The former president may not make

6   statements that pose a significant, imminent, and foreseeable

7   danger to law enforcement agents participating in the

8   investigation and prosecution of this case (indicating)."

9        I cannot conceive of how statements meeting that

10  definition could -- could properly be termed "campaign speech"

11  or whose chilling we should be concerned about, even for

12  somebody running for President.

13       It is narrowly tailored for a reason.  Because the

14  comments that the President made during the week of May 21st

15  were nothing like what Mr. Blanche stood here a minute ago and

16  pretended he said.

17       He didn't say:  Why didn't -- why didn't you -- why did

18  you have to come to my house armed?

19       He didn't post:  I don't understand why the DOJ decided

20  to search Mar-a-Lago.  That was totally unfair, and I can't

21  believe it happened to me.

22       He didn't say those things.  I mean, he may have said

23  something like that, but those things aren't what triggered the

24  government seeking this bail modification.

25       The things that he stated during the week of May 21st

1    are nothing like that.  It would have been perfectly fine for

2    him to say things like Mr. Blanche just said here at the

3    podium.  And he, indeed, has said many things.  He's made many

4    public complaints about the search and how it was conducted,

5    and how it was motivated, and whether it was political

6    retribution or a witch-hunt, all sorts of things like that.

7         And as we have stated crystal clear in our motion, our

8    interest -- our bona fide interest is not that.  I meant what I

9    said earlier when I said to Your Honor that we filed this

10   motion for a reason.  It's because those particular statements

11   that he made during the week of May 21st, in light of the

12   context that he, himself, the environment that he, himself, has

13   created, are way out of bounds.  Way out of bounds.  They're

14   nothing like speech that should be protected by the

15   First Amendment.

16        He also -- Mr. -- Mr. Blanche also made a point about

17   causation and the fact that there is no causal link between any

18   of the statements that we've pointed to that the former

19   president made and any actual result in violence.

20        Well, in the first place, as I know Your Honor knows

21   because you told me you know it when we were arguing the motion

22   for reconsideration, you don't have to -- you don't have to

23   wait for something terrible to happen in order to impose a

24   condition like this.  Nor do we have to prove stripped

25   causation in the legal sense.  Nor does Your Honor have to wait

1    for tragedy to strike before imposing a reasonable condition.

2            On the what I will call "parade of horribles" that

3    Mr. Blanche was talking about, he said if President Trump --

4            THE COURT:  Hold on.  It's true that you don't need

5    that tragedy to strike, as you've -- as you've termed it, but

6    the statute still requires a finding, based on the evidentiary

7    record, that the condition is reasonably necessary to assure

8    the safety of persons.  And implicit in that is a requirement

9    and evaluation of the offensive conduct and the condition that

10   is being proposed.

11           And so while you don't need to have that strict

12   causation, as you've indicated, there still needs to be a

13   factual connection between A and B.

14           MR. HARBACH:  100 percent.  And I didn't mean to

15   overstate it.  And that was the point I was trying to make

16   earlier.  Our -- our position is that the -- the environment

17   that I've described several times today about the -- the fact

18   that President Trump -- by the way, it's not just that he has

19   lots of people who listen to him.  Mr. Blanche is right; yes,

20   there are lots of people who listen to him.

21           This is a peculiarly potent tool that he has.  And the

22   cheap shot about followers was only meant -- we say "followers"

23   only in the sense of followers of his on Truth Social in the

24   social media sense.  We didn't mean anything other than that.

25           But the point is that there's this apparatus in place

1    that not only is he aware of its potency, he brags about its

2    potency, which only cements that he knows that -- the power of

3    the tool at his disposal.  And can he, should he use that tool

4    to the best of his ability to enhance his chances of being

5    president?  Knock yourself out.

6            But you don't get to say stuff like this.  You don't

7    get to say stuff that, because of that apparatus, and because

8    of the environment that you have created, and because of what

9    these people will do when you -- when you know they will do it,

10   say things that are so manifestly false and -- and not just

11   false in the abstract, but false lies, lies about the FBI

12   coming to do violence to his family.  That's just -- in our

13   opinion, that is way over the line.

14           So to answer Mr. Blanche's point, Number 4,

15   probably -- that -- is that alone going to, as he said, send

16   him to jail?  No.

17           He made a similar comment about the exhibit in -- the

18   exhibit in our reply; you know, "If you come after me, I will

19   come after you."  Is -- did we offer that to suggest that that

20   was an example of something for which the defendant needed to

21   have his bond revoked?  No.

22           The point of that was to illuminate the -- not only the

23   context in which all of this is happening, but the defendant's

24   own mindset about what he is doing.

25           Of course, he is entitled to be frustrated.  Of course,

1    he is.  But how do you act on that?  You're a criminal

2    defendant in a case, and there are limits to what you can

3    permissibly say.  And if you want to say things that pose a

4    significant, imminent, and foreseeable -- don't forget what

5    those words mean -- significant, imminent, and foreseeable

6    danger to law enforcement agents participating in this case,

7    then that's out of bounds.  That should not be tolerated from

8    the standpoint of the Bail Reformat Act or Your Honor's

9    inherent authority to protect these proceedings.

10        Let me see if there's anything else that I would like

11   to respond to.

12        THE COURT:  Just so I understand, you say "protect

13   these proceedings."  Aside from safety, what do you mean by

14   "protect the proceedings"?

15        MR. HARBACH:  I shorthanded.  I think the actual

16   language from the case is "protect the integrity of the

17   proceedings."

18        THE COURT:  Okay.  And specifically, what do you mean

19   if that's different from protecting the safety of law

20   enforcement witnesses, in the context of the motion that you've

21   brought?

22        MR. HARBACH:  I think -- I don't think there is a

23   functional difference.

24        THE COURT:  Okay.  All right.

25        Well, thank you.  If there is nothing further, then I

1    will just reiterate to the parties that June 26th, this

2    upcoming Wednesday, would be the deadline to file any

3    supplements -- evidentiary supplements only, no additional

4    legal briefing -- in support of the motion or in opposition to

5    the motion.  And any such filings should be shared between the

6    parties to avoid surprise and, again, with as much conferral as

7    possible.

8          Mr. Blanche?

9          MR. BLANCHE:  Your Honor, may I add something for 10

10    seconds or less?

11          THE COURT:  Quickly.

12          MR. BLANCHE:  Yes.  So just so you know, the statute --

13    when I was referring to an arrest warrant being issued by a

14    judicial officer, even -- not including Your Honor or the

15    magistrate judge, I'm referring to Title 18, United States

16    Code, Section 3148, which is sanctions for violation of a

17    release condition.  And subparagraph B is where it describes

18    the process of a judicial officer, Your Honor.

19          THE COURT:  Thank you.

20          All right.  Then that concludes our argument on this

21    motion.  I will see the parties in closed session tomorrow

22    beginning at 11:00 a.m. to discuss presumptively privileged

23    material, along with grand jury material, and then we will open

24    it up to the public as quickly as we can.

25          So with that, thank you all.  Have a nice evening.  We

1    are in recess.

2         (These proceedings concluded at 4:34 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4     I hereby certify that the foregoing is an accurate

 5     transcription of the proceedings in the above-entitled matter.

 6

 7
       DATE:  06-25-2024        /s/Laura Melton
 8                              LAURA E. MELTON, RMR, CRR, FPR
                                Official Court Reporter
 9                              United States District Court
                                Southern District of Florida
10                              Fort Pierce, Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## 1

1 [10]– - 1:9:5.., 1:24:5..,
1:24:10.., 1:24:22.., 1:24:25
.., 1:25:1.., 1:30:21.., 1:46:20
.., 1:46:24.., 1:48:7
10 [1]– - 1:61:9
100 [1]– - 1:58:14
11 [3]– - 1:21:9.., 1:21:22..,
1:30:14
11:00 [1]– - 1:61:22
11th [2]– - 1:14:2.., 1:34:13
15 [1]– - 1:14:14
18 [2]– - 1:8:4.., 1:61:15

## 2

2 [8]– - 1:9:5.., 1:24:22..,
1:25:12.., 1:25:13.., 1:25:14
.., 1:31:11.., 1:56:1
2022 [3]– - 1:14:1.., 1:16:4
.., 1:17:7
2023 [2]– - 1:25:15..,
1:50:21
2024 [5]– - 1:15:23..,
1:25:3.., 1:25:6.., 1:25:8..,
1:30:23
21 [1]– - 1:30:23
21st [7]– - 1:20:13..,
1:20:21.., 1:30:19.., 1:37:17
.., 1:56:14.., 1:56:25..,
1:57:11
23-80101 [2]– - 1:3:4..,
1:21:22
24th [1]– - 1:24:12
26th [4]– - 1:27:16.., 1:28:3
.., 1:51:23.., 1:61:1
29th [1]– - 1:25:15

## 3

3 [3]– - 1:36:17.., 1:38:4..,
1:50:18
3142 [1]– - 1:8:5
3148 [1]– - 1:61:16

## 4

4 [2]– - 1:25:8.., 1:59:14
438 [1]– - 1:14:14
4:34 [1]– - 1:62:2
4th [2]– - 1:25:3.., 1:50:21

## 5

5 [3]– - 1:44:17.., 1:48:7..,
1:50:20
592 [1]– - 1:4:3
592-5 [1]– - 1:44:17

## 6

622 [1]– - 1:4:4
638 [1]– - 1:4:5

## 7

7 [1]– - 1:23:5
77.2 [1]– - 1:35:17

## 8

8 [1]– - 1:23:6
8th [1]– - 1:14:1

## A

a.m [1]– - 1:61:22
ability [1]– - 1:59:4
able [2]– - 1:13:5.., 1:50:10
absolutely [3]– - 1:9:2..,
1:43:25.., 1:52:21
abstract [2]– - 1:29:10..,
1:59:11
academic [1]– - 1:28:9
accepted [1]– - 1:44:21
access [1]– - 1:19:12
accommodate [1]– -
1:36:3
accomplish [1]– - 1:38:7
accomplishes [1]– -
1:18:9
accurate [2]– - 1:4:22..,
1:19:16
accusation [1]– - 1:43:24
Act [29]– - 1:6:7.., 1:6:10..,
1:6:17.., 1:6:23.., 1:7:3..,
1:7:9.., 1:8:4.., 1:8:11..,
1:8:24.., 1:9:7.., 1:9:14..,
1:9:17.., 1:10:4.., 1:10:6..,
1:11:5.., 1:11:10.., 1:12:11..,
1:12:19.., 1:13:9.., 1:15:8..,
1:28:20.., 1:29:7.., 1:38:18..,
1:41:14.., 1:41:20.., 1:42:2..,
1:45:11.., 1:49:13.., 1:60:8
act [2]– - 1:21:4.., 1:60:1
action [1]– - 1:34:5

actively [1]– - 1:51:3
acts [1]– - 1:31:16
actual [5]– - 1:39:7..,
1:39:18.., 1:45:3.., 1:57:19..,
1:60:15
add [4]– - 1:7:11.., 1:22:16
.., 1:24:3.., 1:61:9
adding [2]– - 1:7:13..,
1:12:1
addition [1]– - 1:22:8..,
1:26:4
additional [15]– - 1:5:14..,
1:7:13.., 1:22:7.., 1:26:25..,
1:27:9.., 1:27:23.., 1:27:25..,
1:28:7.., 1:28:21.., 1:29:9..,
1:30:15.., 1:34:20.., 1:39:8..,
1:51:11.., 1:61:3
address [4]– - 1:17:17..,
1:20:3.., 1:43:13.., 1:54:13
addressed [2]– - 1:43:5..,
1:47:24
addressing [1]– - 1:47:11
adequate [1]– - 1:27:10
administration [1]– -
1:39:23
admitted [1]– - 1:24:2
advancing [1]– - 1:14:16
advise [1]– - 1:28:9
advising [1]– - 1:27:18
affecting [1]– - 1:37:24
afford [1]– - 1:51:15
afternoon [12]– - 1:3:2..,
1:3:7, 1:3:9.., 1:3:10.., 1:3:14
.., 1:3:15.., 1:3:16.., 1:3:21..,
1:3:23.., 1:3:24.., 1:26:24..,
1:38:16
agent [2]– - 1:16:4..,
1:17:22
agents [20]– - 1:15:17..,
1:16:24.., 1:17:7.., 1:17:8..,
1:17:14.., 1:19:4.., 1:37:8..,
1:38:25.., 1:39:18.., 1:40:1..,
1:40:3.., 1:40:5.., 1:40:13..,
1:41:6.., 1:42:23.., 1:43:23..,
1:47:7.., 1:52:23.., 1:56:7..,
1:60:6
agents' [1]– - 1:21:3
ago [9]– - 1:6:12.., 1:8:3..,
1:10:10.., 1:16:20.., 1:23:12
.., 1:26:6.., 1:26:14.., 1:54:5..,
1:56:15
agree [6]– - 1:13:4..,
1:13:5.., 1:18:5.., 1:39:12..,
1:39:13.., 1:47:16

agreed [1]– - 1:19:2
agreement [1]– - 1:45:16
agrees [1]– - 1:13:8
alleged [1]– - 1:16:10
allow [1]– - 1:49:13
allowed [1]– - 1:53:19
alone [2]– - 1:7:18..,
1:59:15
alternative [3]– - 1:9:20..,
1:33:23.., 1:37:20
alternatives [2]– - 1:37:18
.., 1:38:9
amend [1]– - 1:8:23
Amendment [20]– -
1:9:19.., 1:10:18.., 1:10:23..,
1:10:24.., 1:11:2.., 1:11:13..,
1:11:19.., 1:11:23.., 1:12:3,
1:12:9.., 1:12:23.., 1:28:22..,
1:29:9.., 1:29:13.., 1:30:6..,
1:32:25.., 1:41:15.., 1:41:19
.., 1:41:24.., 1:57:15
America [1]– - 1:3:5
amorphous [1]– - 1:10:6
ample [1]– - 1:21:2
amply [2]– - 1:34:4..,
1:34:7
analysis [10]– - 1:12:3..,
1:16:6.., 1:17:18.., 1:28:22..,
1:29:9.., 1:33:11.., 1:34:3..,
1:35:3.., 1:41:24
analyze [1]– - 1:9:13
answer [7]– - 1:6:14..,
1:7:19.., 1:8:17.., 1:9:9..,
1:30:8.., 1:51:17.., 1:59:14
answers [1]– - 1:55:18
anyway [1]– - 1:53:13
apologize [3]– - 1:23:1..,
1:38:12.., 1:43:21
apparatus [2]– - 1:58:25..,
1:59:7
Appeals [1]– - 1:37:22
appearance [2]– - 1:6:8..,
1:8:15
appearances [1]– - 1:3:3
appellate [1]– - 1:13:24
applicable [2]– - 1:42:20..,
1:47:9
application [2]– - 1:35:22
.., 1:55:14
applies [3]– - 1:34:17..,
1:35:19.., 1:47:12
apply [1]– - 1:48:1
appreciate [2]– - 1:18:11

.., 1:38:15

approach [2].. - 1:24:17.., 1:25:11

appropriation [1].. - 1:4:23

April [4].. - 1:25:3.., 1:25:8 .., 1:25:15.., 1:50:21

arguably [1].. - 1:55:6

argued [2].. - 1:42:12.., 1:42:13

arguing [2].. - 1:52:17.., 1:57:21

argument [9].. - 1:4:8.., 1:5:10.., 1:5:23.., 1:13:1.., 1:18:21.., 1:33:18.., 1:41:14 .., 1:42:24.., 1:61:20

arguments [1].. - 1:49:12

armed [4].. - 1:40:7.., 1:40:15.., 1:41:6.., 1:56:18

arrest [6].. - 1:45:14.., 1:46:2.., 1:46:3.., 1:54:14.., 1:55:7.., 1:61:13

arrived [1].. - 1:19:10

Article [1].. - 1:38:4

Ashleigh [1].. - 1:3:18

aside [2].. - 1:31:15.., 1:60:13

assess [1].. - 1:11:6

associated [2].. - 1:26:16 .., 1:43:10

associates [1].. - 1:17:14

assuage [1].. - 1:16:19

assume [1].. - 1:34:17

assure [7].. - 1:10:12.., 1:10:16.., 1:11:12.., 1:12:2.., 1:29:7.., 1:41:22.., 1:58:7

assure...the [1].. - 1:8:7

Atlanta [1].. - 1:46:1

attach [1].. - 1:22:3

attached [12].. - 1:21:8.., 1:22:8.., 1:27:6.., 1:30:21.., 1:39:3.., 1:40:16.., 1:40:21.., 1:48:9.., 1:50:1.., 1:50:4.., 1:50:5.., 1:50:13

attachment [2].. - 1:52:6.., 1:52:7

attachments [4].. - 1:4:7 .., 1:22:5.., 1:22:13.., 1:32:6

attack [4].. - 1:13:25.., 1:40:2.., 1:40:3.., 1:40:4

attacks [1].. - 1:39:20

attempt [1].. - 1:7:25

attempted [1].. - 1:18:19

attempting [1].. - 1:20:14

attempts [1].. - 1:18:25

attention [1].. - 1:5:10

Attorney [1].. - 1:42:7

attorneys [4].. - 1:4:20.., 1:17:5.., 1:35:19.., 1:35:23

attuned [1].. - 1:36:2

August [1].. - 1:14:1

author [1].. - 1:31:23

authorities [1].. - 1:4:8

authority [17].. - 1:6:16.., 1:6:19.., 1:7:11.., 1:7:13.., 1:7:15.., 1:8:22.., 1:9:4.., 1:9:8.., 1:9:11.., 1:9:21.., 1:10:7.., 1:28:25.., 1:33:12.., 1:33:25.., 1:54:25.., 1:60:9

authorize [1].. - 1:40:4

authorized [7].. - 1:31:1.., 1:31:14.., 1:40:1.., 1:40:5.., 1:44:18.., 1:46:22.., 1:47:1

automatically [1].. - 1:45:7

available [1].. - 1:5:16

avenues [1].. - 1:9:25

average [1].. - 1:30:7

avoid [1].. - 1:61:6

aware [2].. - 1:22:21.., 1:59:1

awareness [1].. - 1:25:20

axes [1].. - 1:31:5

### B

bad [1].. - 1:52:22

bail [24].. - 1:6:1.., 1:7:12.., 1:7:14.., 1:8:23.., 1:12:16.., 1:13:9.., 1:14:19.., 1:17:18.., 1:17:23.., 1:28:17.., 1:30:5.., 1:30:9.., 1:33:24.., 1:34:20.., 1:39:16.., 1:44:22.., 1:46:3.., 1:46:5.., 1:49:5.., 1:51:7.., 1:55:2.., 1:55:11.., 1:55:14.., 1:56:24

Bail [29].. - 1:6:7.., 1:6:10.., 1:6:17.., 1:6:22.., 1:7:3.., 1:7:9.., 1:8:4.., 1:8:11.., 1:8:23.., 1:9:7.., 1:9:13.., 1:9:17.., 1:10:4.., 1:10:5.., 1:11:5.., 1:11:9.., 1:12:11.., 1:12:19.., 1:13:9.., 1:15:8.., 1:28:20.., 1:29:6.., 1:38:18.., 1:41:14.., 1:41:19.., 1:42:2.., 1:45:11.., 1:49:13.., 1:60:8

Bannon [1].. - 1:49:8

Bannon's [1].. - 1:52:14

based [1].. - 1:58:6

basis [2].. - 1:15:22.., 1:51:18

begin [1].. - 1:5:23

beginning [1].. - 1:61:22

behalf [1].. - 1:3:22

believes [4].. - 1:45:12.., 1:45:23.., 1:45:24.., 1:48:16

bench [1].. - 1:5:15

best [5].. - 1:10:8.., 1:13:2.., 1:34:24.., 1:36:21.., 1:59:4

better [1].. - 1:34:2

between [12].. - 1:13:18.., 1:13:19.., 1:16:10.., 1:21:2.., 1:22:23.., 1:39:7.., 1:43:22.., 1:46:13.., 1:48:23.., 1:57:17 .., 1:58:13.., 1:61:5

beyond [4].. - 1:19:1.., 1:33:3.., 1:39:1.., 1:42:19

Biden [7].. - 1:30:23.., 1:31:2.., 1:31:21.., 1:39:20.., 1:44:4.., 1:47:2.., 1:54:7

Biden's [7].. - 1:30:25.., 1:31:13.., 1:40:2.., 1:41:11.., 1:44:18.., 1:46:21.., 1:46:25

big [2].. - 1:46:5.., 1:46:13

bit [4].. - 1:29:22.., 1:36:1.., 1:48:2.., 1:49:11

BLANCHE [24].. - 1:3:10 .., 1:24:1.., 1:27:21.., 1:28:1.., 1:38:16.., 1:40:22.., 1:40:25 .., 1:41:21.., 1:45:5.., 1:45:10 .., 1:45:20.., 1:46:24.., 1:47:16.., 1:48:11.., 1:48:14 .., 1:50:5.., 1:50:14.., 1:51:16 .., 1:51:21.., 1:51:25.., 1:52:7 .., 1:53:16.., 1:61:9.., 1:61:12

Blanche [11].. - 1:3:10.., 1:27:19.., 1:27:20.., 1:54:20 .., 1:55:5.., 1:56:15.., 1:57:2.., 1:57:16.., 1:58:3.., 1:58:19.., 1:61:8

Blanche's [1].. - 1:59:14

blank [2].. - 1:13:15.., 1:32:13

blanket [2].. - 1:10:14.., 1:19:16

body [1].. - 1:6:10

bona [1].. - 1:57:8

bond [4].. - 1:9:6.., 1:45:18 .., 1:59:21

Bondoc [1].. - 1:3:18

bottom [1].. - 1:23:5

bounds [3].. - 1:57:13.., 1:60:7

Bove [1].. - 1:3:11

BOVE [1].. - 1:24:24

brags [1].. - 1:59:1

BRATT [2].. - 1:3:7.., 1:4:10

Bratt [1].. - 1:3:7

brief [5].. - 1:22:8.., 1:23:1 .., 1:23:5.., 1:31:12.., 1:35:12

briefing [11].. - 1:5:11.., 1:13:22.., 1:14:9.., 1:21:13.., 1:27:9.., 1:27:23.., 1:35:14.., 1:50:9.., 1:50:24.., 1:51:11.., 1:61:4

briefly [3].. - 1:33:8.., 1:33:21.., 1:53:16

bring [2].. - 1:5:10.., 1:5:15

brought [2].. - 1:15:22.., 1:60:21

build [1].. - 1:51:17

burden [1].. - 1:42:18

### C

c)(xiv [1].. - 1:8:6

call-in [1].. - 1:22:22

campaign [5].. - 1:32:24.., 1:41:10.., 1:55:24.., 1:56:2.., 1:56:10

campaign-related [1].. - 1:32:24

cannot [3].. - 1:36:8.., 1:52:25.., 1:56:9

care [1].. - 1:34:7

careful [1].. - 1:21:13

Carlos [1].. - 1:3:6

carried [1].. - 1:14:6

carry [3].. - 1:15:16.., 1:17:18.., 1:40:5

case [40].. - 1:3:4.., 1:6:3.., 1:7:12.., 1:11:20.., 1:11:25.., 1:12:10.., 1:13:8.., 1:17:1.., 1:17:3.., 1:17:16.., 1:20:23.., 1:21:22.., 1:29:4.., 1:31:8.., 1:31:10.., 1:33:21.., 1:34:9.., 1:35:5.., 1:36:10.., 1:36:12.., 1:37:9.., 1:37:21.., 1:38:2.., 1:39:1.., 1:39:21.., 1:42:3.., 1:46:11.., 1:47:7.., 1:48:4.., 1:48:5.., 1:48:8.., 1:49:18.., 1:50:25.., 1:51:1.., 1:51:9.., 1:53:23.., 1:56:8.., 1:60:2.., 1:60:6.., 1:60:16

cases [8] - 1:9:6_, 1:12:7
_, 1:13:5_, 1:29:5_, 1:48:3_,
1:48:6_, 1:49:17

cast [2] - 1:20:10_,
1:20:11

catch [1] - 1:8:19

catch-all [1] - 1:8:19

categories [1] - 1:30:1

category [1] - 1:29:16

causal [1] - 1:57:17

causation [1] - 1:57:17_,
1:57:25_, 1:58:12

caused [2] - 1:13:17_,
1:16:25

cements [1] - 1:59:2

central [1] - 1:31:8

certain [1] - 1:26:16

certainly [7] - 1:8:9_,
1:17:2_, 1:18:2_, 1:38:8_,
1:41:7_, 1:50:7_, 1:50:15

challenge [2] - 1:12:7_,
1:53:17

chances [1] - 1:59:4

charged [3] - 1:47:25_,
1:49:14_, 1:49:17

cheap [1] - 1:58:22

check [1] - 1:25:5

chill [1] - 1:55:24

chilling [3] - 1:53:18_,
1:55:23_, 1:56:11

Circuit [4] - 1:34:13_,
1:35:6_, 1:47:11_, 1:47:17

circuit [1] - 1:13:23

circuit's [1] - 1:34:25

circumstance [1] -
1:12:5

cited [6] - 1:5:11_,
1:21:12_, 1:26:15_, 1:36:16
_, 1:39:8_, 1:43:21

cites [1] - 1:13:22

citing [3] - 1:8:18_,
1:18:23_, 1:23:7

citizen's [1] - 1:30:7

civil [1] - 1:48:6

clarify [4] - 1:6:4_, 1:6:21
_, 1:7:5_, 1:26:11

clarifying [1] - 1:28:5

clear [10] - 1:21:7_,
1:25:23_, 1:27:23_, 1:34:23
_, 1:35:2_, 1:47:14_, 1:47:22
_, 1:48:3_, 1:50:23_, 1:57:7

clearly [5] - 1:39:3_,

1:39:20_, 1:47:4_, 1:47:5

clerk [1] - 1:3:19

Cleveland [1] - 1:14:1

close [2] - 1:20:17_,
1:32:23

closed [1] - 1:61:21

CNN [1] - 1:23:8

Code [1] - 1:61:16

colleagues [2] - 1:18:14
_, 1:26:24

colloquy [1] - 1:26:13

Columbia [1] - 1:7:24

coming [3] - 1:50:19_,
1:50:22_, 1:59:12

comment [3] - 1:49:8_,
1:55:4_, 1:59:17

commenting [1] -
1:50:16

comments [7] - 1:13:19
_, 1:14:4_, 1:14:5_, 1:16:10_,
1:37:16_, 1:49:6_, 1:56:14

committed [1] - 1:53:10

communication [1] -
1:41:10

community [11] - 1:8:8_,
1:9:1_, 1:10:13_, 1:10:17_,
1:11:13_, 1:12:2_, 1:29:8_,
1:29:20_, 1:30:12_, 1:38:21
_, 1:41:23

compare [1] - 1:48:4

competent [1] - 1:22:7

complain [1] - 1:35:9

complaint [1] - 1:14:3

complaints [1] - 1:57:4

completely [2] - 1:49:24
_, 1:54:8

complicated [1] -
1:51:17

components [2] - 1:4:21
_, 1:4:22

comport [2] - 1:10:20_,
1:10:21

concede [1] - 1:48:15

conceive [2] - 1:31:25_,
1:56:9

concept [1] - 1:23:10

concern [6] - 1:4:14_,
1:10:4_, 1:10:18_, 1:10:23_,
1:27:5_, 1:37:15

concerned [4] - 1:5:17_,
1:12:24_, 1:41:14_, 1:56:11

concerns [7] - 1:9:19_,
1:11:14_, 1:11:18_, 1:11:23

_, 1:16:19_, 1:29:13_,
1:36:20

conclude [2] - 1:10:10_,
1:28:6

concluded [2] - 1:32:15
_, 1:62:2

concludes [2] - 1:28:15_,
1:61:20

conclusions [2] -
1:21:14_, 1:21:16

condition [44] - 1:8:6_,
1:9:21_, 1:10:11_, 1:10:16_,
1:11:1_, 1:11:11_, 1:11:15_,
1:13:12_, 1:17:24_, 1:18:6_,
1:19:2_, 1:28:17_, 1:29:6_,
1:30:10_, 1:33:24_, 1:34:21
_, 1:37:4_, 1:38:23_, 1:39:4_,
1:39:16_, 1:42:1_, 1:42:9_,
1:43:4_, 1:44:5_, 1:44:16_,
1:44:21_, 1:45:9_, 1:45:18_,
1:45:23_, 1:45:25_, 1:51:7_,
1:52:2_, 1:52:11_, 1:52:16_,
1:53:2_, 1:53:18_, 1:54:17_,
1:54:21_, 1:55:6_, 1:57:24_,
1:58:1_, 1:58:7_, 1:58:9_,
1:61:17

conditions [21] - 1:4:2_,
1:6:1_, 1:6:23_, 1:7:7_,
1:7:12_, 1:7:14_, 1:8:2_,
1:8:23_, 1:9:7_, 1:10:19_,
1:12:16_, 1:14:19_, 1:15:9_,
1:30:5_, 1:38:20_, 1:38:21_,
1:39:5_, 1:49:13_, 1:49:15_,
1:55:2_, 1:55:13

conduct [7] - 1:20:11_,
1:28:22_, 1:29:1_, 1:36:3_,
1:37:14_, 1:55:16_, 1:58:9

conducted [1] - 1:57:4

conferral [2] - 1:27:17_,
1:61:6

confess [1] - 1:23:17

confined [1] - 1:6:10

confirm [1] - 1:5:5

confrontation [3] -
1:40:18_, 1:41:3_, 1:41:5

confused [1] - 1:54:18

connection [8] - 1:14:8_,
1:16:10_, 1:16:14_, 1:18:23
_, 1:39:7_, 1:43:22_, 1:48:23
_, 1:58:13

consequence [1] -
1:49:15

consequences [2] -
1:49:19

consider [6] - 1:17:25_,
1:22:8_, 1:26:19_, 1:27:1_,

1:32:15_, 1:44:5

consideration [3] -
1:15:3_, 1:15:6_, 1:33:16

consistent [3] - 1:11:1_,
1:12:4_, 1:42:15

consists [1] - 1:25:2

Constitution [3] -
1:10:20_, 1:10:22_, 1:10:25

constitutional [8] -
1:10:4_, 1:11:7_, 1:11:18_,
1:12:18_, 1:29:2_, 1:33:11_,
1:34:3_, 1:37:13

consult [2] - 1:21:7_,
1:26:23

contemplated [1] -
1:11:1

contempt [1] - 1:44:23

context [11] - 1:9:13_,
1:32:12_, 1:32:14_, 1:33:1_,
1:41:20_, 1:51:11_, 1:52:3_,
1:57:12_, 1:59:23_, 1:60:20

continue [7] - 1:13:1_,
1:18:16_, 1:19:19_, 1:25:16
_, 1:26:3_, 1:28:4_, 1:51:24

contrary [1] - 1:29:5

copies [1] - 1:5:15

core [1] - 1:29:24

correct [17] - 1:4:12_,
1:4:24_, 1:6:24_, 1:7:2_,
1:8:13_, 1:12:12_, 1:12:13_,
1:12:21_, 1:14:23_, 1:15:22
_, 1:25:3_, 1:28:21_, 1:37:10
_, 1:42:12_, 1:45:4_, 1:45:9

correctly [1] - 1:28:23

Counsel [19] - 1:3:4_,
1:39:15_, 1:39:17_, 1:42:10
_, 1:42:14_, 1:45:21_,
1:45:23_, 1:45:24_, 1:47:19
_, 1:48:21_, 1:49:7_, 1:49:12
_, 1:49:24_, 1:50:23_, 1:52:8
_, 1:53:4_, 1:53:9_, 1:53:19_,
1:55:7

counsel [6] - 1:5:4_,
1:23:20_, 1:23:25_, 1:52:24
_, 1:53:25_, 1:54:1

Counsel's [1] - 1:4:20_,
1:5:25_, 1:44:20

country [1] - 1:44:14

couple [3] - 1:5:9_,
1:23:13_, 1:35:10

course [11] - 1:6:7_,
1:11:17_, 1:15:8_, 1:15:10_,
1:19:23_, 1:21:15_, 1:39:13
_, 1:52:21_, 1:53:22_,
1:59:25

court [10] - 1:12:20_, 1:13:16_, 1:13:23_, 1:13:24 _, 1:14:23_, 1:32:15_, 1:37:21_, 1:37:23_, 1:44:23 _, 1:49:17

Court [45] - 1:3:1_, 1:3:13 _, 1:3:18_, 1:4:18_, 1:4:24_, 1:7:6_, 1:7:11_, 1:7:14_, 1:8:5_, 1:9:16_, 1:9:20_, 1:10:1_, 1:10:10_, 1:10:13_, 1:11:5_, 1:11:25_, 1:15:12_, 1:19:9_, 1:21:5_, 1:22:2_, 1:23:18_, 1:24:9_, 1:24:17_, 1:26:9_, 1:26:10_, 1:30:9_, 1:35:1_, 1:35:25_, 1:36:9_, 1:37:21_, 1:38:17_, 1:39:4_, 1:41:16_, 1:41:25_, 1:42:8_, 1:42:17_, 1:42:23_, 1:43:3_, 1:43:13_, 1:47:23_, 1:49:7_, 1:49:25_, 1:51:6_, 1:52:16_, 1:53:2

COURT [123] - 1:3:2_, 1:3:9_, 1:3:15_, 1:3:20_, 1:3:24_, 1:4:14_, 1:4:16_, 1:4:25_, 1:5:2_, 1:5:13_, 1:5:22_, 1:6:4_, 1:6:21_, 1:6:25_, 1:7:9_, 1:7:20_, 1:8:9_, 1:8:18_, 1:9:3_, 1:9:22_, 1:10:3_, 1:10:19_, 1:10:24_, 1:11:20_, 1:12:6_, 1:12:14_, 1:12:17_, 1:12:25 _, 1:14:22_, 1:15:1_, 1:15:8_, 1:15:21_, 1:16:1_, 1:16:9_, 1:16:13_, 1:16:23_, 1:17:5_, 1:17:16_, 1:18:2_, 1:18:5_, 1:18:11_, 1:18:16_, 1:19:5_, 1:20:2_, 1:21:6_, 1:21:21_, 1:22:9_, 1:22:15_, 1:22:24_, 1:23:3_, 1:23:9_, 1:23:15_, 1:23:19_, 1:23:22_, 1:24:3_, 1:24:7_, 1:24:11_, 1:24:13_, 1:24:18_, 1:24:21_, 1:25:1_, 1:25:7, 1:25:10_, 1:25:14_, 1:25:21_, 1:25:23_, 1:26:3_, 1:26:11_, 1:27:2_, 1:27:4_, 1:27:16_, 1:27:22_, 1:28:2_, 1:28:11_, 1:28:13_, 1:28:19 _, 1:28:25_, 1:29:15_, 1:29:22_, 1:30:13_, 1:32:5_, 1:33:6_, 1:33:17_, 1:34:22_, 1:35:16_, 1:35:19_, 1:36:1_, 1:36:12_, 1:36:15_, 1:36:18 _, 1:36:25_, 1:37:7_, 1:37:11 _, 1:38:10_, 1:38:15_, 1:40:20_, 1:40:24_, 1:41:13 _, 1:45:2_, 1:45:6_, 1:45:16_, 1:46:23_, 1:47:8_, 1:48:9_, 1:48:13_, 1:50:3_, 1:50:8_, 1:51:8_, 1:51:20_, 1:51:22_, 1:52:5_, 1:53:14_, 1:54:10_,

1:54:13_, 1:54:20_, 1:55:4_, 1:55:18_, 1:58:4_, 1:60:12_, 1:60:18_, 1:60:24_, 1:61:11 _, 1:61:19

Court's [5] - 1:4:11_, 1:6:16_, 1:6:18_, 1:10:15_, 1:16:19

courtroom [2] - 1:18:13_, 1:43:12

courts [12] - 1:9:6_, 1:13:18_, 1:13:23_, 1:21:14 _, 1:26:8_, 1:26:15_, 1:29:6_, 1:30:2_, 1:34:18_, 1:43:18_, 1:47:17

cover [1] - 1:55:22

created [3] - 1:33:2_, 1:57:13_, 1:59:8

creates [1] - 1:30:16

crime [1] - 1:53:10

criminal [7] - 1:13:5_, 1:14:3_, 1:30:6_, 1:33:25_, 1:48:6_, 1:53:8_, 1:60:1

criteria [1] - 1:9:17

critique [2] - 1:54:6_, 1:54:7

crooked [3] - 1:30:25_, 1:46:21_, 1:46:25

crystal [1] - 1:57:7

crystallization [1] - 1:37:1

curtailed [1] - 1:29:12

curtailing [1] - 1:38:6

## D

D.C [9] - 1:12:10_, 1:13:23_, 1:34:25_, 1:35:6_, 1:37:20_, 1:49:20_, 1:50:24 _, 1:51:1

Dadan [1] - 1:3:17

danger [22] - 1:13:7_, 1:20:22_, 1:21:2_, 1:29:25_, 1:31:22_, 1:32:23_, 1:34:9_, 1:34:23_, 1:35:2_, 1:36:23_, 1:37:7_, 1:38:25_, 1:39:9_, 1:43:8_, 1:43:20_, 1:47:6_, 1:47:14_, 1:47:22_, 1:48:4_, 1:54:3_, 1:56:7_, 1:60:6

danger/harm [1] - 1:34:8

dangerous [8] - 1:14:4_, 1:16:10_, 1:20:22_, 1:33:3_, 1:38:6_, 1:41:8_, 1:49:3_, 1:49:4

date [2] - 1:21:17_,

1:21:19

dated [1] - 1:25:3

David [1] - 1:3:8

De [2] - 1:3:6_, 1:3:22

deadline [3] - 1:28:3_, 1:51:23_, 1:61:2

deadly [4] - 1:31:2_, 1:31:14_, 1:44:19_, 1:47:2

deal [1] - 1:53:6

debate [2] - 1:44:25_, 1:45:24

decide [1] - 1:13:12

decided [2] - 1:34:13_, 1:56:19

deciding [2] - 1:17:25_, 1:41:25

decision [4] - 1:27:14_, 1:40:4_, 1:40:14_, 1:41:11

decorum [1] - 1:18:12

Defendant [3] - 1:4:3_, 1:7:18_, 1:16:22_, 1:17:19_, 1:18:18

defendant [11] - 1:10:14 _, 1:18:18_, 1:20:20_, 1:22:21_, 1:30:6_, 1:37:14_, 1:47:25_, 1:49:4_, 1:49:14_, 1:59:20_, 1:60:2

defendant's [3] - 1:8:1_, 1:20:11_, 1:59:23

defendant-specific [1] - 1:10:14

defendants [5] - 1:13:5_, 1:17:1_, 1:17:3_, 1:17:8_, 1:17:13

defendants' [1] - 1:25:20

defense [13] - 1:17:1_, 1:17:4_, 1:17:5_, 1:17:11_, 1:19:2_, 1:19:6_, 1:19:16_, 1:23:19_, 1:27:6_, 1:27:19_, 1:27:22_, 1:52:23

defined [2] - 1:39:17_, 1:49:24

defined-by-the-Special-Counsel [1] - 1:39:17

definitely [5] - 1:17:13_, 1:21:10_, 1:37:14

definition [3] - 1:39:1_, 1:39:17_, 1:56:10

degree [1] - 1:36:4

delighted [1] - 1:23:17

democracy [2] - 1:31:3_, 1:47:3

Department [2] - 1:4:21 _, 1:54:8

deputy [1] - 1:24:19

describe [1] - 1:36:7

described [5] - 1:11:21_, 1:12:23_, 1:30:1_, 1:40:18_, 1:58:17

describes [1] - 1:61:17

describing [1] - 1:13:10

desire [3] - 1:5:5_, 1:5:20 _, 1:52:21

despicable [2] - 1:31:14 _, 1:31:16

destination [1] - 1:10:1

detail [2] - 1:4:20_, 1:15:13

determination [3] - 1:45:8_, 1:45:15_, 1:45:17

determine [4] - 1:15:3_, 1:16:2_, 1:16:13_, 1:45:3

determined [1] - 1:42:17

die [2] - 1:20:10_, 1:20:11

differ [2] - 1:7:20_, 1:10:5

difference [3] - 1:46:6_, 1:46:13_, 1:60:23

different [6] - 1:29:22_, 1:40:14_, 1:40:23_, 1:47:20 _, 1:54:23_, 1:60:19

differential - 1:12:17

differs [1] - 1:7:24

digested [1] - 1:32:17

dimension [2] - 1:11:18 _, 1:12:18

directly [1] - 1:48:25

discuss [2] - 1:33:21_, 1:61:22

discussed [3] - 1:39:6_, 1:39:19_, 1:40:6

discussion [4] - 1:23:25 _, 1:28:15_, 1:33:15_, 1:54:20

disposal [1] - 1:59:3

dispute [3] - 1:21:20_, 1:26:18_, 1:47:5

district [8] - 1:13:23_, 1:37:21_, 1:37:22_, 1:38:4_, 1:55:3_, 1:55:11_, 1:55:15_, 1:55:17

District [1] - 1:7:24

division [1] - 1:13:24

docket [5] - 1:4:2_, 1:4:4 _, 1:4:5_, 1:14:14_, 1:26:1

document [1]₋ - 1:18:23

documented [1]₋ - 1:13:18

documents [2]₋ - 1:14:18₋, 1:20:1

DOJ [9]₋ - 1:30:25₋, 1:31:14₋, 1:31:17₋, 1:40:2₋, 1:41:11₋, 1:44:18₋, 1:46:21₋, 1:46:25₋, 1:56:19

Donald [1]₋ - 1:3:5

done [2]₋ - 1:9:7₋, 1:12:3

Donnie [1]₋ - 1:3:22

double [1]₋ - 1:25:5

double-check [1]₋ - 1:25:5

down [5]₋ - 1:36:20₋, 1:37:3₋, 1:38:12₋, 1:46:23₋, 1:46:25

doxxed [3]₋ - 1:15:18₋, 1:52:23₋, 1:52:24

doxxing [2]₋ - 1:16:20₋, 1:17:17

draw [2]₋ - 1:21:14₋, 1:21:15

during [11]₋ - 1:5:10₋, 1:18:21₋, 1:20:13₋, 1:20:20₋, 1:26:13₋, 1:37:17₋, 1:42:24₋, 1:56:14₋, 1:56:25₋, 1:57:11

dynamic [1]₋ - 1:13:18

E

E-D [1]₋ - 1:36:14

effect [4]₋ - 1:23:14₋, 1:28:8₋, 1:50:18₋, 1:55:23

effort [2]₋ - 1:36:21₋, 1:51:1

either [5]₋ - 1:5:15₋, 1:5:18₋, 1:10:5₋, 1:20:4₋, 1:47:19

elect [1]₋ - 1:26:6

elected [1]₋ - 1:51:4

election [1]₋ - 1:41:9

Eleventh [1]₋ - 1:47:11₋, 1:47:17

eliminate [2]₋ - 1:9:19₋, 1:11:13

eliminates [1]₋ - 1:11:6

elsewhere [1]₋ - 1:54:15

email [1]₋ - 1:31:13

Emil [1]₋ - 1:3:11

employed [1]₋ - 1:35:24

end [1]₋ - 1:14:20

endangers [2]₋ - 1:29:19₋, 1:29:20

enforced [1]₋ - 1:54:22

enforcement [21]₋ - 1:6:2₋, 1:14:23₋, 1:15:11₋, 1:34:9₋, 1:36:24₋, 1:37:8₋, 1:38:25₋, 1:39:10₋, 1:39:12₋, 1:41:9₋, 1:42:13₋, 1:43:9₋, 1:47:7₋, 1:52:22₋, 1:53:23₋, 1:54:3₋, 1:54:16₋, 1:56:7₋, 1:60:6₋, 1:60:20

enforcing [1]₋ - 1:55:13

engage [1]₋ - 1:33:15

enhance [1]₋ - 1:59:4

ensure [6]₋ - 1:6:8₋, 1:6:19₋, 1:7:15₋, 1:10:25₋, 1:19:11₋, 1:38:20

entitled [1]₋ - 1:59:25

entry [4]₋ - 1:4:3₋, 1:4:4₋, 1:4:5₋, 1:42:25

environment [4]₋ - 1:33:1₋, 1:57:12₋, 1:58:16₋, 1:59:8

envision [1]₋ - 1:54:16

evaluation [1]₋ - 1:58:9

evening [1]₋ - 1:61:25

event [1]₋ - 1:31:8

evidence [20]₋ - 1:16:25₋, 1:17:6₋, 1:24:5₋, 1:25:13₋, 1:26:8₋, 1:26:25₋, 1:27:11₋, 1:27:25₋, 1:32:7₋, 1:32:19₋, 1:42:14₋, 1:43:25₋, 1:44:1₋, 1:49:25₋, 1:50:1₋, 1:52:15₋, 1:52:17₋, 1:52:19₋, 1:52:20₋, 1:54:3

evidentiary [13]₋ - 1:16:2₋, 1:21:6₋, 1:21:11₋, 1:21:21₋, 1:22:10₋, 1:22:16₋, 1:24:4₋, 1:26:5₋, 1:27:18₋, 1:28:15₋, 1:51:9₋, 1:58:6₋, 1:61:3

ex [5]₋ - 1:46:9₋, 1:54:13₋, 1:54:19₋, 1:54:22₋, 1:55:8

ex-parte [5]₋ - 1:46:9₋, 1:54:13₋, 1:54:19₋, 1:54:22₋, 1:55:8

exactly [3]₋ - 1:20:7₋, 1:26:11₋, 1:29:16

examined [1]₋ - 1:13:16

example [8]₋ - 1:21:16₋, 1:30:18₋, 1:31:4₋, 1:37:21₋, 1:45:21₋, 1:47:23₋, 1:49:18₋, 1:59:20

examples [1]₋ - 1:43:21

except [2]₋ - 1:48:12₋, 1:49:25

excuse [6]₋ - 1:6:15₋, 1:7:12₋, 1:13:19₋, 1:13:21₋, 1:25:1₋, 1:31:23

executed [1]₋ - 1:40:3

execution [1]₋ - 1:15:19

exercising [1]₋ - 1:33:12

Exhibit [12]₋ - 1:24:5₋, 1:25:13₋, 1:30:21₋, 1:31:11₋, 1:44:17₋, 1:46:20₋, 1:46:24₋, 1:50:17₋, 1:50:18₋, 1:50:20₋, 1:56:1

exhibit [2]₋ - 1:59:17₋, 1:59:18

exhibits [17]₋ - 1:16:14₋, 1:18:19₋, 1:21:7₋, 1:21:22₋, 1:22:3₋, 1:25:18₋, 1:27:5₋, 1:27:7₋, 1:30:14₋, 1:30:15₋, 1:30:16₋, 1:30:21₋, 1:39:3₋, 1:48:9₋, 1:50:1₋, 1:50:4₋, 1:50:5

Exhibits [1]₋ - 1:48:7

exists [3]₋ - 1:5:17₋, 1:9:4₋, 1:32:15

expand [1]₋ - 1:51:9

expect [1]₋ - 1:18:12

expenditure [1]₋ - 1:4:19

explain [4]₋ - 1:8:21₋, 1:10:9₋, 1:18:7₋, 1:18:10

explained [1]₋ - 1:33:22

explanation [1]₋ - 1:34:24

explicit [1]₋ - 1:14:4

explicitly [1]₋ - 1:35:1

expression [1]₋ - 1:40:1

extended [1]₋ - 1:14:8

extent [4]₋ - 1:4:19₋, 1:21:20₋, 1:35:8₋, 1:35:9

extremely [3]₋ - 1:39:22₋, 1:39:23₋, 1:53:18

F

fact [13]₋ - 1:16:17₋, 1:17:22₋, 1:18:8₋, 1:19:18₋, 1:21:16₋, 1:21:18₋, 1:40:7₋, 1:52:19₋, 1:52:22₋, 1:52:25₋, 1:53:4₋, 1:57:17₋, 1:58:17

factor [1]₋ - 1:17:25

factors [1]₋ - 1:42:2

facts [10]₋ - 1:21:15₋, 1:21:19₋, 1:21:20₋, 1:21:23₋, 1:22:2₋, 1:22:4₋, 1:26:16₋, 1:48:4₋, 1:48:5₋, 1:48:8

factual [6]₋ - 1:16:14₋, 1:21:25₋, 1:26:7₋, 1:26:19₋,

1:51:18₋, 1:58:13

fair [2]₋ - 1:37:13₋, 1:54:8

fall [3]₋ - 1:11:19₋, 1:11:23₋, 1:29:17

falling [1]₋ - 1:29:25

falls [1]₋ - 1:29:15

false [6]₋ - 1:31:6₋, 1:32:2₋, 1:44:24₋, 1:59:10₋, 1:59:11

falsely [1]₋ - 1:20:14

family [5]₋ - 1:20:15₋, 1:31:22₋, 1:32:22₋, 1:41:2₋, 1:59:12

far [9]₋ - 1:5:16₋, 1:7:2₋, 1:16:1₋, 1:18:10₋, 1:19:6₋, 1:30:1₋, 1:34:10₋, 1:41:13₋, 1:43:4

fashion [2]₋ - 1:10:14

fashioning [1]₋ - 1:41:22

FBI [15]₋ - 1:14:6₋, 1:19:3₋, 1:20:13₋, 1:20:23₋, 1:31:1₋, 1:32:22₋, 1:39:18₋, 1:40:1₋, 1:40:3₋, 1:41:1₋, 1:41:6₋, 1:42:23₋, 1:43:23₋, 1:47:1₋, 1:59:11

features [1]₋ - 1:41:19

federal [1]₋ - 1:14:3

felt [1]₋ - 1:26:21

few [3]₋ - 1:15:6₋, 1:26:14₋, 1:55:21

fide [1]₋ - 1:57:8

Fields [1]₋ - 1:3:11

fight [1]₋ - 1:40:10

file [7]₋ - 1:6:14₋, 1:27:17₋, 1:27:23₋, 1:27:24₋, 1:28:7₋, 1:28:8₋, 1:61:2

filed [12]₋ - 1:4:3₋, 1:4:4₋, 1:5:25₋, 1:14:3₋, 1:14:10₋, 1:18:19₋, 1:26:1₋, 1:31:18₋, 1:33:4₋, 1:43:1₋, 1:54:22₋, 1:57:9

filing [2]₋ - 1:28:7₋, 1:30:20

filings [4]₋ - 1:4:6₋, 1:14:23₋, 1:22:13₋, 1:61:5

findings [1]₋ - 1:26:7

fine [2]₋ - 1:24:11₋, 1:57:1

firearms [1]₋ - 1:40:5

firms [2]₋ - 1:35:20₋, 1:35:23

first [12]₋ - 1:3:3₋, 1:6:17₋, 1:9:9₋, 1:24:9₋, 1:30:7₋, 1:30:20₋, 1:31:4₋, 1:34:4₋, 1:37:6₋, 1:50:1₋, 1:55:22₋, 1:57:20

First [20]_ - 1:9:19_, 1:10:17_, 1:10:23_, 1:10:24 _, 1:11:1_, 1:11:13_, 1:11:18 _, 1:11:22_, 1:12:3_, 1:12:8_, 1:12:23_, 1:28:22_, 1:29:9_, 1:29:13_, 1:30:6_, 1:32:25_, 1:41:15_, 1:41:19_, 1:41:24 _, 1:57:15

fit [1]_ - 1:33:18

fixing [1]_ - 1:24:8

flagrantly [1]_ - 1:31:6_, 1:32:2

flippant [2]_ - 1:45:22_, 1:49:21

flow [1]_ - 1:33:11

focused [2]_ - 1:8:24_, 1:52:16

folks [1]_ - 1:53:10

follow [2]_ - 1:43:6_, 1:44:12

followers [6]_ - 1:22:23_, 1:48:18_, 1:49:2_, 1:58:22_, 1:58:23

following [1]_ - 1:47:14

follows [2]_ - 1:29:9_, 1:31:19

footnote [3]_ - 1:34:12_, 1:47:10_, 1:47:16

Footnote [1]_ - 1:36:17

force [4]_ - 1:31:2_, 1:31:14_, 1:44:19_, 1:47:2

foreseeable [13]_ - 1:13:7 _, 1:20:22_, 1:36:23_, 1:37:7 _, 1:38:25_, 1:39:9_, 1:43:8_, 1:43:20_, 1:47:6_, 1:54:3_, 1:56:6_, 1:60:4_, 1:60:5

foreseeably [1]_ - 1:41:8

forget [1]_ - 1:60:4

forgive [1]_ - 1:24:24

formally [2]_ - 1:46:4_, 1:51:10

former [5]_ - 1:31:24_, 1:37:16_, 1:55:14_, 1:56:5_, 1:57:18

formulation [1]_ - 1:35:2

forth [3]_ - 1:32:18_, 1:42:14_, 1:42:19

forward [2]_ - 1:44:1_, 1:49:25

frame [1]_ - 1:7:2

framework [5]_ - 1:8:10_, 1:9:12_, 1:9:20_, 1:13:10_, 1:41:18

free [1]_ - 1:33:17

freestanding [2]_ - 1:6:25 _, 1:10:6

Friday [2]_ - 1:4:4_, 1:49:22

frustrated [4]_ - 1:39:23_, 1:49:22_, 1:49:23_, 1:59:25

frustrating [1]_ - 1:49:21

frustration [1]_ - 1:40:1

full [2]_ - 1:15:10_, 1:22:11

fully [1]_ - 1:16:18

functional [1]_ - 1:60:23

fundraising [2]_ - 1:39:7_, 1:52:12

furthermore [2]_ - 1:32:19_, 1:56:3

### G

gag [4]_ - 1:38:1_, 1:46:6_, 1:46:14_, 1:54:24

General [1]_ - 1:42:7

general [2]_ - 1:6:6_, 1:8:14

generally [1]_ - 1:36:1

Georgia [1]_ - 1:49:19

given [3]_ - 1:22:12_, 1:42:9_, 1:49:1

glean [1]_ - 1:16:14

goal [1]_ - 1:6:6

Government [2]_ - 1:24:5 _, 1:25:13

government [16]_ - 1:10:11_, 1:13:12_, 1:26:14 _, 1:26:20_, 1:31:25_, 1:38:18_, 1:38:23_, 1:42:21 _, 1:43:3_, 1:43:6_, 1:45:12_, 1:46:16_, 1:48:18_, 1:51:6_, 1:55:24_, 1:56:24

government's [5]_ - 1:4:1 _, 1:9:13_, 1:26:17_, 1:46:18 _, 1:47:4

Government's [6]_ - 1:24:10_, 1:24:22_, 1:24:25 _, 1:25:1_, 1:25:12_, 1:25:14

grand [1]_ - 1:61:23

grant [3]_ - 1:6:16_, 1:9:16 _, 1:17:25

granted [1]_ - 1:14:10

grappling [1]_ - 1:26:15

gratuitous [1]_ - 1:18:22_, 1:42:25

gratuitously [2]_ - 1:42:22

GRAYN [1]_ - 1:36:14

Grayned [1]_ - 1:36:10

group [1]_ - 1:51:2

guess [2]_ - 1:12:6_, 1:52:13

guns [1]_ - 1:40:13

### H

hackles [1]_ - 1:31:17

half [1]_ - 1:54:5

Hall [1]_ - 1:23:8

hand [3]_ - 1:24:25_, 1:37:15_, 1:40:11

handle [2]_ - 1:41:5_, 1:43:18

handwriting [1]_ - 1:25:24

happy [3]_ - 1:16:16_, 1:22:10_, 1:23:18

harassment [2]_ - 1:14:13_, 1:53:8

HARBACH [9]_ - 1:5:8_, 1:5:21_, 1:5:24_, 1:6:12_, 1:6:24_, 1:7:5_, 1:7:10_, 1:7:23_, 1:8:16_, 1:8:21_, 1:9:9_, 1:9:23_, 1:10:8_, 1:10:21_, 1:11:3_, 1:11:24_, 1:12:13_, 1:12:15_, 1:12:21 _, 1:13:2_, 1:14:24_, 1:15:5_, 1:15:15_, 1:15:24_, 1:16:5_, 1:16:12_, 1:16:16_, 1:17:2_, 1:17:10_, 1:17:21_, 1:18:4_, 1:18:7_, 1:18:15_, 1:18:17_, 1:19:20_, 1:20:9_, 1:21:10_, 1:22:6_, 1:22:14_, 1:22:18_, 1:22:25_, 1:23:4_, 1:23:10_, 1:23:17_, 1:23:21_, 1:23:24 _, 1:24:6_, 1:24:8_, 1:24:12_, 1:24:14_, 1:24:20_, 1:25:5_, 1:25:9_, 1:25:11_, 1:25:17_, 1:25:22_, 1:26:2_, 1:26:4_, 1:26:13_, 1:27:3_, 1:27:14_, 1:28:5_, 1:28:12_, 1:28:14_, 1:28:24_, 1:29:3_, 1:29:18_, 1:30:3_, 1:30:18_, 1:32:10_, 1:33:8_, 1:33:20_, 1:34:24_, 1:35:18_, 1:35:21_, 1:36:5_, 1:36:14_, 1:36:16_, 1:36:19 _, 1:37:5_, 1:37:10_, 1:37:12 _, 1:38:11_, 1:54:12_, 1:54:18_, 1:55:1_, 1:55:10_, 1:55:21_, 1:58:14_, 1:60:15 _, 1:60:22

Harbach [12]_ - 1:3:8_, 1:4:10_, 1:5:2_, 1:5:7_, 1:18:11_, 1:28:4_, 1:38:15_, 1:38:24_, 1:42:22_, 1:46:18 _, 1:51:15_, 1:54:11

harm [1]_ - 1:20:14

harmed [1]_ - 1:15:4

hear [5]_ - 1:4:8_, 1:5:2_, 1:5:4_, 1:33:10_, 1:33:14

heard [2]_ - 1:5:18_, 1:41:14

hearing [4]_ - 1:43:11_, 1:45:2_, 1:46:5

held [3]_ - 1:44:22_, 1:46:4

help [1]_ - 1:53:22

helpful [1]_ - 1:33:19

hesitating [1]_ - 1:17:12

hesitation [1]_ - 1:17:10

highlighting [1]_ - 1:25:18

himself [3]_ - 1:18:19_, 1:57:12

history [1]_ - 1:19:6

hold [2]_ - 1:58:4

home [2]_ - 1:4:22_, 1:39:24

honestly [1]_ - 1:46:17

Honor [102]_ - 1:3:7_, 1:3:10_, 1:3:16_, 1:3:21_, 1:4:10_, 1:4:17_, 1:5:8_, 1:5:21_, 1:5:24_, 1:8:2_, 1:8:22_, 1:8:24_, 1:9:2_, 1:9:12_, 1:11:4_, 1:11:9_, 1:11:11_, 1:12:13_, 1:12:22 _, 1:13:11_, 1:14:8_, 1:14:10 _, 1:14:15_, 1:15:25_, 1:16:17_, 1:17:3_, 1:17:10_, 1:17:21_, 1:17:24_, 1:18:15 _, 1:19:1_, 1:19:20_, 1:20:18 _, 1:21:11_, 1:21:15_, 1:22:7 _, 1:22:14_, 1:22:19_, 1:23:1 _, 1:23:4_, 1:23:21_, 1:24:1_, 1:24:6_, 1:24:14_, 1:24:24_, 1:25:9_, 1:25:17_, 1:26:2_, 1:26:5_, 1:26:7_, 1:26:18_, 1:26:25_, 1:27:21_, 1:28:1_, 1:28:16_, 1:28:24_, 1:29:19 _, 1:30:4_, 1:30:9_, 1:32:20_, 1:32:24_, 1:33:9_, 1:33:20_, 1:33:23_, 1:34:11_, 1:35:5_, 1:35:8_, 1:35:18_, 1:35:21_, 1:37:5_, 1:38:8_, 1:38:11_, 1:38:16_, 1:40:17_, 1:41:21 _, 1:42:12_, 1:43:8_, 1:44:4_, 1:44:7_, 1:44:10_, 1:44:17_, 1:45:10_, 1:45:15_, 1:45:20 _, 1:46:4_, 1:46:11_, 1:48:12 _, 1:50:14_, 1:51:25_, 1:52:19_, 1:53:5_, 1:54:9_, 1:54:12_, 1:55:1_, 1:55:12_, 1:57:9_, 1:57:20_, 1:57:25_, 1:61:9_, 1:61:14_, 1:61:18

Honor's [14]– 1:5:10–, 1:6:14–, 1:8:17–, 1:9:10–, 1:14:14–, 1:14:25–, 1:20:10 –, 1:28:6–, 1:30:8–, 1:33:12–, 1:33:16–, 1:36:5–, 1:55:10–, 1:60:8

hope [2]– 1:3:24–, 1:53:11

horrible [2]– 1:48:24–, 1:52:24

horribles [1]– 1:58:2

host [1]– 1:53:7

house [1]– 1:56:18

hunt [2]– 1:30:24–, 1:57:6

Hunter [1]– 1:44:4

hypothetically [1]– 1:55:5

I

icebox [1]– 1:30:24

idea [1]– 1:29:1

identify [3]– 1:42:25–, 1:43:1–, 1:48:21

identity [1]– 1:17:14

illegal [3]– 1:30:25–, 1:46:21–, 1:46:25

illuminate [1]– 1:59:22

imagine [1]– 1:55:13

immaterial [1]– 1:16:5

imminent [20]– 1:13:7–, 1:20:22–, 1:30:16–, 1:34:15 –, 1:34:18–, 1:34:19–, 1:34:22–, 1:36:23–, 1:37:7–, 1:38:24–, 1:39:9–, 1:41:8–, 1:43:8–, 1:43:20–, 1:47:6–, 1:47:15–, 1:54:2–, 1:56:6–, 1:60:4–, 1:60:5

implement [1]– 1:54:24

implemented [1]– 1:20:4–, 1:45:4

implicates [1]– 1:31:9

implicit [2]– 1:10:15–, 1:58:8

importance [3]– 1:14:16 –, 1:32:11–, 1:32:12

important [4]– 1:13:14–, 1:30:11–, 1:31:7

impose [12]– 1:8:1–, 1:8:5–, 1:33:24–, 1:38:24–, 1:39:4–, 1:39:15–, 1:42:9–, 1:51:7–, 1:52:2–, 1:53:2–, 1:56:4–, 1:57:23

imposed [10]– 1:19:1–,

1:29:6–, 1:38:20–, 1:44:16–, 1:44:21–, 1:45:23–, 1:46:6–, 1:52:11–, 1:52:15–, 1:54:21

imposing [4]– 1:9:20–, 1:20:6–, 1:44:5–, 1:58:1

imprisonment [1]– 1:49:16

Inaudible [1]– 1:23:25

incited [1]– 1:44:9

incitement [3]– 1:29:15 –, 1:29:23–, 1:39:19

include [1]– 1:51:9

included [4]– 1:25:18–, 1:40:18–, 1:41:6–, 1:42:22

includes [3]– 1:41:24–, 1:49:16

including [4]– 1:19:3–, 1:20:12–, 1:41:6–, 1:61:14

incorporate [1]– 1:21:24

indeed [1]– 1:57:3

indefinite [1]– 1:4:23

independent [1]– 1:33:12

indicated [3]– 1:10:5–, 1:16:3–, 1:58:12

indicating [1]– 1:29:12

indicating) [1]– 1:56:8

indignant [1]– 1:43:22

individual [2]– 1:44:2–, 1:44:3

individuals [5]– 1:19:23 –, 1:19:25–, 1:48:18–, 1:48:22–, 1:48:23

inflammatory [1]– 1:32:2

inherent [8]– 1:6:18–, 1:7:15–, 1:9:21–, 1:10:6–, 1:33:25–, 1:36:8–, 1:54:25–, 1:60:9

inquiry [2]– 1:29:2–, 1:41:15

insisted [1]– 1:43:5

insofar [1]– 1:12:23

instance [1]– 1:30:7

instituting [1]– 1:38:1

integrity [9]– 1:6:6–, 1:6:19–, 1:7:15–, 1:8:13–, 1:9:23–, 1:33:13–, 1:33:25–, 1:37:24–, 1:60:16

intend [1]– 1:28:10

intention [1]– 1:26:10

interest [5]– 1:8:12–, 1:30:11–, 1:35:8–, 1:57:8

interests [1]– 1:6:9

interrupting [1]– 1:24:24

intervene [1]– 1:21:5

intimidation [1]– 1:14:13

introduce [1]– 1:23:15

investigate [1]– 1:53:11

investigation [3]– 1:37:8 –, 1:42:6–, 1:56:8

invited [1]– 1:26:20

inviting [2]– 1:32:2–, 1:32:5

involved [2]– 1:6:2–, 1:53:23

involves [1]– 1:52:17

involving [2]– 1:48:6–, 1:48:7

irrespective [1]– 1:55:16

irresponsible [1]– 1:33:3

IRVING [1]– 1:3:21

Irving [1]– 1:3:21

issue [5]– 1:19:17–, 1:26:15–, 1:42:24–, 1:43:5–, 1:43:17

issued [1]– 1:61:13

issues [3]– 1:40:19–, 1:43:14–, 1:43:18

itching [1]– 1:31:20

items [2]– 1:29:17–, 1:51:10

itself [5]– 1:17:9–, 1:35:25 –, 1:43:17–, 1:52:10–, 1:52:20

J

jail [1]– 1:59:16

James [1]– 1:3:8

Jay [1]– 1:3:7

Joe [7]– 1:30:25–, 1:31:2 –, 1:31:21–, 1:46:21–, 1:46:25–, 1:47:2–, 1:54:7

John [1]– 1:3:21

joined [1]– 1:3:11

judge [4]– 1:38:5–, 1:46:1 –, 1:46:11–, 1:61:15

Judge [1]– 1:55:12

judges [1]– 1:44:10

judicial [10]– 1:6:19–, 1:37:25–, 1:45:8–, 1:45:13–, 1:45:17–, 1:46:12–, 1:54:15 –, 1:54:22–, 1:61:14–,

juncture [1]– 1:17:19

June [5]– 1:14:2–, 1:27:16–, 1:28:3–, 1:51:23–, 1:61:1

jurisdiction [1]– 1:55:8

jurisdictions [2]– 1:7:22 –, 1:54:23

jury [1]– 1:61:23

Justice [2]– 1:4:21–, 1:54:7

justification [3]– 1:42:20 –, 1:43:3–, 1:52:10

justifications [2]– 1:8:3 –, 1:52:11

justified [3]– 1:34:5–, 1:34:6–, 1:42:15

justifying [1]– 1:52:15

K

Kendra [1]– 1:3:12

key [1]– 1:31:19

kind [1]– 1:54:24

knock [1]– 1:59:5

knows [8]– 1:32:20–, 1:32:21–, 1:33:2–, 1:44:11–, 1:49:1–, 1:50:24–, 1:57:20–, 1:59:2

L

labelled [1]– 1:53:20

lack [1]– 1:34:2

Lago [12]– 1:14:2–, 1:14:6–, 1:31:1–, 1:31:15–, 1:39:24–, 1:40:12–, 1:44:2–, 1:44:19–, 1:46:22–, 1:47:1–, 1:49:6–, 1:56:20

laid [3]– 1:9:15–, 1:9:18–, 1:42:19

land [2]– 1:10:17–, 1:10:22

language [7]– 1:34:4–, 1:34:20–, 1:35:10–, 1:35:13 –, 1:35:23–, 1:37:3–, 1:60:16

largely [1]– 1:19:7

last [4]– 1:36:19–, 1:37:18 –, 1:50:16–, 1:52:13

law [28]– 1:3:18–, 1:6:2–, 1:6:11–, 1:11:20–, 1:14:22–, 1:15:11–, 1:19:18–, 1:34:9–, 1:35:19–, 1:35:23–, 1:36:24 –, 1:37:8–, 1:38:25–, 1:39:10 –, 1:39:12–, 1:41:8–, 1:42:13

..., 1:42:15..., 1:43:6..., 1:43:8...,
1:47:6..., 1:52:22..., 1:53:21...,
1:53:23..., 1:54:3..., 1:56:7...,
1:60:6..., 1:60:19

lawyers [4]... - 1:17:8...,
1:17:13..., 1:36:1..., 1:37:23

Lazaro [1]... - 1:3:11

lead [2]... - 1:4:9..., 1:30:18

least [16]... - 1:6:16..., 1:9:25
..., 1:11:23..., 1:15:9..., 1:18:6...,
1:18:8..., 1:35:13..., 1:37:18...,
1:37:20..., 1:38:4..., 1:38:5...,
1:38:9..., 1:38:19..., 1:41:22...,
1:46:7..., 1:46:8

leave [3]... - 1:3:12..., 1:3:18
..., 1:33:19

lectern [2]... - 1:4:15...,
1:5:23

legal [9]... - 1:6:13..., 1:7:2...,
1:8:10..., 1:17:16..., 1:41:18...,
1:47:8..., 1:47:9..., 1:57:25...,
1:61:4

legalese [1]... - 1:36:2

legally [1]... - 1:41:13

legitimate [2]... - 1:55:24...,
1:56:1

less [4]... - 1:4:17..., 1:6:13...,
1:35:22..., 1:61:10

lethal [2]... - 1:31:2..., 1:47:2

letter [2]... - 1:39:7...,
1:52:12

liberty [2]... - 1:45:4...,
1:45:7

lies [2]... - 1:59:11

life [1]... - 1:43:23

light [1]... - 1:57:11

likelihood [2]... - 1:34:15...,
1:47:12

limit [2]... - 1:36:7..., 1:36:8

limited [3]... - 1:30:7...,
1:36:22..., 1:52:12

limits [2]... - 1:53:21...,
1:60:2

line [2]... - 1:20:18..., 1:59:13

lines [1]... - 1:46:25

link [1]... - 1:57:17

listen [7]... - 1:23:7...,
1:44:14..., 1:44:15..., 1:48:15
..., 1:49:2..., 1:58:19..., 1:58:20

listening [1]... - 1:46:17

live [1]... - 1:5:18

loaded [2]... - 1:20:16...,
1:31:21

local [3]... - 1:35:14...,
1:35:16..., 1:42:15

locked [2]... - 1:20:15...,
1:31:21

long-standing [1]... -
1:13:17

look [13]... - 1:15:9..., 1:22:4
..., 1:38:19..., 1:39:5..., 1:39:17
..., 1:40:16..., 1:42:1..., 1:43:20
..., 1:44:16..., 1:47:21...,
1:47:22..., 1:48:3..., 1:51:25

looking [2]... - 1:15:10...,
1:37:2

looks [1]... - 1:44:17

loss [1]... - 1:31:25

lost [1]... - 1:49:11

lower [1]... - 1:46:17

lunch [1]... - 1:3:25

## M

ma'am [1]... - 1:14:25

magistrate [2]... - 1:46:11
..., 1:61:15

Magistrate [1]... - 1:55:12

maintaining [1]... - 1:19:12

Manhattan [1]... - 1:30:24

manifestly [1]... - 1:20:14...,
1:59:10

manner [1]... - 1:26:7

Mar [12]... - 1:14:2..., 1:14:6
..., 1:31:1..., 1:31:15..., 1:39:24
..., 1:40:12..., 1:44:2..., 1:44:19
..., 1:46:22..., 1:47:1..., 1:49:6...,
1:56:20

Mar-a-Lago [12]... - 1:14:2
..., 1:14:6..., 1:31:1..., 1:31:15...,
1:39:24..., 1:40:12..., 1:44:2...,
1:44:19..., 1:46:22..., 1:47:1...,
1:49:6..., 1:56:20

mark [2]... - 1:24:6...,
1:24:10

material [4]... - 1:5:14...,
1:47:13..., 1:61:23

matter [2]... - 1:19:18...,
1:44:11

matters [3]... - 1:42:11...,
1:47:19..., 1:47:20

mean [17]... - 1:10:19...,
1:38:13..., 1:40:9..., 1:40:10...,
1:43:19..., 1:45:11..., 1:47:18
..., 1:48:20..., 1:50:6..., 1:52:3...,
1:52:8..., 1:56:22..., 1:58:14...,
1:58:24..., 1:60:5..., 1:60:13...,
1:60:18

meanings [1]... - 1:7:11

means [10]... - 1:8:25...,
1:17:3..., 1:17:17..., 1:17:23...,
1:18:8..., 1:20:5..., 1:20:25...,
1:33:23..., 1:38:5..., 1:41:22

meant [3]... - 1:6:13...,
1:57:8..., 1:58:22

meantime [1]... - 1:45:20

mechanics [1]... - 1:55:9

media [4]... - 1:13:20...,
1:22:23..., 1:32:16..., 1:58:24

meet [1]... - 1:9:14

meeting [1]... - 1:56:9

members [1]... - 1:17:5

mentally [1]... - 1:44:1

mention [1]... - 1:14:15

mentioned [5]... - 1:22:6...,
1:23:11..., 1:26:14..., 1:26:16
..., 1:28:19

met [3]... - 1:11:10...,
1:42:18..., 1:45:3

might [7]... - 1:17:11...,
1:20:1..., 1:26:23..., 1:35:8...,
1:36:3..., 1:37:20..., 1:55:2

mind [1]... - 1:30:16

mindset [1]... - 1:59:24

minute [2]... - 1:4:17...,
1:56:15

minutes [1]... - 1:26:14

miscounted [1]... - 1:21:23

misleading [1]... - 1:31:9

misstate [1]... - 1:25:3

modification [5]... - 1:4:2...,
1:14:19..., 1:17:19..., 1:17:23
..., 1:56:24

modified [2]... - 1:9:6...,
1:49:5

modify [6]... - 1:5:25...,
1:6:23..., 1:7:7..., 1:7:12...,
1:7:14..., 1:12:16

modifying [2]... - 1:8:1...,
1:30:5

moment [12]... - 1:6:12...,
1:8:3..., 1:10:10..., 1:16:17...,
1:16:20..., 1:22:18..., 1:22:25
..., 1:23:2..., 1:23:12..., 1:25:22
..., 1:26:6..., 1:28:19

money [1]... - 1:51:3

month [2]... - 1:52:13...,
1:54:5

morning [2]... - 1:4:12...,
1:27:15

most [6]... - 1:14:2...,

1:20:12..., 1:31:6..., 1:31:7...,
1:33:18..., 1:52:16

motion [60]... - 1:4:1..., 1:4:7
..., 1:5:3..., 1:5:6..., 1:5:18...,
1:5:25..., 1:6:5..., 1:6:9...,
1:6:14..., 1:6:22..., 1:7:3...,
1:7:4..., 1:7:20..., 1:8:10...,
1:14:9..., 1:15:21..., 1:15:24...,
1:18:14..., 1:21:8..., 1:22:3...,
1:22:5..., 1:22:10..., 1:22:12...,
1:22:16..., 1:23:16..., 1:24:4...,
1:26:20..., 1:27:17..., 1:27:24
..., 1:30:20..., 1:30:21...,
1:31:18..., 1:33:4..., 1:33:7...,
1:33:19..., 1:36:25..., 1:37:6...,
1:39:3..., 1:39:9..., 1:40:17...,
1:40:21..., 1:40:22..., 1:40:23
..., 1:43:1..., 1:44:18..., 1:44:20
..., 1:49:22..., 1:50:2..., 1:55:9...,
1:56:1..., 1:57:7..., 1:57:10...,
1:57:21..., 1:60:20..., 1:61:4...,
1:61:5..., 1:61:21

motions [5]... - 1:7:21...,
1:18:20..., 1:19:15..., 1:39:25
..., 1:54:22

motivated [2]... - 1:6:14...,
1:57:5

move [1]... - 1:16:23

MR [123]... - 1:3:7..., 1:3:10...,
1:3:16..., 1:3:21..., 1:4:10...,
1:4:15..., 1:4:17..., 1:5:1...,
1:5:8..., 1:5:21..., 1:5:24...,
1:6:12..., 1:6:24..., 1:7:5...,
1:7:10..., 1:7:23..., 1:8:16...,
1:8:21..., 1:9:9..., 1:9:23...,
1:10:8..., 1:10:21..., 1:11:3...,
1:11:24..., 1:12:13..., 1:12:15
..., 1:12:21..., 1:13:2..., 1:14:24
..., 1:15:5..., 1:15:15..., 1:15:24
..., 1:16:5..., 1:16:12..., 1:16:16
..., 1:17:2..., 1:17:10..., 1:17:21
..., 1:18:4..., 1:18:7..., 1:18:15...,
1:18:17..., 1:19:20..., 1:20:9...,
1:21:10..., 1:22:6..., 1:22:14...,
1:22:18..., 1:22:25..., 1:23:4...,
1:23:10..., 1:23:17..., 1:23:21
..., 1:23:24..., 1:24:1..., 1:24:6...,
1:24:8..., 1:24:12..., 1:24:14...,
1:24:20..., 1:24:24..., 1:25:5...,
1:25:9..., 1:25:11..., 1:25:17...,
1:25:22..., 1:26:2..., 1:26:4...,
1:26:13..., 1:27:3..., 1:27:14...,
1:27:21..., 1:28:1..., 1:28:5...,
1:28:12..., 1:28:14..., 1:28:24
..., 1:29:3..., 1:29:18..., 1:30:3...,
1:30:18..., 1:32:10..., 1:33:8...,
1:33:20..., 1:34:24..., 1:35:18
..., 1:35:21..., 1:36:5..., 1:36:14
..., 1:36:16..., 1:36:19..., 1:37:5

..., 1:37:10..., 1:37:12...,
1:38:11..., 1:38:16..., 1:40:22
..., 1:40:25..., 1:41:21..., 1:45:5
..., 1:45:10..., 1:45:20...,
1:46:24..., 1:47:16..., 1:48:11
..., 1:48:14..., 1:50:5..., 1:50:14
..., 1:51:16..., 1:51:21...,
1:51:25..., 1:52:7..., 1:53:16...,
1:54:12..., 1:54:18..., 1:55:1...,
1:55:10..., 1:55:21..., 1:58:14
..., 1:60:15..., 1:60:22..., 1:61:9
..., 1:61:12

multiple [5]_ - 1:9:11...,
1:15:19..., 1:31:5..., 1:46:7

Murrell [1]_ - 1:3:22

## N

name [2]_ - 1:16:6..., 1:35:4

namely [5]_ - 1:10:15...,
1:22:21..., 1:32:15..., 1:34:13
..., 1:34:17

names [29]_ - 1:14:12...,
1:14:17..., 1:14:22..., 1:15:2...,
1:15:11..., 1:15:18..., 1:16:4...,
1:16:6..., 1:16:8..., 1:16:18...,
1:16:24..., 1:17:7..., 1:17:22...,
1:18:18..., 1:18:22..., 1:19:3...,
1:19:14..., 1:19:22..., 1:19:23
..., 1:19:24..., 1:19:25..., 1:20:4
..., 1:20:24..., 1:21:3..., 1:42:13
..., 1:42:16..., 1:42:23...,
1:43:12

Nancy [1]_ - 1:36:14

narrow [2]_ - 1:35:7...,
1:36:20

narrowly [5]_ - 1:11:16...,
1:36:21..., 1:37:15..., 1:53:20
..., 1:56:13

nature [1]_ - 1:11:10

Nauta [2]_ - 1:3:5..., 1:3:17

necessarily [4]_ - 1:9:18...,
1:29:13..., 1:31:9..., 1:41:24

necessary [19]_ - 1:8:7...,
1:10:12..., 1:10:16..., 1:11:12
..., 1:12:2..., 1:12:4..., 1:13:13
..., 1:14:19..., 1:26:21..., 1:28:7
..., 1:29:7..., 1:30:10..., 1:38:22...,
1:41:17..., 1:41:23..., 1:42:1...,
1:42:3..., 1:42:9..., 1:58:7

necessity [7]_ - 1:11:17...,
1:11:22..., 1:12:20..., 1:14:11
..., 1:28:17..., 1:28:21..., 1:38:1

need [15]_ - 1:11:6...,
1:11:15..., 1:11:16..., 1:17:23
..., 1:20:3..., 1:26:23..., 1:27:8...,
1:27:18..., 1:28:21..., 1:29:1...,

1:39:13..., 1:43:12..., 1:45:17
..., 1:58:4..., 1:58:11

needed [1]_ - 1:59:20

needs [4]_ - 1:16:9...,
1:34:14..., 1:48:1..., 1:58:12

never [4]_ - 1:29:9...,
1:42:12..., 1:42:16

nevertheless [1]_ -
1:20:1

New [4]_ - 1:13:24...,
1:43:16..., 1:49:20

new [16]_ - 1:27:5..., 1:27:7
..., 1:27:10..., 1:39:4..., 1:39:16
..., 1:44:5..., 1:49:23..., 1:51:7...,
1:52:2..., 1:52:10..., 1:53:2...,
1:53:17..., 1:54:17..., 1:55:6

next [3]_ - 1:3:25..., 1:13:2...,
1:42:4

nice [2]_ - 1:3:25..., 1:61:25

night [1]_ - 1:49:23

nominee [2]_ - 1:42:4...,
1:51:4

none [1]_ - 1:43:9

Nonlawyers [1]_ - 1:36:3

normal [2]_ - 1:40:7...,
1:44:25

note [3]_ - 1:13:15...,
1:20:18..., 1:37:18

nothing [12]_ - 1:28:8...,
1:32:23..., 1:41:8..., 1:44:23...,
1:48:24..., 1:50:25..., 1:51:1...,
1:55:25..., 1:56:15..., 1:57:1...,
1:57:14..., 1:60:25

notice [4]_ - 1:35:7...,
1:35:9..., 1:35:13..., 1:37:13

notion [2]_ - 1:37:19...,
1:55:22

notwithstanding [1]_ -
1:21:2

nowhere [1]_ - 1:20:17

Number [5]_ - 1:9:5...,
1:15:17..., 1:46:20..., 1:59:14

number [3]_ - 1:14:14...,
1:15:17..., 1:15:20

numerous [1]_ - 1:19:15

## O

objection [4]_ - 1:24:2...,
1:24:4..., 1:27:11..., 1:42:19

objections [1]_ - 1:42:18

objective [2]_ - 1:18:9...,
1:38:7

observation [1]_ - 1:51:8

observations [1]_ -
1:35:11

observed [1]_ - 1:35:25

obtain [1]_ - 1:9:19

obviously [1]_ - 1:47:18

occasion [1]_ - 1:5:9

occur [1]_ - 1:21:4

occurred [1]_ - 1:13:25

offensive [1]_ - 1:58:9

offer [2]_ - 1:26:24...,
1:59:19

Office [3]_ - 1:3:3..., 1:4:20
..., 1:5:25

officer [4]_ - 1:45:13...,
1:46:12..., 1:61:14..., 1:61:18

officers [3]_ - 1:39:12...,
1:54:15..., 1:54:22

officially [1]_ - 1:34:13

Ohio [1]_ - 1:44:2

Oliveira [2]_ - 1:3:6...,
1:3:22

once [1]_ - 1:25:25

one [38]_ - 1:4:9..., 1:6:1...,
1:7:13..., 1:7:23..., 1:7:25...,
1:8:3..., 1:8:23..., 1:8:24...,
1:8:25..., 1:15:17..., 1:15:20...,
1:16:20..., 1:18:10..., 1:18:14
..., 1:22:4..., 1:23:7..., 1:24:9...,
1:24:15..., 1:25:22..., 1:27:5...,
1:28:5..., 1:30:22..., 1:32:11...,
1:34:12..., 1:35:2..., 1:35:12...,
1:37:18..., 1:38:4..., 1:39:21...,
1:43:1..., 1:47:13..., 1:47:20...,
1:50:10..., 1:50:11..., 1:50:15

ones [1]_ - 1:19:24

open [1]_ - 1:61:23

opening [2]_ - 1:23:1...,
1:23:5

operating [4]_ - 1:5:17...,
1:7:2..., 1:8:11..., 1:13:15

opinion [4]_ - 1:14:11...,
1:34:25..., 1:35:6..., 1:59:13

opinions [4]_ - 1:13:22...,
1:21:12..., 1:26:15..., 1:26:17

opponent [1]_ - 1:42:6

opportunity [7]_ - 1:5:20...,
1:22:11..., 1:27:6..., 1:27:10...,
1:27:22..., 1:50:12..., 1:51:14

opposition [7]_ - 1:4:3...,
1:19:17..., 1:22:12..., 1:31:16
..., 1:50:10..., 1:51:14..., 1:61:4
..., 1:32:11..., 1:38:1..., 1:46:6...,

1:46:8..., 1:46:14..., 1:54:24...,
1:57:23

oriented [1]_ - 1:14:4

original [5]_ - 1:39:3...,
1:39:8..., 1:44:18..., 1:50:2...,
1:56:1

outset [1]_ - 1:33:22

outside [1]_ - 1:29:13

overlooked [1]_ - 1:8:19

overstate [1]_ - 1:58:15

own [2]_ - 1:25:20...,
1:59:24

## P

p.m [1]_ - 1:62:2

page [6]_ - 1:14:14...,
1:22:24..., 1:23:5..., 1:23:6...,
1:24:15

pages [1]_ - 1:25:2

paid [2]_ - 1:4:21..., 1:4:22

painstaking [2]_ - 1:15:13
..., 1:19:10

pair [1]_ - 1:24:16

papers [4]_ - 1:9:15...,
1:34:16..., 1:37:3..., 1:48:19

paperwork [3]_ - 1:25:25
..., 1:40:16..., 1:40:21

parade [1]_ - 1:58:2

part [12]_ - 1:9:10..., 1:12:8
..., 1:14:10..., 1:16:6..., 1:21:11
..., 1:26:19..., 1:31:19...,
1:32:11..., 1:41:9..., 1:41:10...,
1:42:6..., 1:51:10

parte [5]_ - 1:46:9...,
1:54:13..., 1:54:19..., 1:54:22
..., 1:55:8

participants [2]_ - 1:17:1
..., 1:17:4

participating [3]_ - 1:37:8
..., 1:56:7..., 1:60:6

particular [6]_ - 1:5:4...,
1:6:3..., 1:6:9..., 1:34:9...,
1:36:9..., 1:57:10

particularly [1]_ - 1:13:20

parties [6]_ - 1:15:13...,
1:19:8..., 1:37:23..., 1:61:1...,
1:61:6..., 1:61:21

past [2]_ - 1:4:4..., 1:16:23

Pearce [2]_ - 1:3:8...,
1:4:12

PEARCE [3]_ - 1:4:15...,
1:4:17..., 1:5:1

peculiarly [1]_ - 1:58:21

pending [2]- - 1:39:25 -, 1:49:14

people [6]- - 1:44:12 -, 1:48:15 -, 1:53:7 -, 1:58:19 -, 1:58:20 -, 1:59:9

percent [1]- - 1:58:14

perfectly [1]- - 1:43:18 -, 1:57:1

perhaps [1]- - 1:7:5

permanent [1]- - 1:4:23

permissibly [1]- - 1:60:3

permission [1]- - 1:4:11

permitted [1]- - 1:13:6

person [10]- - 1:8:7 -, 1:9:1 -, 1:10:12 -, 1:11:12 -, 1:12:8 -, 1:17:11 -, 1:17:15 -, 1:29:8 -, 1:29:20 -, 1:30:12

persons [1]- - 1:58:8

perspective [1]- - 1:22:17

pertinent [1]- - 1:25:19

phenomenon [3]- - 1:14:21 -, 1:22:21 -, 1:22:22

phrase [2]- - 1:34:2 -, 1:54:19

phrased [1]- - 1:8:16

physically [1]- - 1:5:14

pick [1]- - 1:46:19

picture [2]- - 1:14:20 -, 1:15:10

piece [1]- - 1:11:19

PII [1]- - 1:19:1

place [7]- - 1:30:20 -, 1:34:5 -, 1:38:18 -, 1:41:4 -, 1:55:16 -, 1:57:20 -, 1:58:25

plainly [1]- - 1:22:7

plan [3]- - 1:40:25 -, 1:41:4 -, 1:41:5

plus [1]- - 1:48:9

podium [1]- - 1:57:3

point [36]- - 1:11:4 -, 1:11:14 -, 1:12:24 -, 1:13:14 -, 1:13:25 -, 1:14:7 -, 1:15:6 -, 1:16:6 -, 1:16:7 -, 1:18:21 -, 1:19:9 -, 1:20:3 -, 1:20:5 -, 1:20:10 -, 1:20:25 -, 1:22:19 -, 1:25:19 -, 1:26:18 -, 1:31:5 -, 1:31:11 -, 1:34:11 -, 1:34:16 -, 1:35:12 -, 1:35:22 -, 1:35:24 -, 1:36:5 -, 1:36:6 -, 1:36:19 -, 1:36:20 -, 1:37:22 -, 1:57:16 -, 1:58:15 -, 1:58:25 -, 1:59:14 -, 1:59:22

pointed [2]- - 1:8:2 -,

1:57:18

pointing [1]- - 1:37:22

political [5]- - 1:40:4 -, 1:42:5 -, 1:54:7 -, 1:54:8 -, 1:57:5

portion [2]- - 1:25:19 -, 1:46:20

pose [4]- - 1:13:6 -, 1:36:22 -, 1:56:6 -, 1:60:3

position [4]- - 1:19:7 -, 1:42:16 -, 1:46:19 -, 1:58:16

possible [5]- - 1:26:4 -, 1:32:1 -, 1:36:22 -, 1:53:20 -, 1:61:7

post [7]- - 1:21:17 -, 1:25:3 -, 1:25:15 -, 1:27:17 -, 1:31:12 -, 1:51:12 -, 1:56:19

post-conferral [1]- - 1:27:17

posts [6]- - 1:5:9 -, 1:23:13 -, 1:24:16 -, 1:24:23 -, 1:39:6 -, 1:39:18

potency [2]- - 1:59:1 -, 1:59:2

potent [1]- - 1:58:21

potential [8]- - 1:14:12 -, 1:14:17 -, 1:16:3 -, 1:19:3 -, 1:19:12 -, 1:40:18 -, 1:54:14 -, 1:54:16

potentially [6]- - 1:44:22 -, 1:46:9 -, 1:49:9 -, 1:49:16 -, 1:49:20 -, 1:55:8

power [2]- - 1:25:20 -, 1:59:2

practice [3]- - 1:40:8 -, 1:40:9 -, 1:45:1

precedent [2]- - 1:49:3 -, 1:49:4

precipitated [2]- - 1:30:19 -, 1:37:16

predictable [1]- - 1:13:20

prefer [1]- - 1:33:14

prejudice [1]- - 1:47:13

preliminary [1]- - 1:12:5

prepared [2]- - 1:26:22 -, 1:36:2

prescribed [1]- - 1:37:14

present [10]- - 1:3:18 -, 1:13:1 -, 1:20:8 -, 1:20:22 -, 1:33:17 -, 1:34:23 -, 1:35:2 -, 1:47:14 -, 1:47:22 -, 1:48:3

presented [3]- - 1:12:7 -, 1:43:17 -, 1:46:11

presenting [1]- - 1:33:19

president [6]- - 1:31:23 -, 1:31:24 -, 1:37:16 -, 1:56:5 -, 1:57:19 -, 1:59:5

President [36]- - 1:3:12 -, 1:39:16 -, 1:39:20 -, 1:39:22 -, 1:40:10 -, 1:40:11 -, 1:41:1 -, 1:41:9 -, 1:42:5 -, 1:43:17 -, 1:44:6 -, 1:44:11 -, 1:44:13 -, 1:44:19 -, 1:44:21 -, 1:45:24 -, 1:46:2 -, 1:46:7 -, 1:48:6 -, 1:48:7 -, 1:48:15 -, 1:48:17 -, 1:48:23 -, 1:48:25 -, 1:49:1 -, 1:49:9 -, 1:49:17 -, 1:50:16 -, 1:52:13 -, 1:52:21 -, 1:53:18 -, 1:55:23 -, 1:56:12 -, 1:56:14 -, 1:58:3 -, 1:58:18

president's [1]- - 1:55:14

President's [1]- - 1:38:6

presumably [3]- - 1:5:15 -, 1:17:17 -, 1:45:3

presumptively [1]- - 1:61:22

pretended [1]- - 1:56:16

pretty [1]- - 1:14:4

previously [1]- - 1:51:23

primary [1]- - 1:7:10

principal [1]- - 1:7:23

printout [1]- - 1:24:15

prison [1]- - 1:49:10

privileged [1]- - 1:61:22

proactively [1]- - 1:20:6

problem [3]- - 1:18:18 -, 1:19:22 -, 1:39:11

procedure [1]- - 1:54:24

proceed [4]- - 1:13:3 -, 1:36:25 -, 1:55:2 -, 1:55:20

proceeding [4]- - 1:12:11 -, 1:12:19 -, 1:17:9 -, 1:21:24

proceedings [15]- - 1:6:6 -, 1:6:20 -, 1:7:16 -, 1:8:14 -, 1:9:24 -, 1:33:13 -, 1:34:1 -, 1:34:6 -, 1:37:25 -, 1:47:15 -, 1:60:9 -, 1:60:13 -, 1:60:14 -, 1:60:17 -, 1:62:2

proceeds [1]- - 1:11:21

process [2]- - 1:46:8 -, 1:61:18

prohibit [1]- - 1:35:10

promptly [1]- - 1:26:9

proof [1]- - 1:32:20

proper [1]- - 1:19:9

properly [1]- - 1:33:24 -, 1:56:10

proposal [2]- - 1:10:7 -, 1:27:11

propose [1]- - 1:34:20

proposed [6]- - 1:10:11 -, 1:13:13 -, 1:15:13 -, 1:28:18 -, 1:34:4 -, 1:58:10

proposition [1]- - 1:6:13

prosecution [4]- - 1:37:9 -, 1:39:22 -, 1:53:24 -, 1:56:8

prospect [1]- - 1:17:11

protect [11]- - 1:6:2 -, 1:9:23 -, 1:14:12 -, 1:20:25 -, 1:33:12 -, 1:33:25 -, 1:60:9 -, 1:60:12 -, 1:60:14 -, 1:60:16

protected [4]- - 1:32:25 -, 1:40:12 -, 1:54:8 -, 1:57:14

protecting [1]- - 1:6:6 -, 1:60:19

protection [1]- - 1:19:12

protections [1]- - 1:20:4

protocols [1]- - 1:40:18

prove [1]- - 1:57:24

provide [1]- - 1:9:6

provided [2]- - 1:12:20 -, 1:27:9

provides [1]- - 1:35:13

public [10]- - 1:14:17 -, 1:15:2 -, 1:15:12 -, 1:15:18 -, 1:18:19 -, 1:18:20 -, 1:19:11 -, 1:43:11 -, 1:57:4 -, 1:61:24

publicizing [1]- - 1:17:15

publicly [2]- - 1:15:19 -, 1:20:12

pull [1]- - 1:21:23

purportedly [1]- - 1:48:24

purpose [1]- - 1:6:1

purposes [1]- - 1:23:16

pursuant [2]- - 1:7:9 -, 1:14:24

pursuing [1]- - 1:6:9

put [9]- - 1:17:21 -, 1:22:2 -, 1:31:21 -, 1:32:13 -, 1:32:14 -, 1:32:19 -, 1:32:22 -, 1:44:1 -, 1:49:25

puts [1]- - 1:32:16

## Q

qualifies [2]- - 1:47:5 -, 1:54:5

questions [4]- - 1:4:18 -, 1:6:15 -, 1:32:10 -, 1:38:17

quickly [2]- - 1:61:11 -,

1:61:24
quite [1]– 1:10:1
quote [2]– 1:35:14–, 1:47:12
quoting [1]– 1:8:5

**R**

radio [1]– 1:49:6
raid [6]– 1:31:1–, 1:31:15–, 1:44:19–, 1:46:22–, 1:47:1–, 1:49:6
raided [2]– 1:39:23–, 1:40:12
rain [1]– 1:9:22
raise [1]– 1:40:11
raised [2]– 1:16:17–, 1:31:17
random [1]– 1:51:5
range [1]– 1:49:15
rather [1]– 1:20:5
reach [1]– 1:10:1
read [5]– 1:6:22–, 1:10:9–, 1:13:10–, 1:32:17–, 1:56:4
reading [1]– 1:46:24
ready [3]– 1:4:8–, 1:31:21–, 1:32:22
real [3]– 1:12:6–, 1:53:17–, 1:53:25
really [10]– 1:6:13–, 1:29:3–, 1:36:6–, 1:39:11–, 1:43:24–, 1:48:20–, 1:50:1–, 1:52:15–, 1:53:10–, 1:53:22
reason [15]– 1:11:7–, 1:16:22–, 1:17:12–, 1:18:10–, 1:18:17–, 1:18:23–, 1:19:21–, 1:20:19–, 1:21:1–, 1:29:12–, 1:32:1–, 1:32:3–, 1:32:25–, 1:56:13–, 1:57:10
reasonable [6]– 1:11:22–, 1:12:20–, 1:19:11–, 1:28:17–, 1:28:21–, 1:58:1
reasonably [15]– 1:8:7–, 1:10:11–, 1:10:16–, 1:11:12–, 1:12:2–, 1:13:13–, 1:29:7–, 1:30:10–, 1:38:22–, 1:41:16–, 1:41:23–, 1:42:1–, 1:42:3–, 1:42:9–, 1:58:7
reasons [6]– 1:14:16–, 1:14:18–, 1:15:6–, 1:15:15–, 1:16:21–, 1:47:20
rebuttal [1]– 1:54:11
receive [1]– 1:23:23
received [2]– 1:24:5–,

1:25:13
recently [3]– 1:14:2–, 1:20:12–, 1:44:3
recess [1]– 1:62:1
recognized [3]– 1:13:17–, 1:14:11–, 1:36:9
reconsider [1]– 1:14:10
reconsideration [1]– 1:57:22
record [31]– 1:4:12–, 1:5:6–, 1:5:17–, 1:5:19–, 1:14:7–, 1:21:6–, 1:21:11–, 1:21:21–, 1:21:25–, 1:22:10–, 1:23:16–, 1:24:4–, 1:24:9–, 1:24:15–, 1:24:22–, 1:26:5–, 1:26:6–, 1:26:19–, 1:26:21–, 1:26:25–, 1:27:8–, 1:27:13–, 1:27:18–, 1:28:15–, 1:35:1–, 1:50:23–, 1:51:9–, 1:51:10–, 1:51:21–, 1:56:4–, 1:58:7
redact [2]– 1:19:3–, 1:25:25
redacted [4]– 1:14:23–, 1:16:18–, 1:17:23–, 1:20:1
redacting [3]– 1:14:12–, 1:14:17–, 1:42:16
redaction [9]– 1:18:8–, 1:18:17–, 1:18:21–, 1:19:7–, 1:19:8–, 1:19:17–, 1:19:22–, 1:37:19–, 1:42:24
redactions [8]– 1:14:9–, 1:15:14–, 1:18:25–, 1:21:3–, 1:42:11–, 1:42:20–, 1:43:4–, 1:43:7
reduced [1]– 1:12:19
reduction [1]– 1:12:22
refer [1]– 1:21:11
reference [1]– 1:54:14
referenced [1]– 1:51:11
references [3]– 1:6:5–, 1:18:5–, 1:18:22
referencing [1]– 1:52:3
referring [5]– 1:30:20–, 1:35:16–, 1:40:21–, 1:61:13–, 1:61:15
refers [2]– 1:23:6–, 1:48:18
Reform [20]– 1:6:7–, 1:6:10–, 1:6:17–, 1:6:22–, 1:7:3–, 1:7:9–, 1:8:4–, 1:8:11–, 1:8:23–, 1:9:7–, 1:9:14–, 1:9:17–, 1:10:4–, 1:10:6–, 1:11:5–, 1:28:20–, 1:29:7–, 1:41:19–, 1:42:2–, 1:49:13
Reformat [9]– 1:11:9–,

1:12:11–, 1:12:19–, 1:13:9–, 1:15:8–, 1:38:18–, 1:41:14–, 1:45:11–, 1:60:8
reign [1]– 1:33:17
Reinhardt [1]– 1:55:12
reiterate [1]– 1:61:1
related [1]– 1:32:24
release [8]– 1:4:2–, 1:6:23–, 1:7:7–, 1:8:2–, 1:10:19–, 1:16:3–, 1:55:15–, 1:61:17
released [5]– 1:16:7–, 1:16:24–, 1:42:13–, 1:43:12–, 1:49:14
releasing [1]– 1:17:7
relevant [3]– 1:33:16–, 1:46:20–, 1:50:6
relied [1]– 1:12:11
relief [2]– 1:6:16–, 1:7:6–, 1:7:8–, 1:7:21–, 1:7:24–, 1:9:1–, 1:9:16–, 1:11:17–, 1:12:15–, 1:18:1–, 1:20:19
rely [1]– 1:8:4
relying [1]– 1:52:2
remains [1]– 1:19:11
remember [1]– 1:35:4
remind [1]– 1:30:4
remotely [3]– 1:15:16–, 1:18:9–, 1:32:24
reply [20]– 1:4:4–, 1:4:7–, 1:13:16–, 1:13:25–, 1:21:8–, 1:22:13–, 1:22:20–, 1:22:24–, 1:27:6–, 1:36:16–, 1:36:17–, 1:47:10–, 1:48:10–, 1:50:4–, 1:50:6–, 1:50:13–, 1:50:20–, 1:52:6–, 1:52:7–, 1:59:18
reporters [1]– 1:13:21
reports [2]– 1:30:25–, 1:46:21
Republican [1]– 1:42:4
request [4]– 1:6:25–, 1:8:12–, 1:9:13–, 1:9:16
requests [3]– 1:19:7–, 1:27:19–, 1:27:22
require [1]– 1:34:3
required [1]– 1:9:14
requirement [1]– 1:58:8
requires [2]– 1:15:9–, 1:58:6
reset [1]– 1:18:16
resisted [1]– 1:18:25
resolve [1]– 1:26:19
resolving [1]– 1:46:14

respond [5]– 1:16:18–, 1:27:7–, 1:27:10–, 1:50:12–, 1:60:11
response [6]– 1:13:20–, 1:20:9–, 1:22:22–, 1:27:24–, 1:50:3–, 1:50:25
responsible [2]– 1:17:15–, 1:55:12
restricted [2]– 1:12:8–, 1:47:25
restricting [1]– 1:7:18
restriction [9]– 1:7:1–, 1:8:1–, 1:11:6–, 1:12:1–, 1:37:1–, 1:41:16–, 1:45:4–, 1:45:7–, 1:56:3
restrictions [1]– 1:20:6
restrictive [1]– 1:15:9–, 1:18:6–, 1:18:8–, 1:37:18–, 1:37:20–, 1:38:5–, 1:38:9–, 1:38:20–, 1:41:22
result [7]– 1:6:18–, 1:9:21–, 1:12:1–, 1:20:20–, 1:32:8–, 1:32:17–, 1:57:19
resulted [3]– 1:32:8–, 1:38:1
retribution [1]– 1:57:6
retributive [1]– 1:32:2–, 1:32:5
return [2]– 1:16:16–, 1:28:19
revealed [1]– 1:31:13
review [3]– 1:19:6–, 1:22:3–, 1:29:5
reviewed [4]– 1:4:6–, 1:4:8–, 1:24:1–, 1:50:14
revocation [1]– 1:46:5
revoke [1]– 1:55:14
revoked [4]– 1:44:22–, 1:45:19–, 1:46:4–, 1:59:21
rights [1]– 1:30:6
risk [4]– 1:16:10–, 1:34:6–, 1:43:23–, 1:54:2
risked [1]– 1:37:24
risks [1]– 1:20:8
rival [1]– 1:40:4
rivals [1]– 1:54:7
route [1]– 1:34:2
rubric [2]– 1:9:17–, 1:11:19
rule [2]– 1:35:14–, 1:35:16
rules [2]– 1:42:15–, 1:43:6

run [1]– - 1:54:2

running [4]– - 1:42:6.., 1:44:13.., 1:48:17.., 1:56:12

## S

safe [1]– - 1:39:13

safety [20]– - 1:6:7.., 1:8:7.., 1:8:12.., 1:8:14.., 1:8:25.., 1:10:12.., 1:10:16.., 1:11:12.., 1:12:2.., 1:15:4.., 1:16:11.., 1:29:8.., 1:29:20.., 1:30:12.., 1:38:20.., 1:41:23.., 1:43:14.., 1:58:8.., 1:60:13.., 1:60:19

sanctions [1]– - 1:61:16

Sasha [1]– - 1:3:17

satisfies [1]– - 1:34:4

satisfying [1]– - 1:9:17

scenario [1]– - 1:30:12

scope [1]– - 1:29:13

score [2]– - 1:13:14.., 1:14:8

sealed [1]– - 1:19:14

search [10]– - 1:14:1.., 1:14:6.., 1:15:20.., 1:40:3.., 1:40:5.., 1:40:23.., 1:43:10.., 1:44:2.., 1:56:20.., 1:57:4

seated [1]– - 1:3:2

second [4]– - 1:6:18.., 1:16:22.., 1:18:17.., 1:35:15

seconds [1]– - 1:61:10

Secret [3]– - 1:40:13.., 1:40:19.., 1:41:3

Section [2]– - 1:8:5.., 1:61:16

security [1]– - 1:20:7

see [7]– - 1:5:14.., 1:32:6.., 1:33:18.., 1:36:18.., 1:54:4.., 1:60:10.., 1:61:21

seek [4]– - 1:20:25.., 1:33:24.., 1:52:11.., 1:55:7

seeking [11]– - 1:6:17.., 1:7:6.., 1:7:8.., 1:7:17.., 1:7:21.., 1:19:8.., 1:43:6.., 1:54:14.., 1:55:24.., 1:56:3.., 1:56:24

seeks [1]– - 1:42:10

seem [1]– - 1:52:9

send [1]– - 1:59:15

sense [7]– - 1:29:11.., 1:41:7.., 1:54:25.., 1:57:25.., 1:58:23.., 1:58:24

sent [4]– - 1:50:16.., 1:50:21.., 1:52:13.., 1:54:4

sentence [1]– - 1:37:6

separate [2]– - 1:7:17.., 1:25:25

serious [7]– - 1:31:3.., 1:34:6.., 1:34:15.., 1:34:19.., 1:43:24.., 1:47:3.., 1:47:15

serve [1]– - 1:8:12

Service [3]– - 1:40:13.., 1:40:19.., 1:41:3

session [1]– - 1:61:21

set [3]– - 1:49:4.., 1:51:23

several [3]– - 1:13:18.., 1:13:23.., 1:58:17

shall [1]– - 1:24:6

shared [1]– - 1:61:5

shielded [2]– - 1:15:2.., 1:15:12

short [2]– - 1:35:1.., 1:56:5

shorthanded [1]– - 1:60:15

shot [1]– - 1:58:22

show [3]– - 1:46:8.., 1:49:6.., 1:54:4

showed [3]– - 1:20:15.., 1:41:2

showing [3]– - 1:16:3.., 1:19:9.., 1:19:18

showings [1]– - 1:19:10

shown [2]– - 1:23:19.., 1:30:24

side [3]– - 1:5:5.., 1:5:16.., 1:5:20

sides [1]– - 1:27:10

signed [1]– - 1:46:2

significant [15]– - 1:13:7.., 1:20:21.., 1:34:15.., 1:34:18.., 1:34:22.., 1:36:23.., 1:37:7.., 1:38:24.., 1:39:9.., 1:41:8.., 1:47:6.., 1:54:2.., 1:56:6.., 1:60:4.., 1:60:5

signs [2]– - 1:31:23.., 1:31:24

similar [3]– - 1:7:21.., 1:51:8.., 1:59:17

similarly [1]– - 1:53:3

simply [1]– - 1:53:21

single [3]– - 1:21:24.., 1:24:16.., 1:42:25

sit [2]– - 1:36:19.., 1:38:12

slate [2]– - 1:13:15.., 1:32:13

slow [1]– - 1:46:23

small [1]– - 1:15:17

Social [9]– - 1:5:9.., 1:23:13.., 1:24:16.., 1:24:23.., 1:25:2.., 1:25:15.., 1:25:20.., 1:31:12.., 1:58:23

social [4]– - 1:13:20.., 1:22:23.., 1:32:16.., 1:58:24

solution [2]– - 1:19:11.., 1:20:3

solve [2]– - 1:18:18.., 1:19:22

somewhat [2]– - 1:12:18.., 1:30:6

somewhere [1]– - 1:55:6

sophistication [1]– - 1:36:4

sorry [11]– - 1:23:4.., 1:26:11.., 1:35:5.., 1:36:12.., 1:38:13.., 1:40:20.., 1:45:5.., 1:46:24.., 1:50:20.., 1:54:18

sort [5]– - 1:6:5.., 1:9:3.., 1:21:3.., 1:29:24.., 1:53:8

sorts [2]– - 1:32:17.., 1:57:6

sought [3]– - 1:7:21.., 1:7:24.., 1:20:19

source [5]– - 1:7:13.., 1:9:3.., 1:9:4.., 1:9:8.., 1:34:19

sources [4]– - 1:6:16.., 1:8:22.., 1:9:11.., 1:22:7

speaks [2]– - 1:6:7.., 1:42:2

Special [22]– - 1:3:3.., 1:4:20.., 1:5:25.., 1:39:15.., 1:39:17.., 1:42:10.., 1:42:14.., 1:44:20.., 1:45:21.., 1:45:22.., 1:45:24.., 1:47:18.., 1:48:21.., 1:49:7.., 1:49:12.., 1:49:24.., 1:50:23.., 1:52:8.., 1:53:3.., 1:53:9.., 1:53:19.., 1:55:7

specific [3]– - 1:10:14.., 1:36:8.., 1:37:3

specifically [4]– - 1:5:11.., 1:47:11.., 1:51:13.., 1:60:18

specify [1]– - 1:12:22

speech [16]– - 1:7:1.., 1:7:18.., 1:12:1.., 1:20:6.., 1:29:12.., 1:29:17.., 1:29:19.., 1:29:24.., 1:37:24.., 1:38:6.., 1:47:25.., 1:54:9.., 1:55:25.., 1:56:2.., 1:56:10.., 1:57:14

spend [1]– - 1:51:3

spoken [1]– - 1:47:17

stage [1]– - 1:29:2

stake [1]– - 1:30:11

stand [3]– - 1:7:18.., 1:26:23.., 1:39:11

stand-alone [1]– - 1:7:18

standard [17]– - 1:9:14.., 1:10:9.., 1:11:8.., 1:11:9.., 1:13:11.., 1:34:10.., 1:34:14.., 1:34:17.., 1:40:8.., 1:45:3.., 1:46:17.., 1:47:9.., 1:47:11.., 1:47:13.., 1:47:22.., 1:49:24

standing [1]– - 1:13:17

standpoint [2]– - 1:37:13.., 1:60:8

Stanley [1]– - 1:3:17

start [2]– - 1:38:19.., 1:55:22

starting [1]– - 1:3:3

state [1]– - 1:39:2

statement [7]– - 1:4:18.., 1:6:12.., 1:39:1.., 1:46:14.., 1:47:4.., 1:52:14.., 1:55:5

statements [14]– - 1:13:6.., 1:15:22.., 1:20:12.., 1:20:17.., 1:20:20.., 1:30:19.., 1:32:9.., 1:32:16.., 1:36:22.., 1:55:25.., 1:56:6.., 1:56:9.., 1:57:10.., 1:57:18

states [1]– - 1:31:13

States [10]– - 1:3:5.., 1:3:8.., 1:40:12.., 1:40:13.., 1:40:19.., 1:41:3.., 1:42:5.., 1:46:12.., 1:48:17.., 1:61:15

stating [1]– - 1:23:6

status [1]– - 1:55:15

statute [10]– - 1:8:13.., 1:8:18.., 1:9:5.., 1:9:18.., 1:10:9.., 1:18:3.., 1:38:19.., 1:46:1.., 1:58:6.., 1:61:12

statutes [1]– - 1:53:8

stem [1]– - 1:25:2

Steve [2]– - 1:49:8.., 1:52:14

still [9]– - 1:10:20.., 1:11:15.., 1:11:16.., 1:16:9.., 1:41:19.., 1:45:17.., 1:46:18.., 1:58:6.., 1:58:12

stood [2]– - 1:23:12.., 1:56:15

stop [1]– - 1:51:3

strict [1]– - 1:58:11

strictly [1]– - 1:7:3

strike [2]_ - 1:58:1_, 1:58:5

stringent [1]_ - 1:34:17

stripped [1]_ - 1:57:24

stuff [2]_ - 1:59:6_, 1:59:7

submit [1]_ - 1:16:1

submitted [2]_ - 1:16:15_, 1:27:11

subparagraph [1]_ - 1:61:17

Subsection [1]_ - 1:8:6

subsequent [1]_ - 1:50:8

substantial [2]_ - 1:34:14 _, 1:47:12

suffice [1]_ - 1:20:23

sufficiently [1]_ - 1:34:6

suggest [8]_ - 1:14:15_, 1:16:25_, 1:17:6_, 1:32:1_, 1:32:7_, 1:32:21_, 1:48:22_, 1:59:19

suggested [2]_ - 1:4:19_, 1:26:7

suggesting [6]_ - 1:11:4_, 1:17:22_, 1:20:13_, 1:21:23 _, 1:26:12_, 1:52:9

suited [1]_ - 1:43:18

suits [1]_ - 1:26:10

summer [1]_ - 1:50:17

supervising [1]_ - 1:55:17

supplement [9]_ - 1:5:6_, 1:22:11_, 1:26:6_, 1:26:20_, 1:27:8_, 1:27:13_, 1:27:18_, 1:51:14_, 1:51:19

supplementation [1]_ - 1:5:19

supplemented [1]_ - 1:32:20

supplements [2]_ - 1:61:3

support [3]_ - 1:22:2_, 1:29:1_, 1:61:4

supporters [4]_ - 1:13:19 _, 1:13:21_, 1:23:7_, 1:48:22

suppose [1]_ - 1:15:5

supposed [1]_ - 1:35:3

supposedly [1]_ - 1:43:23

suppress [1]_ - 1:40:23

Supreme [4]_ - 1:35:1_, 1:35:25_, 1:36:9_, 1:47:23

surprise [1]_ - 1:61:6

surprisingly [2]_ - 1:41:1 _, 1:41:4

surveyed [1]_ - 1:19:9

T

tailored [5]_ - 1:11:16_, 1:36:22_, 1:37:15_, 1:53:20 _, 1:56:13

tailoring [2]_ - 1:35:7_, 1:36:20

talks [5]_ - 1:8:14_, 1:31:7 _, 1:38:19_, 1:38:21_, 1:47:10

tap [1]_ - 1:9:3

team [1]_ - 1:17:6

tend [1]_ - 1:36:1

tender [3]_ - 1:23:18_, 1:24:8_, 1:24:16

termed [2]_ - 1:56:10_, 1:58:5

terminology [1]_ - 1:47:14

terms [4]_ - 1:6:7_, 1:8:14 _, 1:14:7_, 1:31:9

terrible [4]_ - 1:21:18_, 1:32:17_, 1:53:1_, 1:57:23

territory [1]_ - 1:48:2

test [1]_ - 1:47:25

testify [4]_ - 1:19:24_, 1:19:25_, 1:20:7_, 1:43:10

testimony [2]_ - 1:5:19_, 1:22:5

Texas [1]_ - 1:14:3

text [2]_ - 1:18:2_, 1:37:3

THE [123]_ - 1:3:2, 1:3:9_, 1:3:15_, 1:3:20_, 1:3:24_, 1:4:14_, 1:4:16_, 1:4:25_, 1:5:2_, 1:5:13_, 1:5:22_, 1:6:4_, 1:6:21_, 1:6:25_, 1:7:9_, 1:7:20_, 1:8:9_, 1:8:18_, 1:9:3_, 1:9:22_, 1:10:3_, 1:10:19_, 1:10:24_, 1:11:20_, 1:12:6_, 1:12:14_, 1:12:17_, 1:12:25_, 1:14:22 _, 1:15:1_, 1:15:8_, 1:15:21_, 1:16:1_, 1:16:9_, 1:16:13_, 1:16:23_, 1:17:5_, 1:17:16_, 1:18:2_, 1:18:5_, 1:18:11_, 1:18:16_, 1:19:5_, 1:20:2_, 1:21:6_, 1:21:21_, 1:22:9_, 1:22:15_, 1:22:24_, 1:23:3_, 1:23:9_, 1:23:15_, 1:23:19_, 1:23:22_, 1:24:3_, 1:24:7_, 1:24:11_, 1:24:13_, 1:24:18 _, 1:24:21_, 1:25:1_, 1:25:7_, 1:25:10_, 1:25:14_, 1:25:21 _, 1:25:23_, 1:26:3_, 1:26:11 _, 1:27:2_, 1:27:4_, 1:27:16_, 1:27:22_, 1:28:2_, 1:28:11_,

1:28:13_, 1:28:19_, 1:28:25 _, 1:29:15_, 1:29:22_, 1:30:13_, 1:32:5_, 1:33:6_, 1:33:17_, 1:34:22_, 1:35:16 _, 1:35:19_, 1:36:1_, 1:36:12 _, 1:36:15_, 1:36:18_, 1:36:25_, 1:37:7_, 1:37:11_, 1:38:10_, 1:38:15_, 1:40:20 _, 1:40:24_, 1:41:13_, 1:45:2 _, 1:45:6_, 1:45:16_, 1:46:23 _, 1:47:8_, 1:48:9_, 1:48:13_, 1:50:3_, 1:50:8_, 1:51:8_, 1:51:20_, 1:51:22_, 1:52:5_, 1:53:14_, 1:54:10_, 1:54:13 _, 1:54:20_, 1:55:4_, 1:55:18 _, 1:58:4_, 1:60:12_, 1:60:18 _, 1:60:24_, 1:61:11_, 1:61:19

themselves [1]_ - 1:20:8

thinking [1]_ - 1:38:9

third [1]_ - 1:19:21

thoughts [1]_ - 1:41:18

threat [10]_ - 1:13:17_, 1:30:17_, 1:31:3_, 1:34:15_, 1:39:18_, 1:44:8_, 1:47:3_, 1:47:15_, 1:53:8

threatened [1]_ - 1:32:8

threatening [1]_ - 1:53:9

threats [4]_ - 1:14:13_, 1:29:23_, 1:32:18_, 1:44:3

three [1]_ - 1:46:25

timing [1]_ - 1:16:5

Tina [1]_ - 1:24:20

Title [1]_ - 1:61:15

today [11]_ - 1:4:1_, 1:5:10 _, 1:5:17_, 1:24:12_, 1:26:23 _, 1:32:20_, 1:39:25_, 1:48:13_, 1:48:14_, 1:58:17

Todd [1]_ - 1:3:10

tolerated [1]_ - 1:60:7

tomorrow [3]_ - 1:27:15_, 1:28:9_, 1:61:21

tone [1]_ - 1:18:11

took [4]_ - 1:19:7_, 1:42:16 _, 1:55:16

tool [3]_ - 1:58:21_, 1:59:3

tools [1]_ - 1:20:3

top [1]_ - 1:23:6_, 1:29:10_, 1:48:25

total [1]_ - 1:21:9

totally [1]_ - 1:56:20

touching [1]_ - 1:53:16

touchstone [1]_ - 1:9:1

Town [1]_ - 1:23:8

traditional [4]_ - 1:29:24_, 1:30:1_, 1:46:6_, 1:46:14

tragedy [2]_ - 1:58:1_, 1:58:5

transcript [2]_ - 1:23:8_, 1:30:15

trial [10]_ - 1:13:24_, 1:19:23_, 1:20:6_, 1:20:24_, 1:21:2_, 1:30:24_, 1:43:11_, 1:43:16_, 1:44:4_, 1:49:14

trials [1]_ - 1:43:15

tried [1]_ - 1:38:5

triggered [2]_ - 1:15:24_, 1:56:23

troubled [1]_ - 1:44:2

troubling [1]_ - 1:53:3

true [10]_ - 1:15:15_, 1:31:11_, 1:32:23_, 1:39:13 _, 1:40:8_, 1:43:9_, 1:43:11_, 1:43:13_, 1:53:21_, 1:58:4

Trump [43]_ - 1:3:5_, 1:3:12_, 1:4:3_, 1:7:18_, 1:14:5_, 1:16:22_, 1:17:20_, 1:18:19_, 1:18:25_, 1:21:17 _, 1:23:6_, 1:32:1_, 1:32:16_, 1:32:22_, 1:35:9_, 1:39:22_, 1:40:10_, 1:41:1_, 1:41:9_, 1:43:17_, 1:44:6_, 1:44:11_, 1:44:19_, 1:45:25_, 1:46:2_, 1:46:7_, 1:48:6_, 1:48:7_, 1:48:15_, 1:48:22_, 1:48:23 _, 1:48:25_, 1:49:1_, 1:49:9_, 1:49:17_, 1:50:16_, 1:52:13 _, 1:52:21_, 1:53:18_, 1:55:2 _, 1:55:23_, 1:58:3_, 1:58:18

Trump's [7]_ - 1:6:1_, 1:7:7_, 1:13:19_, 1:31:15_, 1:39:16_, 1:44:21_, 1:55:11

Truth [18]_ - 1:5:9_, 1:23:13_, 1:24:16_, 1:24:22 _, 1:25:2_, 1:25:15_, 1:25:20 _, 1:30:22_, 1:31:12_, 1:44:18_, 1:44:23_, 1:46:20 _, 1:50:16_, 1:50:24_, 1:51:5 _, 1:52:1_, 1:52:9_, 1:58:23

truth [2]_ - 1:29:23_, 1:54:4

Truths [4]_ - 1:39:7_, 1:39:8_, 1:49:1_, 1:52:12

trying [12]_ - 1:8:21_, 1:9:11_, 1:10:25_, 1:11:4_, 1:11:14_, 1:15:3_, 1:16:13_, 1:18:7_, 1:18:9_, 1:35:24_, 1:46:16_, 1:58:15

two [12]_ - 1:6:16_, 1:8:22_, 1:9:25_, 1:24:15_, 1:24:22_, 1:25:2_, 1:30:15_, 1:32:11_,

1:42:4_, 1:48:13_, 1:48:14_,
1:48:21
two-page [1]_ - 1:24:15
two-part [1]_ - 1:32:11
types [1]_ - 1:20:17
typical [1]_ - 1:40:8

## U

U.S.C [1]_ - 1:8:4
ultimately [7]_ - 1:19:10_,
1:29:6_, 1:32:17_, 1:36:6_,
1:42:17_, 1:43:10_, 1:45:14
unable [1]_ - 1:18:13
unavoidably [1]_ - 1:27:9
uncharted [1]_ - 1:48:2
unconstitutional [3]_ -
1:31:1_, 1:46:22_, 1:47:1
under [16]_ - 1:6:22_, 1:7:2
_, 1:8:11_, 1:9:4_, 1:9:16_,
1:10:3_, 1:11:5_, 1:11:19_,
1:12:8_, 1:12:19_, 1:13:9_,
1:28:20_, 1:29:6_, 1:29:15_,
1:45:25_, 1:46:1
underlie [1]_ - 1:21:16
understandable [1]_ -
1:11:16
understood [3]_ - 1:7:3_,
1:8:10_, 1:30:13
undisputed [1]_ - 1:15:11
unfair [3]_ - 1:43:2_,
1:48:20_, 1:56:20
unfortunate [1]_ - 1:53:4
United [10]_ - 1:3:4_, 1:3:8
_, 1:40:12_, 1:40:13_,
1:40:19_, 1:41:3_, 1:42:5_,
1:46:12_, 1:48:17_, 1:61:15
unlike [1]_ - 1:7:25
unnamed [1]_ - 1:43:23
unnecessary [1]_ -
1:41:16
unprofessional [1]_ -
1:38:13
unprotected [2]_ -
1:29:16_, 1:29:24
unthinkable [1]_ - 1:31:20
up [9]_ - 1:3:25_, 1:18:14_,
1:20:15_, 1:23:13_, 1:33:19
_, 1:41:2_, 1:51:17_, 1:61:24
upcoming [1]_ - 1:61:2
uses [1]_ - 1:47:14
utterly [2]_ - 1:18:22_,
1:31:8

## V

vacuum [1]_ - 1:32:13
vague [2]_ - 1:39:16_,
1:49:25
vagueness [1]_ - 1:53:17
various [1]_ - 1:21:12
versus [1]_ - 1:10:6
via [6]_ - 1:6:17_, 1:7:11_,
1:8:23_, 1:9:12_, 1:25:20_,
1:31:12
view [19]_ - 1:7:10_, 1:7:13
_, 1:8:22_, 1:9:15_, 1:12:4_,
1:15:2_, 1:15:12_, 1:18:20_,
1:20:9_, 1:20:21_, 1:21:1_,
1:26:17_, 1:29:14_, 1:35:13
_, 1:37:12_, 1:38:3_, 1:47:4_,
1:47:9_, 1:48:21
violate [1]_ - 1:39:4
violated [3]_ - 1:49:15_,
1:49:18_, 1:55:2
violates [2]_ - 1:45:25_,
1:55:6
violation [5]_ - 1:45:8_,
1:45:13_, 1:45:18_, 1:46:15
_, 1:61:16
violence [14]_ - 1:29:16_,
1:29:23_, 1:30:17_, 1:32:3_,
1:32:5_, 1:32:6_, 1:32:7_,
1:32:18_, 1:39:19_, 1:44:8_,
1:57:19_, 1:59:12
violent [2]_ - 1:14:4_,
1:21:4
violent-oriented [1]_ -
1:14:4
virtue [2]_ - 1:11:22_,
1:12:19
vis-á-vis [1]_ - 1:26:7
voters [3]_ - 1:41:10_,
1:44:14_, 1:48:20

## W

wait [4]_ - 1:21:21_,
1:40:20_, 1:57:23_, 1:57:25
wake [3]_ - 1:14:1_, 1:14:5
_, 1:15:19
Waltine [1]_ - 1:3:5
wants [2]_ - 1:38:23_,
1:39:15
warned [1]_ - 1:37:23
warrant [6]_ - 1:15:20_,
1:45:13_, 1:45:14_, 1:46:2_,
1:55:7_, 1:61:13

warranted [1]_ - 1:17:19
warrants [1]_ - 1:54:14
ways [1]_ - 1:53:6
Wednesday [2]_ -
1:27:17_, 1:61:2
week [7]_ - 1:20:13_,
1:20:21_, 1:30:19_, 1:37:17
_, 1:56:14_, 1:56:25_,
1:57:11
weeks [1]_ - 1:42:4
weigh [1]_ - 1:42:8
well-documented [1]_ -
1:13:18
Wharton [1]_ - 1:3:12
whole [1]_ - 1:53:7
willing [1]_ - 1:34:16
wish [4]_ - 1:22:16_, 1:27:7
_, 1:27:12_, 1:50:12
witch [2]_ - 1:30:24_,
1:57:6
witch-hunt [2]_ - 1:30:24_,
1:57:6
witness [7]_ - 1:5:18_,
1:14:12_, 1:14:17_, 1:17:11
_, 1:19:14_, 1:19:22_,
1:42:16
witnesses [16]_ - 1:6:2_,
1:13:7_, 1:14:17_, 1:14:23_,
1:19:3_, 1:19:13_, 1:20:23_,
1:31:9_, 1:34:9_, 1:36:23_,
1:36:24_, 1:40:2_, 1:43:10_,
1:43:14_, 1:53:9_, 1:60:20
wondering [1]_ - 1:8:9
WOODWARD [1]_ -
1:3:16
Woodward [1]_ - 1:3:17
word [2]_ - 1:31:16_,
1:35:7
words [12]_ - 1:9:12_,
1:11:10_, 1:11:21_, 1:17:24
_, 1:29:5_, 1:36:7_, 1:37:2_,
1:41:21_, 1:44:11_, 1:45:6_,
1:60:5
worth [1]_ - 1:50:16
written [1]_ - 1:37:2

## Y

year [2]_ - 1:14:2_, 1:25:5
York [4]_ - 1:13:24_,
1:43:16_, 1:49:20
yourself [1]_ - 1:59:5