UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA,

vs.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 23-80101-CR
CANNON/REINHART

### PRESIDENT DONALD J. TRUMP'S MOTION FOR SUPPLEMENTAL BRIEFING ON PRESIDENTIAL IMMUNITY AND A PARTIAL STAY

President Donald J. Trump respectfully submits this motion for (1) leave to file supplemental briefing regarding the implications of *Trump v. United States* for the pending Presidential-immunity motion, ECF No. 324; and (2) a partial stay of further proceedings—with the exception of the pending gag-order motion, ECF No. 592—until President Trump's motions based on Presidential immunity and the Appointments and Appropriations Clauses are resolved.[1]

A partial stay that pauses CIPA and other litigation is warranted based on the reasoning in *Trump*, and such a stay would be consistent with DOJ policies and practices that the Special Counsel's Office claims to be bound by but is largely ignoring. Resolution of these threshold questions is necessary to minimize the adverse consequences to the institution of the Presidency arising from this unconstitutional investigation and prosecution. A partial stay is also appropriate to prevent further exploitation of judicial institutions and resources by Executive Branch personnel in connection with the shameful ongoing lawfare campaign. Exigency supporting a partial stay is demonstrated by President Biden's July 1, 2024 public comment—from inside the White House—

---

[1] Defendants Waltine Nauta and Carlos De Oliveira join in the motion for a partial stay.

linking Jack Smith's abuse of the criminal justice process to Biden's desperate and failing attempts to communicate with voters prior to the 2024 presidential election.

These efforts are so extreme and fanatical that on July 2, 2024, in an apparent response to President Biden's exceedingly weak debate performance on June 27, government officials leaked to the *Washington Post* Smith's misguided plans to continue to prosecute President Trump even as the President-elect. Those leaks were a blatant violation of DOJ policy and practice, with no apparent consequences to those responsible for the malfeasance, that has obvious relevance to the Court's Appointments Clause inquiries regarding the unchecked discretion and lack of oversight enjoyed by the Smith as he seeks to subvert the upcoming election. Collectively, these circumstances call for heightened caution while the Court addresses threshold issues regarding Smith's lack of authority to drive this prosecution forward on the dangerous and reckless course he has repeatedly sought to foist upon the Court. For these reasons, a partial stay is appropriate.

### I. Supplemental Briefing

Consistent with President Trump's pending motion to dismiss based on Presidential immunity, the Supreme Court explained in *Trump* that it would "eviscerate the immunity we have recognized" if a prosecutor could "do indirectly what he cannot do directly—invite the jury to examine acts for which a President is immune from prosecution to nonetheless prove his liability on any charge." 2024 WL 3237603, at *19. Thus, "even when an indictment alleges only unofficial conduct," which is not the case here, prosecutors cannot "[u]se evidence" of official acts. *Id.* Based on this reasoning, like the trial court in the *Trump* case, Your Honor must undertake the "necessarily factbound analysis" regarding whether alleged conduct "is official or unofficial." *Id.*

To facilitate that process, the parties respectfully request permission to file supplemental briefing regarding Presidential immunity and the *Trump* decision pursuant to the following schedule:

- President Trump's Opening Brief: July 26, 2024;
- Special Counsel's Office Response: August 23, 2024; and
- President Trump's Reply: September 9, 2024.

## II. Partial Stay

The Court should stay all other proceedings in the case, except the pending gag-order motion, until the motions relating to Presidential immunity and the Appointments and Appropriations Clauses are resolved. The partial stay should include a pause on CIPA litigation—which is extremely resource-intensive for the defense, the Court and its staff, the security and staff responsible for making the courthouse and relevant secure facilities available, and the Classified Information Security Officer—because the Court's rulings on the Presidential immunity issues will frame any necessary admissibility and substitution decisions under CIPA § 6.

As to Presidential immunity, Chief Justice Roberts reasoned that "[q]uestions about whether the President may be held liable for particular actions, consistent with the separation of powers, must be addressed *at the outset of a proceeding*." *Trump*, 2024 WL 3237603, at *22 (emphasis added). He expressed concern that courts in the District of Columbia had rendered their "decisions on a highly expedited basis" despite the "unprecedented nature" of that case. *Id.* at *13; *see also id.* at *18 (referring to "[t]he concerns we noted at the outset—the expedition of this case, the lack of factual analysis by the lower courts, and the absence of pertinent briefing by the parties . . ."). In this equally unprecedented case, the Presidential immunity questions implicate important Presidential powers discussed in *Trump*, such as "foreign relations responsibilities," "meeting

foreign leaders," "overseeing international diplomacy and intelligence gathering, "managing matters related to terrorism," and "responsibility for the actions of the many departments and agencies within the Executive Branch." *Id.* at *8.

Regarding the Appointments Clause, including the principal-officer issue, Justice Thomas reasoned in his concurrence:

> If this unprecedented prosecution is to proceed, it must be conducted by someone duly authorized to do so by the American people. The lower courts should thus answer these essential questions concerning the Special Counsel's appointment before proceeding.

*Id.* at 25; *see also id.* at 28 ("Perhaps there is an answer for why these statutes create an office for the Special Counsel. But, before this consequential prosecution proceeds, we should at least provide a fulsome explanation of why that is so." (Thomas, J., concurring)).

A partial stay pending resolution of threshold constitutional questions would be consistent with the election-inference prohibition in the Justice Manual, which the Special Counsel's Office is falsely purporting to follow. *See, e.g.*, 6/21/24 Tr. 147:13-14, 148:3-7. As the Court is aware, Justice Manual § 9-85.500 prohibits "[f]ederal prosecutors and agents" from "select[ing] the timing of any action . . . for the purpose of affecting any election." *Id.* On the list of the Office's misrepresentations to the Court in this case is the ludicrous claim at the March 1, 2024 hearing that § 9-85.500 "does not apply to cases that have already been charged." 3/1/24 Tr. 80.

The falsity of that assertion is plain from the reference to "any action" in Justice Manual § 9-85.500. The Attorney General made this clear in a June 24, 2024 memorandum regarding "Election Year Sensitivities." *See* Ex. A. Citing Justice Manual § 9-85.500 and other provisions, the Attorney General accurately described the DOJ policy that the Special Counsel's Office is actively violating while allegedly under his supervision:

> Law enforcement officers and prosecutors may never select the timing of public statements (attributed or not), investigative steps, criminal charges, or any other action in any matter

4

> or case for the purpose of affecting any election, or for the purpose of giving an advantage or disadvantage to any candidate or political party. Such a purpose, or the appearance of such a purpose, is inconsistent with the Department's mission and with the Principles of Federal Prosecution.

*Id.* at 1. The Office's misrepresentation regarding the scope of Justice Manual § 9-85.500 and their ongoing disregard of the provision, apparently without consequences, are relevant to the Court's consideration of whether Smith is a principal officer under the Appointments Clause because of his lack of a functional superior at DOJ as well as his unchecked (and wildly abused) discretion. The Attorney General's recent guidance regarding Justice Manual § 9-85.500 also demonstrates that no prejudice would result from the requested partial stay because the Office should not be taking "any action" that could even create the "appearance" of interference with the election. Ex. A at 1.

Such a stay would be consistent with DOJ's separate "Unwritten 60-Day Rule."[2] According to DOJ's Office of the Inspector General ("DOJ-OIG"), "[s]everal Department officials described a general principle of avoiding interference in elections rather than a specific time period before an election during which overt investigative steps are prohibited." DOJ-OIG Report at 18. Raymond Hulser, who is now working for Jack Smith, told DOJ-OIG that "there is a general admonition that politics should play no role in investigative decisions, and that taking investigative steps to impact an election is inconsistent with the Department's mission and violates the principles of federal prosecution." *Id.* at 18. This "Rule," or "admonition," is another one of the DOJ practices that, like the Justice Manual, the Office claims to owe fealty. *See* 6/21/24 Tr. 148:23-25.

---

[2] A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election, Office of Inspector General, U.S. Dep't of Justice (June 2018) (the "DOJ-OIG Report") at 17-18, https://s3.documentcloud.org/documents/4515884/DOJ-OIG-2016-Election-Final-Report.pdf.

DOJ-OIG's 2018 Report detailed statements from several former high-ranking DOJ officials regarding this established practice, which the Special Counsel's Office is ignoring:

- Jim Comey: "[W]e avoid taking any action in the run up to an election, if we can avoid it." *Id.* at 17.

- Loretta Lynch: "[I]n general, the practice has been not to take actions that might have an impact on an election, even if it's not an election case or something like that." *Id.* at 18.

- Sally Yates: "To me if it were 90 days off, and you think it has a significant chance of impacting an election, unless there's a reason you need to take that action now you don't do it." *Id.* at 18.

President Biden's public comments following the *Trump* decision on July 1, 2024, confirmed the ongoing violations of DOJ policy and practice arising from Jack Smith's efforts to rush this deeply flawed case—and the similarly flawed and politically-motivated *Trump* case in the District of Columbia—to trial. Referring to Smith's prosecution in the District of Columbia, President Biden argued that "the American people deserve to have an answer in the courts before the upcoming election."[3] The remark explicitly connected the Special Counsel's Office with President Biden's misuse of the criminal justice system to communicate with voters prior to the election. President Biden effectively confessed to spearheading the unconstitutional, unprecedented, and ultimately unsuccessful lawfare campaign joined by Smith's Office, DOJ and other federal agencies, and the private interests backing them as they desperately try to prevent the American people from electing President Trump. President Biden essentially boasted about being the root cause of the "prospect of an Executive Branch that cannibalizes itself." *Trump*, 2024 WL 3237603, at *24.

---

[3] Remarks by President Biden on the Supreme Court's Immunity Ruling, July 1, 2024, https://www.whitehouse.gov/briefing-room/speeches-remarks/2024/07/01/remarks-by-president-biden-on-the-supreme-courts-immunity-ruling.

Remarkably, on the day after President Biden's remarks and not long after President Trump's overwhelming debate victory, "people familiar with" DOJ's "internal deliberations" fully embraced their role in this abomination by telling the media that Jack Smith and DOJ plan to "pursue the criminal cases against Donald Trump past Election Day even if he wins . . . ." Ex. B (*Washington Post* article). The decision to perpetrate these leaks as part of the response to President Biden's crushing debate defeat resolves any doubt that Smith and the Special Counsel's Office prioritize politics over justice. Smith's indirect notification to the media and his allies that he has no qualms about prosecuting President Trump, even as President-elect after more than 100 million Americans cast their votes, is in blatant violation of DOJ policy and practice. Having falsely and implausibly alleged that President Trump conspired "against the right to vote and to have one's vote counted" in connection with the 2020 election,[4] Smith has forecast his and DOJ's willingness to violate those civil rights as part of President Biden's election-interference mission.

The July 2, 2024 leaks by DOJ and the Special Counsel's Office violated the Attorney General's June 24 guidance that (1) "prosecutors may never select the timing of public statements (attributed or not) . . . for the purpose of giving an advantage or disadvantage to any candidate"; and (2) even "the *appearance of such a purpose*" is "inconsistent with the Department's mission and with the Principles of Federal Prosecution." Ex. A at 1 (emphasis added). If the Office continues to oppose this stay request, they should be required to identify the source of these leaks, address the apparent violations of DOJ policy, and explain what remedial measures have been put in place.

In conclusion, President Biden's lawfare confession, the government's recent leaks, and the underlying details will require dismissal of the Superseding Indictment for multiple reasons,

---

[4] Indictment ¶ 4, *United States v. Trump*, No. 23 Cr. 257 (D.D.C. Aug. 1, 2023).

including selective and vindictive prosecution, prosecutorial misconduct, and violations of the Fourth Amendment, due process, and the attorney-client privilege, among other rights. For purposes of this motion, however, our request is a modest one. The Court should resolve the threshold questions identified in *Trump* relating to Presidential immunity and the Appointments Clause, as well as the related issues presented in the Appropriations Clause motion, prior to addressing the other numerous problems with this case.

Dated: July 5, 2024

Respectfully submitted,

*/s/ Todd Blanche / Emil Bove*
Todd Blanche (PHV)
toddblanche@blanchelaw.com
Emil Bove (PHV)
emil.bove@blanchelaw.com
Kendra L. Wharton (Fla. Bar No. 1048540)
k.wharton@whartonlawpllc.com
BLANCHE LAW PLLC
99 Wall Street, Suite 4460
New York, New York 10005
(212) 716-1250

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
(305) 677-2707

*Counsel for President Donald J. Trump*

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 3, 2024, counsel for President Trump and the Special Counsel's Office conferred in a good faith effort to resolve the issues herein, but were unable to do so with respect to President Trump's stay motion. The Special Counsel's Office requested that we include the following statement:

> The Government objects to a stay and requests an opportunity to respond to any stay motion within the time the Local Rules provide.

## CERTIFICATE OF SERVICE

I, Kendra L. Wharton, certify that on July 5, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Kendra L. Wharton*
Kendra L. Wharton