UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cr-80101-AMC

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

      Defendants.

_____/

FILED BY _____ D.C.

FEB 1 4 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**AMERICAN OVERSIGHT'S *EXPEDITED MOTION* TO INTERVENE AND FOR
CLARIFICATION OR, ALTERNATIVELY, DISSOLUTION OF JANUARY 21, 2025
ORDER GRANTING DEFENDANTS' EMERGENCY MOTION TO PRECLUDE
RELEASE OF VOLUME II OF SPECIAL COUNSEL'S REPORT**

Expedited Ruling Requested by February 18, 2025[1]

American Oversight, a non-partisan nonprofit committed to promoting transparency and
ensuring accountability of government officials, seeks to intervene in this case to (1) confirm that
the Court's January 21, 2025 Order barring disclosure of Volume II of the Special Counsel's
Report, dissolved when the criminal charges on which the Court based its injunctive protective
order were finally dismissed; or in the alternative, (2) move the Court to immediately lift that
Order.

The January 21, 2025 Order in this case directly implicates American Oversight's rights in
a Freedom of Information Act ("FOIA") case against the Department of Justice ("DOJ")

---

[1] An expedited ruling by February 18, 2025 is needed because a hearing is set on Prospective Intervenor's motion for
a preliminary injunction in *American Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. Feb. 10, 2025), on
February 20, 2025 in the District of Columbia. As detailed herein, the Defendant in that case, the Department of
Justice, has asserted it cannot provide the relief request by American Oversight in that action because this Court's
January 21, 2025 Order bars disclosure of Volume II of the Special Counsel's report.

concerning Volume II that is pending in the U.S. District Court for the District of Columbia (the "FOIA Action")[2]. Upon the Eleventh Circuit's grant of the government's voluntary dismissal of the appeal in this matter, the Order ceased to operate. While this motion to intervene comes at an admittedly unusual juncture—when no criminal defendants or possibilities of appeals remain—it is necessary because the DOJ has taken the position in the FOIA Action that the Order remains in effect. Having exhausted efforts to have DOJ take steps to clarify whether the Order remains in effect, or alternatively to lift the Court's January 21, 2025 Order, American Oversight has no choice but to take those steps itself—the urgency of the public's right to access Volume II demands it. Volume II contains information of critical and urgent importance to the public pertaining to Kash Patel, President Trump's nominee for Director of the Federal Bureau of Investigation ("FBI"). In a matter of days, the U.S. Senate is expected to vote on Patel's confirmation. The American people—and their Senators, who have repeatedly demanded the release of the report—have a right to know the non-exempt information relating to Patel's involvement in the classified documents investigation before that vote happens.

The relief American Oversight is seeking about this significant and urgent matter is limited—clarity that an order barring the release of a report which includes information pertaining to the activities of the federal government and the President's nominee to lead the nation's top law enforcement agency is dissolved. It's against this backdrop that American Oversight respectfully requests this Court grant its expedited motion to intervene and provide clarity on, or in the alternative, order the immediate dissolution of, its January 21, 2025 Order barring disclosure of Volume II of the Special Counsel's Report.

---

[2] *See Am. Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. Feb. 10, 2025).

<u>**MEMORANDUM OF LAW**</u>

## I.     BACKGROUND

### A.     The Special Counsel's Report

On January 7, 2025, then-Special Counsel Jack Smith delivered to DOJ the Special Counsel's Report, bifurcated into two volumes and reflecting his investigations into then President-elect Trump's potential interference with the lawful transfer of power following the 2020 election ("Volume I") and allegations of mishandling of a trove of classified documents after Trump left office in 2021 ("Volume II").[3] Notably, Volume II contains information of significant urgent importance to the public, not only pertaining to President Trump, but to Kash Patel, Trump's nominee for Director of the Federal Bureau of Investigation.[4]  Smith provided a redacted version of Volume II, which relates information pertaining to the instant case, to DOJ noting that "consistent with Department policy, Volume Two should not be publicly released while [the instant case] remains pending."[5] Volume I was released to the public on January 14, 2025.[6]

---

[3] Letter from Jack Smith, Special Couns., Dep't of Justice, to Merrick Garland, Att'y Gen., Dep't of Justice (Jan. 7, 2025) ("Smith Letter to Garland"), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf.

[4] *See* Rebecca Beitsch, *Raskin Demands DOJ Release Smith Mar-a-Lago Report*, The Hill (Feb. 3, 2025, 4:50 AM) https://thehill.com/homenews/5122053-raskin-demands-doj-release-smith-mar-a-lago-report/; *see also* Eric Tucker, *AP source: Trump Ally Appears Before Mar-a-Lago Grand Jury*, Assoc. Press (Nov. 4, 2022, 10:17 PM), https://apnews.com/article/donald-trump-mar-a-lago-government-and-politics-8a51290da3e8f59c83edbfc2898f547d; Alex Leary et al., *Ex-White House Aide Kash Patel Presses View Trump Broadly Declassified Documents*, Wall St. J. (Aug. 21, 2022, 8:00 AM), https://www.wsj.com/articles/ex-white-house-aide-kash-patel-presses-view-trump-broadly-declassified-documents-11661083201; Tierney Sneed, *Trump Claims He Declassified Mar-a-Lago Docs, but His Lawyers Avoid Making that Assertion*, CNN (Sept. 16, 2022, 8:20 AM), https://www.cnn.com/2022/09/15/politics/trump-mar-a-lago-docs-declassified-claim/index.html.

[5] *See* Smith Letter to Garland, *supra* n.3, at 4.

[6] *Read the Special Counsel's Report on the Trump Election Case*, N.Y. Times, Jan. 14, 2025, https://www.nytimes.com/interactive/2025/01/14/us/report-of-special-counsel-smith-volume-1-january-2025.html.

**B.**     **Relevant History of the Case**

In June 2023, a grand jury returned indictments charging then former President Donald Trump, Waltine Nauta, and Carlos De Oliveira with multiple criminal offenses relating to alleged mishandling of classified national defense documents. ECF Nos. 3, 85.

On July 15, 2024, this Court entered an Order dismissing the superseding criminal indictments of then Presidential Nominee Trump, Nauta, and De Oliveira. ECF No. 672. The government appealed the Court's dismissal Order as to all defendants to the United States Court of Appeals for the Eleventh Circuit. ECF No. 673, *See also* 11th Cir. Appeal No. 24-12311. Following the 2024 Presidential Election, on November 25, 2024, the government filed an unopposed motion to dismiss its appeal against then President-elect Trump. App. Doc. 79. The Eleventh Circuit entered an Order granting the motion and dismissing the appeal the following day. App. Doc. 81. On January 6, 2025, Mr. Nauta and Mr. De Oliveira filed an emergency motion seeking to preclude the government from releasing the entirety of the Special Counsel's Report. ECF No. 679.  President-elect Donald Trump filed a motion to intervene, or in the alternative, participate as amicus curiae in Mr. Nauta and Mr. De Oliveira's motion for emergency relief. ECF No. 681. On January 13, 2025, this Court, noting that the government had affirmed that the Report could be severed into two volumes, denied the emergency motion as to Volume I of the Report. ECF No. 697. On January 21, 2025, after hearing arguments as to Volume II, this Court entered an Order denying President-Elect Trump's Motion to Intervene as to Volume II, but granting his "alternative, unopposed request to participate as amicus to challenge [its] release," and barring the government from releasing Volume II pursuant to the Court's duty to "safeguard the due process rights of the accused," because it "contains voluminous and detailed Rule 16 discovery about the

allegations in this criminal case, which remains pending on appeal as to Defendants Nauta and De Oliveira." ECF No. 714.

On January 29, 2025, the government moved to voluntarily dismiss the appeal as to the remaining two defendants with prejudice. App. Doc. No. 111. On February 11, 2025, the Eleventh Circuit granted the motion and dismissed the appeal. App. Doc. No. 113-2.

## C.    American Oversight's FOIA Request and Subsequent Action Against the Department of Justice Relating to Volume II of the Special Counsel's Report

On January 8, 2025, one day after DOJ received the Special Counsel's report, Prospective Intervenor American Oversight submitted a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, to DOJ seeking expedited production of both volumes of the Special Counsel's report. *See* Decl. of Elizabeth Haddix, Feb. 14, 2025, at ¶ 4, attached as Exhibit 1. Having received no final determination from DOJ relating to its FOIA request or request for expedited processing, American Oversight filed a lawsuit against DOJ on February 10, 2025, seeking declaratory and injunctive relief under FOIA as to Volume II, which has not been publicly released. *See* Compl., *Am. Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. Feb. 10, 2025); Haddix Decl. ¶ 5. American Oversight contemporaneously filed a motion for a preliminary injunction, citing the urgent need for information contained in the report to inform Kash Patel's confirmation proceedings, and seeking release of the non-exempt materials in Volume II by February 21, 2025. *See* Mot. Prelim. Inj., *id.* The day after American Oversight filed its motion, DOJ provided a purportedly final response to the FOIA request, stating: "At this time, I have determined that Volume II of the Report should be withheld in full because it is protected from disclosure by a court injunction issued by the United States District Court for the Southern District of Florida, West Palm Beach Division. In this instance, the Office of Information Policy lacks authority to consider the releasability of this information under the FOIA." Haddix Decl. ¶ 5. After

a status conference that same afternoon, the Court entered an expedited briefing order, with a hearing set for February 20, 2025. *See* Minute Order, *id.* (D.D.C. Feb. 11, 2025).

## II.    ARGUMENT

### A.    The Court Should Permit American Oversight to Intervene

American Oversight should be permitted to intervene in this case because its rights to non-exempt responsive documents and information under FOIA are affected by this Court's January 21, 2025 Order precluding the release of Volume II. ECF No. 714.

Although "[i]ntervention in criminal cases is generally limited," it is appropriate in "instances in which a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *U.S. v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004); *see also Gravel v. U.S.*, 408 U.S. 606, 608–09 n.1 (1972) (noting that district court permitted Senator to intervene to move to quash grand jury subpoenas of witnesses where testimony would implicate his privilege under the Speech and Debate Clause of the U.S. Constitution); *U.S. v. Hernandez*, 124 F. Supp. 2d 698, 701 (S.D. Fla. 2000) (permitting press to intervene for access to court proceedings); *U.S. v. Baez-Alcaino*, 718 F. Supp. 1503, 1505, 1508 (M.D. Fla. 1989) (granting media limited intervention in criminal proceeding).

Here, American Oversight's federal rights under FOIA are directly implicated by the Court's January 21, 2025 Order. American Oversight requested Volume II from DOJ pursuant to FOIA more than a month ago, as soon as the report was available. American Oversight was entitled under FOIA to a determination as to whether DOJ would comply with the FOIA request within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i). DOJ failed to provide such a determination in response to that request as required by FOIA, until after American Oversight filed its complaint and

preliminary injunction motion in the District Court for the District of Columbia on February 10, 2025. That motion seeks release of non-exempt materials in Volume II by February 21, 2025, citing urgency connected to confirmation proceedings of Kash Patel, President Trump's nominee to lead the FBI. Those proceedings are moving quickly,[7] and information relating to Patel's reported testimony before the grand jury relating to President Trump's potential mishandling of highly classified documents[8] is of significant interest to the public and the senators who are charged with providing "advice and consent" on federal nominees in the confirmation process.[9] The government's position in the ongoing FOIA proceeding is that it cannot comply with American Oversight's request because this Court's January 21, 2025 Order precludes DOJ from releasing Volume II. Haddix Decl. ¶ 5. Because American Oversight has the right to prompt disclosure of non-exempt public records under FOIA, a federal statute, and because the government has cited this Court's Order as the reason it cannot comply with American Oversight's request, intervention in this case is appropriate for the limited purpose of permitting American Oversight to seek clarification that the Court's January 21, 2025 Order dissolved upon the government's voluntary dismissal of the appeals in this matter, or in the alternative, move for immediate dissolution of this Court's January 21, 2025 Order. The Court should grant American Oversight's Motion to Intervene.

---

[7] *See* Devlin Barret, *Senate Panel Advances Kash Patel's Bid for F.B.I. Director Amid Agency Turmoil*, N.Y. Times, Feb. 13, 2025, https://www.nytimes.com/2025/02/13/us/politics/kash-patel-fbi-senate-judiciary-confirmation-trump.html.

[8] *See* Tucker, Leary, Sneed, *supra* n.4.

[9] *See, e.g.*, Letter from U.S. Sen. Committee on the Judiciary, to James McHenry, Acting Atty' Gen., Dep't of Justice (Jan. 29, 2025), https://www.judiciary.senate.gov/imo/media/doc/2025-01-29%20SJC%20Dems%20Letter%20-%20Smith%20Report%20Vol%20II.pdf.

**B.     The Court Should Clarify, or, in the Alternative, Order the Dissolution of the Order Barring the Release of Volume II**

    *1.     There Are No Remaining 'Live' Criminal Appeals to the Court's Dismissal of Superseding Indictment*

The Court should clarify the automatic dissolution, or, in the alternative, order the immediate dissolution of, its January 21, 2025 Order barring the release of Volume II, because the Eleventh Circuit's entry of dismissal of all appeals means no prospect of a trial of any of the former Defendants remains in the case. On July 15, 2024, this Court granted then-Defendants' Motion to Dismiss Superseding Indictment, dismissed the indictment, directed the Clerk to close the case and denied any pending motions as moot. ECF No. 672 at 93. The United States filed a notice of appeal as to all defendants two days later. ECF No. 673. Following the presidential election, DOJ filed a motion to voluntarily dismiss its appeal against then President-elect Trump, and on November 26, 2024, the Eleventh Circuit granted the motion. ECF No. 677. On January 29, 2025, DOJ moved to voluntarily dismiss the appeal as to the remaining two defendants with prejudice. App. Doc. 111. On February 11, 2025, the Eleventh Circuit granted the motion and dismissed the appeal. App. Doc. 113-2. With no appeals remaining, all that is left to effect is the directives ordered by the Court on July 15, 2024.

    Notably, the Order deals with issues raised *after* the Court's dismissal of the superseding indictment that primarily stemmed from concerns that materials contained in Volume II could affect Mr. Nauta and Mr. De Oliveira's rights to a fair trial given that, at the time of the Order, the two remained "subject to a live criminal appeal of this Court's Order Dismissing the Superseding Indictment." ECF No. 714 at 11.[10] Now, there are no live criminal appeals.[11] The Court's concern

---

[10] This Court denied a motion to intervene filed by then President-elect Trump, who was at that time no longer a Defendant in the case, as to the release of both volumes of the Special Counsel's Report but granted his request in the alternative to participate as an amicus to challenge the release of Volume II. ECF Nos. 702, 714 at 2.

[11] *See* ECF Docket, No. 23-cr-80101, at 1 (describing case as "terminated").

that "there has been no indication by any government official in this case that the Department will not proceed on the Superseding Indictment should it prevail in the Eleventh Circuit or in subsequent proceedings," *id.*, has been obviated by both the government's voluntary dismissal as well as the Eleventh Circuit's entry of dismissal of appeals. Thus, a clarification or order rendering the injunctive relief barring disclosure of Volume II on that basis dissolved is appropriate.

2.   *An Order Entered Pursuant to a District Court's Supervisory Power is Limited to Ongoing Criminal Proceedings*

Clarification on the dissolution of the Court's Order barring the release of Volume II is further warranted because a district court's supervisory power cannot extend beyond prospective criminal proceedings before it.

This Court granted injunctive relief precluding the release of Volume II pursuant to its "supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." ECF No. 714 at 7 (quoting *U.S. v. DiBernardo*, 775 F.2d 1470, 1475–76 (11th Cir. 1985)).[12] Such powers may enable a court to fulfill its "affirmative duty, triggered at the inception of a criminal proceeding, to safeguard the due process rights of the accused." *See id.* at 8 (citing U.S. Const. amend. V; *Gannett Co. v DePasquale*, 443 U.S. 368, 378 (1979)). However, to the extent that the Order barring disclosure of Volume II served as a "protective measure[] to ensure a fair trial and to minimize the effects of prejudicial pretrial publicity," *id.*, the protection is no longer warranted as there is no prospective trial before this Court.

Relatedly, any prejudice to defendants that led the Court to exercise its supervisory powers in entering the Order has extinguished, further supporting the conclusion that the Order dissolved

---

[12] As the Court noted, the Order is separate from the Rule 16(d)(1) Protective Order, ECF No. 27, governing the exchange of discovery in this case.

by operation of entry of dismissal of the appeals.  The injunctive relief effectuated by the Order was triggered by a motion filed by then-Defendants Nauta and De Oliveira requesting the Court use its power to prevent unfair prejudice to their case. *See* ECF No. 679 at 3. "[P]rejudice to the defendant is an essential element" when a criminal defendant is requesting that a court exercise its supervisory power. *See U.S. v. Moss*, No. 10-60264-CR-COHN, 2011 WL 2669159, at *9 (S.D. Fla. Mar. 21, 2011) (quoting *U.S. v. O'Keefe*, 825 F.2d 314, 318 (11th Cir. 1987)). Here, Mr. Nauta and Mr. De Oliveira are no longer defendants who may suffer prejudice; they are no longer defendants at all. After the Eleventh Circuit's entry of an order dismissing the appeals against them, they are two individuals who no longer have any charges against them to be considered by this Court. As there is no defendant who may suffer prejudice if the release of Volume II is not barred, the Court's January 21, 2025 Order should be clarified to confirm it dissolved upon entry of the dismissal, or now ordered to be dissolved.

Further, the limits on a court's supervisory power mean that exercise of that power should not be used when more narrowly tailored options are available to deter violative conduct. *See U.S. v. Hasting*, 461 U.S. 499, 506 (1983). Here, any continuation of the relief to safeguard due process interests—a full bar on the disclosure of Volume II—that was ordered *prior* to dismissal of appeals is not narrowly tailored to deter violative conduct. Instead, more narrowly tailored alternatives already exist that would permit the disclosure of non-exempt materials included in Volume II. Counsel at DOJ remain bound by the requirements of Federal Rule of Criminal Procedure Rule 6(e), and FOIA Exemption 3 permits a government agency to withhold material that is "'specifically exempted from disclosure by statute' so long as (1) the statute 'requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue,' and (2) the statute relied on was 'enacted after the date of enactment of the OPEN FOIA Act of 2009.'"

*See Boehm v. F.B.I.*, 983 F. Supp. 2d 154, 157 (D.D.C. 2013) (quoting 5 U.S.C. § 552(b)(3)(A)(i), (b)(3)(B)). Rule 6(e) is one of the statutes covered by FOIA's Exemption 3. *Id.* (citing *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1113 (D.C. Cir. 2007)). Although Exemption 3 does not permit an interpretation of Rule 6(e) that would provide "a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury," it does permit withholding material that "elucidate the inner workings of the grand jury." *Id.* at 157, 160. A clarification that the Court's Order was dissolved upon dismissals of the appeals or, in the alternative, an Order dissolving the injunctive relief now would simply mean that the materials in Volume II would be treated as any other materials in DOJ's possession and related to criminal cases brought by the Department of Justice would be: subject to appropriate Rule 6(e) withholdings via Exemption 3 of FOIA. Thus, clarification that the Order has been dissolved, or an order that it is now dissolved, is entirely appropriate because safeguards through FOIA exemptions will still protect against disclosure of exempt information.

## III.   CONCLUSION

For the foregoing reasons, this Court should grant American Oversight's Motion to Intervene, and clarify, or, in the alternative, order the dissolution of the January 21, 2025 Order barring the release of Volume II.

**CERTIFICATION OF CONFERRAL**

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has sought conferral with all parties or non-parties who may be affected by the relief sought in this motion—including counsel for the United States and for the three former Defendants—in a good faith effort to resolve the issues but has been unable to resolve the issues.

On February 13, 2025, counsel for movant emailed counsel for the United States and for the three former Defendants, advising them of the nature of Prospective Intervenor's motion and the relief sought, and requested that counsel respond by 12 p.m. on Friday, February 14, with any position their clients take on the motion or if there was any possibility the issue could "be resolved expeditiously without requiring American Oversight's intervention in the proceeding."

Counsel for Mr. Nauta responded: "On behalf of Waltine Nauta, we oppose your application for intervention or for other relief, and we intend to file a response in opposition on behalf of Mr. Nauta following the filing of, and opportunity to review, any such motion.  We otherwise reserve all rights in relation to your actions in connection with this matter."

Counsel for Mr. De Oliveira responded shortly after: "Hello, all. On behalf of Carlos De Oliveira, we join in Mr. Klugh's position. Thank you."

Counsel for movant has received no response from counsel for the United States or counsel for former Defendant President Donald Trump.

Dated: February 14, 2025

Respectfully Submitted,

/s/ Barbara R. Llanes
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
BARBARA R. LLANES
Florida Bar No. 1032727
bllanes@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com


ELIZABETH HADDIX *(pro hac vice forthcoming)*
elizabeth.haddix@americanoversight.org
LOREE STARK *(pro hac vice forthcoming)*
loree.stark@americanoversight.org
AMERICAN OVERSIGHT
1030 15th Street, NW, B255
Washington, D.C. 20005
Telephone: 202-869-5246

*Counsel for Non-Party American Oversight*

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-cr-80101-CANNON

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DONALD J. TRUMP,
WALTINE NAUTA, and
CARLOS DE OLIVEIRA,

      Defendants.

_____/

## DECLARATION OF ELIZABETH HADDIX

I, ELIZABETH HADDIX, hereby declare as follows:

1.      I am Senior Counsel at American Oversight, and lead counsel for American Oversight in *American Oversight v. U.S. Department of Justice*, Case No. 1:25-cv-00383-TJK (D.D.C.). I make this declaration based on my personal knowledge, through consultation with my colleagues at American Oversight, and through a review of American Oversight's business records.

2.      American Oversight is a non-partisan, nonprofit organization primarily engaged in disseminating information to the public and committed to ensuring transparency in government and promoting accountability for government officials. American Oversight's primary professional activity or occupation is information dissemination.

3.      American Oversight analyzes the records it receives and creates explanatory and editorial content on the basis of its findings, and the organization highlights its findings for other media to ensure wide public dissemination. American Oversight also typically posts records it

1

receives from public records requests for free, public viewing on its website. American Oversight disseminates the information it receives in order to facilitate the informed participation of the American public in self-government, including by ensuring the public has the information it needs to effectively petition its representatives in Congress.

4.      On January 8, 2025, American Oversight submitted a FOIA request bearing internal tracking number DOJ-25-0036 to the U.S. Department of Justice ("DOJ") seeking expedited production of both volumes of then-Special Counsel Jack Smith's two-volume report on his investigations into President Trump's potential interference with the lawful transfer of power following the 2020 election (Volume I) and allegations of mishandling of a trove of classified documents after Trump left office in 2021 (Volume II). A true and correct copy of the request is attached as Exhibit 1.

5.      After acknowledging receipt of American Oversight's request, DOJ did not communicate further with American Oversight about the request until 12:34pm on February 11, 2025. *See* attached Exhibit 2. In that correspondence, DOJ stated that it was withholding Volume II of the Report in full "because it is protected from disclosure by a court injunction issued by the United States District Court for the Southern District of Florida, West Palm Beach Division." *Id.*

6.      American Oversight's ability to obtain public records on a prompt basis is crucial to its mission of ensuring transparency of government actions, promoting accountability of government officials, and disseminating information about government activities to the public. Prompt responses to public records requests and timely production of relevant documents are crucial to American Oversight's ability to fulfill its mission. American Oversight intends to rapidly disseminate the non-exempt records it receives in response to its FOIA request to DOJ for Volume II of the Special Counsel's report ("Volume II").

7.      Volume II contains information of tremendous national importance, about which there is an urgent need to inform the public. American Oversight requested a copy of Volume II to shed light not only on the investigation of President Trump's alleged actions and conduct, but also on Kash Patel, Trump's nominee for Director of the Federal Bureau of Investigation ("FBI"). American Oversight seeks a copy of Volume II to ensure the public has as much information as possible on a matter of great public importance—Patel's expected confirmation to lead the FBI— so that the American people and their senators can make informed decisions. American Oversight and the public will be irreparably harmed if Volume II is withheld until after Patel is confirmed.

8.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 14, 2025                          /s/ Elizabeth Haddix
                                                   Elizabeth Haddix

# EXHIBIT 1



January 8, 2025

**VIA ONLINE PORTAL**

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
441 G St NW
6th Floor
Washington, DC 20530
Via Online Portal

Arla Witte-Simpson
FOIA Public Liaison
Executive Office for United States Attorneys
175 N Street, N.E.
Suite 5.400
Via Online Portal

**Re: Expedited Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the
implementing regulations of the Department of Justice, 28 C.F.R. Part 16, American
Oversight makes the following request for records.

On January 7, 2025, United States District Court Judge Aileen Cannon blocked the
release of Special Counsel Jack Smith's report on his investigations into President
Trump's potential election interference[1] and mishandling of a trove of classified
documents after he left office in 2021.[2] American Oversight seeks the release of this
two-volume report.

---

[1] Rebecca Beitsch, *Trump Asks Garland to Block Jack Smith from Releasing Final Report*,
THE HILL (Jan. 7, 2023, 8:23 AM),
https://thehill.com/homenews/administration/5070960-donald-trump-merrick-
garland-jack-smith-report/.
[2] Alan Feuer, *Judge Cannon Blocks Release of Special Counsel's Final Report on Trump
Documents Investigation*, N.Y. TIMES (Jan. 7, 2025, updated 3:07 PM),
https://www.nytimes.com/2025/01/07/us/politics/trump-documents-case-jack-smith-
report.html.

**Requested Records**

American Oversight seeks expedited processing of this request for the reasons
identified below and requests that the DOJ Office of the Special Counsel (OSC) produce
the following records as soon as practicable, and at least within twenty business days:

> A copy of Jack Smith's two-volume report of his investigations into President
> Trump's handling of classified documents and potential election interference.[3]

> Because this request is limited to a specific, recent, and readily identifiable
> document or documents, American Oversight expects this request can be
> processed on the Simple processing track and result in a prompt agency
> response.

**Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and your agency's regulations, American
Oversight requests a waiver of fees associated with processing this request for records.
The subject of this request concerns the operations of the federal government, and the
disclosures will likely contribute to a better understanding of relevant government
procedures by the general public in a significant way. Moreover, this request is for non-
commercial purposes.

American Oversight requests a waiver of fees because disclosure of the requested
information is "in the public interest because it is likely to contribute significantly to
public understanding of operations or activities of the government."[4] The public has a
significant interest in a report concerning President Trump's handling of classified
documents and potential election interference. Records with the potential to shed light
on these matters would contribute significantly to public understanding of operations
of the federal government, including what the Special Counsel's investigation revealed
about how President Trump handled classified documents and may have interfered in
the 2020 elections. American Oversight is committed to transparency and makes the
responses agencies provide to FOIA requests publicly available, and the public's
understanding of the government's activities would be enhanced through American
Oversight's analysis and publication of these records.

This request "is not primarily in the commercial interest of the requester."[5] In fact, as a
501(c)(3) nonprofit, American Oversight does not have a commercial purpose, and the
release of the information requested is not in American Oversight's commercial interest.
American Oversight's mission is to promote transparency in government, to educate the
public about government activities, and to ensure the accountability of government
officials. American Oversight uses the information gathered, and its analysis of it, to
educate the public through reports, press releases, or other media. American Oversight

---

[3] For further identifying information, please *see id.*
[4] 5 U.S.C. § 552(a)(4)(A)(iii).
[5] *Id.*

– 2 –

also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and X (formerly Twitter).[6]

American Oversight has also demonstrated its commitment to the public disclosure of documents and creation of editorial content through regular substantive analyses posted to its website.[7] Examples reflecting this commitment include the posting of records related to the first Trump Administration's contacts with Ukraine and analyses of those contacts;[8] posting records and editorial content about the federal government's response to the Coronavirus pandemic;[9] posting records received as part of American Oversight's "Audit the Wall" project to gather and analyze information related to the first Trump administration's proposed construction of a barrier along the U.S.-Mexico border, and analyses of what those records reveal;[10] the posting of records related to an ethics waiver received by a senior Department of Justice attorney and an analysis of what those records demonstrated regarding the Department's process for issuing such waivers;[11] and posting records and analysis of federal officials' use of taxpayer dollars to charter private aircraft or use government planes for unofficial business.[12]

---

[6] American Oversight currently has approximately 16,000 followers on Facebook and 97,900 followers on X (formerly Twitter). American Oversight, Facebook, https://www.facebook.com/weareoversight/ (last visited Jan. 7, 2025); American Oversight (@weareoversight), X (formerly Twitter), https://x.com/weareoversight (last visited Jan. 7, 2025).

[7] *See generally News*, American Oversight, https://www.americanoversight.org/blog.

[8] *Trump Administration's Contacts with Ukraine*, American Oversight, https://www.americanoversight.org/investigation/the-trump-administrations-contacts-with-ukraine.

[9] *See generally The Trump Administration's Response to Coronavirus*, American Oversight, https://www.americanoversight.org/investigation/the-trump-administrations-response-to-coronavirus; *see, e.g., 'We've All Given Up Getting a Straight Answer From You Guys: Frustrated Emails Between Illinois Governor's Office and White House*, https://www.americanoversight.org/weve-all-given-up-getting-a-straight-answer-from-you-guys-frustrated-emails-between-illinois-governors-office-and-white-house.

[10] *See generally Audit the Wall*, American Oversight, https://www.americanoversight.org/investigation/audit-the-wall; *see, e.g., Border Wall Investigation Report: No Plans, No Funding, No Timeline, No Wall*, American Oversight, https://www.americanoversight.org/border-wall-investigation-report-no-plans-no-timeline-no-wall.

[11] *DOJ Records Relating to Solicitor General Noel Francisco's Recusal*, American Oversight, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance; *Francisco & the Travel Ban: What We Learned from the DOJ Documents*, American Oversight, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

[12] *See generally Swamp Airlines: Chartered Jets at Taxpayer Expense*, American Oversight, https://www.americanoversight.org/investigation/swamp-airlines-private-jets-taxpayer-expense; *see, e.g., New Information on Pompeo's 2017 Trips to His Home State*, American Oversight, https://www.americanoversight.org/new-information-on-pompeos-2017-trips-to-his-home-state.

DOJ-25-0036

Accordingly, American Oversight qualifies for a fee waiver.

## **Application for Expedited Processing**

Pursuant to 5 U.S.C. § 552(a)(6)(E)(1) and 28 C.F.R. § 16.5(e)(1)(ii), American Oversight requests that your agency expedite the processing of this request.

I certify to be true and correct to the best of my knowledge and belief that the information requested is urgently needed to inform the public concerning actual or alleged government activity. There is an urgent need to inform the public regarding the results of investigations into President Trump ahead of his inauguration and renewed authority over the Department of Justice – the very entity that investigated him and produced the report at issue.

I also certify to be true and correct to the best of my knowledge and belief that there is widespread and exceptional media interest and there exist possible questions concerning the government's integrity, which affect public confidence.[13] The release of this report is currently being blocked by a judge appointed by President Trump just days ahead of his inauguration and assumption of authority over the Department of Justice.

Moreover, I certify to be true and correct to the best of my knowledge and belief that there exist possible questions concerning the government's integrity regarding Special Counsel Jack Smith's report and whether it would be released after President Trump is reinaugurated.

I further certify that American Oversight is primarily engaged in disseminating information to the public. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the

---

[13] *See id*; Beitsch *supra* note 1; Katherine Faulders et al, *Judge in Trump's Classified Docs Case Temporarily Blocks Release of Special Counsel's Final Report*, ABC NEWS (Jan. 7, 2025, 12:18 PM), https://abcnews.go.com/US/special-counsel-responds-after-trump-defendants-judge-block/story?id=117413916; Eric Tucker, *Judge Temporarily Blocks Release of Special Counsel Report on Trump Cases as Court Fight Simmers*, AP NEWS (Jan. 7, 2025, 1:21 PM), https://apnews.com/article/trump-jack-smith-maralago-jan-6-justice-department-e73a42b03cc6dc807de32c42dc824f3d; Josh Gerstein & Kyle Cheney, *Cannon temporarily blocks release of Jack Smith report*, POLITICO (Jan. 7, 2025, 12:20 PM), https://www.politico.com/news/2025/01/07/aileen-cannon-blocks-jack-smith-report-release-00196863; Perry Stein & Jeremy Roebuck, *Cannon temporarily blocks report on Trump classified-documents probe*, WASH. POST (Jan. 7, 2025, updated 2:08 PM), https://www.washingtonpost.com/national-security/2025/01/07/jack-smith-trump-special-counsel-report-garland/; C. Ryan Barber & Corinne Ramey, *Judge Temporarily Blocks Release of Special Counsel Report on Trump*, WALL STREET. J. (Jan. 7, 2025, 2:29 PM), https://www.wsj.com/us-news/law/trump-lawyers-seek-to-block-release-of-special-counsel-report-5c855e8b?mod=hp_lead_poss.

DOJ-25-0036

accountability of government officials.[14] Similar to other organizations that have been found to satisfy the criteria necessary to qualify for expedition,[15] American Oversight "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'"[16] American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, and other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and X (formerly Twitter).[17] As discussed previously, American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content.[18]

Accordingly, American Oversight's request satisfies the criteria for expedition.

---

[14] Oct. 21, 2024 Mot. Hr'g Tr., *Am. Oversight v. U.S. Dep't of Just.*, U.S. D.D.C. Case No. 1:24–cv–02789–PLF. Attached as Exhibit A are true and correct copies of the cover page and pages 36–47 excerpted from the transcript of a motion hearing before United States District Court for the District of Columbia Judge Paul L. Friedman, wherein the court expressly found that American Oversight is an organization that is primarily engaged in disseminating information.

[15] *See ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30–31 (D.D.C. 2004); *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

[16] *ACLU*, 321 F. Supp. 2d at 29 n.5 (quoting *EPIC*, 241 F. Supp. 2d at 11).

[17] American Oversight currently has approximately 16,000 followers on Facebook and 97,900 followers on Twitter.com. American Oversight, Facebook, https://www.facebook.com/weareoversight (last visited Jan. 7, 2025), American Oversight (@weareoversight), Twitter.com, https://twitter.com/weareoversight (last visited Jan. 7, 2025).

[18] *See generally News*, American Oversight, https://www.americanoversight.org/blog; *see, e.g., Emails and Resume of Trump's Pick to Head Government Personnel Office*, American Oversight, https://www.americanoversight.org/emails-and-resume-of-trumps-pick-to-head-government-personnel-office; *CDC Calendars from 2018 and 2019: Pandemic-Related Briefings and Meetings*, American Oversight, https://www.americanoversight.org/cdc-calendars-from-2018-and-2019-pandemic-related-briefings-and-meetings; *State Department Releases Ukraine Documents to American Oversight*, American Oversight, https://www.americanoversight.org/state-department-releases-ukraine-documents-to-american-oversight; *Documents Reveal Ben Carson Jr.'s Attempts to Use His Influence at HUD to Help His Business*, American Oversight, https://www.americanoversight.org/documents-reveal-ben-carson-jr-s-attempts-to-use-his-influence-at-hud-to-help-his-business; *Investigating the Trump Administration's Efforts to Sell Nuclear Technology to Saudi Arabia*, American Oversight, https://www.americanoversight.org/investigating-the-trump-administrations-efforts-to-sell-nuclear-technology-to-saudi-arabia; *Sessions' Letter Shows DOJ Acted On Trump's Authoritarian Demand to Investigate Clinton*, American Oversight, https://www.americanoversight.org/sessions-letter.

DOJ-25-0036

## Guidance Regarding the Search & Processing of Requested Records

In connection with its request for records, American Oversight provides the following guidance regarding the scope of the records sought and the search and processing of records:

- Please search all locations and systems likely to have responsive records, regardless of format, medium, or physical characteristics.

- In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If a request is denied in whole, please state specifically why it is not reasonable to segregate portions of the record for release.

- Please take appropriate steps to ensure that records responsive to this request are not deleted by the agency before the completion of processing for this request. If records potentially responsive to this request are likely to be located on systems where they are subject to potential deletion, including on a scheduled basis, please take steps to prevent that deletion, including, as appropriate, by instituting a litigation hold on those records.

## Conclusion

If you have any questions regarding how to construe this request for records or believe that further discussions regarding search and processing would facilitate a more efficient production of records of interest to American Oversight, please do not hesitate to contact American Oversight. American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and your agency can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in an electronic format by email. Alternatively, please provide responsive material in native format or in PDF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

We share a common mission to promote transparency in government. American Oversight looks forward to working with your agency on this request. If you do not understand any part of this request, please contact Elizabeth Haddix at foia@americanoversight.org or (252) 359-7424 ext. 1031. Also, if American Oversight's

DOJ-25-0036

request for expedition is not granted or its request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

*/s/ Elizabeth Haddix*
Elizabeth Haddix
on behalf of
American Oversight

DOJ-25-0036

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN OVERSIGHT,          )
                            )
        Plaintiff,          )
                            )
    vs.                     )  CASE NO. 1:24-cv-02789-PLF
                            )
U.S. DEPARTMENT OF DEFENSE, )
et al.,                     )
                            )
        Defendants.         )
_____    )

TRANSCRIPT OF MOTION HEARING
**BEFORE THE HONORABLE PAUL L. FRIEDMAN, DISTRICT JUDGE**
Monday - October 21, 2024
2:36 p.m. - 4:18 p.m.
Washington, DC

**FOR THE PLAINTIFF:**
    American Oversight
    BY:  DANIEL H. MARTINEZ and ELIZABETH HADDIX
    1030 15th Street, NW, Suite B255
    Washington, DC 20005
    (202) 897-2465

**FOR THE DEFENDANTS:**
    United States Attorney's Office, Civil Division
    BY:  DEDRA S. CURTEMAN
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2550

**SONJA L. REEVES**
**Registered Diplomate Reporter**
**Certified Realtime Reporter**
**Federal Official Court Reporter**
333 Constitution Avenue, NW
Washington, DC 20001
Transcript Produced from the Stenographic Record

1           And finally, the discussion about the failure to

2    allocate resources, again, this is a narrow request long past

3    since the 20 days, and for those reasons we believe that the

4    preliminary injunction is justified.

5           THE COURT:  Thank you.  Why don't we take about ten

6    minutes and then we'll come back.  Maybe 15.

7        (Recessed from 3:30 p.m. to 3:44 p.m.)

8           THE COURT:  Anybody else have anything else they want

9    to say?

10          MS. CURTEMAN:  No, Your Honor.

11          MR. MARTINEZ:  No, Your Honor.

12          THE COURT:  Give me a minute, please.  I have

13   something I want to say.

14       (Pause)

15          THE COURT:  Okay.  So I'm going to give you an opinion

16   now.  Hopefully, it will be reasonably articulate.  It's always

17   more articulate if you write an opinion, but it takes longer.

18          So the plaintiff is asking for a preliminary

19   injunction, and they are asking for expedited processing and

20   asking me to direct the defendants, the Department of Defense

21   and the Department of the Army, to expedite their FOIA request.

22          And secondly, they are asking for a decision on their

23   FOIA request, which, as I understand it is a request for a

24   mandatory injunction to require the defendants to produce any

25   nonexempt records by the date certain that they have asked for,

1   which is later this week, October 26th [sic].

2        And their assumption is that it's a narrow request,

3   that there may only be one document or a few documents, because

4   what is requested is any report, including, but not limited to,

5   an incident report filed with U.S. Army Military Police Corps

6   officials and/or any other military officials that are at

7   Arlington National Cemetery regarding the alleged incident

8   reported to have taken place during the August 26, 2024 visit

9   by former President Trump to Arlington National Cemetery.

10       And originally they said, "Given that this request is

11  limited to a specific, recent, and readily identifiable

12  document or documents, American Oversight expressed that this

13  request can be processed very quickly and promptly."  That was

14  what they asked for on August 29th.

15       When they basically heard nothing, perhaps in part

16  because of the Arlington National Cemetery website or some

17  other kerfuffles that are outlined in the plaintiff's

18  September 25th document, letter, asking for expedited

19  processing of their request, they didn't hear anything in the

20  month between August 29th and September 29th, and so they then

21  made a request for expedition.

22       Of course, the government says that they waited a

23  month to ask for expedition.  The plaintiff's response is we

24  only waited a month because we thought they would respond and

25  instead we got all these things that now indicate that the

1    Arlington National Cemetery website was all messed up or

2    whatever else.

3         So the argument is being made by the government that

4    the plaintiffs cannot and have not met the requisites for

5    expedition.  As we know, the legal standard for preliminary

6    injunction is that the moving party, the plaintiffs, must

7    establish the likelihood of success on the merits first, then

8    likely irreparable harm in the absence of preliminary relief,

9    and the balance of the equities in its favor in accord with the

10   public interest.  That's the *Winter* case from the Supreme Court

11   and numerous cases from this circuit applying the *Winter* case.

12        So have the plaintiffs met their burden for expedition

13   and for the immediate release of any nonexempt records, which

14   they assume and I assume are limited in number?  So I'm going

15   to grant the motion for preliminary injunction for these

16   reasons:

17        The Freedom of Information Act itself in Title 5

18   United States Code Section 552 in subpart, I think it's

19   (a)(1)(D)(i) and (a)(1)(E)(i), but I may be wrong.  I know it's

20   a subpart (D)(i) and subpart (E)(i).  And (D)(i) says that each

21   agency may promulgate regulations concerning FOIA requests.

22        More importantly, as relevant here, the statute says,

23   "Each agency shall promulgate regulations pursuant to notice

24   and receipt of public comment, providing for expedited

25   processing of requests for records in cases in which the person

1    requesting the records demonstrates compelling need."

2         The Department of Defense has promulgated such

3    regulations, and they are found at Title 32 C.F.R. Section

4    286.8.  And they say that, "FOIA requests shall be processed

5    with expedition where there is compelling need and where the

6    persons or requester requests expedition and demonstrates a

7    compelling need."  So everybody agrees the burden is on the

8    requester to show compelling need.

9         The regulation says, "A compelling need exists for a

10   variety of reasons," but the most relevant one here is "if the

11   information is urgently needed by an individual primarily

12   engaged in disseminating information in order to inform the

13   public concerning actual or alleged governmental activity."

14        It goes on to say -- that DOD regulation goes on to

15   say, "For requester seeking expedited processing under

16   paragraph (e)(i)(B), a requester who is not a full-time member

17   of the news media must establish that the requester is a person

18   whose primary professional activity or occupation is

19   information dissemination and not an incidental or secondary

20   activity."

21        So American Oversight is not a full-time member of the

22   news media.  They say that they are showing compelling need

23   because their primary activity is disseminating of

24   information -- the dissemination of information.

25        The government says that there is no compelling need,

1    there is no urgency, there is no current exigency or interest
2    in these documents because in part one of the arguments is that
3    the plaintiff waited a month to make the expedition request,
4    but I don't find that troubling, because they couldn't get an
5    answer from the Veterans Administration by asking for prompt
6    processing, so that's when they filed the expedition request.
7           In fact, one could argue that to the extent there is a
8    public interest in this material, that it's even more important
9    and more exigent now as we get closer to the election.  The
10   government says the media has not been reporting on this, the
11   public is not clamoring for this, there are only three NPR
12   articles.
13          Well, a quick Google search says that's not true.
14   There were reports on this incident on CNN, on Al Jazeera, on
15   MSNBC, all the major outlets.  And so out of the likelihood of
16   success argument, we have to show -- or the plaintiffs have to
17   show a compelling need, urgency, which is part of compelling
18   need, urgent public interest, and that there is a substantial
19   public interest still, and in order to show those things, they
20   have to show that their primary activity is disseminating
21   information.
22          So we discussed a lot of cases here today, and among
23   the cases the government relies on is Judge Kotelly's opinion,
24   *Allied Progress*.  The plaintiffs rely on a number of cases that
25   I think are more relevant.  And I mean, I would start, despite

1  the government's correct observation with Judge Cooper's

2  opinion on *American Oversight versus U.S. Department of State*,

3  in which he granted expedition, granted a preliminary

4  injunction on expedition, and that's 414 F.Supp. 3d, page 182.

5      The government is correct that Judge Cooper did not

6  explicitly make the findings that are required, but it's

7  implicit in that opinion that he did when he found the

8  substantial likelihood of success.  What was sought there is

9  information about the government's -- Mr. Trump's former legal

10  advisor, the now disbarred Rudy Giuliani, in connection with

11  the January 6th Committee.  And Judge Cooper found that there

12  was a likelihood of success on the merits.

13      And as for irreparable harm, he said that -- and this

14  had to do with Mr. Giuliani's alleged efforts to enlist

15  Ukraine's assistance in furthering the president's reelection

16  prospect.  On the irreparable harm front, Judge Cooper said,

17  "Time is clearly of the essence.  The impeachment inquiry is in

18  full swing, and, as noted above, congressional leaders expect

19  it to conclude by Christmas, so it's time."

20      Implicit in this is that American Oversight is

21  primarily engaged in disseminating information, or else Judge

22  Cooper wouldn't have reached these other questions, but he

23  didn't specifically say that, I get that.

24      So let's look at some other cases.  In *Protect*

25  *Democracy versus U.S. Department of Defense*, 263 F.Supp. 3d

293, Judge Cooper granted preliminary injunction for processing because it related to cruise missile strikes on a Syrian air base, and he found that, "Protect Democracy has shown it's entitled to expedited processing," for reasons he discussed in that opinion, and the timing of all of this. He did not find all the other requisites; he only found some of them.

However, in *Brennan Center for Justice versus Department of Commerce*, Judge Kelly was dealing with the 2020 U.S. Census, and he found there was a lot of dispute and debate about whether the Commerce Department had done some inappropriate things in counting or not counting certain people with respect to the 2020 census that would affect people's right to vote or not.

And Judge Kelly found that there was an urgency to inform the public before the election because people want to know if the Commerce Department under Secretary Ross and the Trump administration had messed around with the census before they went to the polls in 2020. And he found there was a likelihood of success on the merits of expedition, that there was widespread and exceptional interest in the matter, there were numerous articles about the matter which raised questions about the government's integrity, and that there was an urgency to inform the public by the Brennan Center, which it said is a person or entity primarily engaged in disseminating information.

1       While the Brennan Center had lots of other things as

2  well, it regularly writes and publishes and disseminates

3  information and maintains an online library of numerous

4  articles.  That's a quote from their website, I believe.  That

5  there was an urgency to inform the public of these matters.  He

6  decided this on October 30, 2020, as we were approaching the

7  2020 election.

8       *Center for Public Integrity versus U.S. Department of*

9  *Defense*, Judge Kotelly, "We need an informed electorate," she

10  said.  Expedited processing was approved by Judge Kotelly on a

11  motion for preliminary injunction.  "Only an informed

12  electorate can develop its opinions of its elected officials,"

13  she said.

14       And this related to the administration's policy of

15  conducting surveillance or alleged policy of domestic

16  communications about prior judicial -- or maybe that's not this

17  case.  She was quoting electronic privacy and phone, and that's

18  what she was talking about.  In this case, this had to do with

19  the Defense Department's handling of the Ukraine security

20  assistance program.  She said, "This is a matter of immediate

21  concern to the American public, given extensive media interest

22  in the fate of the program and pressure placed upon the

23  Department regarding this program."

24       As to irreparable harm, this was during the time of

25  the impeachment proceedings relating to Ukraine, and she

1    thought and said that, "The public should be informed about

2    matters relating to the impeachment proceeding.  The

3    dissemination of information relating to the ongoing

4    impeachment proceedings contributes to an informed electorate

5    capable of developing knowledge of opinions and sharing those

6    knowledge of opinions with their elected leaders.  Absent

7    expedited responses, it's not clear that the public would

8    otherwise have access to this relevant information."

9         All of these courts were applying the *Al-Fayed*

10   factors.  And then there is Judge Sullivan's opinion in *Protect*

11   *Democracy versus United States Department of Justice*, 498

12   F.Supp. 3d 132, relating to voter fraud in the 2020 election,

13   and specifically the investigation of mail-in voter fraud,

14   getting close to the election.

15        So those are all the cases -- those are not all of the

16   cases.  Those are some of the cases that support the

17   plaintiff's position.

18        The government relies on *Allied Progress*, Judge

19   Kotelly's opinion, 2017 Westlaw 1750263 in 2017 where she

20   denied preliminary injunction because she found that they were

21   not primarily engaged in the dissemination of information and

22   urgency, both.

23        Again, those were the facts of that case as she found

24   them, but as I just cited in another Judge Kotelly opinion,

25   clearly each of these cases is very fact specific in whether

 1    someone has met their burden.

 2          So I find that the defense has shown -- plaintiffs

 3    have shown compelling need and an urgency.  The question that

 4    is a part of this is whether American Oversight is primarily

 5    engaged in disseminating information, and the government says

 6    -- they make the statement that it's very conclusory.

 7          The plaintiffs in a number of places, but particularly

 8    I think in their September 25, 2024 request for expedition,

 9    say, "I further certify that we are primarily engaged in

10    disseminating information to the public.  Our mission is to

11    promote transparency in government, to educate the public about

12    government activities and ensure the accountability of

13    government officials."

14          "American Oversight gathers information of potential

15    interest to a segment of the public, uses its editorial skills

16    to turn the raw material into distinct work and distributes

17    that work to an audience.  It educates the public through

18    reports, press releases and other media.  American Oversight

19    also makes the materials it gathers available on its public

20    website and promotes their availability on social media

21    platforms."

22          Putting it on a public website is disseminating it to

23    the public.  Writing and issuing reports and press releases is

24    disseminating it to the public.  It's not conclusory.  They

25    have made that representation.  And as they point out in their

1    reply memorandum at page 11, there are other organizations that

2    have similar missions and similar ways to disseminate

3    information and expedition has been granted to them.

4          And they cite in particular the *Protect Democracy* case

5    that I discussed a little while ago, 263 F.Supp. 3d at 293, but

6    the particular discussion and conclusion about dissemination is

7    at page 298 of that opinion.  I think the *Brennan Center*

8    opinion is another one.

9          So we are now two weeks before the election, and I

10   think that there are segments of the public that would like to

11   know and there is even more urgency to the request now than

12   there may have been in August or September.  The request is

13   narrow.  It may only be one report or a number of documents.

14         Presumably, even though the Department of Defense and

15   the Department of the Army will have to do a search in order to

16   look, "Arlington National Cemetery," can do a search term.  You

17   can do "Arlington National Cemetery, August 26, 2024."

18         So I think I have discussed likelihood of success on

19   the merits and irreparable harm.  And the other two prongs for

20   preliminary injunction, the public interest and equitable

21   concerns, I think that the balance of the equities and whether

22   it's in accordance with the public interest, as was said during

23   the oral argument, I think once I find irreparable harm, seems

24   to me that, and the urgency in the public interest also

25   effectively answers the public interest in balance of the

1    equity prongs.

2              So I think I have covered what I want to say.  And to

3    me, that is sufficient, but I'll ask either side if they want

4    to say anything further to deal with the question of the right

5    to a preliminary injunction directing expedition under the

6    statute and regulations, but given what I have said about that,

7    and the fact that the election is two weeks away, it seems to

8    me -- and the fact that it's a narrow request for nonexempt

9    records and it may only be one report or a few documents, that

10   what I have said also is sufficient to grant the request for

11   release of nonexempt documents.

12             Let me first ask the plaintiffs if there is anything

13   you think I have missed or need to address, and then I'll ask

14   the government a similar question.

15             MR. MARTINEZ:  Thank you, Your Honor.  I just want to

16   be clear.  What is the date that you are --

17             THE COURT:  What is it you're requesting?

18             MR. MARTINEZ:  We requested Friday, October 25th.

19             THE COURT:  For release.

20             MR. MARTINEZ:  For release.

21             THE COURT:  So I order expedition, which means start

22   tomorrow looking for the stuff, and so I'll order release by

23   Friday, October 25th.

24             MR. MARTINEZ:  Thank you, Your Honor.

25             MS. CURTEMAN:  Your Honor, the government would just

# EXHIBIT 2

**Friday, February 14, 2025 at 10:46:45 Eastern Standard Time**

| | |
|---|---|
| **Subject:** | FW: Your FOIA Request FOIA-2025-01746 |
| **Date:** | Tuesday, February 11, 2025 at 1:14:23 PM Eastern Standard Time |
| **From:** | AO Records |
| **To:** | FOIA |
| **Attachments:** | OIP Final Response 2.11.25.pdf |

**From:** OIP-NoReply <OIP-NoReply@usdoj.gov>
**Date:** Tuesday, February 11, 2025 at 12:34 PM
**To:** AO Records <records@americanoversight.org>
**Cc:** Littman, Jared (USADC) <Jared.Littman@usdoj.gov>
**Subject:** Your FOIA Request FOIA-2025-01746

Attached is correspondence from the Department of Justice's Office of Information Policy, which is associated with the above-referenced Freedom of Information Act (FOIA) request.

**Please do not reply to this e-mail, as this account is not monitored.**

Thank you,

------------------------------------------
Initial Request Staff
Office of Information Policy
U.S. Department of Justice

202-514-3642 (Main Line)



**U.S. Department of Justice**

Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

February 11, 2025

Elizabeth Haddix
American Oversight
Suite B255
1030 15ᵗʰ Street, NW
Washington, DC 20005
records@americanoversight.org

Re: FOIA-2025-01746

Dear Elizabeth Haddix:

This responds to your Freedom of Information Act (FOIA) request dated and received in this Office on January 8, 2025, seeking a copy of the Report of Special Counsel Jack Smith (the Report).

Please be advised that Volume I of the Report is publicly available on the Department's website at: https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf.

At this time, I have determined that Volume II of the Report should be withheld in full because it is protected from disclosure by a court injunction issued by the United States District Court for the Southern District of Florida, West Palm Beach Division. In this instance, the Office of Information Policy lacks authority to consider the releasability of this information under the FOIA. See GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 384-86 (1980) (finding "no discretion for the agency to exercise" where records are subject to injunction issued by federal district court). In making this determination, we have considered the foreseeable harm standard.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2018). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

-2-

If you have any questions regarding this response, Jared Littman of the United States Attorney's Office for the District of Columbia at (202) 252-2523.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel