# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

## CASE NO.: 23-CR-80101-AMC

UNITED STATES OF AMERICA,

      Plaintiff,

v.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA,

      Defendants.



## MOTION OF THE KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY TO INTERVENE TO SEEK RESCISSION OF THE COURT'S JANUARY 21, 2025 ORDER AND PUBLIC RELEASE OF VOLUME II OF THE SPECIAL COUNSEL'S REPORT

The Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute") is a non-partisan, not-for-profit organization that works to defend the freedoms of speech and the press in the digital age through strategic litigation, research, policy analysis, and public education. Pursuant to Local Rules 7.1 and 88.9, the Institute respectfully moves to intervene in this case to seek (1) rescission of the Court's January 21, 2025 Order enjoining release of Volume II of the Special Counsel's Report ("January 21 Order"); and (2) public release of the redacted version of Volume II that DOJ submitted to the Court in advance of a hearing held on January 17, 2025.[1]

The Knight Institute has standing to intervene to seek rescission of the January 21 Order because the Court's injunction barring the release of Volume II directly implicates the Institute's

---

[1] The Institute does not oppose the Court making additional redactions if the redactions satisfy the requirements of the First Amendment, as described below.

federal rights under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* Specifically, the Institute submitted a FOIA request to the Department of Justice ("DOJ") seeking the release of Volume II, and DOJ has cited this Court's January 21 Order, and the injunction it imposes on the public release of Volume II, as grounds for denying the Institute's request. The Institute asks that the Court rescind its January 21 Order because it prevents the Institute from pursuing its rights under FOIA, and because there is no longer any legitimate reason to enjoin the report's release. The Court will recall that it enjoined release of the report to protect Defendants' due process and fair trial rights. Since the Court issued its injunction, however, the charges against Defendants have been dismissed with prejudice. Accordingly, there is no longer any justification for the injunction, and it no longer reflects a necessary or appropriate exercise of the Court's supervisory authority. The Court should lift the injunction immediately.

The Knight Institute also has standing to intervene to assert common law and First Amendment rights of access to the redacted version of Volume II submitted to the Court by DOJ in advance of the January 17, 2025 hearing. Volume II is a "judicial record" subject to a common law right of access because it was submitted in connection with a motion that invoked the Court's powers and was reviewed and considered by the Court in ruling on the motion. The common law right that attaches to this judicial record is not overcome by good cause. Indeed, all of the factors that courts in this Circuit consider in assessing whether good cause exists in this context weigh in favor of upholding the access right.

Volume II is also subject to a qualified right of access under the First Amendment, because it is a judicial document inextricably intertwined with a proceeding that is itself subject to the constitutional access right, and because it is the type of document whose disclosure promotes the proper functioning of that proceeding and allows the public to know that justice is being done. The

qualified constitutional access right can be limited only to the extent essential to protect a compelling government interest, and even then, any limitation must be narrowly tailored to that interest. Volume II must be released because its suppression is no longer needed to protect any governmental interest and is not narrowly tailored. Moreover, release of the document would serve an important societal interest by informing the public about the character and actions of the nation's highest official, about one of the most significant criminal investigations in American history, and about DOJ's understanding of the Espionage Act, a statute with broad implications for free speech. For all of these reasons, and the further reasons discussed below, the Knight Institute respectfully requests that the Court rescind its January 21 Order and direct the clerk to file on the public docket the redacted version of Volume II that DOJ submitted to the Court.[2]

## **MEMORANDUM OF LAW**

### I.       **Background**

#### A.       **The Special Counsel's Investigation, Charges, and Report**

The FBI opened a criminal investigation on March 30, 2022 into then-former President Donald J. Trump's retention of classified documents at the Mar-a-Lago Club, and a federal grand jury was convened shortly thereafter. On November 18, 2022, Attorney General Merrick B. Garland appointed Jack Smith as Special Counsel to oversee the ongoing DOJ investigations into President Trump's role in the January 6, 2021 attack on the United States Capitol as well as his alleged unlawful retention of classified government records.

---

[2] Some (but not all) of the relief sought by the Knight Institute here was also sought by American Oversight in a motion filed on February 14, 2025. ECF No. 717. The Court issued an order on February 18, 2025 denying American Oversight's request for emergency relief but stating that it would "await briefing . . . in the normal course, according to the standard deadlines set forth in Local Rules 88.9 and 7.1." ECF No. 718.

On June 8, 2023, the Special Counsel filed an indictment charging President Trump with thirty-seven felony charges, including thirty-one violations of the Espionage Act. ECF No. 3. The indictment alleged that, upon leaving the White House on January 20, 2021, President Trump instructed aides to transport boxes containing classified documents—including highly sensitive military and intelligence secrets—to Mar-a-Lago; that Trump stored these boxes in various locations at the Club that were potentially accessible to thousands of members and guests; that he showed classified documents to non-security-cleared members of his Club staff and others; that he failed to return classified documents to the government after having been served with a subpoena requiring their immediate return; and that he made false statements and conspired with others to "obstruct the FBI and grand jury investigations and conceal his continued retention of classified documents." *Id.* at 2–3. The June 2023 indictment also charged one of Trump's associates, Walt Nauta, as a co-conspirator, alleging that he had conspired with Trump to conceal the presence of documents at the Club. *Id.* at 3. On July 27, 2023, a superseding indictment added a second Trump associate, Carlos De Oliveira, as a co-conspirator. The superseding indictment also added additional charges against Trump and Nauta. ECF No. 85.

On July 15, 2024, this Court entered an Order dismissing the superseding indictment on the grounds that Smith's appointment as Special Counsel was unconstitutional. ECF No. 672. Smith filed a Notice of Appeal two days later. ECF No. 673. Following President Trump's victory in the 2024 presidential election, however, Smith moved to dismiss the appeal as to Trump in light of longstanding DOJ policy that "the United States Constitution forbids the federal indictment and subsequent criminal prosecution of a sitting President." *See* Mot. to Dismiss the Appeal as to Donald J. Trump, *United States v. Trump*, No. 24-12311-J (11th Cir. Nov. 25, 2024), ECF No. 79 (incorporating the reasoning given in Gov't's Mot. to Dismiss, *United States v. Trump*, No. 1:23-

cr-00257-TSC (D.D.C. Nov. 25, 2024), ECF No. 281). The Eleventh Circuit granted the motion on November 26, 2024. ECF No. 677.

On January 7, 2025, Smith submitted a final report relating to both of his investigations to Attorney General Garland.[3] The report comprised two volumes, with Volume I addressing the January 6 investigation and Volume II addressing the investigation relating to classified records.[4] In a cover letter accompanying the report, Smith expressed his understanding that the Attorney General was considering releasing the report to the public "consistent with applicable legal restrictions."[5] He assured the Attorney General that in each of the report's two volumes, he had "minimize[d] the identification of witnesses and co-conspirators, consistent with accepted Department practice," and he noted that he was providing a redacted version of Volume II "that identifies certain information that remains under seal or is restricted from public disclosure by Federal Rule of Criminal Procedure 6(e)."[6] He also wrote: "Because Volume II discusses the conduct of Mr. Trump's alleged co-conspirators in the Classified Documents Case, Waltine Nauta and Carlos De Oliveira, consistent with Department policy, Volume II should not be publicly released while their case remains pending."[7]

### B.    The Injunction

On January 6, 2025, the day before Smith transmitted his report to Attorney General Garland, Nauta and De Oliveira filed an "Emergency Motion" requesting that the Court enjoin the

---

[3] Letter from Special Couns. Jack Smith, to Att'y Gen. Merrick Garland, Re: Final Report of the Special Counsel Under 28 C.F.R. § 600.8 (Jan. 7, 2025), available at https://perma.cc/8SWU-PKL7.

[4] *Id.* at 4.

[5] *Id.*

[6] *Id.*

[7] *Id.*

government from sharing or releasing the report. ECF No. 679.[8] The Court granted a temporary injunction on January 7, 2025, prohibiting DOJ, Attorney General Garland, Special Counsel Smith, and all of their officers, agents, and employees from releasing, sharing, or transmitting the report outside of the DOJ. ECF No. 682. In a letter to the Chairmen of the House and Senate Judiciary Committees on January 8, 2025, Attorney General Garland noted that the Court had temporarily enjoined the government from releasing the report, including to congressional leaders, but that Garland himself felt committed to making as much of the report public as possible.[9] He also stated, however, that he agreed with the Special Counsel's recommendation against making Volume II public so long as Nauta and De Oliveira's criminal proceedings were ongoing.[10]

This Court denied the Emergency Motion with respect to Volume I of the report on January 13, 2025. ECF No. 697. On January 15, 2025, this Court ordered DOJ to "hand deliver a copy of Volume II to the Court to be reviewed in camera." ECF No. 705. On January 21, 2025, after reviewing Volume II and hearing argument, the Court granted the injunction with respect to Volume II, prohibiting the government from sharing or disclosing it out of concern for the fair trial and due process rights of Nauta and De Oliveira. The Order emphasized that Volume II contained voluminous and detailed information "protected by the Rule 16(d)(1) Protective Order entered in this case . . . [m]uch of [which] has not been made public in Court filings." ECF No. 714.

---

[8] On January 7, 2025, President Trump submitted a "Motion for Leave to Intervene or, in the Alternative, Participate as Amicus Curiae." ECF No. 681. The Court denied Trump's request to be allowed to intervene but granted his alternative request to participate as amicus curiae. ECF No. 714.

[9] Letter from Attorney General Merrick Garland to Senate Judiciary Committee Chairman Charles Grassley, House Judiciary Committee Chairman Jim Jordan, Ranking Member Dick Durbin, and Ranking Member Jamie Raskin (Jan. 8, 2025), available at https://perma.cc/XQS8-SCTY.

[10] *Id.*

### C.    Subsequent Developments

After President Trump was sworn in as the forty-seventh President of the United States, DOJ moved in the Eleventh Circuit to voluntarily dismiss the appeal as to Nauta and De Oliveira. The Eleventh Circuit granted the motion on February 11, 2025. ECF No. 716.

### D.    The FOIA Request

On January 26, 2025, the Knight Institute submitted a Freedom of Information Act request ("the Request") seeking "a copy of Volume II of the Final Report on the Special Counsel's Investigations and Prosecutions, referenced in Special Counsel Jack Smith's January 7, 2025 letter to Attorney General Merrick B. Garland." Declaration of Anna Diakun ("Diakun Decl.") ¶ 3 (filed herewith). A copy of the Request is attached as Exhibit 1 to the Diakun Declaration. The Knight Institute requested expedited processing of the Request on the grounds that it is an organization "primarily engaged in disseminating information" and that there is a "compelling need" for the records sought because they contain information "urgent[ly]" needed to "inform the public concerning actual or alleged Federal Government Activity," citing 5 U.S.C. § 552(a)(6)(E)(v)(II). Diakun Decl. ¶ 3.

DOJ denied the Knight Institute's request for expedited processing by letter dated January 28, 2025, explaining that "[t]his Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally." Diakun Decl. ¶ 4. A copy of the denial is attached as Exhibit 2 to the Diakun Declaration.

On February 6, 2025, however, DOJ informed the Knight Institute that:

Volume II of the Report should be withheld in full because it is protected from disclosure by a court injunction issued by the United States District Court for the Southern District of Florida, West Palm Beach Division. In this instance, the Office of Information Policy (OIP) lacks authority to consider the releasability of this

information under the FOIA. *See GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 384–86 (1980) (finding "no discretion for the agency to exercise" where records are subject to injunction issued by federal district court).

Furthermore, please be advised that the records you have requested, in particular, Volume II of the Report, relate to the proceedings in *USA v. Waltine Nauta & Carlos De Oliveira*, No. 23-cr-80101 (S.D.F.L. filed June 8, 2023) and *USA v. Trump, et al.*, No. 24-12311 (11th Cir. docketed July 18, 2024), both of which are still pending before those respective courts at this time. As such, Volume II of the Report is currently also being withheld in full pursuant to Exemption 7(A) of the FOIA, 5 U.S.C. §552(b)(7)(A). Exemption 7(A) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.

Diakun Decl. ¶ 5. A copy of the letter is attached as Exhibit 3 to the Diakun Declaration.[11]

## II.    The Knight Institute Has Standing to Intervene.

The Knight Institute has standing to intervene in this case because this Court's injunction barring the release of Volume II directly implicates the Institute's federal rights under FOIA. *See, e.g.*, *United States v. Atesiano*, Case No. 18-20479-CR-Moore/Simonton, 2018 WL 5831092, at *2–4 (S.D. Fla. Nov. 7, 2018) (intervention in a criminal case is proper when "a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case" (cleaned up)); *United States v. Cox*, Case No. 8:14-cr-0140-T-23MAP, 2015 WL 13741738, at *3 (M.D. Fla. Oct. 7, 2015) ("When intervention is allowed in a criminal action, it is limited to instances where the third party's constitutional rights or other federal rights are implicated during the course of the prosecution."). Because DOJ denied the Knight Institute's FOIA request on the basis that this Court's injunction

---

[11] Others have filed FOIA requests for Volume II as well. *See, e.g.*, *N.Y. Times Co. v. U.S. Dep't of Justice*, 1:25-cv-00562 (S.D.N.Y. Jan. 21, 2025); American Oversight's Expedited Mot. to Intervene and for Clarification or, Alternatively, Dissolution of January 21, 2025 Order [] Preclud[ing] Release of Volume II of Special Counsel's Report (ECF No. 717); Letter from Chun Hin Jeffrey Tsoi, Senior Legal Fellow & Alex Goldstein, Assoc. Couns., Citizens for Responsibility & Ethics in Washington, to FOIA Officers, Dep't of Just., Re: Expedited Freedom of Information Act Request (Jan. 10, 2025), https://perma.cc/2JPL-ALKY.

deprives the agency of "authority to consider the releasability of this information," the injunction has the effect of blocking the Knight Institute from vindicating its rights under FOIA. This in turn compromises the Institute's ability to fulfill a core part of its mission: to ensure that the public has access to important information about government. Diakun Decl. ¶ 2. The Institute accordingly has standing to intervene in this case for the purpose of seeking rescission of the January 21 Order. *Id.*

The Knight Institute also has standing to intervene to assert the public's First Amendment and common law rights of access to criminal proceedings and related documents. *See In re Petition of the Trib. Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986) (permitting a newspaper publisher to intervene post-trial in criminal proceeding in order to obtain transcripts of bench conferences); *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (holding that "a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper").

### III.    This Court Should Lift the Injunction.

This Court should lift the injunction barring the public release of Volume II because there is no longer any justification for it, and accordingly it no longer reflects a necessary or appropriate exercise of the Court's supervisory authority.

On January 6, 2025, when Defendants Nauta and De Oliveira filed their Emergency Motion to preclude release of the Special Counsel's report, the DOJ was appealing the dismissal of the cases against them. In their motion, they argued that their criminal "proceedings [would] be irreversibly and irredeemably prejudiced by dissemination of the Final Report," ECF No. 679 at 2, and it was on this basis that the Court ruled in their favor. In its ruling, the Court emphasized its "affirmative duty" under the Fifth Amendment "to safeguard the due process rights of the accused," including "taking protective measures to ensure a fair trial and to minimize the effects

of prejudicial pretrial publicity." ECF No. 714 at 8. It also cited Defendants' Sixth Amendment "right to a fair trial by a panel of impartial, indifferent jurors." *Id.* Finally, the Court pointed to Southern District of Florida Local Rule 77.2, which states that lawyers in a criminal case shall not release information "if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." *Id.* (quoting S.D. Fla. L.R. 77.2). Ultimately, the Court concluded that because "[t]he Department has not sought leave to dismiss the appeal . . . and there has been no indication by any government official in this case that the Department will not proceed on the Superseding Indictment should it prevail in the Eleventh Circuit or in subsequent proceedings," public dissemination of Volume II would "imperil[]" Defendants' right to a fair trial. *Id.* at 11.

Circumstances have now changed. As noted above, the Eleventh Circuit dismissed the appeal with prejudice on February 11, 2025. ECF No. 716. Defendants Nauta and De Oliveira no longer face criminal charges. Accordingly, the injunction barring release of the report is no longer a necessary or appropriate exercise of this Court's supervisory authority. *See United States v. Moss*, No. 10-60264-CR-COHN, 2011 WL 2669159, at *9 (S.D. Fl. Mar. 21, 2011) (explaining that a defendant must "show that he has been prejudiced by the conduct of which he complains before he would be entitled to relief" through the Court's exercise of its supervisory powers) (citing *United States v. O'Keefe*, 825 F.2d 314, 318 (11th Cir. 1987)).[12]

---

[12] To be clear, lifting the injunction would not necessarily result in the release of the entirety of Volume II through FOIA. If DOJ believes that some of the report should be withheld on the grounds that it is Rule 6(e) material, it will presumably seek to withhold that information from disclosure through FOIA's Exemption 3. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007) ("Federal Rule of Criminal Procedure 6(e) . . . prohibits certain persons from 'disclos[ing] a matter occurring before [a] grand jury,' . . . and that rule counts as a statute for purposes of Exemption 3, as it has been positively enacted by Congress." (citations omitted)).

There is no longer any basis for the injunction imposed by the January 21 Order, and the injunction prevents the Knight Institute from pursuing its rights under FOIA. The Court should rescind the Order and thereby lift the injunction.

## IV.     The Public Has a Right of Access to Volume II Under the Common Law.

Volume II is subject to a presumptive right of access under the common law. The common law guarantees the public's right of access to judicial proceedings, which includes the right to "inspect and copy . . . judicial records," *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), because such access is "crucial to our tradition and history, as well as to continued public confidence in our system of justice," *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1358–59 (11th Cir. 2021). "The operations of the courts and the judicial conduct of judges are matters of utmost public concern, and the common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (cleaned up).

A document is a "judicial record" subject to the common law right of access if it is submitted to the court in connection with a motion that "invoke[s] [the court's] powers or affect[s] its decisions, whether or not [the motion is] characterized as dispositive." *Id.* at 1246. A document need not be filed on the court's docket to become a judicial record. "[A] document may still be construed as a judicial record, absent filing, if a court interprets or enforces the terms of that document, or requires that it be submitted to the court under seal." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001); *see also Comm'r, Ala. Dep't of Corr. v. Advance Local Media LLC*, 918 F.3d 1161, 1167–68 (11th Cir. 2019) (holding that a document submitted to the court for *in camera* review but not filed with the court was a judicial record).

Volume II is a judicial record subject to the common law right of access. As explained above, the Court directed the government to deliver a copy of Volume II to the Court for *in camera* review in order to "facilitate" its consideration of the Emergency Motion. ECF No. 705. The Court and designated counsel for the parties discussed "specified contents of Volume II" during a closed portion of the hearing, ECF No. 714 at 4 n.6.[13] And in issuing the January 21 Order, the Court made clear that its *in camera* review of Volume II was integral to deciding the motion. ECF No. 714 at 2, 5 n.8 (dismissing as "startling" the argument that the Court's review of Volume II was unnecessary). Volume II is a judicial document for purposes of the common law right of access because it was submitted to the Court in connection with a motion that invoked the Court's powers. The fact that the Court's adjudication of the motion was based on its review of the document, and on its exchange with the parties about the document, only underscores that the document is a judicial record.

That Volume II includes some Rule 16 discovery material is not determinative of whether a right of access attaches. First, the report was submitted to the Court "in connection with [a] pretrial motion that required judicial resolution on the merits." *Callahan*, 17 F.4th at 1361–62; *id.* at 1362 (explaining that "though discovery materials do not automatically qualify as judicial records subject to the common-law right of access, they take on that status once they are filed in connection with a substantive motion"). Second, discovery material provided by the government to a defendant in a criminal case is subject to a right of access in the circumstances presented here. *See United States v. Wecht*, 484 F.3d 194, 210 (3d Cir. 2007) ("The process by which the

---

[13] That part of the hearing was properly closed to the public in order to "preserve Defendants' fair trial rights and to fully respect protective orders previously entered in this case." ECF No. 705. But, as explained above, the reasons cited for the closure of the hearing and the injunction against disclosure of the report do not justify suppression of Volume II today.

government investigates and prosecutes its citizens is an important matter of public concern," which distinguishes discovery in criminal cases from "traditional civil discovery between private parties."); *Comm'r, Ala. Dep't of Corr.*, 918 F.3d at 1167 (explaining that material submitted with civil discovery motions is excluded from the common law right of access, because civil discovery is "essentially a private process meant to assist trial preparation" (cleaned up)).

Where the presumptive right of access attaches, it can be overcome only by "a showing of good cause, which requires balancing . . . the public interest in accessing court documents against a party's interest in keeping the information confidential." *Romero*, 480 F.3d at 1246. The showing required is substantial, because the Eleventh Circuit is "resolute in [its] enforcement of the presumption." *Callahan*, 17 F.4th at 1359. In other words, the "balance of competing interests" must take into account the "historic presumption of access to judicial records." *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983). To assess whether good cause exists, "courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero*, 480 F.3d at 1246. Courts also consider whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Newman*, 696 F.2d at 803.

The public's right of access to Volume II is not overcome by good cause. Indeed, now that the charges against Defendants have been dismissed with prejudice, all of the factors weigh in

favor of release. First, Volume II concerns a public official of the highest rank—the current and former president. Second, Volume II addresses a matter of public concern—the investigation and prosecution of a former president for the alleged willful retention of military secrets in violation of the Espionage Act. Third, public access to Volume II would "promote public understanding of historically significant events," because it contains a wealth of information about the investigation and prosecution of President Trump that has not been made public. *Newman*, 696 F.2d at 803. Fourth, the Knight Institute is not seeking public access to Volume II for "illegitimate purposes," such as "promot[ing] public scandal"; it seeks the report to further its own organizational mission and to inform the public about matters that are of manifest public importance and historical significance. *Newman*, 696 F.2d at 803; Diakun Decl. ¶ 2.[14] Finally, it is unlikely that the release of Volume II will cause significant injury to Defendants' reputation or public standing beyond the injury that has already resulted from the publicly filed indictment, which accused Defendants of a profound betrayal of public trust and included copious information to justify the accusation. If Defendants wish to respond to the report when it is released, President Trump possesses a singularly powerful platform from which to do so on his own behalf and that of his former-and-still-current employees. In these circumstances, any concerns about private injury are vastly outweighed by the public interest in Volume II's disclosure.

## V.     The Public Also Has a First Amendment Right of Access to Volume II.

The Supreme Court has repeatedly recognized a qualified First Amendment right of access to criminal trials and pretrial proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555

---

[14] It bears emphasis that the Institute is seeking a version of Volume II redacted to remove any grand jury material protected by Fed. R. Crim. P. 6(e). The Special Counsel created a redacted version of Volume II to remove Rule 6(e) material, and the Institute does not oppose the Court making additional redactions to the report if those redactions are necessary to protect a compelling governmental interest and otherwise consistent with the requirements of the First Amendment.

(1980); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596 (1982) (criminal trials); *Press-Enterprise Co. v. Superior Ct. of Cal.* (*Press-Enterprise I*), 464 U.S. 501 (1984) (jury *voir dire* hearings); *Press-Enterprise Co. v. Superior Ct. of Cal.* (*Press-Enterprise II*), 478 U.S. 1 (1986) (preliminary hearings). Underlying this right of access, the Court has explained, is "the common understanding that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs," so that "the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper*, 457 U.S. at 604.

Applying these decisions and the Supreme Court's "experience and logic" test, lower federal courts have recognized a qualified First Amendment right of access to pretrial criminal proceedings, and to court documents submitted in connection with those proceedings. *See David S. Ardia, Court Transparency and the First Amendment*, 38 Cardozo L. Rev. 835, 909 (2017) ("lower courts have held that a First Amendment right of access applies to almost all pretrial, mid-trial, and post-trial criminal proceedings" (collecting cases)); *see also In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) ("The courts of appeals have . . . recognized a First Amendment right of access to various proceedings within a criminal prosecution," including bail, suppression, due process, entrapment, plea, and sentencing hearings. (collecting cases)); *United States v. Slough*, 677 F. Supp. 2d 296, 298 (D.D.C. 2010) (holding that the First Amendment right of access attaches "to many pretrial hearings in criminal matters . . . [and] extends to documents and other materials submitted in connection with such hearings"); *Bennett v. United States*, No. 12-61499-CIV, 2013 WL 3821625, at *3 (S.D. Fla. July 23, 2013) ("Most courts, including the

Eleventh Circuit, have found a qualified First Amendment right of access to court documents" (citing *Brown v. Advantage Eng'g*, 960 F.2d 1013, 1015–16 (11th Cir. 1992))).[15]

The qualified First Amendment right of access serves essentially the same interests that the common law right of access serves. First, as noted above, it facilitates an informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system. *Globe Newspaper*, 457 U.S. at 604–05. Second, it acts as "an effective restraint on possible abuse of judicial power" by subjecting the proceedings "to contemporaneous review in the forum of public opinion." *Richmond Newspapers*, 448 U.S. at 596 (Brennan, J., concurring in the judgment). Third, it "fosters an appearance of fairness, thereby heightening public respect for the judicial process," *Globe Newspaper*, 457 U.S. at 606, because "people not actually attending [the hearings] can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise I*, 464 U.S. at 508 (emphasis in original).

Once the qualified access right attaches, a proceeding may be closed or a document sealed only when "the party requesting closure . . . demonstrate[s] that such action is 'necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" ECF No. 283 at 4 (quoting *Globe Newspaper*, 457 U.S. at 607). Thus, "a party seeking to seal or redact court filings . . . carries a heavy burden." *Id.* at 3. "Further, in ordering that documents be sealed from public view, a district court must set forth the specific legal and factual basis for such an order." *Id.* at 5; *see also Press-Enterprise II*, 478 U.S. at 13 (requiring a court to make "specific, on-the-

---

[15] Grand jury proceedings are the exception, *In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records*, 864 F.2d 1559, 1561–63 (11th Cir. 1989), but that exception is not relevant here because the Knight Institute is not seeking release of information properly protected by Rule 6(e).

record findings" justifying closure). The court must consider whether reasonable alternatives to closure would adequately protect the compelling interest at issue. *Press-Enterprise II*, 478 U.S. at 14. When court documents are at issue, one such alternative courts must consider is redaction. *See, e.g.*, *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Or.*, Nos. 91-70622 & CV-86-961-MA, 1991 WL 321057, at *1 (9th Cir. Dec. 5, 1991).

There is no compelling interest in keeping the redacted version of Volume II from the public, for reasons already explained. While the Supreme Court has recognized that the Sixth Amendment right to a fair trial is a compelling interest that can justify closure in some circumstances, *Press–Enterprise I*, 464 U.S. at 510–11, Defendants no longer have any such interest given that all criminal charges against them have been dismissed with prejudice. Further, release of Volume II would inform the public about the character and actions of the nation's highest official, about one of the most significant criminal investigations in American history, and about DOJ's understanding of the Espionage Act, a statute with broad implications for free speech. In other words, public access would facilitate the "free discussion of governmental affairs" and enhance the public's ability to "participate in and contribute to our republican system of self-government." *Globe Newspaper*, 457 U.S. at 604.

## CONCLUSION

For the foregoing reasons, the Court should grant the Knight Institute's Motion to Intervene, rescind the January 21 Order, and direct the clerk to file on the public docket the redacted version of Volume II that DOJ submitted to the Court in advance of the January 17, 2025 hearing on Defendants' Emergency Motion.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for the movant has sought conferral with all parties or nonparties who may be affected by the relief sought in this motion—including counsel for the United States, the three former Defendants, and prospective intervenor American Oversight—in a good faith effort to resolve the issues but has been unable to resolve them.

On February 20, 2025, at 6:18 p.m., counsel for movant emailed counsel for the United States, counsel for the three former Defendants, and counsel for American Oversight, advising them of the nature of Prospective Intervenor's motion and the relief sought. Counsel for movant requested responses by the end of the day on Friday, February 21, with any position their clients took on the motion or if there was any possibility that the issue could "be resolved expeditiously without requiring the Knight Institute's intervention in the proceedings."

On February 21, at 7:24 a.m., counsel for Mr. Nauta informed counsel for movant that the email addressee list did not include present counsel for the United States. On February 21, at 10:22 a.m., counsel for movant added to the email chain present counsel for the United States Hayden O'Byrne, the United States Attorney for the Southern District of Florida, informing him of the motion to intervene. At 11:11 a.m. that same day, counsel for movant also added Peter Forand, the Chief of the Criminal Division in the U.S. Attorney's Office in the Southern District of Florida, to the email chain.

On February 21, at 10:32 a.m., Counsel for Mr. Nauta responded: "On behalf of Waltine Nauta, we oppose your application to intervene in this case and to seek other relief. We will respond in full and reserve all rights. We do not agree with your characterization of the Court's Order of January 21, 2025 and we refer you to the Court's Order of February 18, 2025, addressing

the application by American Oversight. Counsel for Carlos De Oliveira have authorized me to state that they join in this conferral statement concerning your motion."

Counsel for movant have received no response from counsel for the United States or counsel for former Defendant President Donald Trump.

Dated: February 24, 2025

Respectfully submitted,

David M. Buckner Esq.
Florida Bar No.: 60550
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables FL 33134
Phone: (305) 964-8003
david@bucknermiles.com

Scott Wilkens (*pro hac vice* pending)
Anna Diakun (*pro hac vice* pending)
Jameel Jaffer (*pro hac vice* pending)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, N.Y. 10115
Phone: (646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Prospective Intervenor Knight First Amendment Institute at Columbia University*

## CERTIFICATE OF SERVICE

I, David Buckner, do hereby certify that I have filed the foregoing Motion of the Knight

First Amendment Institute at Columbia University to Intervene to Seek Rescission of the Court's

January 21, 2025 Order and Public Release of Volume II of the Special Counsel's Report by hand

with the Clerk of the Court for the United States District Court for the Southern District of Florida

on February 24, 2025.

Dated: February 24, 2025

Respectfully submitted,

David M. Buckner, Esq.
Florida Bar No. 60550
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables FL 33134
(305) 964-8003

*Counsel for Prospective Intervenor*

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 23-CR-80101-AMC**

UNITED STATES OF AMERICA,

              Plaintiff,

    v.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA,

              Defendants.

**DECLARATION OF ANNA DIAKUN**
**IN SUPPORT OF MOTION BY PROSPECTIVE INTERVENOR THE KNIGHT FIRST**
**AMENDMENT INSTITUTE AT COLUMBIA UNIVERISTY**

I, Anna Diakun, a member of the Bar of the State of New York, declare under penalty of perjury as follows.

1.      I am an attorney with the Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute"). I submit this declaration in support of the Knight Institute's Motion to Intervene to Seek Rescission of the Court's January 21, 2025 Order and Public Release of Volume II of the Special Counsel's Report. I make this declaration based on my personal knowledge.

2.      The Knight Institute is a non-partisan, not-for-profit organization that works to defend the freedoms of speech and the press in the digital age through strategic litigation, research, policy analysis, and public education. One of the Knight Institute's core priorities is ensuring access to information necessary for self-government, allowing the public to hold the powerful to account.

1

3.      On January 26, 2025, the Knight Institute submitted a Freedom of Information Act

Request to the Department of Justice ("DOJ") seeking "a copy of Volume Two of the Final Report

on the Special Counsel's Investigations and Prosecutions, referenced in Special Counsel Jack

Smith's January 7, 2025 letter to Attorney General Merrick B. Garland." The Knight Institute

requested expedited processing on the grounds that it is an organization "primarily engaged in

disseminating information" and there is a "compelling need" for Volume II because it contains

information "urgent[ly]" needed to "inform the public concerning actual or alleged Federal

Government activity," citing 5 U.S.C. § 552(a)(6)(E)(v)(II). A true and correct copy is attached as

Exhibit 1.

4.      By letter dated January 28, 2025, DOJ acknowledged receipt of the request and

assigned it tracking number FOIA-2025-02206. DOJ denied the Knight Institute's request for

expedited processing, explaining that "[t]his Office cannot identify a particular urgency to inform

the public about an actual or alleged federal government activity beyond the public's right to know

about government activities generally." A true and correct copy of DOJ's letter denying expedited

processing is attached as Exhibit 2.

5.      On February 6, 2025, DOJ responded to the Knight Institute's request. In relevant

part, DOJ stated that:

> Volume II of the Report should be withheld in full because it is protected from
> disclosure by a court injunction issued by the United States District Court for
> the Southern District of Florida, West Palm Beach Division. In this instance,
> the Office of Information Policy (OIP) lacks authority to consider the
> releasability of this information under the FOIA. *See GTE Sylvania, Inc. v.*
> *Consumers Union*, 445 U.S. 375, 384-86 (1980) (finding "no discretion for the
> agency to exercise" where records are subject to injunction issued by federal
> district court).
>
> Furthermore, please be advised that the records you have requested, in
> particular, Volume II of the Report, relate to the proceedings in *USA v. Waltine*
> *Nauta & Carlos De Oliveira*, No. 23-cr-80101 (S.D.F.L. filed June 8, 2023) and

*USA v. Trump, et al.*, No. 24-12311 (11th Cir. docketed July 18, 2024), both of which are still pending before those respective courts at this time. As such, Volume II of the Report is currently also being withheld in full pursuant to Exemption 7(A) of the FOIA, 5 U.S.C. §552(b)(7)(A). Exemption 7(A) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.

A true and correct copy of DOJ's response denying the Knight Institute's FOIA request is

attached as Exhibit 3.

6.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on February 22, 2025.

Respectfully submitted,

/s/ Anna Diakun
Anna Diakun (*pro hac vice* pending)
Knight First Amendment Institute at
  Columbia University
475 Riverside Drive, Suite 302
New York, N.Y. 10115
(646) 745-8500
anna.diakun@knightcolumbia.org

*Counsel for Prospective Intervenor Knight
First Amendment Institute at Columbia
University*

# Exhibit 1



**KNIGHT
FIRST AMENDMENT
INSTITUTE at
COLUMBIA UNIVERSITY**

475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
info@knightcolumbia.org

January 26, 2025

FOIA/PA Mail Referral Unit
Justice Management Division
Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

Office of the Attorney General
c/o Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
6th Floor
441 G St NW
Washington, DC 20530

> Re:   **Freedom of Information Act Request
>        Expedited Processing Requested**

To whom it may concern,

The Knight First Amendment Institute at Columbia University
("Knight Institute" or "Institute")[1] submits this request under the
Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for a copy of
Volume Two of the January 7, 2025 Final Report on the Special
Counsel's Investigations and Prosecutions, which concerns the
classified documents case brought against President Trump and two of
his associates, Walt Nauta and Carlos De Oliveira.

---

[1] The Knight First Amendment Institute is a New York not-for-profit
corporation based at Columbia University that works to preserve and expand
the freedoms of speech and the press through strategic litigation, research, and
public education.

# I. Background

On June 8, 2023, President Trump was indicted on thirty-seven felony charges, including thirty-one alleged violations of the Espionage Act, 18 U.S.C. § 793(e).[2] The charges stemmed from Trump's alleged willful retention of classified documents at Mar-a-Lago long after he left office on January 20, 2021, despite repeated requests by the National Archives and Records Administration for their return.[3] Prosecutors also charged one of Trump's associates, Walt Nauta, as a co-conspirator.[4] They later added a second Trump associate, Carlos De Oliveira, along with additional charges, in a superseding indictment.[5]

This unprecedented case was brought by Department of Justice ("DOJ") Special Counsel Jack Smith. Though the FBI first opened its investigation on March 30, 2022,[6] Attorney General Merrick B. Garland appointed Smith to lead the investigation—along with another investigation related to election interference—on November 18, 2022, soon after Trump announced that he would be running for reelection.[7] According to the Attorney General, Smith's appointment "underscore[d] the Department's commitment to both independence and accountability in particularly sensitive matters" and would "allow[] prosecutors and agents . . . to make decisions indisputably guided only by the facts and the law."[8]

DOJ regulations require those appointed as Special Counsel, once their work is complete, to provide a report to the Attorney General explaining the ultimate decision to prosecute or not to prosecute. 28 C.F.R. § 600.8(c). Smith submitted his final report relating to both of

---

[2] Michael R. Sisak, Jill Colvin & Lindsay Whitehurst, *A Timeline of Events Leading to Donald Trump's Indictment in the Classified Documents Case*, Associated Press, https://apnews.com/article/trump-documents-investigation-timeline-087f0c9a8368bb983a16b67dd31dcd4c (June 10, 2023); Indictment at 28–41, *U.S. v. Trump*, 736 F. Supp. 3d 1206 (S.D. Fl. 2024) (No. 23-80101-AMC), ECF No. 3.

[3] *Id.*

[4] Alan Feuer, Maggie Haberman & Glenn Thrush, *Trump Faces Major New Charges in Documents Case*, N.Y. Times (July 27, 2023), https://www.nytimes.com/2023/07/27/us/politics/trump-documents-carlos-de-oliveira-charged.html.

[5] Superseding Indictment, *U.S. v. Trump*, 736 F. Supp. 3d 1206 (S.D. Fl. 2024) (No. 23-80101-AMC), ECF No. 85.

[6] Sisak et al., *A Timeline of Events Leading to Donald Trump's Indictment in the Classified Documents Case*, *supra* n.2.

[7] Press Release, Off. of Pub. Affs., U.S. Dep't of Just., Appointment of a Special Counsel (Nov. 18, 2022), https://www.justice.gov/opa/pr/appointment-special-counsel-0.

[8] *Id.*

his investigations to the Attorney General on January 7, 2025.[9] Though DOJ has publicly released Volume One of the report, about the election interference case against Trump, it has not released Volume Two, about the classified documents case. In a January 8 letter to the House and Senate Judiciary Committees, Attorney General Garland explained that he had determined that Volume Two should not be made public while the criminal cases against Nauta and Oliveira were pending, but that it would "be in the public interest" to publish that volume once the criminal proceedings concluded.[10]

The information contained within Volume Two is of profound importance to the public. The public has a compelling interest in knowing the full results of the Special Counsel's investigation, including the factual findings and legal and policy considerations that led the Special Counsel to charge President Trump, who has recently reassumed office. The report may also shed light on DOJ's interpretation of the Espionage Act, a statute that has shaped public discourse about national security for more than a century.[11] The Knight Institute seeks Volume Two of the report to inform the public about these critical issues.

## II.  Record requested

The Knight Institute requests a copy of Volume Two of the Final Report on the Special Counsel's Investigations and Prosecutions, referenced in Special Counsel Jack Smith's January 7, 2025 letter to Attorney General Merrick B. Garland.[12]

We ask that you disclose all segregable portions of the record sought. *See* 5 U.S.C. § 552(b). We also ask that you provide the record in its native file format. *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, please provide the record electronically in a text-searchable, static-image format (e.g., PDF), in the best image quality in the agency's possession.

---

[9] Letter from Jack Smith, Special Counsel, U.S. Dep't of Just., to Merrick B. Garland, Attorney General, U.S. Dep't of Justice (Jan. 7, 2025), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf.

[10] Letter from Merrick B. Garland, Attorney General, U.S. Dep't of Just., to Sen. Charles Grassley, Chairman, Committee on the Judiciary, et al. (Jan. 8, 2025), https://www.justice.gov/sco-smith/media/1383641/dl.

[11] *See, e.g.*, Jameel Jaffer, *The Espionage Act Has Been Abused—But Not in Trump's Case*, Politico (Aug. 17, 2022), https://www.politico.com/news/magazine/2022/08/17/the-espionage-act-has-a-dark-history-prosecuting-trump-would-be-legit-00052376.

[12] Letter from Jack Smith to Merrick B. Garland, *supra* n.8.

### III.  Application for expedited processing

The Knight Institute requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). There is a "compelling need" for the document sought because the information it contains is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

> ### A.  The Knight Institute is primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.

The Knight Institute is "primarily engaged in disseminating information" within the meaning of FOIA. 5 U.S.C. § 552(a)(6)(E)(v)(II).

The Knight First Amendment Institute was established at Columbia University to defend and strengthen the freedoms of speech and the press in the digital age. Research and public education are essential to the Institute's mission.[13] Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Institute performs. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information" (citation omitted)).

> ### B.  The record sought is urgently needed to inform the public about actual or alleged government activity.

The document sought is urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the requested record provides a detailed explanation of the Special Counsel's investigation of Trump's alleged unlawful retention of classified documents. It also discusses DOJ's interpretation of relevant law, including the Espionage Act, and the legal and policy considerations that led the Special Prosecutor to bring these charges.[14]

---

[13] Mike McPhate, *Columbia University to Open a First Amendment Institute*, N.Y. Times (May 17, 2016), https://perma.cc/YC9M-LUAD; James Rosen, *New Institute Aspires to Protect First Amendment in Digital Era*, McClatchy DC (May 20, 2016), https://perma.cc/ZS2K-FPED.

[14] *See generally* Special Counsel Jack Smith, Volume One: The Election Case, Final Report on the Special Counsel's Investigations and Prosecutions (Jan. 7, 2025), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf (supplying analogous information about Special Counsel's investigation into election interference).

Disclosure of Volume Two of the report is urgently needed to help the public more fully understand the Special Counsel's decision to charge Trump with violations of the Espionage Act.[15] Volume Two will also illuminate DOJ's understanding of the scope and application of the Espionage Act, which has been used in recent years to prosecute government employees who disclose national security information to members of the press. Understanding DOJ's interpretation of this law is especially urgent now, given widespread fear that the Trump administration will use the Espionage Act with even greater frequency against government leakers, and perhaps even against journalists themselves.[16]

The public interest would be served by the disclosure of Volume Two of the report, as Attorney General Garland observed in his January 8 letter to the House and Senate Judiciary Committees.

For these reasons, the Knight Institute is entitled to expedited processing.

## IV. Application for waiver or limitation of fees

The Knight Institute requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested record "is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

For the reasons explained above, disclosure of the record would be in the public interest. Moreover, disclosure would not further the Knight Institute's commercial interest. The Institute will make any information disclosed available to the public at no cost. Thus, a fee waiver would further Congress's legislative intent in amending FOIA to ensure "that it [is] liberally construed in favor of waivers for noncommercial requesters." *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

The Knight Institute also requests a waiver of search and review fees on the grounds that it qualifies as an "educational . . . institution" whose purposes include "scholarly . . . research" and the record is not

---

[15] Julian E. Barnes, *What Is the Espionage Act and How Has It Been Used?*, N.Y.   Times   (Aug.   15,   2022), https://www.nytimes.com/2022/08/15/us/politics/espionage-act-explainer-trump.html.

[16] *See, e.g.*, Gabe Rottman, *How Press Freedoms Could Fare Under the Second Trump Administration*, L.A. Times (Dec. 26, 2024), https://www.latimes.com/opinion/story/2024-12-26/journalist-leak-investigations-donald-trump.

sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Institute has a substantial educational mission. Situated within a prominent academic research university, the Institute performs scholarly research on the application of the First Amendment in the digital era. The Institute's research program brings together academics and practitioners of different disciplines to study contemporary First Amendment issues and offer informed, non-partisan commentary and solutions. It publishes that commentary in many forms, including in scholarly publications and in short-form essays.

Finally, the Knight Institute also requests a waiver of search and review fees on the grounds that it is a "representative[] of the news media" within the meaning of FOIA and the record is not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The Institute meets the statutory definition of "a representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA). Courts have found other non-profit organizations, whose mission of research and public education is similar to that of the Knight Institute, to be "representatives of the news media." *See, e.g., Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282, 287–88 (D. Conn. 2012) ("[O]rganizations like the ACLU are regularly granted news representative status."); *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

For these reasons, the Knight Institute is entitled to a fee waiver.

*     *     *

Thank you for your attention to this request. I would be happy to discuss its terms with you over the phone or via email to clarify any aspect of it.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

/s/ Anna Diakun
Knight First Amendment Institute
   at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115

(646) 745-8500
anna.diakun@knightcolumbia.org

# Exhibit 2



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

January 28, 2025

Anna Diakun
Knight First Amendment Institute at Columbia University
475 Riverside Drive
Suite 302
New York, NY 10115                          Re:    FOIA-2025-02206
anna.diakun@knightcolumbia.org                     DRH:ERH:GMG

Dear Anna Diakun:

        This is to acknowledge receipt of your Freedom of Information Act (FOIA) request
dated January 26, 2025, and received in this Office on January 27, 2025, in which you
requested a copy of Volume II of the Report of Special Counsel Jack Smith.

        You have requested expedited processing of your request pursuant to the Department's
standard permitting expedition for requests involving "[a]n urgency to inform the public about
an actual or alleged federal government activity, if made by a person primarily engaged in
disseminating information." See 28 C.F.R. § 16.5(e)(1)(ii) (2018).  Based on the information
you have provided, I have determined that your request for expedited processing under this
standard should be denied.  This Office cannot identify a particular urgency to inform the
public about an actual or alleged federal government activity beyond the public's right to know
about government activities generally.  Please be advised that, although your request for
expedited processing has been denied, it has been assigned to an analyst in this Office and our
processing of it has been initiated.

        To the extent that your request requires a search in another Office, consultations with
other Department components or another agency, and/or involves a voluminous amount of
material, your request falls within "unusual circumstances."  See 5 U.S.C. § 552 (a)(6)(B)(i)-
(iii) (2018).  Accordingly, we will need to extend the time limit to respond to your request
beyond the ten additional days provided by the statute.  For your information, we use multiple
tracks to process requests, but within those tracks we work in an agile manner, and the time
needed to complete our work on your request will necessarily depend on a variety of factors,
including the complexity of our records search, the volume and complexity of any material
located, and the order of receipt of your request.  At this time we have assigned your request to
the complex track.  In an effort to speed up our process, you may wish to narrow the scope of
your request to limit the number of potentially responsive records so that it can be placed in a
different processing track.  You can also agree to an alternative time frame for processing,
should records be located, or you may wish to await the completion of our records search to

-2-

discuss either of these options.  Any decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request.

If you have any questions, wish to discuss reformulation or an alternative time frame for the processing of your request, or if you require further assistance regarding any aspect of your request, you may contact our FOIA Public Liaison, Valeree Villanueva, at: Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001; telephone at 202-514-3642.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

Douglas R. Hibbard
Chief, Initial Request Staff

# Exhibit 3



**U.S. Department of Justice**

Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

February 6, 2025

Anna Diakun
Knight First Amendment Institute at Columbia University
Suite 302
475 Riverside Drive
New Yor, NY  10115                                      Re:   FOIA-2025-02206
anna.diakun@knightcolumbia.org                                   DRH

Dear Anna Diakun:

This responds to your Freedom of Information Act (FOIA) request dated January 26, 2025, and received in this Office on January 27, 2025, seeking a copy of Volume II of the Report of Special Counsel Jack Smith (the Report).

At this time, I have determined that Volume II of the Report should be withheld in full because it is protected from disclosure by a court injunction issued by the United States District Court for the Southern District of Florida, West Palm Beach Division.  In this instance, the Office of Information Policy (OIP) lacks authority to consider the releasability of this information under the FOIA.  See GTE Sylvania, Inc. v. Consumers Union, 445 U.S. 375, 384-86 (1980) (finding "no discretion for the agency to exercise" where records are subject to injunction issued by federal district court).

Furthermore, please be advised that the records you have requested, in particular, Volume II of the Report, relate to the proceedings in USA v. Waltine Nauta & Carlos De Oliveira, No. 23-cr-80101 (S.D.F.L. filed June 8, 2023) and USA v. Trump, et al., No. 24-12311 (11th Cir. docketed July 18, 2024), both of which are still pending before those respective courts at this time.  As such, Volume II of the Report is currently also being withheld in full pursuant to Exemption 7(A) of the FOIA, 5 U.S.C. §552(b)(7)(A).  Exemption 7(A) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings.

In making the above determinations, we have considered the foreseeable harm standard.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

-2-

You may contact our FOIA Public Liaison, Valeree Villanueva, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001; telephone at 202-514-3642.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, MD 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

If you are not satisfied with this Office's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If possible, please provide a copy of your original request and this response letter with your appeal.

Sincerely,

Douglas Hibbard
Chief, Initial Request Staff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 23-80101-CR-CANNON(s)

UNITED STATES OF AMERICA,

Plaintiff,

v.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA,

Defendants.

## [PROPOSED] ORDER

Upon consideration of prospective intervenor Knight First Amendment Institute at
Columbia University's Motion to Intervene to Seek Rescission of the Court's January 21, 2025
Order and Public Release of Volume II of the Special Counsel's Report, it is this ___ day of
_____, 2025, hereby:

ORDERED that the Motion to Intervene is GRANTED, and it is further

ORDERED that this Court's January 21, 2025 Order is rescinded, and

The Clerk is directed to file on the public docket the redacted version of Volume II that
Plaintiff submitted to the Court in advance of the Court's January 17, 2025 hearing.

DONE AND ORDERED in Chambers at Fort Pierce, Florida, this ____ day of _____ ___,
2025.

_____
The Honorable Aileen M. Cannon
United States District Court Judge