**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CR-80101-CANNON**

**UNITED STATES OF AMERICA**

**v.**

**WALTINE NAUTA, and**
**CARLOS DE OLIVEIRA**

     **Defendants.**
_____/

**UNITED STATES' RESPONSE TO AMERICAN OVERSIGHT'S AND KNIGHT FIRST
AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY'S MOTIONS TO
INTERVENE**

     The United States respectfully submits that the Court should deny the motions to intervene filed by American Oversight and Knight Institute in this closed criminal case. First, neither American Oversight nor Knight Institute has shown that this case fits within the narrow class of circumstances in which courts have previously allowed third parties to intervene in criminal cases. This Court should not expand that class. Second, neither American Oversight nor Knight Institute has shown it has a common law or First Amendment right of access to Volume II of Jack Smith's confidential Final Report. Third, the primary reason offered by American Oversight in support of gaining access to Volume II—to assist the United States Senate in assessing the nomination of the Federal Bureau of Investigation ("FBI") Director Kashyap Patel—is moot because the Senate has already confirmed Director Patel.

     If the Court does permit American Oversight and Knight Institute to intervene, the Court should not *order* the release of Volume II. In the event the Court is inclined to lift its Injunction Order, the United States submits the decision to release Volume II outside the Department of Justice should rest solely with the Attorney General of the United States.

1

Finally, the Court should decline Knight Institute's invitation to conduct an *in camera* review of the grand jury materials related to this case. The Attorney General has not ordered the release of Volume II, nor has any court of competent jurisdiction ordered the Department of Justice to release Volume II. Unless and until either of those contingencies comes to fruition, it would be premature for the Court to engage in a Rule 6(e) analysis. *In any event, the United States submits the Department of Justice, not the Court, is responsible for redacting any grand jury material contained in Volume II.*[1]

## BACKGROUND

On July 27, 2023, at Jack Smith's request, a federal grand jury in the Southern District of Florida returned a Superseding Indictment charging the defendants with various crimes related to the alleged retention of national defense information [ECF No. 85].

On July 15, 2024, the Court dismissed the Superseding Indictment, after determining that Jack Smith's appointment violated the Appointments Clause of the United States Constitution [ECF No. 672].

Jack Smith timely appealed the Court's order dismissing the Superseding Indictment to the United States Court of Appeals for the Eleventh Circuit [ECF No. 673].

On November 26, 2024, at Jack Smith's request, the Eleventh Circuit dismissed the appeal as to then President-Elect and now President Trump (D.E. 81-2).

On or about December 30, 2024, Jack Smith referred this case to the United States Attorney's Office for the Southern District of Florida [ECF No. 714, at ¶¶ 5, 11].

---

[1] Notably, neither American Oversight nor Knight Institute seek the disclosure of grand jury material under Federal Rule of Criminal Procedure 6(e).

On January 7, 2025, Jack Smith delivered a two-volume confidential Final Report to the Attorney General of the United States.  The first volume (Volume I) concerns the investigation and prosecution of criminal charges that were brought in the District of Columbia regarding alleged interference with the lawful transfer of power following the 2020 United States presidential election.  Volume I has been released to the public.  The second volume (Volume II) concerns the investigation and prosecution of the criminal charges that were brought against the President of the United States, Waltine Nauta, and Carlos De Oliveira in this matter.  Volume II has not been released outside the Department of Justice.

When Jack Smith delivered his confidential Final Report to the Attorney General, Waltine Nauta and Carlos De Oliveira filed an Emergency Motion to preclude the release of Volume II [ECF No. 679].

On January 8, 2025, American Oversight submitted a request to the Department of Justice under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking access to Volume II.

On January 10, 2025, Jack Smith resigned his post.  On January 17, 2025, the United States Attorney for the Southern District of Florida, Markenzy Lapointe, resigned his post.  On January 20, 2025, Merrick Garland concluded his term as the Attorney General of the United States.

On January 21, 2025, this Court issued an order enjoining the Attorney General of the United States and the Department of Justice from releasing Volume II outside the Department of Justice, or sharing any information contained in Volume II with anyone outside the Department of Justice ("Injunction Order") [ECF No. 714].

On January 26, 2025, Knight Institute submitted a FOIA request to the Department of Justice seeking access to Volume II.

On February 5, 2025, Pamela Jo Bondi was sworn in as the 87th Attorney General of the United States.

On February 6, 2025, the Department of Justice notified Knight Institute that it was prohibited from disclosing Volume II in its entirety based on the Court's Injunction Order.

On February 10, 2025, American Oversight filed a FOIA action in the United States District Court for the District of Columbia, seeking declaratory and injunctive relief as to Volume II. *See American Oversight v. Department of Justice*, Civil Action No. 25-cv-383 (D.D.C. 2025) (ECF No. 1).

On February 11, 2025, at the request of the current United States Attorney for the Southern District of Florida, Hayden P. O'Byrne, the Eleventh Circuit dismissed the appeal as to Waltine Nauta and Carlos De Oliveira (D.E. 113-2).

On February 14, 2025, American Oversight filed an Expedited Motion to Intervene and for Clarification or, Alternatively, Dissolution of January 21, 2025 Order Granting Defendants' Emergency Motion to Preclude Release of Volume II of Special Counsel's Report ("Emergency Motion to Preclude Release of Volume II"), seeking to intervene in this matter, ostensibly on behalf of the public, to gain access to Volume II of Jack Smith's confidential Final Report [ECF No. 717].

On February 20, 2025, the Judge presiding over American Oversight's FOIA litigation in the District of Columbia denied American Oversight's motion for injunctive relief based on the Court's Injunction Order. *See American Oversight v. Department of Justice*, Civil Action No. 25-cv-383 (D.D.C 2025) (ECF No. 11).

On February 24, 2025, Knight Institute filed a Motion to Intervene to Seek Rescission of the Court's January 21, 2025 Order and Public Release of Volume II of the Special Counsel's Report [ECF No. 721].

On March 14, 2025, the United States, Waltine Nauta, and Carlos De Oliveira filed a Joint Status Report with the Court, in which the United States advised the Court, among other things, that it does not object to the Court keeping its order enjoining the Attorney General of the United States and the Department of Justice from releasing Volume II outside the Department of Justice, or sharing any information contained in Volume II with anyone outside the Department of Justice, in place [ECF No. 738].

The Department of Justice recently created a Weaponization Working Group to examine, among other things, the investigation and handling of this prosecution by Jack Smith.

To date, the Attorney General of the United States has not expressed a desire or intention to release Volume II of Jack Smith's confidential Final Report outside the Department of Justice.

The United States Attorney's Office for the Southern District of Florida does not intend to revive the charges brought by Jack Smith.

## ARGUMENT

### A.    Neither American Oversight nor Knight Institute has standing to intervene.

Neither American Oversight nor Knight Institute has a right to intervene in this closed criminal case.  The Federal Rules of Criminal Procedure do not provide for third-party intervention in criminal cases.  *See, e.g., United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) ("The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case.").

At best, there is a narrow class of exceptions allowing intervention in a criminal case that do _not_ apply to American Oversight or Knight Institute.  That narrow class of exceptions covers

circumstances in which a district court overseeing a criminal matter may directly decide the rights of third parties.  For instance, a non-party may sometimes intervene to assert a privilege in response to a subpoena.  Similarly, district courts have recognized that if they close the courtroom, it effectively terminates non-parties' First Amendment rights to access those proceedings—and thus the press may intervene to vindicate their rights.  *See United States v. Atesiano*, No. 18-20479-CR, 2018 WL 5831092, at *2 (S.D. Fla. Nov. 7, 2018) (quoting *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004)) (citations omitted).

This narrow class of exceptions does not apply in this case.  Notably, neither American Oversight nor Knight Institute ask the Court to adjudicate its FOIA rights.  As to American Oversight, that question is the subject of ongoing litigation in a different federal district court, *see American Oversight v. Department of Justice*, Civil Action No. 25-cv-383 (D.D.C. 2025), while Knight Institute has not even filed suit.  Instead, American Oversight and Knight Institute ask the Court to intervene to expeditiously rescind an order with some collateral consequences related to the merits of their FOIA claims.  Yet, American Oversight and Knight Institute fail to cite a case in which a district court has allowed a third party to intervene in a criminal case to contest an order that might have some secondary or collateral implications for that party's FOIA claims in another lawsuit.

This Court should be cautious about expanding the class of permissible interventions to encompass this type of knock-on or indirect-effect claim.  Many decisions that a district court makes in a criminal case may come with second-order consequences or negative effects on third parties.  That reality does not entitle *any* third party, whose rights might be incidentally affected by a lawful order in a criminal proceeding, to intervene in that criminal matter.  The existing examples of permissible interventions favor the contrary view—that, to intervene, a third party

6

must be seeking a ruling from the district court that directly affects their constitutional or federal rights, such as a ruling on a disputed First Amendment access or privilege issue. *See Carmichael*, 342 F. Supp. 2d at 1072 ("[C]ourts sometimes permit the press to intervene in a criminal case where a decision to close criminal proceedings to the public may affect its First Amendment rights. In addition, third parties are occasionally allowed to intervene in a criminal trial to challenge a request for the production of documents on the ground of privilege[.]") (citations omitted).

At bottom, third-party intervention in criminal cases is a judicial doctrine, not a creature of statute or the Federal Rules. *See Aref*, 533 F.3d at 81. And, like with other judge-made doctrines, courts should tread cautiously and recognize that expanding a doctrine in novel ways is often disfavored. *Cf. Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (observing that "expanding the Bivens remedy"—another area of judge-made law—"is now a 'disfavored' judicial activity").

No precedent establishes (or even strongly suggests) that a third party may intervene in a criminal case to remove a barrier to that party vindicating its rights in another forum or another unrelated proceeding. Thus, the Court should deny American Oversight's and Knight Institute's motions to intervene.

**B.      Neither American Oversight nor Knight Institute has a Common Law or First Amendment right to access Volume II.**

Knight Institute insists it has a common law and First Amendment right to access Volume II [ECF No. 721 at pgs. 11-17].[2] Knight Institute fails to recognize that Volume II is not a judicial record or document. As such, the public has no presumptive right of access to Volume II.

---

[2] American Oversight does not attempt to assert a common law or First Amendment right to access Volume II.

In *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), the Supreme Court recognized that in criminal proceedings, the press has a historically-based, common law right to copy and inspect "judicial records and documents."[3]  That is to say, judicial records and documents are deemed presumptively available to the public.  Federal courts have permitted limited intervention by the media to pursue a request for access to material made part of the record during court proceedings.  *See, e.g., In re Associated Press*, 162 F.3d 503, 507 (7th Cir. 1998) (collecting cases).

Against this backdrop, parties may intervene in criminal cases to gain access to judicial records and documents, and the right to intervene is often keyed to the public's presumptive right of access to such material.  But "[j]udicial records and documents" are those "materials on which a court relies in determining the litigants' *substantive rights*."  *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) (internal marks and citation omitted; emphasis added).  Put another way, "judicial records and documents" are those that may help a court to resolve the merits of an action.  *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019); *see also Locke v. Warren*, 611 F. Supp. 3d 1375, 1381 (S.D. Fla. 2020) ("[T]he common law right

---

[3] The press also has a First Amendment right to access judicial proceedings.  This First Amendment right, however, is a "right to attend" trial, *United States v. Hastings*, 695 F.2d 1278, 1280 (11th Cir. 1983), rather than a license allowing "physical access to courtroom exhibits introduced into evidence at a criminal trial."  *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 426–27 (5th Cir. 1981).  "[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."  *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972); *see also Warner Commc'ns, Inc.*, 435 U.S. at 589 ("The First Amendment generally grants the press no right to information about a trial superior to that of the general public. Once beyond the confines of the courthouse, a news-gathering agency may publicize, within wide limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public.") (internal marks and citation omitted).  "For a right of access to a document to exist under either the First Amendment or the common law, the document must be a judicial record."  *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (internal marks and citation omitted).

of access applies *only* to judicial documents that are integral to judicial resolution of the merits.")
(internal marks and citation omitted; emphasis in original).  Merely filing a document does not
turn it into a judicial record or document subject to the right of public access.  *Advance Local
Media, LLC*, 918 F.3d at 1167-68.  Generally, the "common-law right of access does not extend
to information collected through discovery which is not a matter of public record."  *In re Alexander
Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987).

Volume II is not a judicial record or document.  Volume II is a detailed report of Jack
Smith's investigation and prosecution of the criminal charges that were brought against the
President of the United States, Waltine Nauta, and Carlos De Oliveira, which includes myriad
references to discovery that Jack Smith provided, such as interview transcripts, business records,
toll records, video footage, records obtained by grand jury subpoenas, information over which the
President has asserted attorney-client privilege, potential Rule 404(b) evidence, and other non-
public information [ECF No. 714, at ¶ 9].[4]  Undersigned counsel has no knowledge that Volume
II was ever filed with the Court, made part of the public record, or admitted into evidence at any
court proceeding.  Undersigned counsel understands Volume II was presented to the Court *in
camera* solely to adjudicate Defendants' Emergency Motion to Preclude Release of Volume II
[ECF No. 708].  Undersigned counsel does not know whether the Court retained a copy of Volume
II, and if so, to what extent the version retained by the Court was redacted.[5]

---

[4] Absent permission from the Attorney General, undersigned counsel has no authority to access,
review, or disclose the contents of Volume II.  To that end, undersigned counsel has not reviewed
Volume II in any form.  Likewise, undersigned counsel is not privy to the content of any *in camera*
proceedings.

[5] No one currently at the United States Attorney's Office for the Southern District of Florida,
including undersigned counsel, was part of the investigation or corresponding prosecution related
to this case.

Under these circumstances, the public has no presumptive right to access Volume II.  There is no general right of access to information a government official knows but has not released to the public, such as information contained in investigative reports or prosecution memoranda.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *In re Alexander Grant & Co. Litig.*, 820 F.2d at 355 ("[W]hile appellants may enjoy the right of access to pleadings, docket entries, orders, affidavits or depositions *duly filed*, appellants' common-law right of access does not extend to information collected through discovery which is not a matter of public record.") (internal marks and citation omitted; emphasis in original); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312-313 (11th Cir. 2001) ("The Press contends, and the district court agreed, that because the documents were filed with the court they are judicial records and therefore subject to the common-law right of access. . . .  We think a more refined approach is called for, one that accounts both for the tradition favoring access, as well as the unique function discovery serves in modern proceedings.  The better rule is that material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right, and we so hold."); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery is neither a public process nor typically a matter of public record.  Historically, discovery materials were not available to the public or press. . . . [D]ocuments collected during discovery are not 'judicial records.'  Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.") (citations omitted).

The type of information contained in Volume II (investigative and discovery materials) stands in stark contrast to the cases where courts have granted the press access to judicial records and documents. *See Advanced Local Media, LLC*, 918 F.3d at 1164-68 (lethal injection protocol submitted to court for *in camera* review in litigation by death row inmate challenging the constitutionality of same protocol as applied to him); *Kravetz*, 706 F.3d at 56-59 (sentencing memoranda and sentencing letters filed under seal); *In re Search Warrant for Secretarial Area Outside of Gunn*, 855 F.2d 569, 572-575 (8th Cir. 1988) (search warrants filed under seal); *Oregonian Pub. Co. v. U.S. District Court*, 920 F.2d 1462, 1463 (9th Cir. 1990) (plea agreement filed under seal).

More importantly, Volume II was not critical to the Court's resolution of any of the underlying charges against the defendants. Indeed, the Court dismissed the criminal charges against the defendants well before the issuance of Volume II. As a result, Volume II was not "integral to judicial resolution of the merits." *Warren*, 611 F. Supp. 3d at 1381 (internal marks and citation omitted); *see also Seattle Times Co.*, 467 U.S. at 33; *In re Alexander Grant & Co. Litig.*, 820 F.2d at 355; *Anderson*, 799 F.2d at 1441.

To the extent Knight Institute seeks to rely on *In re Petition of the Tribune Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986), for the proposition that the media can intervene in a concluded criminal case to obtain an investigative report prepared by a prosecution team, such reliance is misplaced. That case involved a request by the media to obtain transcripts of bench conferences, which were held in open court but out of the hearing of the attending press and public. 748 F.2d at 1519. Transcripts of bench conferences held in open court are a far cry from an investigative report prepared by a prosecution team that contains, among other things, records obtained by grand jury subpoenas, information over which the President of the United States has asserted attorney-

client privilege, potential Rule 404(b) evidence, and other *non-public information*. *Cf. United States v. Santarelli*, 729 F.2d 1388, 1390 (11th Cir. 1984) ("[T]he public has a First Amendment right to see and hear that which is admitted in evidence in a public sentencing hearing.").

Knight Institute's attempt to analogize Volume II to the lethal injection protocol at issue in *Advance Local Media* also falls short. That "appeal arose under a unique set of circumstances," and the Court kept its "holding narrow in comporting with [its] own precedent." 918 F.3d at 1168. Because the heart of that dispute was a death row inmate's claim that the lethal injection protocol was unconstitutional, the protocol was central to the litigation—even though it was never formally filed on the docket. Here, in contrast, Volume II was not the main subject of this (now closed) criminal case; it was instead the subject of discrete, post-dismissal, collateral litigation. To endorse Knight Institute's broad reading of *Advance Local Media, LLC* would be to accept that virtually any document the Court reviews *in camera*—including, for instance, privileged materials the Court reviews while deciding a discovery motion—automatically becomes a judicial record subject to the public right of access. But *Advance Local Media, LLC*'s "narrow" ruling does not endorse that illogical proposition, which would undermine both the procedure and purpose of *in camera* review. 918 F.3d at 1168.

## C. American Oversight's motion to intervene is moot.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "The doctrine of mootness is derived from this limitation because an action that is moot cannot be characterized as an active case or controversy." *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "To decide a moot issue is to issue an advisory

opinion, one unnecessary to the judicial business at hand and outside the authority of Article III courts." *Friends of Everglades v. S. Fla. Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009).

Measured against these considerations, American Oversight's proffered reason for wanting access to Volume II is moot. American Oversight insists that Volume II contains material relevant to the U.S. Senate's assessment of the nomination of Kash Patel to become FBI Director [ECF No. 717, at pg. 2 ("Volume II contains information of critical and urgent importance to the public regarding Kash Patel, President Trump's nominee for Director of the Federal Bureau of Investigation . . . . In a matter of days, the U.S. Senate is expected to vote on Patel's confirmation. The American people and their Senators, who have repeatedly demanded the release of the report—have a right to know the non-exempt information relating to Patel's involvement in the classified documents investigation *before that vote happens*" (emphasis added))]. But the Senate confirmed Director Patel on February 20, 2025.

Accordingly, the Court should deny American Oversight's motion to intervene as moot, as there is no meaningful relief that the Court can provide. *Friends of Everglades*, 570 F.3d at 1216 ("To decide questions that do not matter to the disposition of a case is to separate Lady Justice's scales from her sword. That we will not do.").

**D.    Even if American Oversight or Knight Institute is permitted to intervene, the Court should not *order* the release of Volume II.**

When the Eleventh Circuit dismissed the appeal as to Waltine Nauta and Carlos De Oliveira, the *criminal case* ended. There is nothing left for the Court to resolve regarding the *criminal charges* brought by Jack Smith. The United States Attorney's Office for the Southern District of Florida does not intend to revive the charges brought by Jack Smith.[6]

---

[6] The United States understands and appreciates the arguments made by Waltine Nauta and Carlos De Oliveira regarding the prejudice they may suffer if Volume II were to be released to the public.

In the event the Court is inclined to lift the Injunction Order, it should decline to *order* the release of Volume II.  Rather, the ultimate decision regarding whether to release Volume II outside the Department of Justice rests within the sound discretion of the Attorney General of the United States.  *See* 28 C.F.R. § 600.8(c) ("Closing documentation. At the conclusion of the Special Counsel's work, he or she shall provide the Attorney General with a *confidential* report explaining the prosecution or declination decisions reached by the Special Counsel.") (emphasis added); 28 C.F.R. § 600.9(c) ("The Attorney General *may determine* that public release of these reports would be in the public interest, to the extent that release would comply with applicable legal restrictions. All other releases of information by any Department of Justice employee, including the Special Counsel and staff, concerning matters handled by Special Counsels shall be governed by the generally applicable Departmental guidelines concerning public comment with respect to any criminal investigation, and relevant law.") (emphasis added).

The United States recognizes that when the Court entered its Injunction Order, Waltine Nauta and Carlos De Oliveira still faced the prospect of criminal trials on the charges contained in the Superseding Indictment.  The Court's Injunction Order was necessary and appropriate.  If the Court is now inclined to lift the Injunction Order, it is the Attorney General's prerogative to determine whether release of Volume II "would be in the public interest[.]"  28 C.F.R. § 600.9(c).

---

The United States also recognizes that "[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials."  *United States v. DiBernardo*, 775 F.2d 1470, 1475-76 (11th Cir. 1985).  To that end, the United States does not object to the Court keeping its order enjoining the Attorney General of the United States and the Department of Justice from releasing Volume II outside the Department of Justice, or sharing any information contained in Volume II with anyone outside the Department of Justice, in place.

**E.    An *in camera* review by the Court of the grand jury materials related to this prosecution is not warranted.**

The Court should decline any invitation to conduct an *in camera* review of the grand jury materials related to this prosecution.  The Attorney General has not ordered the release of Volume II, nor has any court of competent jurisdiction ordered the Department of Justice to release Volume II.  Unless and until either of those contingencies comes to fruition, it would be premature for the Court to engage in a Rule 6(e) analysis.

"The Supreme Court has long recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Pitch v. United States*, 953 F.3d 1226, 1232 (11th Cir. 2020) (internal marks and citations omitted).  Grand jury proceedings and records have been "kept from the public eye" since the 17th Century.  *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979).  Rule 6 of the Federal Rules of Criminal Procedure, which governs matters related to the grand jury, codifies this traditional practice of secrecy.

Rule 6(e)(1) mandates that "[u]nless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes."  Given this responsibility, "as a practical matter, it is the government—and not the district court—that actually discloses the grand jury records." *Pitch*, 953 F.3d at 1234.  "When the district court authorizes disclosure under Rule 6(e)(3)(E), then, it must do so by ordering a government attorney to disclose the grand jury records that are in his or her possession." *Id*. at 1237 n.10.

Rule 6(e)(2) delineates those persons who are prohibited from disclosing matters occurring before the grand jury.  Fed. R. Crim. P. 6(e)(2)(B)(i-vii).  That list includes attorneys for the government, and persons to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).  Fed. R. Crim. P. 6(e)(2)(B)(vi-vii).

Rule 6(e)(3), in turn, governs the exceptions to grand jury secrecy, and provides, in relevant

part, as follows:

(3) Exceptions.

(A) Disclosure of a grand-jury matter--other than the grand jury's deliberations or any grand juror's vote--may be made to:

(i) an attorney for the government for use in performing that attorney's duty;

(ii) any government personnel--including those of a state, state subdivision, Indian tribe, or foreign government--that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law; or

(iii) a person authorized by 18 U.S.C. § 3322.

(B) A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law. An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule.

(C) An attorney for the government may disclose any grand-jury matter to another federal grand jury.

(D) An attorney for the government may disclose any grand-jury matter involving foreign intelligence, counterintelligence (as defined in 50 U.S.C. § 3003), or foreign intelligence information (as defined in Rule 6(e)(3)(D)(iii)) to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties. An attorney for the government may also disclose any grand-jury matter involving, within the United States or elsewhere, a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent, to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities.

. . . .

16

(E) The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter:

(i) preliminarily to or in connection with a judicial proceeding;

(ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

(iii) at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;

(iv) at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

(v) at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

Fed. R. Crim. P. 6(e)(3).

Rule 6(e)(3) contains an exhaustive list of exceptions to grand jury secrecy. *Pitch*, 953 F.2d at 1234 ("The rule . . . leaves no room for district courts to fashion new exceptions beyond those listed in Rule 6(e). . . . Rule 6(e) by its plain terms limits disclosures of grand jury materials to the circumstances enumerated therein.").

Any attorneys representing the United States, including the Attorney General, are bound by the grand jury secrecy requirements and exceptions contained in Rule 6(e). *See* Fed. R. Crim. P. 1(b) (defining "attorney for the government" as the Attorney General or an authorized assistant; a United States attorney or an authorized assistant; when applicable to cases arising under Guam law, the Guam Attorney General or other person whom Guam law authorizes to act in the matter; and any other attorney authorized by law to conduct proceedings under these rules as a prosecutor); *United States v. Sells Eng'g*, 463 U.S. 418, 427 (1983) (noting that under Rule 6(e)(2) "grand

jurors, government attorneys and their assistants, and other personnel attached to the grand jury are forbidden to disclose matters occurring before the grand jury."); *In re Grand Jury Investigation*, 610 F.3d 202, 219 (5th Cir. 1980) (recognizing that the Court can impose contempt sanctions against Department of Justice attorneys for violating Rule 6(e)).

In summary, the United States submits the Department of Justice, not the Court, is responsible for redacting any grand jury material in Volume II. This is consistent with historical grand jury practice. "The grand jury is by design an institution independent from the Judicial Branch . . . the district court neither presides over the grand jury nor monitors its proceedings." *Pitch*, 953 at 1237 (citations omitted).

If the Court is concerned that the release of Volume II outside the Department of Justice at some point in the future might implicate Waltine Nauta's and Carlos De Oliveira's constitutional rights to a fair trial, the Court can require the Department of Justice to provide written notice to counsel for Waltine Nauta and counsel for Carlos De Oliveira sixty days before releasing a redacted version of Volume II outside the Department of Justice. This would allow the defendants to seek appropriate relief from this Court, only if the Attorney General decides to release Volume II outside the Department of Justice.

## CONCLUSION

For these reasons, the United States respectfully requests the Court to deny American Oversight's Motion to Intervene and for Clarification or, Alternatively, Dissolution of January 21, 2025 Order Granting Defendants' Emergency Motion to Preclude Release of Volume II of Special Counsel's confidential Final Report [ECF No. 717], and Knight Institute's Motion to Intervene to Seek Rescission of the Court's January 21, 2025 Order and Public Release of Volume II of the Special Counsel's Report [ECF No. 721].


Respectfully submitted,


HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:    **/s/Michael D. Porter**
       Michael D. Porter
       Assistant United States Attorney
       Florida Bar# 0031149
       101 South U.S. Highway 1
       Suite 3100
       Fort Pierce, Florida 34950
       Telephone: (772) 293-0950
       Email: michael.porter2@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by either regular U.S. mail or inter-office delivery.

**/s/Michael D. Porter**
Michael D. Porter
Assistant United States Attorney