**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 23-CR-80101-AMC**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DONALD J. TRUMP, WALTINE NAUTA,
and CARLOS DE OLIVEIRA,

        Defendants.

**JOINT EXPEDITED[1] MOTION OF THE KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY AND AMERICAN OVERSIGHT TO INTERVENE FOR THE PURPOSE OF SEEKING A STAY OF PROCEEDINGS**

Pursuant to Local Rules 7.1 and 88.9, the Knight First Amendment Institute at Columbia University ("Knight Institute" or "Institute") and American Oversight (together "Prospective Intervenors"), respectfully move to intervene in this case to seek a stay of proceedings pending the Eleventh Circuit's resolution of their appeals filed on December 23 and 29.

The only issue remaining in this closed case is public access to Volume II of Special Counsel Jack Smith's final report. That issue is currently before the Eleventh Circuit, but President Trump, Walt Nauta, and Carlos De Oliveira ("Defendants") and the United States have moved this Court for a permanent injunction barring Volume II's release and requiring its destruction. Dkt. 772-774. If granted, this relief would nullify Prospective Intervenors' statutory, common law, and

---

[1] Defendants filed "expedited" unopposed motions seeking a permanent injunction against the release of Volume II of Special Counsel Jack Smith's final report and, as to Nauta and De Oliveira, an order requiring destruction of all copies of Volume II. Dkt. 772-774. Movants here request similar treatment of the instant motion so that it is considered and resolved before Defendants' "unopposed" motions.

1

First Amendment rights of access to Volume II, would thwart the jurisdiction of the Court of Appeals, and would obstruct the appeal in this matter. *See Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943).[2] Prospective Intervenors therefore move for a stay of these proceedings until the Eleventh Circuit has resolved their appeals. A stay of proceedings is appropriate and necessary because this Court lacks jurisdiction to adjudicate the motions, and because the motions are without merit and seek relief that would violate the Federal Records Act.

## BACKGROUND

On December 22, 2025, the Court issued an Order Denying 717 721 Non-Party Motions to Intervene.[3] Dkt. 760. Shortly after denying the intervention motions, the Court issued an order regarding the Injunction. Dkt. 761. Acknowledging that the "immediate basis" for the Injunction ceased to exist on February 11, 2025, when the Eleventh Circuit dismissed the criminal appeal, the Court ordered that the Injunction will automatically expire on February 24, 2026, absent further order of the court. *Id.* At the same time, the Court gave "any former or current party to this action" the opportunity to seek "appropriate relief" before that deadline. It specifically referenced Defendants' earlier contention that Volume II should not be released because it is the work product of an unconstitutionally appointed Special Counsel. *Id.* at 1–2.

On December 23 and December 29, 2025, the Knight Institute and American Oversight, respectively, filed notices of appeal of the Court's order denying their motions to intervene. Dkt. 762 & 763.

---

[2] The Knight Institute's and American Oversight's first motions to intervene sought rescission of the Court's Injunction barring the release of Volume II.  The Knight Institute also asserted common law and First Amendment rights of access to Volume II.

[3] Prospective Intervenors incorporate by reference their original motions to intervene Dkt. 717 and 721.

On January 20, 2026, President Trump filed an Unopposed Expedited Motion for an Order Prohibiting the Release of Volume II of the Final Report Unlawfully Prepared by Special Counsel Jack Smith. Dkt. 772. President Trump's motion asserts that this Court "retains jurisdiction to address disputes concerning the disclosure and use of materials generated during the pendency of the criminal proceedings, including Volume II." *Id.* at 2. He "requests that this Court enter an order permanently enjoining the Department of Justice, as well as its current, former, and future officers, agents, officials, and employees, from (a) releasing, sharing, or transmitting Volume II or any drafts of Volume II outside of the Department of Justice, or (b) otherwise releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions contained in Volume II or its drafts." *Id.* at 17.

On January 23, 2026, the United States filed a Response to the December 22, 2025 Order, stating that "[t]he United States agrees with the former defendants in this case that Volume II should not be released outside of the Department of Justice." Dkt. 773, at 1. The Response further stated that "it is the position of the Attorney General and this Department that release of Volume II is unjustified. The illicit product of an unlawful investigation and prosecution belongs in the dustbin of history." *Id.* at 3.

On January 30, 2026, Nauta and De Oliveira filed an Expedited Motion for, and Response in Support of, an Order Permanently Prohibiting Release of Volume II of the Final Report Unlawfully Prepared by Jack Smith. Dkt. 774. They "request[ed] that the Court enter an order directing the Report's destruction and/or permanently enjoining its release." *Id.* at 12.

## ARGUMENT

**I.    Prospective Intervenors have standing to intervene.**

As Prospective Intervenors argued in their respective motions to intervene, Dkt. 717, 721, Prospective Intervenors have standing to intervene because Defendants' motions directly implicate

3

their statutory rights of access to Volume II under FOIA. The threat to Prospective Intervenors' statutory rights under FOIA is clear and acute. They have standing to intervene because the motions seek relief that would, if granted, nullify their rights. Moreover, intervention is the only means they have to protect those rights.

The Knight Institute also has standing to assert the public right of access to Volume II under the common law and the First Amendment.[4] As this Court correctly observed, the "law is settled" in this Circuit that the press and public have standing to intervene in criminal cases to assert common law and First Amendment rights of access to judicial proceedings and documents. Dkt. 760 at 8–9 (citing *Petition of Trib. Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986); *United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993)). In denying the Knight Institute's first motion to intervene on standing grounds, the Court "improperly conflated the standing inquiry with the merits inquiry." *Okeelanta Corp. v. U.S. Army Corps of Eng'rs*, 132 F.4th 1320, 1332 (11th Cir. 2025). The Court stated that "[w]hen a prospective intervenor seeks material under a theory of access to 'judicial records,' courts need not allow non-party intervention to vindicate such a right if the material sought is not properly considered a 'judicial record' to begin with." Dkt. 760, at 9. However, "[t]he Supreme Court has been clear that 'standing in no way depends on the merits of the plaintiff's' claim." *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1211 (11th Cir. 2025) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). In determining a party's standing, a court must "accept

---

[4] American Oversight, in a mandamus petition to the Eleventh Circuit seeking the lifting of the injunction, asserted its common law and constitutional rights to access public records but relied primarily on its statutory right under FOIA in its motion to intervene. *See* Pet. Writ Mandamus, 25-13400 (11th Cir. Sept. 30, 2025), Dkt. 1-2 at 15-19. American Oversight does not waive those arguments in these or related proceedings but believes its statutory right under FOIA is sufficient to establish standing for the purpose of this motion.

as valid the merits of [the plaintiff's] legal claims . . . ." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022). Under these authorities, the Knight Institute clearly had standing to intervene.

**II.     Prospective Intervenors' notices of appeal divested this Court of jurisdiction to take any action with respect to Volume II.**

It is a "longstanding tenet of American procedure" that the filing of a notice of appeal confers jurisdiction on the court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)). The district court retains jurisdiction over "collateral matters that are separate and distinct from the questions presented on appeal." *Burke v. Ocwen Financial Corp.*, No. 21-12160, 2022 WL 599153, at *1 (11th Cir. March 1, 2022) (citing *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 & n.4 (11th Cir. 1999)).[5] Accordingly, this Court lacks jurisdiction to adjudicate Defendants' motions or take any action with respect to Volume II while Prospective Intervenors' appeals are pending. Dkt. 764 and 765 (No. 25-14507 (11th Cir. Dec. 31, 2025)).

Defendants' motions plainly concern questions currently before the Eleventh Circuit—this Court's authority to enjoin the Department of Justice from releasing Volume II outside the Department and the common law and First Amendment rights of access to the copy of Volume II in the Court's possession. For example, the Knight Institute's appeal challenges this Court's supervisory authority to enjoin the Department of Justice from releasing Volume II, but Defendants' motions expressly invoke that authority in seeking an order from this Court directing Volume II's destruction and/or permanently enjoining its release.[6] Dkt. 772 at 2, 12–13; Dkt. 774

---

[5] This Court has previously recognized that a district court's supervisory powers are subject to the "divestiture of jurisdiction over matters before the court of appeals." Dkt. 714, at 7 (citing *Griggs*, 459 U.S. at 58).

[6] American Oversight's appeal does not directly challenge this Court's supervisory authority, but

at 3–4, 10. President Trump's motion, for example, includes sections titled, "This Court Retains Jurisdiction and Inherent Supervisory Authority to Issue an Order Preventing the Release of Volume II," and "The Court Should Exercise Its Authority to Issue an Order Preventing the Release of Volume II." Dkt. 772 at 12–13. Nauta and De Oliveira's motion adopts those arguments and adds a section of its own titled, "This Court Retains the Plenary Authority to Block the Release of the Report." Dkt. 774, at 10.

Another example: The Knight Institute's appeal asserts the presumptive common law and First Amendment right of access to Volume II, and argues that the presumption cannot be overcome. Defendants' motions argue the opposite. Nauta and De Oliveira's motion includes a section titled, "There is No Public Right of Access to the Report." Dkt. 774, at 5. In addition, Defendants' motions argue that the report must be suppressed or destroyed because of the risk of prejudice to Defendants' fair trial rights, the burden to them of having to respond to the allegations in the report, and the report's purported inclusion of unredacted grand jury material, information covered by the attorney/client privilege, and undisclosed discovery material. Nauta and De Oliveira's motion, for example, includes sections titled, "The Primary Legal Basis for the Court's January 21, 2025, Order Remains Valid," "Release of the Report Would be Unduly Burdensome and Prejudicial to Mr. Nauta and Mr. De Oliveira," and "Release of the Report Would Also Inappropriately Risk Violating Grand Jury Secrecy Rules." Dkt. 774, at 3–5, 7–8. President Trump's motion states that "[r]elease would also lead to the public dissemination of sensitive grand jury materials, attorney-client privileged information, and other information derived from

---

rather, American Oversight's right to intervene to challenge that authority. In any event, the question raised by American Oversight's appeal is directly related to this Court's supervisory authority, which is in no way a "collateral matter[] that [is] separate and distinct from the questions presented on appeal." *Burke*, 2022 WL 599153, at *1.

protected discovery materials, raising significant statutory, due process, and privacy concerns for President Trump and his former co-defendants." Dkt. 772, at 1–2. His motion also includes a section titled, "Release Would Improperly Divulge Information Protected by Rule 6(e) and Attorney-Client Privilege." *Id.* at 15–16.

A stay of proceedings is warranted because Defendants' motions raise questions currently before the Eleventh Circuit. There is no argument that these are "collateral matters that are separate and distinct from the questions presented on appeal." *Burke*, 2022 WL 599153, at *1.

### III. The constitutionality of the Special Counsel's appointment has no bearing on the public right of access to Volume II.

Defendants' motions assert that Volume II should be suppressed because it is the work product of an unconstitutionally appointed Special Counsel. However, none of the statutory, common law, or constitutional access rights at issue depend on the constitutionality of Smith's appointment.

The constitutionality of the Special Counsel's appointment is irrelevant to the statutory right of access created by FOIA. Volume II is subject to the act because it is a record in the possession of the Justice Department. The act "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy,* 562 U.S. 562, 565 (2011). "These exemptions are explicitly made exclusive and must be narrowly construed." *Id.* (citations omitted). They "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act*." Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). None of the exemptions mentions or has any connection to the Appointments Clause. *See* 5 U.S.C. §§ 552 (b)(1)–(9). And Prospective Intervenors know of no case holding that an agency record otherwise subject to FOIA is not subject to it because it was created by an unconstitutionally appointed official. This is unsurprising. It is plain that a judge-made FOIA carve-out shielding

7

documents prepared by unconstitutionally appointed officials would flatly contradict the "basic purpose" of the statute, which is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also The News–Press v. U.S. Dep't of Homeland Security*, 489 F.3d 1173, 1190 (11th Cir. 2007).

Nor does the public right of access to judicial documents under the common law or First Amendment turn on the constitutionality of a government official's appointment. The primary function of these access rights is to safeguard public trust in the judicial system. *See Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982) ("public access . . . fosters an appearance of fairness, thereby heightening public respect for the judicial process"); *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002) ("public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system") (citation omitted). The public's right of access to the report stems from the role the report played in the court's decision to enjoin the report's release. The right does not turn in any way on the constitutionality of the Special Counsel's appointment.

**IV.     The Court lacks authority to order the destruction of Volume II.**

Nauta and De Oliveira request that this Court order the "destruction of all copies" of Volume II, with the express purpose of evading FOIA's obligations. Dkt. 774 at 1, 12.[7] Any

---

[7] There is no merit to Nauta and De Oliveira assertion that the Rule 16 protective order requires the destruction of Volume II. Dkt. 774, 4-5 (referring to Dkt. No. 27). The protective order covers "Discovery Material," but the Special Counsel's final report was not produced in discovery. Notably, Defendants did not object to the order and apparently made no effort to include the Special Counsel's final report within the scope of the order, even though Department of Justice regulations clearly required the Special Counsel to prepare and submit such a report to the Attorney General. Every final report of a Special Counsel has been released to the public, with the exception of Volume II.

individual or entity carrying out such an order on behalf of the federal government would be violating federal law—specifically, the Federal Records Act. *See* 44 U.S.C. § 3101, *et seq.*

The FRA "governs the creation, management, and disposal of federal records." *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991). The statute requires the head of each federal agency to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures and essential transactions of the agency," 44 U.S.C. § 3101, and further requires "that the federal Archivist promulgate rules regarding record management and preservation that agency heads are obligated to follow." *Doyle v. DHS*, 959 F.3d 72, 79 (2d Cir. 2020) (citing 44 U.S.C. §§ 2904(a), (c)(1), 3105).

The FRA defines "records" to include:

> all recorded information . . . made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them.

44 U.S.C. § 3301. "Due to the importance of maintaining federal records (which are generally accessible to the public through the Freedom of Information Act), the act strictly limits the circumstances under which records can be removed from federal custody or destroyed." *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 953 (D.C. Cir. 2016) (citing 44 U.S.C. § 3105(1)). "Federal agencies may not destroy records subject to the FRA without first receiving the Archivist's approval." *Doyle*, 959 F.3d at 79 (citing 44 U.S.C. §§ 3302, 3314) ); *see also* 44 U.S.C. § 3106 (each agency head must "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records").

Volume II—Special Counsel Jack Smith's final report on his investigation and prosecution of President Trump for alleged violations of the Espionage Act—falls squarely within the definition of federal records protected by the FRA, a statute that Congress intended to operate as the exclusive legal framework governing the disposition or destruction of federal records. *See* 44 U.S.C. § 3314.[8]

## CONCLUSION

For the foregoing reasons, the Court should grant the Knight Institute's and American Oversight's Joint Motion to Intervene and stay all proceedings pending the outcome of Prospective Intervenors' appeals.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for the movants conferred with all parties or nonparties who may be affected by the relief sought in this motion—including counsel for the United States and the three former Defendants—in a good faith effort to resolve the issues. The United States and Defendants Trump, Nauta, and De Oliveira oppose the relief sought herein.

Dated: February 9, 2026 

Respectfully submitted,

/s/ *David Buckner*
David Buckner
Florida Bar No.:
Buckner + Miles
2020 Salzedo Street
Suite 302
Coral Gables FL 33134
Phone: (305) 964-8003
david@bucknermiles.com

---

[8] Letter from Jack Smith, Special Couns., Dep't of Justice, to Merrick Garland, Att'y Gen., Dep't of Justice (Jan. 7, 2025) ("Smith Letter to Garland"), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf.

Scott Wilkens (*pro hac vice*)
Alex Abdo (*pro hac vice*)
Jameel Jaffer (*pro hac vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, N.Y. 10115
Phone: (646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Prospective Intervenor Knight First Amendment Institute at Columbia University*

*/s/ Barbara Llanes*
Adam M. Schachter
Florida Bar No. 647101
aschachter@gsgpa.com
Barbara R. Llanes
Florida Bar No.1032727
bllanes@gsgpa.com
Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

Loree Stark (*pro hac vice*)
Elizabeth Haddix (*pro hac vice*)
American Oversight
1030 15th Street NW, B255
Washington, DC 20005
Telephone: (304) 913-6114
E-mail: loree.stark@americanoversight.org

*Counsel for Prospective Intervenor American Oversight*

11

**CERTIFICATE OF SERVICE**

      I, David Buckner, do hereby certify that I have filed the foregoing Joint Expedited Motion of the Knight First Amendment Institute at Columbia University and American Oversight to Intervene for the Purpose of Seeking a Stay of Proceedings with the Clerk of the Court for the United States District Court for the Southern District of Florida on February 9, 2026, via CM/ECF, through which service will be made on all parties in this matter.

Dated: February 9, 2026                                        Respectfully submitted,

                                                                                    /s/ *David Buckner*
                                                                        David Buckner
                                                                        Buckner + Miles
                                                                        2020 Salzedo Street
                                                                        Suite 302
                                                                        Coral Gables FL 33134
                                                                        (305) 964-8003

                                                                        *Counsel for Prospective Intervenor Knight First Amendment Institute at Columbia University*