## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO. 23-80101-CR-CANNON

**UNITED STATES OF AMERICA,**

       Plaintiff,

vs.

**DONALD J. TRUMP, WALTINE NAUTA**, **and**
**CARLOS DE OLIVEIRA**,

       Defendants.

_____/

### ORDER ON UNOPPOSED MOTIONS SEEKING
### PROHIBITION ON RELEASE OF VOLUME II

**THIS CAUSE** comes before the Court upon the following two Unopposed Motions filed by former defendants in this closed criminal action: (1) "President Donald J. Trump's Unopposed Expedited Motion for an Order Prohibiting the Release of Volume II of the Final Report Unlawfully Prepared by Jack Smith and his Office" [ECF No. 772]; and (2) "Waltine Nauta's and Carlos De Oliveira's Expedited Motion For, and Response in Support of, an Order Permanently Prohibiting Release of Volume II of the Final Report Unlawfully Prepared by Jack Smith" [ECF No. 774].  The Court has reviewed the Motions and the full record pertinent to the Motions, including the United States' position that "Volume II should not be released outside of the Department of Justice" due to the unlawful appointment of Special Counsel Smith and Attorney General Bondi's deliberative-process determination [ECF No. 773 p. 1].  Fully advised in the premises, Trump's Unopposed Motion is **GRANTED** [ECF No. 772], and Nauta and De Oliveira's Unopposed Motion is **GRANTED IN PART** [ECF No. 774] as directed below.

## RELEVANT FACTS AND PROCEDURAL HISTORY

This section recounts the facts and procedural history pertinent to the instant Motions and assumes a basic understanding of this extensive proceeding.[1]

1. On July 15, 2024, this Court granted Defendants' Motion to Dismiss the Superseding Indictment Against Trump, Nauta, and De Oliveira Based on the Unlawful Appointment and Funding of Special Counsel Jack Smith [ECF No. 672 ("Dismissal Order")]. The Court determined, in an order confined to this proceeding,[2] that Special Counsel Smith's appointment violated the Appointments Clause of the United States Constitution, U.S. Const., Art. II., § 2, cl. 2, warranting dismissal of the Superseding Indictment [ECF No. 672]. In so holding, the Court explained that "[a]ll actions that flowed from his [Special Counsel Smith's] defective appointment—including his seeking of the Superseding Indictment on which this proceeding currently hinges— were unlawful exercises of executive power" that warranted invalidation as "ultra vires action" [ECF No. 672 pp. 82–84 (citation omitted); *see* ECF No. 672 p. 83 ("In light of these remedial principles—and because the Court concludes that Special Counsel Smith's appointment violates the Appointments Clause—the actions of Special Counsel Smith in connection with this proceeding must be set aside.")]. The Court also concluded that Special Counsel Smith's use of a permanent indefinite appropriation

---

[1] This case has generated close to 800 docket entries since the filing of the initial indictment in June 2023. This Order focuses on the critical history pertinent to the instant Motions, although complete understanding of the complexity of this proceeding would require careful review of the lengthy docket and the myriad filings and orders entered therein.

[2] [ECF No. 672 p. 1; *see* ECF Nos. 697, 702, 704, 706 (denying relief as to Volume I because Volume I concerned a separate criminal proceeding over which this Court lacked authority)].

violated the Appropriations Clause, U.S. Const. Art. I, § 9, cl. 7, although the Court did not impose a separate remedy for that violation [ECF No. 672 p. 1].

2. Special Counsel Smith timely appealed the Court's July 15, 2024, Dismissal Order, but he never sought a stay from this Court or from the Eleventh Circuit—and he elected to dismiss his appeal as to Trump without prejudice in November 2024 following the 2024 Presidential Election.  *See* 11th Cir. No. 24-12311 (Doc. Entry 81).  The United States also subsequently dismissed the appeal with prejudice as to the remaining defendants in January 2025.  *Id*. (Doc. Entry 113).

3. Accordingly, the Court's Dismissal Order was always, and still remains, an enforceable, final order in this proceeding and constitutes law of the case [ECF No. 672].[3]

4. Despite the Court's final Dismissal Order entered in July 2024 for which Special Counsel Smith sought no stay, the Special Counsel accelerated efforts after that Order—through and until his exit from the Department of Justice in early-to-mid-January 2025—to prepare and finalize a Final Report utilizing discovery materials generated in this case [ECF No. 679 pp. 6–7; ECF No. 680; ECF No. 685 p. 2].

---

[3] *See In re Copper Antitrust Litig*., 436 F.3d 782, 793 (7th Cir. 2006) ("The general rule is that the judgment of a district court becomes effective and enforceable as soon as it is entered; there is no suspended effect pending appeal unless a stay is entered."); *Hovey v. McDonald*, 109 U.S. 150, 161–162 (1883) (holding that, while granting a stay "would have been eminently proper[,] . . . where the power is not exercised by the court, nor by the judge who allows the appeal, the decree retains its intrinsic force and effect"); Fed. R. App. P. 8 (permitting a party to move for stay for relief from judgment or order pending appeal); *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) ("Under the law-of-the-case doctrine, an issue decided at one stage of a case is binding at later stages of the same case."); *Bobby v. Bies*, 556 U.S. 825, 834 (2009) ("Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and is essential to the judgment.'" (alteration adopted) (quoting Restatement (Second) of Judgments § 27 (1980))).

5.  That report is Volume II.  As described previously [ECF No. 714 ¶ 9], Volume II includes substantial discovery information protected by the Rule 16 Protective Order entered in June 2023 [ECF No. 27], along with various other disputed material implicating Rule 6(e) and the attorney-client privilege [ECF No. 714 pp. 5–6 (citing docket entries); *see* ECF No. 714 pp. 5–6 ("It includes myriad references to bates-stamped information provided by the Special Counsel in discovery and subject to the protective order, including interview transcripts, search warrant materials, business records, toll records, video footage, various other records obtained pursuant to grand jury subpoena, information as to which President-Elect Trump has asserted the attorney-client privilege in motions in this proceeding [ECF No. 571 (sealed); ECF Nos. 641, 656], potential Rule 404(b) evidence, and other non-public information.")].  The Rule 16 Protective Order, issued on motion of the Special Counsel in June 2023, remains in effect without change and provides, in part, as follows: "**No Disclosure to the Public**.  The Discovery Materials, along with any information derived therefrom, shall not be disclosed to the public or the news media, or disseminated on any news or social media platform, without prior notice to and consent of the United States or approval of the Court" [ECF No. 27 ¶ 6].

6.  In December 2024, as the Presidential Transition neared, defense counsel for Trump learned through media reports that Special Counsel Smith and his team planned to release Volume II to select members of Congress [ECF No. 722 p. 6; *see* ECF No. 679, Ex. A (pp. 28–40)].  Concerned, defense counsel sent a letter of objection to Special Counsel Smith, relying in part on this Court's final Dismissal Order and Smith's corresponding lack of authority to prepare or transmit Volume II [ECF No. 679, Ex. A

(pp. 28–40)].   In response, Special Counsel Smith's team provided defense counsel limited-access review of Volume II between January 3–6, 2025, under strict conditions barring reproduction or preservation of the report, and mandating deletion of all prior discovery productions as a condition of reviewing it [ECF No. 679 pp. 6–7, 13–15; ECF No. 690 p. 10 n.3; ECF No. 714 p. 6; ECF No. 772 p. 6].

7.  Against this backdrop, and facing imminent partial disclosure of Volume II, Nauta and De Oliveria filed an Emergency Motion in this Court to preclude release of Volume II [ECF No. 679].   They noted the obvious fact that criminal proceedings remained pending against them on appeal at that time, and they made various other arguments concerning the ultra vires work product of Special Counsel Smith; their rights to due process; and the substantial prejudice that would result from release of work product containing prosecutorial discovery material subject to a Rule 16 protective order [ECF Nos. 679, 712].   Trump also opposed release of Volume II, emphasizing his concerns about the prejudice caused by Special Counsel Smith's continued investigatory work product following the Court's Dismissal Order [ECF Nos. 681, 711].

8.  Ultimately, on January 21, 2025, after additional briefing and a hearing [*see, e.g.*, ECF Nos. 688, 692, 701, 703, 710, 713, 768]—and pursuant to its supervisory control over the flow of substantive, nonpublic information in this criminal action—the Court granted Nauta and De Oliveira's Emergency Motion as to Volume II and enjoined release of Volume II outside the Department of Justice pending further Court order [ECF No. 714 ("January 21, 2025 Order")].   In doing so, the Court noted Attorney General Garland's unprecedented insistence on release of a Special Counsel

5

CASE NO. 23-80101-CR-CANNON

report to Congress pending a finding of guilt and/or conclusion of initiated criminal proceedings [ECF No. 714 pp. 11–12].   The Court did not, however, address Defendants' arguments regarding the ultra vires nature of Volume II given Special Counsel's unconstitutional appointment and funding—an issue on appeal to the Eleventh Circuit at that time [ECF No. 714 p. 2 n.2].  The Court also directed the parties to submit a joint status report following conclusion of all appellate proceedings and/or any continued proceedings in this Court [ECF No. 714 pp. 13–14].

9.  On December 22, 2025, following submission of the requested joint status report and dismissal of the criminal appeal as to Nauta and De Oliveira, and after resolving separate motions to intervene by non-parties seeking rescission of the January 21, 2025 Order [ECF No. 760], the Court entered a separate Order Following Joint Status Report and Addressing January 21, 2025 Order [ECF No. 761].  That Order acknowledged that the immediate basis underlying the January 21, 2025, Order appeared to no longer apply following dismissal of the criminal appeal as to Nauta and Oliveira [ECF No. 761 p. 1].  But, it identified the parties' continued opposition to release of Volume II as ultra vires work product—a matter not addressed in the January 21, 2025, Order given the pending (now dismissed) appeal of the Dismissal Order [ECF No. 761 p. 2].  Hence, the Court afforded the parties the requested sixty days to seek appropriate relief in this Court—while simultaneously setting an expiration date of February 24, 2026, on the restriction against release of Volume II as set previously in the January 21, 2025 Order [ECF No. 761].

10.  The instant timely Unopposed Motions followed [ECF Nos. 772, 774].   The first Motion is entitled "President Donald J. Trump's Unopposed Expedited Motion for an

Order Prohibiting the Release of Volume II of the Final Report Unlawfully Prepared by Jack Smith and his Office" [ECF No. 772]. The second Motion is entitled "Waltine Nauta's and Carlos De Oliveira's Expedited Motion For, and Response in Support of, an Order Permanently Prohibiting Release of Volume II of the Final Report Unlawfully Prepared by Jack Smith" [ECF No. 774]. For its part, the United States filed a Response opposing any release of Volume II outside of the Department of Justice—characterizing Volume II as the unlawful work product of an unconstitutionally appointed actor that contains underlying discovery materials and potential material protected from disclosure pursuant to Rule 6(e) [ECF No. 773]. The United States also indicates that Attorney General Bondi separately has determined that Volume II is an internal deliberative communication that is privileged and confidential under 5 U.S.C. § 552(b)(5) [ECF No. 773 p. 1].

11. The Motions are ripe for resolution. No party challenges the Court's jurisdiction to entertain them or to address disputes concerning the disclosure and use of discovery materials generated in connection with this criminal proceeding, including as contained within Volume II [*see* ECF No. 772 pp. 12–13; ECF No. 774 p. 10].[4]

---

[4] The Motions are brought by former defendants in this closed criminal case seeking to prohibit disclosure of discovery materials concerning their alleged conduct and generated in connection with this case. "Intervention" by these former defendants is therefore unnecessary.

The Court notes that there is no pending notice of appeal that divests this Court of jurisdiction to enter this Order. The only pending notices of appeal on the docket concern the Court's December 22, 2025 Order Denying Non-Parties American Oversight and Knight First Amendment Institute's Motions to Intervene to Dissolve/Rescind the Court's January 21, 2025 Order [ECF Nos. 762–763 (appealing ECF No. 760)]. The Court determined in the Order Denying Intervention that no basis exists to grant American Oversight or Knight First Amendment Institute party status in this criminal proceeding—either on their unprecedented and unsupported theory of FOIA access to Volume II or on the flawed premise that Volume II qualifies as a "judicial record" triggering the common law or First Amendment right of access [ECF No. 760]. That order remains on appeal,

## LEGAL STANDARDS

As a broad proposition whose force depends on the circumstances presented, "[f]ederal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." *United States v. DiBernardo*, 775 F.2d 1470, 1475–76 (11th Cir. 1985). This inherent authority must be exercised with restraint, but it extends to a court's enforcement of the Federal Rules of Criminal Procedure and to its own local rules, orders, and judgments, subject to contrary law or to divestiture of jurisdiction. *See generally Degen v. United States*, 517 U.S. 820, 827 (1996) ("Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities."); *Griggs*, 459 U.S. at 58 ("The filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal."). It also encompasses the power, again absent constitutional and statutory law, to restrict access to discovery materials generated in connection with the proceeding and to enforce protective orders. *See In re Grand Jury Proc.*, 417 F.3d 18, 26 (1st Cir. 2005) ("Absent restriction, courts have inherent power, subject to the Constitution and federal statutes, to impose secrecy orders incident to matters occurring before them. The general power is regularly expressed in orders limiting access to discovery materials, closing sensitive proceedings, and in other contexts."); *see also Hyde v. Irish*, 962 F.3d 1306, 1309 (11th Cir. 2020) (explaining that district courts retain power to decide certain collateral issues related to a case

---

*see* 11th Cir. Appeal No. 25-14507, and nothing in this order purports to control those aspects of the case involved in that appeal, *see Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Instead, as stated *infra*, this decision enforces the Court's Dismissal Order entered in July 2024 and the Court's Protective Order entered in June 2023—neither of which is presently on appeal [ECF Nos. 27, 672]. As always, this Court will follow whatever mandates come from a higher court in resolving any future requests for judicial relief in this or in any other case.

where the exercise of jurisdiction is "constitutionally permissible" and "practically important") (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)); *SRS Techs., Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 529 (N.D. Ala. 2003) (noting that courts retain the power to modify and enforce protective orders after entry of judgment); *Santiago v. Honeywell Int'l, Inc.*, No. 16-CIV-25359, 2017 WL 3610599, at *2 (S.D. Fla. Apr. 6, 2017) (citing cases concerning continuing jurisdiction to enforce discovery orders); Fed. R. Crim. P. 16(d)(1) (governing a court's authority to regulate discovery and permitting discovery restrictions "[a]t any time").

To the extent a court in a criminal case, in the exercise of its proper supervisory or inherent authority, grants relief with injunctive effect, such an order is not conceptualized as a traditional civil injunction, *see* Fed. R. Civ. P. 65, but rather as an order rooted in the substantive protections served by the law, rule, or order implicated in the requested relief.

## DISCUSSION

All parties agree that authorizing public release of Volume II would contravene the conclusions in the Court's final Dismissal Order that Special Counsel Smith acted without lawful appointment or funding authority in this proceeding and that his actions taken in connection therewith are therefore invalid [ECF No. 772 pp. 1, 11, 13–14 & n.14; ECF No. 774 pp. 2, 11; ECF No. 773 pp. 1, 3]. They also raise a host of additional arguments against release of Volume II [ECF Nos. 772–774]. These include, *inter alia*, the existence of the Rule 16 Protective Order entered early in this case, which restricts dissemination of discovery materials and remains in effect [ECF No. 27]; the need to prevent dissemination of protected grand jury information under Rule 6(e) (under circumstances where careful Rule 6(e) review is no longer feasible given (i) the departures of Special Counsel Smith and his team from the Department of Justice and (ii) the mandate on defendants to delete all discovery as a prerequisite to reviewing Volume II in January

2025); the need to protect material protected by the attorney-client privilege given the still-contested questions on the subject as raised in this case [*see* ECF No. 571 (sealed "Motion for Relief Relating to Mar-Lago Raid and Unlawful Piercing of Attorney-Client Privilege"), ECF No. 656]; and fundamental notions of fairness in releasing nonpublic prosecutorial discovery gathered in connection with initiated criminal proceedings without any adjudication of guilt [ECF Nos. 772–774].

Upon review of the unopposed Motions, and consistent with the Court's authority to enforce its own orders and control the dissemination of discovery materials generated in this case, the Court agrees with the parties' uniform view. Release of Volume II outside the Department of Justice would plainly offend the Court's Dismissal Order [ECF No. 672] and the Rule 16 Protective Order [ECF No. 27], both of which remain in force; it would cause irreparable damage to former defendants from disclosure of non-public discovery material implicating still-contested grand jury and privilege concerns; and it would contravene basic notions of fairness and justice in the process, where no adjudication of guilt has been reached following initiation of criminal charges. The Court reasons as follows.

First, despite the Court's holding in July 2024 that "the actions of Special Counsel Smith in connection with this proceeding must be set aside" due to his unconstitutional appointment [ECF No. 672 p. 83], Special Counsel Smith and his team went ahead for months, undeterred, preparing Volume II using discovery collected in connection with this proceeding and expending government funds in the process. Defendants learned of this continued work in December 2024 through media reports and then timely raised their objections to Special Counsel Smith—but he continued unabated, offering defendants only the courtesy of brief review under strict conditions, including forced deletion of discovery materials in the custody of the defense. Understandably,

Defendants moved for emergency relief to bar the impending release of Volume II, all the while Special Counsel Smith and his team separated from the Department of Justice; "referred" the criminal case to the United States Attorney's Office for the Southern District of Florida; and delivered Volume II to the Attorney General in a flurry of emergency motion practice leading up to the Presidential Transition—leaving no counsel of record available with actual knowledge of the particulars of the complex factual record in this case [*see* ECF No. 714 p. 6]. To say this chronology represents, at a minimum, a concerning breach of the spirit of the Dismissal Order is an understatement, if not an outright violation of it. The Dismissal Order focused on the charging document on which the criminal proceeding hinged—the Superseding Indictment—and dismissed it [ECF No. 672 p. 84]. But it went on to explain that "all" of Special Counsel Smith's actions in connection with this proceeding were ultra vires and must be set aside [ECF No. 672 p. 82; *see* ECF No. 672 pp. 82–84]. Nevertheless, rather than seek a stay of the Order, or clarification, Special Counsel Smith and his team chose to circumvent it, for months, by taking the discovery generated in this case and compiling it in a final report for transmission to then-Attorney General Garland, to Congress, and then beyond. The Court need not countenance this brazen stratagem or effectively perpetuate the Special Counsel's breach of this Court's own order.[5]

Second, Volume II contains voluminous discovery that remains subject to a valid Rule 16 protective order entered in June 2023 [ECF No. 27]. Under that Protective Order, absent consent of the United States (which there is not) or approval of the Court (which there is not), there shall be "[n]o disclosure to the Public" of discovery materials or "any information derived therefrom" [ECF No. 27 ¶ 7]. The parties operated under the tight rubric of that Protective Order during this

---

[5] The de facto officer does not apply here, as previously determined [ECF No. 672 p. 84]. But even if an argument could be made along those lines, certainly it would not cure Special Counsel Smith's actions following the Dismissal Order, including the preparation of Volume II.

hotly contested litigation, all the while the Court painstakingly ruled on matters governing disclosure of discovery in pre-trial motions, including motions to compel and other pre-trial motions requiring judicial resolution on the merits [*see, e.g.*, ECF Nos. 320, 339, 342, 348, 438, 440, 464, 468, 472, 474, 492, 503, 539, 552]. At no point did any party, much less Special Counsel Smith, take the position that they could freely disseminate discovery materials disconnected from substantive pretrial motions. Not only that, as we know now, Special Counsel Smith and his team demanded, as a condition of limited review of Volume II, that all defense counsel delete discovery materials held in their possession, reinforcing the restriction on disclosure of discovery to the public as stipulated in the Protective Order. All of this shows the following: the Court is empowered to enforce the Protective Order in this case, and disclosure of Volume II would do the opposite—permitting public release of discovery materials without consent of the United States or approval of the Court, and with no meaningful ability of the former defendants to respond with the discovery itself. For this additional reason, Defendants' Motions to prohibit release of Volume II outside of the Department of Justice are due to be granted.

Third, as Defendants point out, disclosure of Volume II would run the real risk of disseminating material protected by the attorney-client privilege or material covered by Rule 6(e) without any viable means of testing the parameters of those issues given Special Counsel Smith's discovery-deletion precondition and the realities of departed personnel following Special Counsel Smith's withdrawal [ECF Nos. 772–774]. Indeed, at least as of late January 2025 when the Court adjudicated Nauta and De Oliveira's Emergency Motion [ECF Nos. 679, 714], there was no Department counsel in a position to meaningfully comment on these issues or to otherwise guide the Court on related disputes [ECF No. 714]. And, no such counsel of record appears to exist now, as represented by the United States [*see* ECF No. 773]. Accordingly, Volume II in its current

form, even apart from its character as the work product of an unconstitutional government actor, contains material whose disclosure would impinge upon colorable and uncontested claims of privilege and grand jury secrecy. A prohibition on disclosure is warranted for this additional reason too.

Fourth and finally, there is the matter of manifest injustice to the former defendants that would result from disclosure of Volume II. Special Counsel Smith, acting without lawful authority, obtained an indictment in this action and initiated proceedings that resulted in a final order of dismissal of all charges. As a result, the former defendants in this case, like any other defendant in this situation, still enjoy the presumption of innocence held sacrosanct in our constitutional order. For obvious reasons, the Court need not take actions in contravention of that protection absent a statutory or other lawful directive to do so. Yet that would be the consequence of denying Defendants' Motions and releasing Volume II outside of the Department of Justice—not because of the status of the specific parties in this case or the public attention it has garnered, but because any defendant whose charges are dismissed need not be subjected, over objection, to prosecutorial disclosure of widescale discovery materials absent a lawful directive counseling release. Moreover, while it is true that former special counsels have released final reports at the conclusion of their work, it appears they have done so either after electing not to bring charges at all or after adjudications of guilt by plea or trial. The Court strains to find a situation in which a former special counsel has released a report *after* initiating criminal charges that *did not result* in a finding of guilt, at least not in a situation like this one, where the defendants contested the charges from the outset and still proclaim their innocence. Regardless, it is certainly not customary for a prosecutor, who obtains an indictment and initiates a criminal prosecution that is later dismissed in a final order without an adjudication of guilt, to publicly disseminate large swaths of discovery

generated in the case—much less after directing defense counsel to destroy the discovery as a condition of reviewing the report he insisted on producing despite a court order declaring his appointment unlawful. In the end, therefore, if nothing else, we return to basic fairness. "Federal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." *DiBernardo*, 775 F.2d at 1475–76. The Court does so here, mindful of the caution with which such power must be exercised.

## CONCLUSION

For the reasons stated above, in the exercise of its inherent power to enforce its own orders and to control the dissemination of discovery materials generated in this case, it is **ORDERED AND ADJUDGED** as follows:

1. "President Donald J. Trump's Unopposed Expedited Motion for an Order Prohibiting the Release of Volume II of the Final Report Unlawfully Prepared by Jack Smith and His Office" is **GRANTED** [ECF No. 772].

2. "Waltine Nauta's and Carlos De Oliveira's Expedited Motion for, and Response in Support of, an Order Permanently Prohibiting Release of Volume II of the Final Report Unlawfully Prepared by Jack Smith" is **GRANTED IN PART**, consistent with this Order [ECF No. 774].

3. Attorney General Bondi or her successor(s), the Department of Justice, its officers, agents, officials, and employees, and all persons acting in active concert or participation with such individuals, are enjoined from (a) releasing, sharing, or transmitting Volume II of the Final Report or any drafts of Volume II outside the Department of Justice, or (b) otherwise

releasing, distributing, conveying, or sharing with anyone outside the Department of Justice any information or conclusions in Volume II or in drafts thereof.

4. Any additional relief requested in either Motion, including an order of destruction of Volume II, is denied.[6]

**ORDERED** in Chambers in Fort Pierce, Florida this 23rd day of February 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[6] Nauta and De Oliveira make an additional request for an order requiring the destruction of Volume II [ECF No. 774 p. 1], although Trump makes no mention of that specific request in his Motion. The United States also invokes the deliberative-process privilege under 5 U.S.C. § 552(b)(5) [ECF No. 773 p. 2].